# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | **CRIMINAL NO.** | |
| ) | | |
| v. ) | **Count 1:** | **18 U.S.C. § 371** |
| ) | | **(Conspiracy)** |
| **PRAKAZREL MICHEL,** ) | | |
| **LOW TAEK JHO** ) | **Count 2:** | **18 U.S.C. §§ 1001 & 2** |
| ) | | **(False Statement)** |
| ) | | |
| ) | **Count 3:** | **18 U.S.C. §§ 1519 & 2** |
| ) | | **(False Entry in Record)** |
| ) | | |
| ) | **Count 4:** | **18 U.S.C. §§ 1519 & 2** |
| ) | | **(False Entry in Record)** |

## INDICTMENT

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

### INTRODUCTION

1. Through its election laws, Congress prohibited foreign nationals from making contributions, donations, and certain expenditures in connection with federal, state, and local elections, and prohibited anyone from making contributions in the name of another. Congress further required public reporting through the Federal Election Commission (FEC) of the sources and amounts of contributions and expenditures made in connection with federal elections. The purpose of these laws, taken together, is to protect the United States electoral system from illegal foreign financial influence, and to further inform all candidates, their campaign committees, federal regulators, and the public of any effort by foreign nationals to influence federal elections with foreign money.

2. The defendants, PRAKAZREL MICHEL and LOW TAEK JHO ("JHO LOW"), conspired to circumvent federal law against foreign influence by engaging in a scheme to funnel millions of dollars of foreign money from JHO LOW into an election for the Office of President of the United States so that JHO LOW and MICHEL could buy access to, and potential influence with, a candidate, the candidate's campaign, and the candidate's administration. The defendants concealed the scheme from the candidate, the candidate's campaign and administration, federal regulators, and the public by secretly funneling foreign money from JHO LOW through a series of straw donors (also known as "conduits" or "straw contributors") who purported to make legal campaign contributions in their own names, rather than in the names of the true source of the funds. MICHEL concealed the conspiracy by making and causing false statements to be made to the FEC.

## THE ELECTION ACT

3. In the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, et seq. ("Election Act") (formerly Title 2, United States Code, Sections 431, et seq.), Congress prohibited certain financial influences on the election of candidates for federal office, including the Office of President of the United States of America.

4. To prevent the influence of foreign nationals on federal elections, the Election Act prohibits foreign nationals, directly or indirectly, from making any contributions or independent expenditures in connection with federal elections. Further, to limit the influence that any one person could have on the outcome of a federal election, the Election Act established limits on the amounts that even United States citizens or lawful permanent residents could contribute to a candidate and the candidate's authorized committee, including joint fundraising committees (which are committees established for the purpose of fundraising for multiple committees at the same time).

5. To prevent individuals from circumventing the Election Act, and to enable the detection of attempts to circumvent it, the Election Act prohibits a person from making a political contribution in the name of another person, including giving funds to a straw donor for the purpose of having the straw donor pass the funds on to a federal candidate or to a candidate's federal campaign committee or joint fundraising committee, and using the straw donor's name as if they were making the contribution, rather than the true source of the money. The Election Act also prohibits contributing in the name of another to an independent expenditure committee spending to influence the outcome of that federal campaign.

6. The Federal Election Commission (FEC) is an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, in part by requiring candidates, joint fundraising committees, and independent expenditure committees to file regular reports of the sources and amounts of the contributions they receive, as well as the certain expenditures. To deter abuses of the Election Act and thus instill public confidence in the election process against corruption and the appearance of corruption, the Election Act requires the FEC to publish the reports that it receives so that all of the candidates, the entire public, and law enforcement may all see the specific information about the amounts and sources of political contributions and expenditures involving federal candidates and registered political committees.

