## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**,

**v.**

**PRAKAZREL MICHEL**,

*Defendant*.

Criminal No. 19-148-CKK

**FILED UNDER SEAL**

**ORAL ARGUMENT REQUESTED**

## MOTION TO DISMISS COUNTS TWO AND THREE

# TABLE OF CONTENTS

**Page**

TABLE OF EXHIBITS ..................................................................................................... iii

BACKGROUND ............................................................................................................... 1

    Summary of the Indictment's Factual Allegations ............................................ 3

    The Request for Evidence Located in the British Virgin Islands ....................... 6

    The Request for Evidence Located in the United Arab Emirates ....................... 9

    The Tolling Agreement ..................................................................................... 12

ARGUMENT .................................................................................................................. 13

I.    COUNT TWO SHOULD BE DISMISSED BECAUSE IT IS BASED ON
    ALLEGED CONDUCT THAT OCCURRED OUTSIDE THE LIMITATIONS
    PERIOD AND, ALTERNATIVELY, SHOULD BE DISMISSED FOR
    DUPLICITY. .................................................................................................... 14

    A.    Section 1001 is not a "continuing offense."........................................ 16

        1.    Bramblett v. United States ....................................................... 17

        2.    Toussie v. United States............................................................ 18

        3.    The D.C. Circuit has not addressed whether *Bramblett* remains good
            law after *Toussie*. .................................................................... 18

        4.    *Bramblett*'s statute of limitations holding is no longer good law
            following *Toussie*: under *Toussie*, Section 1001 is not a continuing
            offense for purposes of the statute of limitations........................... 20

    B.    Absent tolling or suspension of the limitations period, Count Two is time-
        barred with respect to false statements alleged to have been made before
        May 2, 2014. .................................................................................... 26

    C.    The tolling agreement does not make Count Two timely.................... 27

    D.    Section 3292's narrowly circumscribed suspension provisions did not
        suspend the limitations period for Count Two...................................... 28

        1.    Section 3292 is limited in scope. ............................................ 29

            a.    Section 3292 is offense-specific. .................................... 29

        b.     Section 3292 requires that an application to suspend the statute of limitations be filed before the limitations period has expired. ................................................................ 30

    2.    All but one of the false statements alleged in Count Two was time-barred at the time the Government first applied to suspend the statute of limitations. .............................................................. 31

    3.    The March 7th Order did not suspend the statutes of limitations for the allegation on which the statute had not already run........................... 32

    4.    The September 28th Order did not revive the time-barred allegations. ............................................................................... 34

II.    COUNT THREE SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE CONDUCT THAT OCCURRED WITHIN THE LIMITATIONS PERIOD. .................................................................................... 35

    A.    Count Three relies solely on conduct that occurred more than five years prior to the return of the Indictment.................................................. 36

    B.    Neither the Court's Order related to the BVI official request nor the Court's Order related to the UAE official request suspended the limitations period for Count Three.............................................................................. 36

    1.    The BVI request ........................................................................ 36

    2.    The UAE request....................................................................... 37

        a.     The limitations period expired before the UAE request was made. ............................................................................... 37

        b.     The UAE request was not for evidence that pertained to Count Three. ........................................................................ 37

CONCLUSION....................................................................................... 38

CERTIFICATE OF SERVICE

## TABLE OF EXHIBITS

Exhibit 1        *Ex Parte* Application for Suspension of Statute of Limitations, Feb. 16, 2018

        Attachment A:  Declaration of Special Agent Robert Heuschling in support of Application for Suspension of Running of Statute of Limitations

        Attachment B:  Request for Assistance in the Investigation of Prakazrel Michel and Others, sent to the Central Authority of the British Virgin Islands, February 2, 2018

Exhibit 2        Order Granting *Ex Parte* Application for Suspension of Statute of Limitations, March 7, 2018

Exhibit 3        Letter from ███████████████, Crown Counsel for Attorney General, British Virgin Islands, to ███████████████, Deputy Director, Office of International Affairs, Criminal Division of the Department of Justice, June 11, 2018 (DOJ-034309)

Exhibit 4        Request for Assistance in the Investigation of Prakazrel "Pras" Michel and Others, sent to the Central Authority of the United Arab Emirates September 27, 2018

Exhibit 5        *Ex Parte* Application for Suspension of Statute of Limitations, Sept. 28, 2018

        Attachment A:  Declaration of Special Agent Sean Fern in support of Application for Suspension of Running of Statute of Limitations

        Attachment B:  Email from ███████████ to [Redacted] re: New MLA Request to the UAE: Michel, Sept. 27, 2018

Exhibit 6        Order Granting *Ex Parte* Application for Suspension of Statute of Limitations, September 28, 2018

Exhibit 7        Statute of Limitations Tolling Agreement, April 17, 2018

Prakazrel "Pras" Michel is charged in a four-count indictment. Count One charges conspiracy (in violation of 18 U.S.C. § 371), Count Two charges making a false statement (18 U.S.C. § 1001), and Counts Three and Four charge making a false entry in a record (18 U.S.C. § 1519). Counts Two and Three rely on time-barred allegations and therefore should be dismissed. Count Two is also subject to dismissal for duplicity.

## BACKGROUND

The Indictment alleges in Count One that Mr. Michel conspired with Low Taek Jho ("Jho Low") to circumvent federal laws that limit foreign contributions and expenditures and preclude making a contribution to a candidate for federal office in the name of another. Indictment, ECF No. 1 ("Indictment"), ¶ 24. According to the Indictment, Mr. Michel and Mr. Low, a Malaysian national, agreed that Mr. Low would funnel money through Mr. Michel and other "straw donors" to two political committees that were supporting Candidate A (███████) in the 2012 presidential election. The political committees were Political Committee A and Political Committee B, ███████████████ ("███") and ██████████, respectively. The objective of the conspiracy, according to the Indictment, was "to gain access to, and potential influence with, [███████████] and his administration, . . . all while concealing from the committees, the FEC [Federal Election Commission], the public, and law enforcement the true source of the money." *Id.* ¶ 25.

As a result of the alleged conspiracy, the Indictment contends that Mr. Michel caused ███ and ██████████ to file reports with the FEC that falsely listed the straw donors or Mr. Michel (or a company he controlled) as the true source of the contributions. *Id.* ¶ 34. Count Two charges Mr. Michel with a substantive violation of Section 1001 based on eight of these reports, which were filed with the FEC in 2012 and 2013 (four filed by ███ and four filed by ██████████).

*Id.* ¶ 72.   Count Three charges that the filing of the eighth of these reports, filed by ▇ in June 2013, also constituted a substantive offense by Mr. Michel of making a false entry in a record in violation of Section 1519.  *Id.* ¶ 74.

In April 2015, the FEC received a complaint and began a regulatory investigation of contributions to ▇▇▇▇.  *Id.* ¶ 69.  In June 2015, Mr. Michel filed a declaration with the FEC saying he made contributions to ▇▇▇▇ and had no reason to hide the true source of those donations.  *Id.* ¶ 70.  Count Four charges Mr. Michel with a substantive violation of Section 1519 based on this declaration.  *Id.* ¶ 76.

The Indictment was returned on May 2, 2019.  Accordingly, to be timely, it must rest on factual allegations of offense conduct that occurred later than May 2, 2014, absent any tolling or suspension of the five-year statute of limitations.  *See* 18 U.S.C. § 3282.  Counts Two and Three, however, are dependent on events that allegedly occurred in 2012 and 2013.  As set forth below, a brief tolling agreement executed by the parties in 2018 did not result in any extension of the limitations period.  Further, orders entered by this Court in March 2018 and September 2018, which related to requests for foreign evidence the Government made to the British Virgin Islands and the United Arab Emirates, respectively, did not suspend the limitations period with respect to Count Two or Count Three.  The requests at issue did not concern evidence related to Count Two or Count Three, the requests did not relate to the statutory offense charged in Count Three, and/or the applications to this Court for suspension of the limitations period were not timely since the limitations period had already expired by the time the applications were made.  Because the statute of limitations was not tolled or suspended for Count Two or Count Three, each of these counts is time-barred and must be dismissed.

**Summary of the Indictment's Factual Allegations**

The substantive factual allegations in the Indictment fall into three general categories: (1) allegations concerning transfers of money from Mr. Low, foreign corporations, or an alleged associate of Mr. Low, Foreign National A (████████ ("████")), to Mr. Michel or companies controlled by Mr. Michel; (2) allegations concerning Mr. Michel's transfer of money to purported straw donors with instructions that they donate that money to ████; and (3) allegations concerning contributions to ████████ by Mr. Michel or a company he controlled. The conduct at issue in all three categories of allegations started in 2012 and was concluded by 2013.[1]

First, the Indictment alleges that from, "in or about June 2012 to in or about November 2012," Mr. Low directed the transfer of approximately $21.6 million: approximately $21 million from Company A (████████████ ("████████")) and Company B (████ ████████ ("████████")), foreign corporations based in the British Virgin Islands with bank accounts in Singapore, to two American companies that Mr. Michel controlled, Company C (████████ ("██████")) and Company D (████████████ ("████████")), and $600,000 to Mr. Michel personally. *Id.* ¶¶ 18–21, 27. Each overt act related to the transfer of money from Mr. Low, ████████, or ████████ to Mr. Michel, ████, or ████████ is alleged to have occurred in June, July, August, October, or

---

[1] The Indictment additionally alleges that Mr. Michel attempted to arrange for Mr. Low and Mr. Low's father to attend political events or take photographs with ████████ in June, August, and September 2012. *See* Indictment ¶¶ 31, 33, 45, 46, 54–57. Mr. Michel also attended those political events and took photographs with ████████ for the alleged purpose of "rais[ing] his profile with [████████]'s campaign and administration as a high dollar fundraiser." *See id.* ¶¶ 31, 46, 56–57. These allegations are not tethered to any specific substantive count, but rather seem to relate to an alleged motive by Mr. Low and Mr. Michel for participating in the conspiracy. In any event, since this alleged conduct was completed by September 2012, it has no impact on the statute of limitations analysis related to Counts Two and Three set forth below.