7. Specifically, pursuant to the Election Act, Congress requires registered political committees, including Political Committee A and Political Committee B, to file periodic reports to the FEC of receipts and disbursements, identifying, among other things, the name and address of each person who made a contribution to such a committee during the relevant reporting period whose contribution or contributions had an aggregate amount of value in excess of $200 within the calendar year, together with the date and the amount of any such contribution.

8. In 2012, the Election Act prohibited any contribution by a foreign national to a joint fundraising committee or independent expenditure committee, and limited the amounts of contributions to joint fundraising committees from any one eligible United States person.

## RELEVANT INDIVIDUALS AND ENTITIES

9. Defendant PRAKAZREL MICHEL was an entertainer and businessman living in the United States.

10. Defendant LOW TAEK JHO ("JHO LOW") was a wealthy businessman and foreign national from Malaysia living outside the United States.

11. Foreign National A was an associate of JHO LOW living outside the United States.

12. Associate A and Associate B were associates of MICHEL and/or JHO LOW.

13. Candidate A was a candidate for the Office of President of the United States in the 2012 election cycle.

14. Political Committee A was a joint fundraising committee for Candidate A's political party. Political Committee A received campaign contributions for the election of Candidate A.

15. Political Committee B was an independent expenditure only committee that supported Candidate A's election efforts.

16. Individual A was a high dollar fundraiser for Candidate A who worked closely with Political Committee A in organizing fundraising events.

17. Straw Donors F through P were individuals through whom MICHEL and JHO LOW made illegal foreign and conduit contributions to Political Committee A.

18. Company A was a British Virgin Islands company with a bank account in Singapore.

19. Company B was a British Virgin Islands company with a bank account in Singapore.

20. Company C was a company owned by MICHEL's financial advisor.

21. Company D was a company owned by MICHEL.

22. Company E was a company owned by MICHEL.

## COUNT ONE
## (Conspiracy)

23. The Grand Jury incorporates paragraphs 1 through 22 of this Indictment as though fully set forth herein.

24. From in or about June 2012 to in or about June 2015, in the District of Columbia and elsewhere, the defendants **PRAKAZREL MICHEL** and **JHO LOW**, knowingly conspired with each other and with others known and unknown to the Grand Jury to:

   a. Knowingly defraud the United States by impairing, obstructing, and defeating the lawful functions of a department or agency of the United States; to wit, the FEC's ability to administer federal regulations concerning source and dollar restrictions in federal elections, including the prohibitions applicable to foreign nationals and straw donors.

   b. Knowingly and willfully make foreign contributions and independent expenditures, directly and indirectly, aggregating to $25,000 and more in a calendar year, in violation of Title 52, United States Code, Sections 30121 and 30109(a)(1)(A).

   c. Knowingly and willfully make contributions to a candidate for federal office in the names of other persons, aggregating to $25,000 and more in a calendar year, in violation of Title 52, United States Code, Sections 30122 and 30109(a)(1)(A).

## Object of the Conspiracy

25. The object of the conspiracy was for MICHEL and JHO LOW to gain access to, and potential influence with, Candidate A and his administration, by secretly funneling foreign money from JHO LOW through MICHEL and other straw donors to Political Committees A and B, all while concealing from the committees, the FEC, the public, and law enforcement the true source of the money.

## Manner and Means of the Conspiracy

26. The manner and means by which MICHEL and JHO LOW carried out the conspiracy included, but were not limited to, the following:

### Use of Shell Entities and Bank Accounts

27. MICHEL, JHO LOW, and their intermediaries used shell entities and shell bank accounts to facilitate the transfer of millions of dollars from JHO LOW to MICHEL for the purpose of funneling significant sums of money into the United States presidential election as purportedly legitimate contributions, all while concealing the true source of the money. From in or about June 2012 to in or about November 2012, JHO LOW directed the transfer of approximately $21,000,000 from Company A and Company B, both shell companies in the British Virgin Islands with bank accounts in Singapore, to Company C and Company D, companies in the United States with bank accounts under the control of MICHEL and/or his financial advisor. In addition, during the same period, JHO LOW directed the transfer of approximately $600,000 from Company B to one of MICHEL's personal bank accounts in the United States. JHO LOW directed these transfers for the purpose of making illegal excessive, foreign, and conduit political contributions to support Candidate A.