3

November 2012.  *See id.* ¶¶ 37, 39, 47–51, 53, 58–59.  The Indictment alleges that on approximately April 5, 2013, Mr. Michel gave his tax accountant a letter stating that ███████ had gifted Mr. Michel $20 million "in three separate transfers from [████████ and ██████████] to [████████ and █████████]." *Id.* ¶ 60.  This letter allegedly assisted Mr. Michel both in concealing Mr. Low as "the true source" of the funds and in reducing Mr. Michel's potential tax liability.  *Id.* ¶¶ 35, 60.

Second, the Indictment alleges that, between approximately June 2012 and September 2012, Mr. Michel "recruited" individuals to act as "straw donors," gave those individuals a portion of the $21.6 million he had received from Mr. Low, and directed the straw donors to contribute to ███, in their own names, the money Mr. Michel had given them.  *Id.* ¶¶ 28–39.  Each of the overt acts concerning Mr. Michel giving money to straw donors with directions to contribute that money to ███ occurred in June 2012 or August 2012.  *See id.* ¶¶ 43, 44, 52.  Mr. Michel also himself allegedly used money Mr. Low gave him to donate to ███ in his own name in June 2012.  *See id.* ¶¶ 39–41.  As a result of this alleged conduct, Mr. Michel purportedly caused ███ to submit reports to the FEC on July 20, 2012, September 20, 2012, February 6, 2013, and June 3, 2013 that falsely listed the straw donors as the contributors.  *Id.* ¶¶ 34, 64–65.[2]

Third, according to the Indictment, Mr. Michel also used "money he received from JHO LOW" to make multiple donations to █████████, in his own name on September 7, 2012, and in the name of Company E (████████████ ("██████████")), a company he controlled, on October 12 and 24, 2012, totaling $1.1 million.  *Id.* ¶¶ 30, 61–63.  As a result,

---

[2] The February 6, 2013 report was an amended report that repeated the information pertaining to the straw donors that had been included in the September 20, 2012 report.  Indictment ¶ 65.  The June 3, 2013 report was an amended report that repeated the information pertaining to the straw donors that had been included in the July 20, 2012 report.  *Id.* ¶ 64.

the Indictment alleges, Mr. Michel caused ████████████ to submit reports to the FEC on

October 15, 2012, October 25, 2012, December 6, 2012, and January 30, 2013 that falsely listed

himself or ███████████ as the contributor.  *Id.* ¶¶ 34, 66–68.[3]

Mr. Michel is charged in Count Two with violating Section 1001 based on the filing of the

four reports by ████ and the four reports by ███████████, eight reports in total, each  filed with

the FEC in 2012 or 2013.  *Id.* ¶ 72.  The filing of the last of these reports is also the basis of the

charge against Mr. Michel in Count Three, which alleges that the filing of the ████ amended report

with the FEC on June 3, 2013 was the making of a false record in violation of Section 1519.

Finally, in addition to the allegations of wrongdoing in 2012 to 2013, the Indictment also

alleges an act in 2015 to conceal the 2012–2013 wrongdoing.  In response to an anonymous

complaint made to the FEC on or about April 3, 2015, Mr. Michel allegedly submitted a false

declaration to the FEC on June 15, 2015.  In that declaration, he stated that he had "made four

contributions to" ███████████, "had no reason to hide the true source of his donations," and

did not "wish to diminish the disclosure of source or amounts of his contributions to [███████████

████] as being attributable to him."  *Id.* ¶¶ 34, 70 (alterations adopted).  The Indictment alleges he

made these statements "when, in fact, as MICHEL well knew, MICHEL had secretly funneled

illegal foreign money from JHO LOW to [███████████] in his name and the name of [████████

███████████] to conceal JHO LOW as the true source of the contributions."  *Id.* ¶ 76.  The

allegation that Mr. Michel allegedly made a false declaration in 2015 to impede the FEC's

investigation of the 2012 and 2013 false FEC filings forms the basis for Count Four, which alleges

---

[3] The January 30, 2013 report was an amended report that repeated the information pertaining to
███████████ that had been included in the December 6, 2012 report.  Indictment ¶ 68.

that the filing of this declaration in 2015 constituted making a false record in violation of Section 1519. *Id.* ¶¶ 72, 76.

The declaration is also mentioned in Count Two, which appears to attempt to allege that the filing of the eight false FEC reports by ████ and ██████████ in 2012 and 2013 was part of a continuing scheme that lasted until 2015 when Mr. Michel filed the allegedly false declaration. While Count Four is timely, as discussed below, the inclusion of a reference to the 2015 declaration in Count Two does not convert the Section 1001 violation charged in Count Two into a continuing offense; nor does it bring any of the eight false statements allegedly made in 2012 and 2013 within the statute of limitations.

### The Request for Evidence Located in the British Virgin Islands

As part of its investigation of this case, on February 2, 2018, the Government made an official request to the British Virgin Islands ("BVI") for documents. *See* Ex. 1 (Attach. B). The Government requested incorporation and business records for three corporations: ████ ██████████ ("████"), ████████, and ████████. *Id.* (Attach. B at 2). Specifically, the Government requested: (i) official records and business records of those three corporations, including documents that identified the shareholders, directors, officers, owners, and beneficial owners of the corporations; (ii) official records and business records showing the banking activities of ████████ between August 1 and August 31, 2012, and the banking activities of ████ and ████████ between May 15, 2012 and August 15; 2012; and (iii) communications related to select transactions of each of the three corporations, identified by date and amount. *See id.* (Attach. B. at 9–10).

In support of its request to the BVI for these records, the Government represented that it was investigating Mr. Michel and others for participation in a "conduit contribution scheme" in

which money from ███████████████████ ("██████"), a fund wholly owned by the

Malaysian government, was funneled into the United States and subsequently donated to ████.

*See id.* (Attach. B at 1–2).  Specifically, the Government said it was investigating: (1) whether,

between June 2012 and September 2012, Mr. Michel and others had caused contributions to be

made in the name of others, in excess of contribution limits, and/or by foreign nationals; and

(2) whether Mr. Michel and others had caused ████ to file false reports with the FEC concerning

the original source of the donations, in violation of 18 U.S.C. §§ 371, 1001, and 52 U.S.C. § 30121.

*Id.* (Attach. B at 1–2, 7–8).  The Government represented to the BVI that it believed the evidence

it was seeking was "relevant to establish whether the funds used by [Mr. Michel] and others to

further the conduit contribution scheme did in fact come from a foreign national in violation of the

Federal Election Campaign Act" and "which individuals at ██████, ███████████, ██████, and ████████

███████ knew that the funds would be used for this purpose."  *Id.* (Attach. B at 1–2).[4]

Two weeks after submitting its request to the BVI, on February 16, 2018, the Government

submitted an *ex parte* application to the Court seeking to suspend the statute of limitations,

pursuant to 18 U.S.C. § 3292.  *See id.*  The Government represented to the Court that a grand jury

"impaneled in this district has been conducting an investigation of [Mr.] Michel, [Mr.] Low, and

others for the following offenses:  18 U.S.C. §§ 371 (conspiracy) and 1001 (false statements), and

---

[4] By the time the Government sent its request to the BVI, the Government had already concluded
that Mr. Michel had "disbursed approximately $720,000 . . . to a number of individuals, who then
made contributions to ██████."  Ex. 1 (Attach. B at 5).  The Government had also already concluded
that, as a result this conduct, ██████ had filed false reports to the FEC on July 20, 2012, September
20, 2012, February 6, 2013, and June 3, 2013, *id.* (Attach. B. at 6–7 & nn. 5–6), as the Indictment
charges under Section 1001 in Count Two.

52 U.S.C. §§ 30116 (contributions in excess of legal limits) and 30121 (contributions and donations by foreign nationals)." *Id.* at 1.[5]

    The application and its accompanying declaration made similar factual representations to the Court as the Government had made in its official request to the BVI, including that the investigation had already "revealed that [Mr.] Michel . . . caused the ▇▇▇ unknowingly to file reports to the Federal Election Commission that contained materially false, fictitious, and fraudulent statements and representations concerning the true source of funds . . . ." *Id.* at 2; *id.* (Attach. A at 1–2).  Because the Government believed "records confirming that the source of the contribution money was a foreign entity in the British Virgin Islands" were located in the BVI, the Government asked the Court to suspend the statutes of limitations for all offenses under investigation while the Government sought "banking and communications records concerning the relevant fund transfers" from the BVI.  Ex. 1 at 3.

    The Court granted the Government's *ex parte* motion on March 7, 2018, as to "the following statutory offenses: 18 U.S.C. §§ 371 (conspiracy) and 1001 (false statements), and 52 U.S.C. §§ 30116 (contributions in excess of legal limits) and 30121 (contributions and donations by foreign nationals)."  Ex. 2.  The BVI completed an investigation and sent its production to the Government on June 11, 2018.  *See* Ex. 3.

---

[5] The Indictment charges that an object of the Count One conspiracy was to violate 52 U.S.C. § 30121.  *See* Indictment ¶ 24(b).  The Indictment does not charge a substantive violation of 52 U.S.C. § 30121.  While the Government's application to the Court references 52 U.S.C. § 30116, its official request to the BVI did not reference 52 U.S.C. § 30116.  The Indictment does not charge violating 52 U.S.C. § 30116 as an object of the conspiracy; nor does it charge a substantive violation of 52 U.S.C. § 30116.

**The Request for Evidence Located in the United Arab Emirates**

On September 27, 2018, the Government made an official request to the United Arab Emirates ("UAE") for an interview with an individual located in the UAE and for documents located in the UAE.  *See* Ex. 4.  The Government represented to the UAE that it was investigating Mr. Michel and others for: "(1) secretly funneling money on behalf of a foreign national into the United States Presidential election in 2012; (2) making and/or causing to be made contributions to the Presidential election in the names of others; (3) causing a Presidential campaign committee to unknowingly file reports with the U.S. Federal Election Commission (FEC) that contained materially false and fraudulent statements concerning the true source of those contributions; and (4) submitting a written declaration to the FEC that contained materially false and fraudulent statements concerning the true source for his contributions."  *Id.* at 2.