### Use of Conduits

28. To conceal the true source of the contributions, and to facilitate illegal excessive contributions by JHO LOW, MICHEL funneled millions of dollars from JHO LOW to political committees through a series of straw donors or conduits, including MICHEL, Company D, and various individuals associated with MICHEL. From in or about June 2012 to in or about September 2012, MICHEL recruited his friends, associates, and others to act as straw donors to make contributions to Political Committee A in their own names using a portion of the $21,600,000 MICHEL received from JHO LOW. MICHEL caused the money he received from JHO LOW to be paid out to the straw donors through checks, direct deposits, and cash payments. At MICHEL's direction, the straw donors in turn used the payments to make contributions to Political Committee A. In some instances, MICHEL, in an attempt to conceal the conspiracy, falsely characterized the payments as remuneration for business deals or gifts.

29. In total, MICHEL funneled approximately $865,000 from JHO LOW to Political Committee A through approximately 20 straw donors.

30. In addition to using straw donors to funnel foreign money from JHO LOW into Political Committee A, MICHEL used money from JHO LOW to make approximately $1.1 million in contributions to Political Committee B in his own name and the name of Company E, which concealed JHO LOW as the true source of the money.

### Attendance at Fundraising Events and White House Events

31. In order for JHO LOW to gain access to Candidate A, MICHEL attempted to secure permission for JHO LOW to attend private-invitation fundraising events at which Candidate A was present. When that permission was denied, MICHEL obtained permission for JHO LOW's father to attend a fundraising event and obtain photographs with Candidate A. In an effort to raise

his profile with Candidate A's campaign and administration as a high dollar fundraiser, MICHEL also attended the fundraising events with numerous straw donors he recruited to make contributions to Political Committee A.

32. Through his dealings with and related to Political Committee A, MICHEL was made aware of the prohibition on contributions from foreign nationals and conduit contributions.

33. To gain further access to and influence with Candidate A and his administration, JHO LOW attended or arranged for his associates to attend events at the White House with Candidate A.

### False Statements to the FEC

34. MICHEL, Company E, and the straw donors made contributions to Political Committees A and B in their own names, rather than the name of JHO LOW, thus concealing the true source of the contributions. As a result, MICHEL caused Political Committees A and B to make false entries in multiple campaign contribution reports submitted to the FEC about the true source of the contributions. To further conceal the true source of the contributions, and to maintain his appearance as a high dollar fundraiser for Candidate A, MICHEL made false entries in a declaration he submitted to the FEC claiming that he was the source of the contributions to Political Committee B.

### Use of False Tax Records

35. To further conceal JHO LOW as the true source of approximately $21,000,000 that was transferred to MICHEL from foreign accounts, and to help MICHEL avoid or reduce potential tax liability based on his receipt and distribution of the money, MICHEL created and submitted false tax records purporting to show that the money he received from overseas and subsequently paid out to some of the straw donors were gifts.

**Overt Acts**

36. In furtherance of the conspiracy and to effect its illegal object, MICHEL and JHO LOW committed the following overt acts, among others, in the District of Columbia and elsewhere in connection with their efforts to secretly funnel money from JHO LOW to Political Committees A and B.

Conduit Contributions to Political Committee A and Attendance at Fundraisers

37. In or about June 2012, MICHEL informed his financial advisor that he would receive a large sum of money from an individual MICHEL identified as "JHO," and that the first installment would be approximately $1,000,000. MICHEL's financial advisor offered to have the money temporarily maintained in the account of one of the financial advisor's companies, Company C.