The fourth area of the Government's investigation described in the UAE request, that Mr. Michel had made a false declaration to the FEC in June 2015 about his donations to ███, was not referenced in the Government's request to the BVI or in the Government's application to this Court relating to the BVI request.  *See id.* at 7.  Along with this new area of inquiry, the Government listed a new offense: 18 U.S.C. § 1519, a statute it had not cited in its request to the BVI or in its application to this Court related to that request. Ex. 4 at 8.  The Government cited this statute for the first time only in conjunction with it making the new factual allegation that Mr. Michel filed a false declaration with the FEC in 2015.  The Indictment alleges the June 2015 declaration as a violation of Section 1519 in Count Four.[6]

---

[6] While the Indictment charges a violation of Section 1519 in Count Three with respect to the June 3, 2013 ███ amended report to the FEC, it is plain from the request to the BVI that the Government had already determined that this report was false in violation of Section 1001 and that the Government was not contemplating a Section 1519 charge with respect to this report or seeking

The Government's recitation of the facts otherwise largely tracked the facts conveyed previously to the BVI.  The Government detailed its theory that Mr. Michel had worked with Mr. Low to funnel large sums of Mr. Low's foreign money into the 2012 presidential election through himself and a number of straw donors.  *Id.* at 3–6.  The Government similarly concluded, as it had in the BVI application, that the reports ███ submitted "in 2012 and 2013 identifying the conduits as the contributors . . . . were false because [Mr.] Low was the actual source of the money."  *Id.* at 6.[7]

The Government's request for evidence located in the UAE concerned Mr. ███████ and ███.  The Government requested an interview with Mr. ███████ and that Mr. ███ be required to produced business records pertaining to: (i) the identity of ███ shareholders, directors, officers, owners, and beneficial owners; (ii) ███ banking records from between May 15, 2012 and November 1, 2012; and (iii) all communications concerning select transactions, identified by date and amount.  *Id.* at 10–11.  The Government also asked that Mr. ███ or another person produce "complete, certified copies of any and all records related to [Mr.] ███████ attendance at United States political fundraisers in June 2012 and September 2012."  *Id.* at 11.  With respect to all these requests, the Government represented that the evidence was relevant to its determination of: "(1) the source of the funds transferred to [Mr.] Michel by [Mr.] Low, ███, ███████, and/or ███████; (2) [Mr.] ███████ knowledge of the control, if any, that [Mr.] Low exercised over the funds paid to [Mr.] Michel and subsequently

---

suspension of the limitations period for Section 1519 when it made its application to this Court regarding the BVI request.

[7] The specifics of which donors had made conduit-based donations to ███ and the amounts they had donated varied slightly from the factual proffer sent to BVI.  *Compare* Ex. 4 at 5–6, *with* Ex. 1 (Attach. B at 5).  The Government also stated in the UAE request that it now understood to be owned by ███████████, an American thought to be living in the UAE, who had attended political fundraisers with Mr. Michel and ███████████.  Ex. 4 at 2, 4, 6.

donated to the United States Presidential election in 2012; (3) [Mr.] ██████ knowledge of
[Mr.] Low's intentions regarding the United States Presidential election in 2012 and what, if any,
influence [Mr.] Low intended to exercise during the campaigns; and (4) [Mr.] ██████
knowledge regarding the relationship and dealings between [Mr.] Michel and [Mr.] Low." *Id.* at
10.[8]

The day after making its request to the UAE, on September 28, 2018, the Government
submitted an *ex parte* application to the Court to suspend the statute of limitations, pursuant to 18
U.S.C. § 3292. *See* Ex. 5. The Government represented to the Court that a grand jury "impaneled
in this district has been conducting an investigation of [Mr.] Michel, [Mr.] Low, and others for the
following offenses: 18 U.S.C. §§ 371 (conspiracy), 1001 (scheme to conceal and false statements),
and 1519 (falsification of records); and 52. U.S.C. §§ 30116 (contributions in excess of legal
limits) and 30121 (contributions and donations by foreign nationals)." *Id.* at 1. The application
and its accompanying declaration made the same representations to the Court as the Government
had made to the UAE, including that the investigation had already "established" that Mr. Michel
had made millions of dollars of contributions to ████ and ██████████ in violation of federal
campaign finance laws; Mr. Michel had caused ████ to submit reports containing false statements
to the FEC; Mr. Michel had submitted a false declaration to the FEC concerning contributions to
██████████ ; and that Mr. ██████████ was implicated in the conduit contribution scheme by

_____

[8] The Indictment was returned without receiving a response from the UAE. Indeed, the
Government has represented to undersigned counsel that, as of the date of this filing, the UAE still
has not responded to the Government's request. The Indictment references Mr. ██████████ as
"Associate B." Counsel for the Government has identified Mr. ██████████ to undersigned
counsel as someone known to the grand jury who may be identified at trial as an unindicted co-
conspirator. The only allegations in the Indictment pertaining to Mr. ██████████ are that he
attended two fundraisers for ██████████ , had to supply a copy of his passport to do so, and
had his picture taken with the ██████ . *See* Indictment ¶¶ 46, 55(c). ██████ is not referenced in
the Indictment.

virtue of his ownership of ██████, through which foreign funds purportedly were funneled, and meetings Mr. ██████████ had with Mr. Michel, Mr. Low, and others at presidential campaign events in mid-2012.  *Id.* at 2–3.

Although the Government represented to the Court in its application and accompanying declaration that "evidence of the above offenses [plural] is located in the UAE," *id.* at 4, the Government requested evidence that would be probative of the conspiracy offense.  Specifically, the Government pointed to "evidence showing the source of the funds transferred to [Mr.] Michel by [Mr.] Low, ██████, ██████████, and/or ██████████████; [Mr.] ██████████ knowledge of the control, if any, that [Mr.] Low exercised over the funds paid to [Mr.] Michel and subsequently donated to the United States Presidential election in 2012; [Mr.] ██████████ knowledge of [Mr.] Low's intentions regarding the United States Presidential election in 2012, and what, if any, influence [Mr.] Low intended to exercise during the campaigns; and/or [Mr.] ██████████ knowledge of the relationship and dealings between [Mr.] Michel and [Mr.] Low."  *Id.* (Attach. A ¶ 6).  The Government sought a suspension of the statutes of limitations for all offenses it had described based on its request for this particular evidence.  *Id.* at 4.

The Court granted the Government's *ex parte* motion the day it was made, September 28, 2018, as to "the following offenses: 18 U.S.C. §§ 371 (conspiracy), 1001 (scheme to conceal and false statements), and 1519 (falsification of records); and 52. U.S.C. §§ 30116 (contributions in excess of legal limits) and 30121 (contributions and donations by foreign nationals)."  Ex. 6.

### The Tolling Agreement

On April 17, 2018, the parties signed a limited tolling agreement.  Under that agreement, Mr. Michel consented to foregoing a limitations-period defense for "charges that may result from the investigation described in this document for which the limitations period expires between April

11, 2018 and June 11, 2018, provided that such charges are brought on or before June 11, 2018." *See* Ex. 7 ¶ 6.  The Tolling Agreement was not renewed and no charges were brought before June 11, 2018.

## ARGUMENT

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  It is not clear whether a motion to dismiss based on offenses being time-barred should be categorized as a motion based on "a defect in instituting the prosecution," and therefore under Rule 12(b)(3)(A), or rather should be categorized as a motion based on "a defect in the indictment," and therefore under Rule 12(b)(3)(B).[9]

In either event, however, a statute of limitations defense is non-jurisdictional.  *See Musacchio v. United States*, 577 U.S. ___, ___, 136 S. Ct. 709, 717–18 (2016).  A motion to dismiss based on the statute of limitations must be raised and ruled on before trial where, as here, "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3).  As set forth below, this motion turns on an interpretation of Section 3292 as a matter of law and therefore is appropriately raised and resolved as a motion to dismiss prior to trial on the merits.  *See, e.g.*, *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994) (citing prior version of Rule 12 in stating that pretrial motions to dismiss a prosecution as time barred must be ruled on before trial absent good cause, such as where "a pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense" (internal quotation marks omitted)); *United States v. Castroneves*, No. 08-20916-CR,

---

[9] *See* Fed. R. Crim. P. 12 (advisory committee notes to 2014 amendments) ("The references to 'double jeopardy' and 'statute of limitations' were dropped from the nonexclusive list in (b)(3)(A) to permit further debate over the treatment of such claims.").

2009 WL 528251, at *2 (S.D. Fla. Mar. 2, 2009) (motion to dismiss indictment as time-barred rested "entirely upon . . . construction of 18 U.S.C. § 3292" and therefore was addressed prior to trial).  A count that is time-barred must be dismissed.  *See United States v. Hitt*, 249 F.3d 1010 (D.C. Cir. 2001) (affirming district court's grant of pre-trial motion to dismiss conspiracy count as time-barred).

Unless otherwise specified, non-capital criminal offenses are subject to a five-year statute of limitations.  18 U.S.C. § 3282(a).  Counts Two and Three, which are the subject of this motion, allege non-capital criminal offenses (Sections 1001 and 1519) that do not specify a different limitations period and, therefore, must be brought within five years of their occurrence.

## I.   COUNT TWO SHOULD BE DISMISSED BECAUSE IT IS BASED ON ALLEGED CONDUCT THAT OCCURRED OUTSIDE THE LIMITATIONS PERIOD AND, ALTERNATIVELY, SHOULD BE DISMISSED FOR DUPLICITY.