38. On or about June 10, 2012, MICHEL received a private invitation for a fundraising event for Political Committee A to be held at the residence of a campaign supporter in Miami, Florida on June 26, 2012. The invitation stated that Candidate A would be in attendance at the fundraiser. The second page of the invitation indicated that attendance at the event required a contribution of at least $40,000. The invitation further stated, "Federal law requires us to use our best efforts to collect and report the name, mailing address, occupation and employer of individuals whose contributions exceed $200 in an election cycle." The invitation also outlined the prohibition on foreign and conduit contributions: "Federal Law prohibits foreign nationals, except lawfully admitted permanent residents of the U.S., from contributing to [Political Committee A]. By signing below, I certify that I am a U.S. citizen or lawfully admitted permanent resident of the U.S., the funds I am donating are not being provided to me by another person or entity for the purpose of making this contribution, and that my contribution shall be allocated as stated below."

39. On or about June 15, 2012, JHO LOW caused $1,000,000 to be transferred from Company A to Company C. Prior to the $1,000,000 transfer, Company C's account had a balance of approximately $65.

40. On or about June 18, 2012, MICHEL caused $150,000 to be transferred from Company C to MICHEL's personal account, which had a balance of approximately $1,343 at the time.

41. On or about June 18, 2012, MICHEL wrote a check to Political Committee A for $40,000 from his personal account.

42. On or about June 21, 2012, MICHEL caused an additional $200,000 to be transferred from Company C to MICHEL's personal account.

43. Starting on or about June 21, 2012, using the money he received from JHO LOW, MICHEL began paying straw donors and directing them to make illegal conduit contributions to Political Committee A. Between on or about June 21, 2012 and on or about September 5, 2012, MICHEL made the following payments to straw donors and caused the following illegal foreign and conduit contributions, among others:

| Straw Donor | Approximate Date MICHEL Provided Money for Contribution | Amount of Money MICHEL Provided | Approximate Date of Straw Donation | Donation Amount |
|---|---|---|---|---|
| Donor F | June 21, 2012 | $30,000 | June 28, 2012 | $30,000 |
| Donors G & H | June 25, 2012 | $75,000 | June 28, 2012 | $40,000 & $40,000 |
| Donors I & J | August 2, 2012 | $80,000 | August 7, 2012 & September 5, 2012 | $40,000 & $40,000 |
| Donor K | August 3, 2012 | $40,000 | August 13, 2012 | $40,000 |
| Donor L | August 7, 2012 | $40,000 | August 13, 2012 | $40,000 |
| Donor M | August 14, 2012 | $40,000 | August 23, 2012 | $40,000 |
| Donor N | August 13, 2012 | $40,000 | August 27, 2012 | $40,000 |
| Donor O | August 17, 2012 | $75,000 | August 23, 2012 | $75,000 |
| Donor P | August 22, 2012 | $40,000 | August 28, 2012 | $40,000 |

44. In or about August 2012, one of the potential straw donors to whom MICHEL provided $40,000 to donate to Political Committee A expressed her concerns about the legality of the arrangement, and told MICHEL that she did not plan to donate the money so that she could attend a fundraising event. MICHEL responded, "Okay."

45. On or about June 25, 2012, JHO LOW traveled from Singapore to Miami, Florida on his private jet to attend the fundraising event and meet Candidate A. MICHEL attempted to get last-minute permission for JHO LOW to attend the event, but permission was denied shortly before the event began.

46. On or about June 26, 2012, MICHEL attended the fundraising event in Miami, Florida along with Associate A and Associate B, as well as some of the straw donors MICHEL recruited to make contributions to Political Committee A. MICHEL, Associate A, and Associate B met Candidate A at the event and took photographs with Candidate A.

47. On or about July 9, 2012, MICHEL's financial advisor emailed MICHEL, in part, "We did not receive a wire yet for the $600,000. What is the schedule of wires? Any updates?"

48. On or about July 11, 2012, MICHEL emailed his financial advisor, "By Friday I'll the [sic] 600k and I would say by next I'll have the 2m."