Count Two is based on alleged false statements made in eight ████ and ██████████ reports filed with the FEC, the first of which was filed on July 20, 2012 and the last of which was the amended report filed on June 3, 2013.  *See* Indictment ¶¶ 71–72.  Count Two, however, alleges a scheme that lasted from on or about July 20, 2012 to on or about June 15, 2015 and, in addition to the ████ and ██████████ reports, references an allegedly false declaration Mr. Michel filed with the FEC.  *Id.* ¶ 72.  Based on Paragraph 72's description of the declaration, it appears to be a reference to the alleged false declaration Mr. Michel made to the FEC on or about June 15, 2015, which is described in Paragraphs 69–70 as a response by Mr. Michel to an FEC regulatory investigation of 2012 contributions to ██████████.  The investigation was launched by the FEC after it received a complaint in April 2015.  As set forth in Count Four, Mr. Michel's June 15, 2015 declaration was allegedly made to conceal the true source of his 2012 contributions to ██████████ and thereby to impede the FEC's investigation.  *Id.* ¶ 76.

An act covering up an already completed scheme, however, does not extend the duration of the scheme for purposes of the statute of limitations. *See Grunewald v. United States*, 353 U.S. 391, 402 (1957) ("every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces"); *id.* at 405 ("We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished."); *see also Hitt*, 249 F.3d at 1015.

More significant, however, than whether the 2015 declaration extends the scheme alleged in Count Two for purposes of the statute of limitations beyond June 3, 2013, when the last of the allegedly false reports was filed with the FEC, is the fact that while Count Two appears to allege one continuing scheme as a violation of Section 1001, Section 1001 does not criminalize schemes to commit false statements. Section 1001 is not a continuing offense. Rather, Section 1001 proscribes discrete false statements. While the false statement at issue may be part of a broader scheme, it is the false statement that Section 1001 criminalizes, not the scheme. Thus, while Count Two describes a scheme to make eight different false reports to the FEC, it is not describing a single violation of Section 1001 with a single trigger for the commencement of the statute of limitations period, the completion of the scheme. Rather, it is describing eight different false statements to the FEC and therefore offenses that have eight different operative dates on which they occurred for purposes of when the statute of limitations period commences for each.[10]

---

[10] Arguably, Count Two could be read as alleging nine false statement offenses, the eight FEC reports filed in 2012 and 2013 and the 2015 false declaration. Mr. Michel respectfully submits, however, that this is not a proper reading of Count Two. Count Two alleges eight false statements, the FEC reports, by the exact date each was made. While it references the alleged false declaration, in contrast to the FEC reports, it does so without even mentioning the year in which it was made,

Because Count Two alleges eight distinct false statements to the FEC in a single count, Count Two is duplicitous. Duplicity is grounds for dismissal pursuant to Rule 12(b)(3)(B)(1); *see, e.g., United States v. Eury*, No. 1:14CR39, 2015 WL 1861807, at \*8 (M.D.N.C. Apr. 23, 2015) (dismissing count for duplicity). Thus, even if Count Two were not time-barred, Mr. Michel would be entitled to the dismissal of Count Two for duplicity. While, typically, the Court could, as an alternative remedy to dismissal for duplicity, require the Government to elect which one of false statements alleged in that Count it wishes to pursue, *see, e.g., United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981); CHARLES R. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE (CRIMINAL) § 145, because, as set forth below, each of the eight alleged false statements—the reports filed with the FEC from July 2012 to June 2013—is time-barred, Count Two should be dismissed in its entirety.[11]

### A.  Section 1001 is not a "continuing offense."

In *Toussie v. United States*, the Supreme Court set forth the applicable framework for determining whether any particular statute is a continuing offense as a matter of law. 397 U.S. 112, 115 (1970). In a decision that pre-dates *Toussie*, the D.C. Circuit concluded that when Section 1001(a)(1) is alleged to have been violated as part of a scheme, it can be prosecuted based on the

---

much less the exact date. It makes sense that Count Two is alleging eight false statements identified by date in 2012 and 2013 and referencing the fact that allegedly there was a subsequent effort to cover-up those false statements (presumably evidence that Mr. Michel had a "guilty mind" and knew that the earlier FEC reports about ▮▮▮▮▮▮▮▮ were false), but not separately alleging the FEC declaration as a false statement in Count Two, since the declaration is alleged as a separate offense in Count Four.

[11] If the Court were to read Count Two as alleging nine false statement violations rather than eight, understanding Count Two to charge Mr. Michel with violating Section 1001 by filing the 2015 declaration, unlike the other eight false statements, the 2015 false statement would not be time-barred. Thus, if the Court reads Count Two in this fashion *and* declines to dismiss based on duplicity, it could allow the Government to proceed with Count Two, but only as alleging a single false statement made in 2015, the declaration to the FEC.

date the scheme ended, implicitly finding that Section 1001 can be a continuing offense.  *See Bramblett v. United States*, 231 F.2d 489 (D.C. Cir. 1956).  The *Toussie* framework is inconsistent with *Bramblett*.  Under *Toussie*, Section 1001 is plainly not a continuing offense.  The statute of limitations runs from when the false statement is made, not from the subsequent conclusion of the scheme of which the false statement was allegedly a part.

        1.       *Bramblett v. United States*

In *Bramblett v. United States*, the D.C. Circuit reviewed whether the district court had erred by declining to dismiss a Section 1001 charge that the defendant had asserted was time-barred. 231 F.2d at 491.  The indictment alleged that the defendant had violated Section 1001 through a scheme in which he reported to the Disbursing Office of the House of Representatives that he had hired a clerk to perform official duties, but then took for himself the compensation authorized for the clerk.  *See id.* at 490.  The first count in the indictment alleged the defendant violated Section 1001 by submitting a false report to the Disbursing Office on August 27, 1949, and continuing to receive compensation not due to him until June 30, 1950.  *Id.*  The following six counts alleged additional violations of Section 1001 based on the same report continuing to have effect each month thereafter, until December 1950.  *Id.*  The defendant argued that the statute of limitations for the first count started to run on August 27, 1949, when he filed the report with the Disbursing Office, and that this count was time-barred.  *See id.* at 490–91.  The Government argued that the count was not time-barred because the first count alleged a false statement that was part of a scheme that did not conclude until December 1950 and that the statute of limitations did not commence until the conclusion of the scheme.  *Id.* at 491.

The D.C. Circuit concluded that an indictment could state an offense under Section 1001 by alleging "a pattern of conduct," charged as a "scheme."  *Id.*  The D.C. Circuit agreed with the

Government that because "the period of limitations did not begin to run until the scheme ended," the count was timely since, as alleged in the other six counts, the scheme continued into the limitations period.  *See id.*

        2.    *Toussie v. United States*

Fourteen years after *Bramblett*, the Supreme Court decided *United States v. Toussie*, 517 U.S. 112.  The *Toussie* Court explained that a statute creates a "continuing offense" only if it does so by its express language or because "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."  *Id.* at 115.  With respect to the latter, there must exist something "inherent in the nature of [the offense] that makes it a continuing one."  *See id.* at 122.  *Toussie* analyzed the offense of failure to register for the draft. The Court considered "the act of registration" as the act that Congress sought to enforce—not the means by which the defendant was alleged to have failed to register—and concluded that failing to register for the draft was not a continuing offense because the act of failing to register was "not a continuing process."  *Id.*  Instead, the "instantaneous event[]" itself was the crime.  *Id.*

        3.    The D.C. Circuit has not addressed whether *Bramblett* remains good law after *Toussie*.

In *United States v. Hubbell*, the D.C. Circuit evaluated whether an indictment charging a scheme as a violation of Section 1001 was, as the district court had found, unduly vague.  *See* 177 F.3d 11 (D.C. Cir. 1999) (per curiam).  The D.C. Circuit, citing *Bramblett* without mentioning *Toussie*, much less analyzing whether *Bramblett* remains good law following *Toussie*, held that an indictment could state an offense under Section 1001 by alleging a "scheme" that included a "pattern of conduct" without suffering from vagueness.  *Id.* at 13–14.  The D.C. Circuit in *Hubbell* did not consider when the statute of limitations for a false statement made as part of a scheme accrues.

18

A court in this District nonetheless recently held that *Bramblett* remained good law for statute of limitations purposes, relying on the fact that *Bramblett* was discussed in *Hubbell*.  *See United States v. Craig*, Crim. Action No. 19-0125 (ABJ), 2019 WL 3604630, at *22 (D.D.C. Aug. 6, 2019).  Respectfully, that holding was incorrect.  *See United States v. Mubayyid*, 567 F. Supp. 2d 223, 242 (D. Mass. 2008) ("*Hubbell* is not a statute of limitations case, and does not purport to be.  Furthermore, *Bramblett* was decided long before the Supreme Court's decision in *Toussie*, and is hardly persuasive authority as to the interpretation of § 1001 under that case."), *rev'd in part on other grounds*, 658 F.3d 35 (1st Cir. 2008); *United States v. Gremillion-Stovall*, 397 F. Supp. 2d 798, 802 (M.D. La. 2005) ("*Bramblett* was decided before *Toussie* and, therefore, does not contain the analysis mandated by the Court in that case.  And it is not clear that the D.C. Circuit's analysis in *Bramblett* is consistent with *Toussie*.").  Because *Hubbell* does not address statute of limitations, it is not binding on this Court with respect to Mr. Michel's motion to dismiss on statute of limitations grounds.[12]

---

[12] The *Hubbell* Court said that it followed from the fact that *Bramblett* permits charging Section 1001 as a scheme that a Section 1001 scheme can be charged in a single count without suffering from duplicity (an issue the district court below had not reached).  To the extent that the Court considers Mr. Michel's motion on the alternative grounds of duplicity, it must determine whether *Bramblett* is consistent with *Toussie*.  Since *Hubbell* never reached that question, it is not binding precedent with respect to that question.  Further, *Hubbell*'s holding with respect to duplicity not only is dependent on *Bramblett* remaining good law, but also is factually distinguishable from this case.  In *Hubbell*, the count at issue charged a single scheme as violating Section 1001, without alleging specific false statements allegedly made in furtherance of the scheme.  The count at issue here specifies eight different false statements.  Thus, while the count at issue in *Hubbell* describes a single offense (assuming Section 1001 can still be charged as a scheme after *Toussie*), the count at issue here plainly charges eight distinct false statement offenses and is, therefore, duplicitous.