49. On or about July 31, 2012, MICHEL's financial advisor emailed MICHEL asking, "No wire yet? You may want to call them and ask for a tracking number." That same day, MICHEL responded, "Well I hammered them yesterday and they assured me it'll be there so let's give it till tomorrow and then I get on top of them again. Believe at this point I'm not concern [sic] about more those other guys who's waiting for their share if you know what I mean."

50. On or about August 2, 2012, JHO LOW caused $600,000 to be transferred from Company B to MICHEL's personal account, which had a balance of approximately $35,575 at the time.

51. On or about August 7, 2012, JHO LOW caused $9,000,000 to be transferred from Company B to one of MICHEL's companies, Company D. Prior to the transfer of $9,000,000, the balance in Company D's account was approximately $50.

52. Between on or about August 2, 2012, and on or about August 22, 2012, using the money he received from JHO LOW, MICHEL paid approximately $800,000 to multiple straw donors, including, but not limited to, those set forth in paragraph 43 above, who in turn made contributions to Political Committee A totaling approximately $755,000.

53. On or about August 21, 2012, MICHEL's financial advisor sent him an email discussing tasks they needed to complete related to MICHEL's financial affairs. Among the tasks listed on "things we need to do," MICHEL's financial advisor wrote, "Letters from Joe [sic] indicating the gift to both [Company C] and [Company D]."

54. On or about August 28, 2012, MICHEL received from Individual A an email about a fundraising event in Washington, D.C. to be held at Individual A's residence on September 14,

12

2012. In the email, Individual A advised MICHEL, "Send this to your folks." Attached to the email was a private invitation to the fundraiser. The invitation included information similar to that provided in the invitation to the Miami, Florida fundraiser in June 2012 referenced in paragraph 38, including the advisement concerning the prohibition on foreign and conduit contributions.

55. Between in or about August 2012 and in or about September 2012, MICHEL made efforts to secure permission for JHO LOW and JHO LOW's father to attend the fundraising event for Political Committee A at the residence of Individual A in Washington, D.C. in September 2012.

  a. On or about August 21, 2012, Foreign National A emailed Associate A a copy of passports for JHO LOW and JHO LOW's father. On or about that same day, Associate A forwarded the email to MICHEL. On or about August 28, 2012, MICHEL forwarded the email to Individual A to assist Political Committee A in vetting JHO LOW and JHO LOW's father for attendance at the fundraiser in Washington, D.C.

  b. On or about August 28, 2012, MICHEL emailed Individual A a biographical summary for JHO LOW's father detailing his educational and work history. On or about that same day, Individual A forwarded the biographical summary to representatives of Political Committee A, and one of the representatives responded, "Got it. Will get Jho's dad vetted ASAP."

  c. On or about September 10, 2012, Individual A emailed MICHEL, "All I need now is Jho's dad passport and [Associate B's] passport." On or about that same day, MICHEL emailed Individual A a copy of Associate B's passport. Also on or about that same day, MICHEL emailed Individual A identifiers for several straw donors and Associates A and B.

13

        d. On or about September 11, 2012, a representative of Political Committee A emailed Individual A under the subject line, "Vitals Still Needed," asking for additional identifiers for prospective attendees at the Washington, D.C. fundraiser. Among the information requested was "Passport number and DoB, or better copy of Passport" for JHO LOW's father. On or about that same day, Individual A forwarded the email to MICHEL and wrote, "Ok. Waiting on Jho's dad passport num & date of birth." MICHEL responded, "them dudes still in the air but im on it." Later that same day, MICHEL emailed Individual A a national identification number and date of birth for JHO LOW's father, and a photograph of JHO LOW's father's passport.

56. On or about September 14, 2012, MICHEL attended the fundraising event at the residence of Individual A in Washington, D.C., along with JHO LOW's father, Associates A and B, and multiple straw donors MICHEL had recruited to make contributions to Political Committee A. During the fundraiser, MICHEL sat to one side of Candidate A, and JHO LOW's father sat on the other side of Candidate A. MICHEL and JHO LOW's father each took multiple personal photographs with Candidate A at the fundraiser, as did Associates A and B.