4.   *Bramblett*'s statute of limitations holding is no longer good law following *Toussie*: under *Toussie*, Section 1001 is not a continuing offense for purposes of the statute of limitations.

While the D.C. Circuit did not reach the question in *Hubbell,* it is apparent that *Bramblett*'s holding with respect to Section 1001 being a continuing offense for statute of limitations purposes is squarely in conflict with *Toussie*.   *Toussie* unambiguously held that the determination whether a defense is a continuing one is made based on the nature of the offense rather than by the factual allegations in a given case.  *See, e.g.*, *United States v. Askia*, 893 F.3d 1110, 1117 (8th Cir. 2018) ("To determine whether an offense is a continuing offense, a court must analyze the language and elements of the offense, rather than the facts alleged or the charge itself."); *United States v. Yashar*, 166 F.3d 873, 877 (7th Cir. 1999) (there is no "third" option under *Toussie* for finding a continuing offense based on the "charged conduct" being "continuous in nature"); *United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991) (per curiam) ("[T]he analysis [under *Toussie*] turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue."), *overruled on other grounds by United States v. Scarano*, 76 F.3d 1471, 1477 (9th Cir. 1996); *United States v. Sunia*, 643 F. Supp. 2d 51, 74 (D.D.C. 2009) ("[T]he salient inquiry is not whether an offense can be concealed for an extended period of time or repeated *ad infinitum* under a particular set of circumstances, but whether there is something 'inherent in the nature of the offense that makes it a continuing one'" (alterations adopted) (quoting *Toussie*, 397 U.S. at 122)). Congress made it a crime to lie to the Government, and those lies are prosecutable the instant that they occur.  Yet, the *Bramblett* Court reached its conclusion that Section 1001 was continuing in nature based on the specific facts alleged in that case, rather than looking at the offense generally. *See* 231 F.2d at 491.

Further, in discussing duplicity, the *Bramblett* Court acknowledged that "[t]he portion of the statute upon which the indictment rests we think does reveal a Congressional intent to reach a pattern of conduct rather than to penalize a series of acts which manifest the pattern." *Id.* Thus, not only is *Bramblett* no longer good law after *Toussie*, but the *Bramblett* Court also tipped its hand that, had it been limited to the framework subsequently established in *Toussie*, the D.C. Circuit would have reached the opposite result.[13]

Section 1001(a)(1) does not create a continuing offense based on its explicit language. *See United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003) ("Nothing in the explicit language of § 1001 'compels' the conclusion that an offense committed thereunder is to be considered a continuing one.  If Congress had intended that to be the case, it could have clearly stated so."); *United States v. Treacy*, Criminal Action No. 5:13cr00018, 2014 WL 12698499, at *3 (W.D. Va. Jan. 28, 2014) ("Section 1001 contains no language expressly making it a continuing offense. Thus, it cannot be a continuing offense unless the nature of the crime set forth in Section 1001 is such that Congress must assuredly have intended that it be treated as a continuing one." (alteration adopted) (internal quotation marks omitted)); *Mubayyid*, 567 F. Supp. 2d at 240 ("There is no explicit language making § 1001(a)(1) a continuing offense.").

In the absence of statutory language explicitly creating a continuing offense, a court must determine "whether the nature of the crime is such that Congress must have 'assuredly intended' that it be treated as continuing." *Mubayyid*, 567 F. Supp. 2d at 240.  The express language of

---

[13] Under *Bramblett*, "a prosecutorial decision regarding the scope of the charge would determine the running of the limitations period.  In that manner, the statute of limitations, designed as a control on governmental action, would instead be defined by it." *See Sunia*, 643 F. Supp. 2d at 71 (quoting *Yashar*, 166 F.3d at 878).  This, too, runs afoul of *Toussie*: "criminal limitations statutes are to be liberally interpreted in favor of repose" and "continuing offenses are not to be too readily found."  397 U.S. at 115–16 (internal quotation marks omitted); *accord Sunia*, 643 F. Supp. 2d at 71.

Section 1001(a)(1) states that whoever falsifies, conceals, or covers up by any trick, scheme or devise a material fact within the jurisdiction of a branch of the federal government has committed an offense. 18 U.S.C. § 1001(a)(1). By using the present tense, Congress identified a crime that occurs instantaneously. In the very moment that a person falsifies, conceals, or covers up the material fact, she has committed the offense. *See id.*; *Treacy*, 2014 WL 12698499, at *3, *5 ("The gravamen of Section 1001 is the obscuration of material truth, specifically, in the case of subsection (a)(1), by concealment of a material fact.").

Each concealed material fact is a separate violation of the statute.

> [T]he crime described in § 1001(a)(1) is not a 'continuing offense' for statute of limitations purposes. That crime is 'committed,' within the meaning of 18 U.S.C. § 3282(a), when the defendant commits an affirmative act of concealment in furtherance of the scheme. Each new affirmative act of concealment is a new criminal act, triggering a new limitations period.

*Mubayyid*, 567 F. Supp. 2d at 242; *see United States v. Anderson-Bagshaw*, 509 F. App'x 396, 411–12 (6th Cir. 2012) (indictment charging several false statements counts in different counts was not multiplicitous because, "[i]n a crime involving a false statement, separate false statements are entirely separate offenses" (internal quotations marks omitted)).

The fact that the false statement can be by "scheme," and not just by "trick" or "device," does not alter the conclusion that Congress intended that a violation of Section 1001(a)(1) would be a discrete event as opposed to a continuing offense. *Toussie* requires courts to consider the nature of the offense Congress created in the abstract, not as it might occur in any particular instance. *See* 397 U.S. at 122; *Askia*, 893 F.3d at 1117; *Yashar*, 166 F.3d at 877; *Niven*, 952 F.2d at 293; *Sunia*, 643 F. Supp. 2d at 70. In any event, Section 1001(a)(1) does not criminalize *the* scheme; it criminalizes the discrete act of lying to the Government "*by* scheme." *See* 18 U.S.C. § 1001(a)(1). *See United States v. Woodward*, 469 U.S. 105, 108 (1985) (per curiam) (in context of

multiplicity analysis, explaining that "Section 1001 proscribes the nondisclosure of a material fact [but] only if the fact is concealed by any trick, scheme, or device." (alterations adopted) (internal quotation marks omitted)).

In this way, Section 1001 is similar to the offense of mail or wire fraud.  These statutes do not criminalize devising a scheme to defraud.  Rather, they criminalize using the mail or a wire in furtherance of a scheme to defraud.  Accordingly, courts have held mail and wire fraud are not continuing offenses.  *See, e.g.*, *United States v. Bennett*, 765 F.3d 887, 894–95 (8th Cir. 2014) (statute of limitations runs from date of mailing, disconnected from any allegations regarding scheme to defraud); *United States v. Crossley*, 224 F.3d 847, 859 (6th Cir. 2000) (same), *superseded by statute on other grounds*; *United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999) ("[I]t is well settled that the statute of limitations for mail fraud begins running on the date of the mailing and not when the criminal scheme is complete.  Mail fraud is not an offense listed as a 'continuing offense' whose statute of limitations begins at the end of a continuous course of criminal conduct." (citing *Toussie*, 397 U.S. 112; *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992)); *United States v. Miro*, 29 F.3d 194, 198 (5th Cir. 1994) ("Punishments under the mail fraud statute, 18 U.S.C. § 1341, and the conspiracy statute, 18 U.S.C. § 371, are quite different. Execution of a scheme to commit mail fraud is punishable once per *mailing*.  Notwithstanding the continuing nature of the scheme itself, each mailing constitutes a completed offense." (citing *United States v. Blankenship*, 746 F.2d 233, 236 (5th Cir. 1984)); *United States v. Eisen*, 974 F.2d 246, 263 (2d Cir. 1992) ("[T]he statute of limitations in a mail fraud case runs from the date of the charged mailing, notwithstanding that the defendant's actions concerning the scheme to defraud occurred before the statutory period.").  Just as mail fraud and wire fraud statutes criminalize a mailing or wiring in furtherance of a scheme, not the scheme itself, Section 1001 criminalizes a

false statement, including those made in furtherance of a scheme. When the false statement is made in furtherance of a scheme, it is the false statement, not the scheme itself, that Section 1001 proscribes. For the same reason that mail fraud and wire fraud are not continuing offenses for limitations purposes, Section 1001 is not a continuing offense with respect to the statute of limitations. The limitations period begins to run for each false statement when it is made, not when the scheme which it furthers is complete.[14]

The word "scheme" is not synonymous with or inherently indicative of a "continuing offense." *See Dunne*, 324 F.3d at 1164 ("'Continuing offense' is a term of art that does not depend on everyday notions or ordinary meaning.' It 'is not the same as a scheme or pattern of illegal conduct.'" (quoting *United States v. Jaynes*, 75 F.3d 1493, 1506 (10th Cir. 1996)); *Treacy*, 2014 WL 12698499, at *4 ("A continuing offense is a term of art and is not equivalent to [a] scheme or pattern of illegal conduct."); *Gremillion-Stovall*, 397 F. Supp. 2d at 801 (rejecting Government's argument that Section 1001(a)(1) is a continuing offense because Congress used the word "scheme"); *Mubayyid*, 567 F. Supp. 2d at 241 ("[T]here is nothing about the nature of the crime