57. In or about November 2012, MICHEL, JHO LOW's father, and Associates A and B submitted separate orders to the photographer from the Washington, D.C. fundraising event to obtain multiple copies of the photographs of MICHEL, JHO LOW's father, and Associates A and B greeting Candidate A and sitting near Candidate A at the fundraiser.

58. On or about October 1, 2012, MICHEL emailed his financial advisor, "[P]lease don't forget the wire today I'm very low in cash like only have 500 bucks low. Thanks." On or about that same day, MICHEL's financial advisor responded, in part, "[W]ill be wiring your cash

as soon as the bank opens. It should be about $25,000. You good?" MICHEL responded, "Ok great thanks. Yeah I just got to NY last night I'm good for now. I maybe in NY then [sic] we catch up. Also I'll keep you posted on this next and last wire coming in from JHo [sic]."

59. On or about November 6, 2012, JHO LOW caused $11,000,000 to be transferred from Company A to Company D.

60. On or about April 5, 2013, for the purpose of preparing his income tax return, MICHEL provided his accountant a letter ostensibly from Foreign National A stating that Foreign National A had gifted MICHEL $20,000,000 in three separate transfers from Companies A and B to Companies C and D.

### Conduit Contributions to Political Committee B

61. On or about September 7, 2012, using the money he received from JHO LOW, MICHEL made a contribution of $250,000 to Political Committee B in his own name.

62. On or about October 12, 2012, using the money he received from JHO LOW, MICHEL made a contribution of $400,000 to Political Committee B in the name of Company E.

63. On or about October 24, 2012, using the money he received from JHO LOW, MICHEL made a contribution of $475,000 to Political Committee B in the name of Company E.

### False Reports to the FEC

64. On or about July 20, 2012, MICHEL caused Political Committee A to submit an FEC Form 3X "Report of Receipts and Disbursement for Other Than an Authorized Committee" to the FEC in Washington, D.C., falsely attributing multiple contributions to straw donors when in fact they were not the true source of the contributions. On or about June 3, 2013, MICHEL caused Political Committee A to submit an amended report containing the same false statements.

65. On or about September 20, 2012, MICHEL caused Political Committee A to submit an FEC Form 3X "Report of Receipts and Disbursement for Other Than an Authorized Committee" to the FEC in Washington, D.C., falsely attributing multiple contributions to straw donors when in fact they were not the true source of the contributions. On or about February 6, 2013, MICHEL caused Political Committee A to submit an amended report containing the same false statements.

66. On or about October 15, 2012, MICHEL caused Political Committee B to submit an FEC Form 3X "Report of Receipts and Disbursements for Other Than an Authorized Committee" to the FEC in Washington, D.C., falsely claiming that MICHEL was the true source of a contribution to Political Committee B when in fact JHO LOW was the true source of the contribution.

67. On or about October 25, 2012, MICHEL caused Political Committee B to submit an FEC Form 3X "Report of Receipts and Disbursements for Other Than an Authorized Committee" to the FEC in Washington, D.C., falsely claiming that Company E was the true source of contributions to Political Committee B when in fact JHO LOW was the true source of the contributions.

68. On or about December 6, 2012, MICHEL caused Political Committee B to submit an FEC Form 3X "Report of Receipts and Disbursements for Other Than an Authorized Committee" to the FEC in Washington, D.C., falsely claiming that Company E was the true source of a contribution to Political Committee B when in fact JHO LOW was the true source of the contributions. On or about January 30, 2013, MICHEL caused Political Committee B to submit an amended report containing the same false statement.

Complaint with the FEC

69. On or about April 13, 2015, a complaint was filed with the FEC alleging that MICHEL had illegally made contributions to Political Committee B "in the name of another" by causing Company E to contribute $875,000 to Political Committee B, concealing MICHEL as the source of the funds.