---

[14] Section 1001(a)(1) criminalizes the act of knowingly and willfully falsifying, concealing, or covering-up a material fact, which the Government can prosecute from the moment the false statement is made. *See United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987) ("The crime is complete when the act is complete."); *Mubayyid*, 567 F. Supp. 2d at 242. Those courts that have held or implied that the statute of limitations for a Section 1001(a)(1) violation charged as a "scheme" does not begin to run until the last-in-time "overt act" in furtherance of the scheme has occurred reached that erroneous conclusion from the faulty premise that the statute criminalizes the scheme itself and the Government is unable to prosecute the conduct until the scheme is complete. *See United States v. Heacock*, 31 F.3d 249, 256 (5th Cir. 1994) (rejecting claim that certain evidence should have been suppressed because limitations period for a count charging a "scheme" under Section 1001(a)(1) does not begin to run "until each overt act constituting the scheme has occurred, because the case cannot be brought and proved until that time"); *see also United States v. Grenier*, 513 F.3d 632, 639 (6th Cir. 2008) (endorsing *Heacock*); *United States v. Shaw*, 150 F. App'x 863, 875 (10th Cir. 2005) (erroneously stating that binding precedent holding § 1001 is *not* a continuing offense did not conclusively determine when statute of limitations begins to run); *United States v. Menendez*, 137 F. Supp. 3d 688, 698–99 (D.N.J. 2015) (endorsing *Grenier* and *Heacock*); *Treacy*, 2014 WL 12698499, at *4 (same).

itself to indicate that Congress assuredly intended to make the 'scheme' component of § 1001 a continuing offense." (internal quotation marks omitted)); *see also Sunia*, 643 F. Supp. at 70 ("[A] continuing offense is not the same as a scheme or pattern of illegal conduct." (internal quotation marks omitted)).[15]

While a Section 371 conspiracy to violate Section 1001(a)(1) is a continuing offense, a substantive violation of Section 1001(a)(1) is not.  *See* 18 U.S.C. § 371; *cf. Toussie*, 397 U.S. at 122 (act of failing to register for the draft is not a continuing offense, in contrast to conspiracy, for which "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent"); *Miro*, 29 F.3d at 198 (distinguishing mail fraud from conspiracy because only the latter is a continuing offense).  Unlike conspiracy, Section 1001 is "directed at addressing a discrete societal harm—not a harm that lasts as long as that course of conduct persists. . . . The statute does not address the harm that may or may not result, but rather the intrinsic harm of the falsehood itself." *Treacy*, 2014 WL 12698499, at *4 (internal quotation marks omitted); *accord Mubayyid*, 567 F. Supp. 2d at 241 ("Unlike the escape of a prisoner, there is nothing *inherent* in the crime of making

---

[15] Some courts have determined that the wire fraud statute is a continuing offense for purposes of *venue*, *see, e.g.*, *United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005), but the venue inquiry is different than the inquiry for whether a statute creates a continuing offense for purposes of the statute of limitations.  When assessing whether a charge is a "continuing offense" for venue purposes under Section 3237(a), the court must consider "the nature of the crime alleged *and the location of the act or acts constituting it*," which requires the court to look not only at the statute allegedly violated, but also to the factual allegations or evidence as to how the statute was violated. *See United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (emphasis added) (internal quotation marks omitted).  In contrast, when assessing whether a charge has been timely brought, the court must look only at the express statutory language and consider whether there is something "inherent in the nature of [the offense] that makes it a continuing offense."  *See Toussie*, 397 U.S. at 115, 122. Courts have also found the health care fraud statute, Section 1347, to be a continuing offense for venue purposes. *See United States v. Rutigliano*, 790 F.3d 389, 395–96 (2d Cir. 2015).  The health care fraud statute, however, is quite different than Section 1001 and the mail and wire fraud statutes.  While Section 1001 criminalizes false statements made in furtherance of a scheme and the mail and wire fraud statutes criminalize mailings and wirings in furtherance of schemes, the health care fraud directly criminalizes the execution of a scheme.

a false statement that produces a continuing threat to society." (internal quotation marks omitted)).

A Section 1001(a)(1) offense is complete, and the limitations period begins to accrue, at the time

the defendant commits the act of falsification, concealment, or cover up. *See Mubayyid*, 567 F.

Supp. 2d at 242.

Even were Section 1001(a)(1) susceptible to being interpreted as a continuing offense,

however, the Court should conclude it is not. The Supreme Court expressly directed that "criminal

limitations statutes are to be liberally interpreted in favor of repose" and "continuing offenses are

not to be too readily found." *Toussie*, 397 U.S. at 115, 116 (internal quotation marks omitted);

*see, e.g.*, *Gremillion-Stovall*, 397 F. Supp. 2d at 802; *Mubayyid*, 567 F. Supp. 2d at 241–42. The

Court should hold, as other courts have done, that the limitations period begins to run from the

date of each alleged false statement, when the case "could have been 'brought and proved.'" *See*

*Gremillion-Stovall*, 397 F. Supp. 2d at 802.

**B.    Absent tolling or suspension of the limitations period, Count Two is time-
barred with respect to false statements alleged to have been made before May
2, 2014.**

Since Section 1001 is not a continuing offense for limitations purposes, the Indictment

must allege a false statement that is timely, not a scheme that is timely based on the date the scheme

concluded. Thus, to be timely, Count Two must allege a false statement of a material fact

submitted in writing to the FEC within five years of the return of the Indictment on May 2, 2019,

absent some tolling or suspension of the statute of limitations. *See* 18 U.S.C. § 3282(a); *United*

*States v. Hsia*, 176 F.3d 517, 521 (D.C. Cir. 1999) (prosecution under Section 1001 premised on

conduit contribution scheme causing political committees to make false statements to FEC requires

the Government to demonstrate that the defendant knew the statements to be made were false and

acted intentionally, that the defendant directly or indirectly caused the submission of false

statements to the FEC, and that the statements were in fact false); *see also Craig*, 2019 WL

3604630, at *21 (five-year statute of limitations applies to charges under 18 U.S.C. § 1001). Since the Indictment was returned May 2, 2019, Count Two could only be timely if it alleged a false statement of a material fact occurring May 2, 2014 or after. Yet, its latest-in-time allegation of a false statement alleged in Count Two occurred on or about June 3, 2013, when Mr. Michel purportedly caused ███ to file an allegedly false amended report with the FEC. Only tolling or some other suspension of the limitations period could alter the conclusion that Count Two is time-barred.[16]

### C.     The tolling agreement does not make Count Two timely.

The tolling agreement between the Government and Mr. Michel extended until June 11, 2018 the limitations period for an offense that otherwise expired between April 11, 2018 and June 11, 2018, but only if the prosecution was brought no later than June 11, 2018. Since the five-year limitations period for all of the other false statements alleged in Count Two had already expired prior to the effective date of the tolling agreement, that agreement only affected the June 3, 2013 alleged false statement. For that statement, it extended the termination of the limitations period from June 3, 2018 to June 11, 2018, but only if the prosecution had been brought by that date. Since it was not, the tolling agreement has no effect on the statute of limitations analysis. As set

---

[16] If the Court were to hold that Section 1001 is a continuing offense for limitations purposes, it would need to determine the end date of the scheme. While the Government would likely contend that the end date of the scheme as alleged in Count Two is June 15, 2015, when Mr. Michel filed a declaration with the FEC, as explained above, the scheme was completed with the filing by ███ in June 2013 of the last of the FEC reports that allegedly falsely identified the straw donors as the contributors. The act of covering up that scheme two years later when the FEC began an investigation of it does not extend the limitations period. *See Grunewald*, 353 U.S. at 402. Accordingly, all of the analysis below regarding why the alleged false statement with respect to the ███ amended report filed with the FEC on June 3, 2013 is not timely would apply equally to why the "scheme" to file false reports with the FEC would be time-barred, even if Section 1001 was a continuing offense.

forth below, the suspension of the statute of limitations to pursue foreign evidence likewise has no impact on the statute of limitations for Count Two.

**D.    Section 3292's narrowly circumscribed suspension provisions did not suspend the limitations period for Count Two.**

Section 3292—the statutory provision that allows the Government to apply to the Court for a suspension of the limitations period for an offense the grand jury is investigating and for which the Government has sought evidence in foreign jurisdictions—is limited in scope.  It operates to suspend not-yet-expired limitations periods on a statutory offense-by-offense basis where evidence of the statutory offense at issue is being sought from a foreign jurisdiction.  At the time of its application to this Court on February 16, 2018 for suspension of the limitations period with respect to the BVI request, the statute of limitations had already run as to all of the alleged false FEC reports filed by ▮▮▮▮▮▮▮ and had already expired with respect to all of the allegedly false FEC reports filed by ▮▮▮, with the exception of the June 3, 2013 amended report. The Government's application to the Court based on its request for evidence in the BVI did not suspend the limitations period for the June 3, 2013 false statement allegation in Count Two because the request sought evidence not relevant to that offense.  The Government asked the BVI for evidence probative of whether the ultimate sources of the campaign contribution were foreign and the identity of those foreign contributors.  This evidence was relevant to conspiracy to violate federal election law by making campaign donations from a foreign source in violation of 52 U.S.C. § 30121 (alleged as one of the objects of the conspiracy charged in Count One) and to a substantive violation of federal election law proscribing foreign donations, 52 U.S.C. § 30121 (not charged). It was not relevant, however, to making a false statement to the FEC by falsely claiming that the straw donors were the true source of the donations to ▮▮▮ when in fact they were not the true source, as charged in Count Two.  Count Two, unlike an alleged violation of 52 U.S.C. § 30121

or conspiracy to violate 52 U.S.C. § 30121, is not dependent on whether the true source was foreign. Count Two rises or falls on whether the "straw donors" were the true source. If they were not the true source, then it is wholly irrelevant to Count Two who the true source was or whether that source was foreign or domestic.

> 1.    Section 3292 is limited in scope.

The plain language of Section 3292 cabins suspension of statutes of limitations in two ways: (1) it limits suspension of the statute of limitations to a particular offense for which the Government has sought evidence reasonably believed to be located in a foreign country; and (2) it requires that the Government's application for suspension be filed *before* the statute of limitations for that offense expires.