70. On or about June 15, 2015, in response to the complaint, MICHEL caused to be submitted to the FEC in Washington, D.C. a false declaration signed under the penalties of perjury, stating, in relevant part, that MICHEL "made four contributions to an independent expenditure only committee called [Political Committee B]," and that he "had no reason to hide the true source of [his] donations to [Political Committee B] nor did [he] wish to diminish the disclosure of source or amounts of [his] contributions to [Political Committee B] as being attributable to [him]." MICHEL made no reference to JHO LOW in his declaration and concealed that JHO LOW was the true source of the contributions made to Political Committee B.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Concealment of Material Facts
**(Title 18, United States Code, Sections 1001(a)(1), and 2)**

71. The Grand Jury incorporates paragraphs 1 through 70 of this Indictment as though fully set forth herein.

72. From on or about July 20, 2012 until on or about June 15, 2015, in the District of Columbia and elsewhere, the defendant,

**PRAKAZREL MICHEL,**

knowingly and willfully falsified, concealed, and covered up, by a trick, scheme, and device, a material fact; to wit, he made and caused to be made false, fictitious, and fraudulent statements or

representations in a matter within the jurisdiction of the executive branch of the government of the United States, by causing Political Committee A to make false statements in reports of receipts and disbursements filed with the FEC on or about July 20, 2012, September 20, 2012, February 6, 2013, and June 3, 2013, all of which falsely listed the names of straw donors as the true sources of the contributions; by causing Political Committee B to make false statements in reports of receipts and disbursements filed with the FEC on or about October 15, 2012, October 25, 2012, December 6, 2012, and January 30, 2013, all of which falsely listed MICHEL as the true source of the contributions; and by submitting and causing to be submitted a declaration to the FEC that falsely claimed that MICHEL made four contributions to Political Committee B, and that he had no reason to conceal the true source of the contributions, when, in fact, as MICHEL well knew, MICHEL had secretly funneled illegal foreign money from JHO LOW to Political Committee B in his name and the name of Company E to conceal JHO LOW as the true source of the contributions.

All in violation of Title 18, United States Code, Sections 1001(a)(1) and 2.

## COUNT THREE
### Making a False Entry in a Record
### (Title 18, United States Code, Sections 1519 and 2)

73. The Grand Jury incorporates paragraphs 1 through 72 of this Indictment as though fully set forth herein.

74. On or about June 3, 2013, in the District of Columbia and elsewhere, the defendant,

**PRAKAZREL MICHEL,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in records, documents, and intangible objects; to wit, MICHEL caused Political Committee A to

18

make false statements in a report of receipts and disbursements filed with the FEC on or about June 3, 2013, that falsely listed the names of straw donors as the true sources of the contributions.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FOUR
### Making a False Entry in a Record
### (Title 18, United States Code, Sections 1519 and 2)

75. The Grand Jury incorporates paragraphs 1 through 74 of this Indictment as though fully set forth herein.

76. On or about June 15, 2015, in the District of Columbia and elsewhere, the defendant,

**PRAKAZREL MICHEL,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in records, documents, and intangible objects; to wit, MICHEL submitted and caused to be submitted a declaration to the FEC claiming that he made four contributions to Political Committee B, and that he had no reason to conceal the true source of the contributions, when, in fact, as MICHEL well knew, MICHEL had secretly funneled illegal foreign money from JHO LOW to Political Committee B in his name and the name of Company E to conceal JHO LOW as the true source of the contributions.

All in violation of Title 18, United States Code, Sections 1519 and 2.

A TRUE BILL

_____

FOREPERSON

ANNALOU TIROL
Acting Chief, Public Integrity Section
United States Department of Justice

By: *[signature]*

Sean Mulryne
Nicole Lockhart
Trial Attorneys
Public Integrity Section