> *a.    Section 3292 is offense-specific.*

Under Section 3292, the Government can apply to the Court to suspend the statute of limitations, but the plain language of the statute restricts suspension of the limitations period to the particular offense a grand jury is investigating:

> (a) (1) Upon application of the United States, filed before return of an indictment, indicating that evidence of *an offense* is in a foreign country, the district court before which a grand jury is impaneled to investigate *the offense* shall suspend the running of the statute of limitations for *the offense* if the court finds by a preponderance of the evidence that an official request has been made *for such evidence* and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1) (emphases added). In other words, Section 3292 is "offense-specific." *See, e.g.*, *United States v. Afshari*, No. CR 01-209(C)-DOC, 2009 WL 1033798, at *2 (C.D. Cal. Apr. 14, 2009); *Castroneves*, 2009 WL 528251, at *4; *United States v. Trainor*, 277 F. Supp. 2d 1278, 1283 (S.D. Fla. 2003), *aff'd*, 376 F.3d 1325 (11th Cir. 2004); *United States v. Neill*, 952 F. Supp. 831, 832 (D.D.C. 1996).

29

For that reason, the evidentiary request itself must pertain to the particular crime for which the Government seeks to suspend the statute of limitations.  As a court in this District explained, "[t]he United States could not reasonably request foreign evidence related to tax violations to toll the statute of limitations regarding conspiracy to import a controlled substance under Title 21, U.S. Code." *Neill*, 952 F. Supp. at 833 n.2.[17]

> b.    *Section 3292 requires that an application to suspend the statute of limitations be filed before the limitations period has expired.*

The plain language of Section 3292 also limits when the Government may file its application and successfully suspend the statute of limitations for any particular offense.  The statute unambiguously refers to a grand jury that presently "is impaneled" to investigate a crime for which the Court can "suspend" a limitations period that is "running."  As the Second Circuit has explained:

> 'to suspend' is to cause to stop, at least for a time, something that is otherwise in operation or effect.  And a statute of limitations is only in operation or effect if it is running.  It is equally obvious, we think, that a statute of limitations cannot be 'running' if it has already 'run,' i.e., if it has expired at the end of the prescribed period.  It follows

---

[17] A small number of cases have allowed requests for evidence pertaining to one offense to suspend the statute of limitations as to "intimately related" offenses.  *See, e.g.*, *United States v. Arrington*, No. 8:13CR146, 2013 WL 5963140, at *5 (D. Neb. Nov. 7, 2013); *United States v. Swartzendruber*, No. 3:06-cr-136, 2009 WL 485144, at *5 (D.N.D. Feb. 25, 2009); *United States v. Ratti*, 365 F. Supp. 2d 649, 656 (D. Md. 2005).  That rule violates the clear language of Section 3292, which ties the suspension of limitations to the specific offense for which evidence is located abroad and requested from a foreign authority.  Further, those courts that employ the "intimately related" standard offer no guidance as to what qualifies as an "intimately related" offense.  More importantly, even were the Court to adopt that vague standard here, the same result is warranted.  A conspiracy to violate campaign finance laws is not "intimately related" to the offense of submitting false statements to the Government, 18 U.S.C. § 1001, as charged in Count Two, or the offense of making a false entry with intent to impede an investigation, 18 U.S.C. § 1519, as charged in Count Three.  Further, evidence pertaining to the identity of foreign source(s) of the contributions is not intimately related to the charges pertaining to the ███ filing with the FEC.  Whether the ultimate source of the funds was foreign and the identity of that source are facts not intimately related to whether Mr. Michel caused the ███ to falsely claim that the straw donors were the true source of the contributions; Mr. Michel allegedly knew *he* had given them the money to donate.

> that a district court can 'suspend the running of [a] statute of limitations,' 18 U.S.C. § 3292(a)(1), only if the limitations period has not yet expired.

*United States v. Kozeny*, 541 F.3d 166, 172 (2d Cir. 2008); *accord United States v. Csolkovits*, No. 08-cr-20474, 2012 WL 395450, at *4 (E.D. Mich. Feb. 7, 2012); *United States v. Brody*, 621 F. Supp. 2d 1196, 1201–02 (D. Utah 2009).   On its face, then, Section 3292 only allows for suspensions of statutes of limitations where the Government submits its application to suspend the limitations period prior to the statute of limitations expiring.  *See Brody*, 621 F. Supp. 2d at 1201 ("The statute does not give authority to the court 'to revive' the statute once it has run.  Had that been the intent, Congress could have clearly indicated it with words that would allow that interpretation.").[18]

> 2.      All but one of the false statements alleged in Count Two was time-barred at the time the Government first applied to suspend the statute of limitations.

Count Two alleges that Mr. Michel violated Section 1001(a)(1) by causing ▮▮▮ and ▮▮▮ ▮▮▮▮▮ to submit false reports to the FEC on eight dates:  July 20, 2012, September 20, 2012, October 15, 2012, October 25, 2012, December 6, 2012, January 30, 2013, February 6, 2013, and

---

[18] The District Court in *Neill* held that a Section 3292 application made after expiration of the limitations period was timely because the statute of limitations had not yet run when the official request to the foreign jurisdiction was made.  *United States v. Neill*, 940 F. Supp. 332, 336 (D.D.C.), *vacated in part on other ground*, 952 F. Supp. 831 (D.D.C. 1996).  This holding was based on two Ninth Circuit cases, neither of which is on point.  In *United States v. Miller*, 830 F.2d 1073 (9th Cir. 1987), the Ninth Circuit did not address whether Section 3292 allows the Government to revive expired statutes of limitations.  In *United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995), the Ninth Circuit side-stepped the issue.  The *Bischel* Court stated only that Section 3292 directed *the date of suspension* to begin on the date of the official request.  61 F.3d at 1434; *see United States v. Daniels*, No. C 09-00862-MHP, 2010 WL 2680649, at *5–7 & n.10 (N.D. Cal. July 6, 2010) ("*Bischel* never explicitly states that the government may apply for a section 3292 order after the statute of limitations would otherwise have expired").  Section 3292(b) gives the *district court* the power to suspend the statute of limitations.  "Rather than § 3292(b) serving as a self-executing trigger, then, it is meant to define the starting and ending points for the court-ordered suspension period."  *Brody*, 621 F. Supp. 2d at 1201; *see also Csolkovits*, 2012 WL 395450, at *4 ("[I]f Congress had intended that the role of the courts would be simply to validate or reaffirm that which the official request had already accomplished, it could have said so.  This it did not do.").

June 3, 2013.  *See* Indictment ¶ 72.  The Government submitted its first application on February

16, 2018.  *See* Ex. 1.  By that time, the statute of limitations had already expired for any offense

premised on each of these alleged falsities, with the exception of causing ██████ to file an amended

report on June 3, 2013 that contained false statements.[19]

> 3.     The March 7th Order did not suspend the statutes of limitations for the
> allegation on which the statute had not already run.

Although the Government represented to the BVI and the Court that the grand jury was

still investigating a number of offenses in February 2018, including violations of Section 1001,

*see* Ex. 1; *id.* (Attach. B at 1–2), the evidence sought from the BVI did not pertain to the Section

1001 offense charged in Count Two and therefore the Court's Order did not suspend the limitations

period for Count Two.  By February 2018, the Government had already concluded that Mr. Michel

caused ██████ to submit false reports to the FEC.  The Government already had evidence that

Mr. Michel funneled foreign money to sixteen individuals who had acted as "straw donors" in

contributing to ██████; the Government had the names of these individuals, the dates on which those

donors had received money from Mr. Michel, the amount of money they received, how much

money they donated to ██████, and the date on which ██████ recorded the donation.  *Id.* (Attach. B.

at 5).  Most importantly, the Government had already concluded that Mr. Michel had caused ██████

to file false reports with the FEC on July 20, 2012, September 20, 2012, February 6, 2013, *and*

*June 3, 2013*.  *See id.* (Attach. B at 6–7 & nn.5–6) (listing purportedly false statements contained

in ██████ reports).

---

[19] Even were this Court to conclude that the application to it concerning the official request to BVI
retroactively revived an expired limitations period to the date the official request was made,
February 2, 2018, the February 6, 2013 ██████ report to the FEC would be the only other false
statement for which the limitations period had not already run.

The Government did not request evidence from the BVI related to the false statement alleged with respect to the ██████ amended report filed with the FEC on June 3, 2013.  The Government requested that the BVI search for and produce corporate documents, corporate bank records, and communications related to select transactions.  *See id.* (Attach. B at 9–11).  The Government sought that information "to establish whether the funds used by [Mr.] Michel and others to further the conduit contribution scheme did in fact come from a foreign national in violation of the Federal Election Campaign Act" and "which individuals at ██████, ██████████, ██████, and ████████████ knew that the funds would be used for this purpose."  *Id.* (Attach. B at 2).

The Government's own description of why it wanted these records confirms that it is not evidence relevant to the offense charged in Count Two.  The elements of a conduit-based offense under Section 1001(a)(1) are that the defendant, who had a duty to disclose, acted willfully, that the defendant caused the submission of false statements to the FEC, and that the statements were in fact false.  *See Hsia*, 176 F.3d at 521 (assessing elements of prosecution under 18 U.S.C. §§ 2, 1001, premised on conduit contribution scheme causing political committees to make false statements to FEC).  The Government already knew at the time of the official request to BVI that Mr. Michel allegedly received money from the Singapore bank accounts of BVI-incorporated entities and recruited "straw donors" to donate a portion of that money to the ██████.  Evidence regarding the identity of the owners of the BVI entities may have been relevant to identifying additional potential alleged co-conspirators, and therefore, relate to the Government's theory of prosecution under Count One, but such evidence was not relevant to establishing the elements of the substantive offense of violating Section 1001, as alleged against Mr. Michel in Count Two.

The Government already had the evidence on which it bases its allegation that Mr. Michel gave money to the straw donors to donate to ███ and thus the straw donors were not the true source of the donations made in their names.  Whether Mr. Michel himself was the true source or whether a foreign source was the true source, much less which foreign source was the true source, is simply of no moment to the alleged Section 1001 violation.  At issue with respect to that offense is whether it was a false statement to say that the straw donors were the true source.  Since suspension is offense-specific, while the request for evidence regarding the identity of foreign sources could suspend the limitations period for a conspiracy to violate 52 U.S.C. § 30121 or a substantive violation of 52 U.S.C. § 30121, the limitations period for Count Two charging a substantive violation of Section 1001 was not suspended by the Court's March 7th Order concerning the BVI request.[20]

4.     The September 28th Order did not revive the time-barred allegations.

The limitations period for the allegation that Mr. Michel violated Section 1001 because he caused ███ to submit a false amended report on June 3, 2013 (and with respect to any of the other reports to the FEC alleged as false statements in Count Two) had already expired before the Government made its Section 3292 application to suspend the statute of limitations based on the UAE request for foreign evidence.  Because applications to suspend the statute of limitations under Section 3292 are only able to suspend then-running limitations periods, and cannot "revive" already-expired statutes of limitations, the Government's application to suspend the limitations period based on the UAE request could not suspend the limitations period for the June 3, 2013 ███ report (or any of the other reports to the FEC alleged as false statements in Count Two).  The

---

[20] This argument applies equally to the February 6, 2013 alleged false statement.  Thus, even if the application to suspend the statute of limitations were timely as to that alleged false statement, the suspension would nonetheless not apply to that alleged false statement.

limitations period had already run before the Section 3292 application was made.  Accordingly, Count Two is time-barred.[21]

*    *    *

Absent suspension, there is no false statement alleged in Count Two for which the statute of limitations has not expired.  The suspension orders in this case do not apply to the false statement violation alleged in Count Two.  The limitations period for each of the alleged false statements in Count Two, with the exception of one, had already expired before the Government applied to suspend the statute of limitations and, in any event, the evidence sought from the foreign jurisdictions was not probative of the offense charged in Count Two.  Count Two must be dismissed as time-barred.

## II.   COUNT THREE SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE CONDUCT THAT OCCURRED WITHIN THE LIMITATIONS PERIOD.

The analysis with respect to Count Three is quite easy in comparison to the analysis with respect to Count Two.  Count Three is plainly time-barred.  Count Three is based on a single discrete event.  It alleges that Mr. Michel caused a false entry to be made when ███ filed an amended report with the FEC on June 3, 2013.  *See* Indictment ¶ 74.  Count Three, unlike Count Two, does not purport to allege a scheme.  Nor does it even reference any conduct other than the filing of the June 3, 2013 ███ amended report with the FEC.  The five-year statute of limitations began to run on the date that report was filed.  The limitations period expired on June 3, 2018.  Since no prosecution was commenced by June 11, 2018, the limitations period was not extended by the tolling agreement.  Finally, as discussed below, the statute of limitations was neither suspended by the Court's March 7th Order regarding the then-pending request for evidence from

---

[21] Of course, this would be true even if the relevant date were the date of the official request to the UAE (September 27, 2018), rather than the date of the application to this Court.

the BVI nor revived by the Court's September 28th Order regarding the pending request for evidence from the UAE. *See* 18 U.S.C. § 3282(a). Accordingly, the limitations period expired on June 3, 2018, making Count Three untimely when the Indictment was returned on May 2, 2019. Count Three must be dismissed.

### A.    Count Three relies solely on conduct that occurred more than five years prior to the return of the Indictment.

Count Three rests on the allegation that when ███ filed an amended report with the FEC on June 3, 2013 (the last of the reports at issue in Count Two), it made a false entry, in violation of 18 U.S.C. § 1519, for which Mr. Michel is responsible. *See* Indictment ¶ 74. The statute of limitations for a violation of Section 1519 is five years. *See* 18 U.S.C. § 3282(a). As discussed above, the five-year period following the filing of the June 3, 2013 amended report ran on June 3, 2018. The Indictment was not returned until May 2, 2019.

### B.    Neither the Court's Order related to the BVI official request nor the Court's Order related to the UAE official request suspended the limitations period for Count Three.

#### 1.    The BVI request

The Government's February 2, 2018 submission to the BVI, and corresponding application to the Court, do not indicate that the grand jury was investigating an offense under Section 1519 at that time. The Government told the BVI that, generally, it was investigating violations of federal campaign finance laws that limit the amount of money an individual may donate to a federal campaign and prohibit foreign nationals from making donations, as well as whether Mr. Michel and others had caused ███ to file false reports with the FEC concerning the original source of the donations. *Id.* (Attach. B at 1–2). The Government specifically cited Sections 371, 1001, and 30121 as offenses it was investigating, but not Section 1519. *See id.* (Attach. B at 7–8). Similarly, the Government's application to the Court made no reference to Section 1519. *See id.* at 1. Finally,

this Court's March 7, 2018 Order did not include Section 1519 among the offenses for which it was ordering suspension.

For the reasons discussed above, even if the limitations period had not already run and the Court's order had suspended the limitations period for the investigation of Section 1519 offenses, it did not suspend the limitations period for Count Three since the evidence sought from the BVI did not pertain to the offense charged in Count Three.  Count Three, like Count Two, is premised on the allegation that the ███ report to the FEC "falsely listed the names of straw donors as the true sources of the contributions," Indictment ¶ 74, not on whether the true sources were foreign or the identity of any foreign sources.

    2.    The UAE request

    *a.*    *The limitations period expired before the UAE request was made.*

Although the UAE official request and the Government's application related to that request do reference a grand jury investigation of violations of Section 1519, the limitations period for the Section 1519 offense subsequently charged in Count Three had expired prior to the date of the Government's application to suspend the statute of limitations based on its request for evidence in the UAE.  The Court's September 28th Order could not and did not revive the then-expired limitations period.

    *b.*    *The UAE request was not for evidence that pertained to Count Three.*

Moreover, even if that were not the case, the September 28th Order had no effect on Count Three because the Government's request for evidence in the UAE does not relate to that offense. The Government asked the UAE for an interview with Mr. ████████ and records that pertain to Mr. ████████ knowledge and awareness of any illegal activity concerning the alleged conduit contribution scheme.  *See* Ex. 4 at 10.  Those requests were, according the Government,

to elicit evidence concerning "(1) the source of the funds transferred to [Mr.] Michel by [Mr.] Low, ███, ████████, and/or ██████████; (2) [Mr.] █████████ knowledge of the control, if any, that [Mr.] Low exercised over the funds paid to [Mr.] Michel and subsequently donated to the United States Presidential election in 2012; (3) [Mr.] █████████ knowledge of [Mr.] Low's intentions regarding the United States Presidential election in 2012 and what, if any, influence [Mr.] Low intended to exercise during the campaigns; and (4) [Mr.] █████████ knowledge regarding the relationship and dealings between [Mr.] Michel and [Mr.] Low." *Id.* That evidence has no bearing on whether Mr. Michel caused ████ or ████████ to file false reports with the FEC on any date.

As set forth above, while this evidence may be relevant to Count One, by identifying alleged co-conspirators and the scope of the alleged conspiracy, an object of which was to violate federal election law by making contributions from a foreign source in violation of 52 U.S.C. § 30121, this evidence is not relevant to the substantive Section 1519 count alleged against Mr. Michel related to ████ June 3, 2013 filing with the FEC. Accordingly, the September 2018 suspension order does not suspend the statute of limitations period for Count Three. Count Three is time-barred and must be dismissed.

## CONCLUSION

The Court should dismiss Count Two and Count Three. Each Count relies on time-barred allegations.

Section 1001 is not a continuing offense. Each false statement is a discrete offense, meaning that Count Two, in violation of the rule against duplicity, alleges eight different false statement offenses. The statute of limitations began to run as to each alleged false statement on the date it was made. By the time the Government applied to this Court for suspension of the limitations period related to its official request to BVI for evidence, the statute of limitations had

run on seven of the eight false statements.  Since a suspension order cannot revive an expired limitations period, the limitations period has expired for those seven false statements.  The official request to the BVI did not seek evidence related to the alleged eighth false statement (or to the previous seven alleged false statements).  Accordingly, even though a suspension order could have suspended the limitations period for the eighth false statement, the Court's order here did not. Since the limitations period for all eight offenses had expired prior to the Government's subsequent official request for evidence from the UAE and related application to this Court for suspension of the limitations period, the Court's suspension order related to that official request cannot revive the limitations period.  Count Two is time-barred in its entirety.  It should be dismissed on that basis.  Alternatively, it should be dismissed due to duplicity.

Count Three, which charges a violation of Section 1519, must be dismissed because it is based on a single time-barred allegation from June 2013.  The grand jury was not investigating and the Government did not seek to suspend the statute of limitations as to a violation of Section 1519 in February 2018 related to the BVI official request, nor did the Court do so in its March 7, 2018 Order.   The limitations period as to the alleged conduct ran in June 2018, before the UAE-related application to the Court was made.  Count Three must also be dismissed.

Date:   August 30, 2019                              Respectfully submitted,


                                                     */s/ Barry J. Pollack*
                                                     Barry J. Pollack (DC Bar No. 434513)
                                                     Jessica Arden Ettinger (DC Bar No. D00483)
                                                     ROBBINS RUSSELL ENGLERT ORSECK
                                                     UNTEREINER & SAUBER LLP
                                                     2000 K Street NW, 4th Floor
                                                     Washington, D.C. 20006
                                                     Telephone: (202) 775 4500
                                                     Fax: (202) 775 4510
                                                     bpollack@robbinsrussell.com
                                                     jettinger@robbinsrussell.com

                                                     *Counsel for Mr. Michel*

## CERTIFICATE OF SERVICE

On this 30th day of August 2019, I directed the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system and for a copy of this Motion and all attachments thereto to be served by e-mail on counsel of record for the Government.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack (DC Bar No. 434513)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street NW, 4th Floor
Washington, District of Columbia 20006
Telephone:  (202) 775 4500
Fax:  (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Mr. Michel*