**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 1:19-cr-148** |
| | ) | |
| | ) | |
| **PRAKAZREL MICHEL,** | ) | **FILED UNDER SEAL** |
| **LOW TAEK JHO** | ) | |
| | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT PRAKAZREL MICHEL'S
MOTION TO DISMISS**

The United States of America (the "government"), by and through its undersigned attorneys, opposes Defendant Prakazrel Michel's Motion to Dismiss Counts Two and Three ("Def. Mot."). Count Two charges Michel with a scheme to conceal a conduit and foreign contribution scheme, in violation of 18 U.S.C. § 1001(a)(1), and Count Three charges one of the false records that Michel caused in furtherance of his scheme, in violation of 18 U.S.C. § 1519. The Count Two scheme includes affirmative acts of concealment that occurred within the applicable statute of limitations period, which was extended by 18 U.S.C. § 3292. Count Two therefore is timely, and because it alleges a scheme to conceal, it is not duplicitous. Similarly, Count Three is timely because Section 3292 tolled the applicable limitations period. For those reasons, the government respectfully submits that Michel's motion should be denied.

**BACKGROUND**

I.      **Indictment**

On May 2, 2019, a grand jury in the District of Columbia returned a four-count indictment charging Michel with one count of conspiracy, in violation of 18 U.S.C. § 371; one count of

concealment of material facts, in violation of 18 U.S.C. § 1001(a)(1); and two counts of false entries in records, in violation of 18 U.S.C. § 1519.   Doc. 1 ("Indict.").   According to the indictment, between about June and November in 2012, Michel received approximately $21 million from Low Taek Jho ("Jho Low"), a wealthy Malaysian businessman.[1]   *Id.* ¶¶ 10, 39, 50-51, 59.   The monies provided to Michel by Low passed through one or more British Virgin Island companies and into accounts associated with Michel.   *Id.* ¶¶ 18-22, 39-40, 42, 50-51, 59.

Within days of receiving an initial $1 million from Low in June 2012, Michel contributed $40,000 to Political Committee A, a joint fundraising committee for the political party of Candidate A, a United States presidential candidate during the 2012 election cycle.   *Id.* ¶¶ 13-14, 39-41.   Soon thereafter, Michel began paying straw donors approximately $40,000 per donor so they could make illegal conduit contributions, typically in the same amount, to Political Committee A.   *Id.* ¶ 43.   Between about June and September in 2012, Michel paid about 20 straw donors an approximate total of $865,000, virtually all from the money Michel had received from Low at that point.   *Id.* ¶¶ 28-29, 43, 52.

In addition to recruiting and using others as conduits for injecting Low's money into the United States presidential election in 2012, Michel also continued to funnel Low's money personally and directly.   In September and October 2012, Michel made a total of three contributions, totaling approximately $1.1 million, to Political Committee B, an independent expenditure only committee that supported Candidate A's election efforts.   *Id.* ¶¶ 15, 61-63.   The

---

[1] Defendant Jho Low also was charged in Count One.

source of Michel's $1.1 million in contributions to Political Committee B was Low.  *Id.* ¶¶ 61-63.

As a result of Michel funneling Low's money to straw donors to contribute to Political Committee A, that committee submitted false reports to the Federal Election Commission (FEC), the United States agency responsible for enforcing the country's federal election laws.  *See id.* ¶¶ 1-8, 64-65.  Political Committee A's FEC reports were false because they "falsely attribut[ed] multiple contributions to straw donors when in fact they were not the true source of the contributions."  *Id.* ¶¶ 64-65.  In addition, as a result of Michel directly contributing Low's money to Political Committee B, that committee also submitted false reports to the FEC wherein it "falsely claim[ed] that [either Michel or one of his business entities] was the true source of a contribution to Political Committee B when in fact JHO LOW was the true source of the contribution."  *Id.* ¶¶ 66-68.

On April 13, 2015, the FEC received a complaint alleging that Michel made illegal contributions "in the name of another" by causing one of his business entities to contribute $875,000 to Political Committee B.  *Id.* ¶ 69.  On June 15, 2015, Michel responded to the complaint by submitting a declaration to the FEC.  *Id.* ¶ 70.  In that declaration, Michel stated in part that he "'made four contributions to an independent expenditure only committee called [Political Committee B],' and that he 'had no reason to hide the true source of [his] donations to [Political Committee B] nor did [he] wish to diminish the disclosure of source or amounts of [his] contributions to [Political Committee B] as being attributable to [him].'"  *Id.*  Michel did not reference Low in his declaration and concealed that Low was the true source of Michel's contributions to Political Committee B.  *Id.*

## II.      Requests for Foreign Evidence

### a.  Request to British Virgin Islands and March 7, 2018 Tolling Order

On February 2, 2018, the government submitted a request to the British Virgin Islands (BVI) seeking evidence related to its ongoing investigation involving Michel, Low, and others. *See* Def. Ex. 1, Attach. B.  In its request, the government stated that its investigation involved Michel and Low, a conduit and foreign contribution scheme relating to the United States presidential election in 2012, and the submission of false FEC reports in connection with the scheme.  *Id.*  The government requested records for several BVI entities—including Companies A and B, as referenced in the indictment, Indict. ¶¶ 18-19—that may have been involved in financial transactions relevant to the contribution scheme.  *Id.*

On February 16, 2018, the government filed with this Court an *Ex Parte* Application for Suspension of Statute of Limitations.  *See* Def. Ex. 1.  The application sought to toll the statute of limitations, pursuant to 18 U.S.C. § 3292, based on the government's request for foreign evidence to the BVI.

On March 7, 2018, the Court granted the government's request, ordering that "the running of the statute of limitations for the offenses set forth in the government's *ex parte* application is hereby SUSPENDED for the period authorized by 18 U.S.C. § 3292(c) commencing on February 2, 2018."  Def. Ex. 2 at 2.  The Court noted in its order that the government's investigation of Michel, Low, and others included possible violations of "18 U.S.C. §§ 371 (conspiracy) and 1001 (false statements), and 52 U.S.C. §§ 30116 (contributions in excess of legal limits) and 30121 (contributions and donations by foreign nationals)."  *Id.* at 1.

On or about June 11, 2018, the government received a response from the BVI concerning the request for evidence in this case.[2]  *See* Def. Ex. 3.

### b.  Request to United Arab Emirates and September 28. 2018 Tolling Order

On September 27, 2018, the government submitted a request to the United Arab Emirates (UAE) seeking evidence related to the same investigation involving Michel, Low, and others as articulated in the February 2, 2018 request to the BVI.  *See* Def. Ex. 4.  In its request, the government provided information substantially similar to that provided in its February 2, 2018 request to the BVI.  *See id.*  The government requested an interview with and records from "Associate B," as referenced in the indictment, Indict. ¶ 12.  *See* Def. Ex. 4.

On September 28, 2018, the government filed with this Court a second *Ex Parte* Application for Suspension of Statute of Limitations.  Def. Ex. 5.  The application sought to toll the statute of limitations, pursuant again to Section 3292, based on the government's request for foreign evidence to the UAE.

That same day, the Court granted the government's request, ordering that "the running of the statute of limitations for the offenses set forth in the government's *ex parte* application is hereby SUSPENDED for the period authorized by 18 U.S.C. § 3292(c) commencing on September 27, 2018."  Def. Ex. 6 at 2.  The Court noted in its order that the government's investigation of Michel, Low, and others included possible violations of "18 U.S.C. §§ 371 (conspiracy), 1001 (scheme to conceal and false statements), and 1519 (falsification of records); and 52 U.S.C.

---

[2] The government actually received the BVI's response on or about June 14, 2018, but the date printed on the BVI's response letter is June 11.  *See* Def. Ex. 3.  The precise date of the BVI's final action in response to this request is inconsequential; Counts Two and Three, tolled by either date, were indicted within the applicable limitations period.

§§ 30116 (contributions in excess of legal limits) and 30121 (contributions and donations by foreign nationals)."   *Id.* at 1.

To date, the government has not received a response from the UAE concerning this request.

## ARGUMENT

### I.   Count Two and Its Charged Conduct are Timely

Count Two charges Michel with a scheme to conceal material facts in violation of 18 U.S.C. § 1001(a)(1).   Indict. ¶¶ 71-72.   Specifically, it alleges that from about July 20, 2012 until about June 15, 2015, Michel concealed material facts from the FEC by (1) "causing Political Committee A to make false statements in reports of receipts and disbursements filed with the FEC" wherein it "falsely listed the names of straw donors as the true sources of the contributions";     (2) "causing Political Committee B to make false statements in reports of receipts and disbursements filed with the FEC" wherein it "falsely listed MICHEL as the true source of the contributions"; and (3) submitting a false declaration to the FEC that "falsely claimed that MICHEL made four contributions to Political Committee B, and that he had no reason to conceal the true source of the contributions," even though Michel knew, and attempted to conceal, that Low was the true source of the funds.   *Id.*

Michel argues that Count Two should be dismissed because (1) Section 1001 is not a "continuing offense" for purposes of the statute of limitations, and the count therefore is time barred, Def. Mot. at 16-26; and (2) Count Two is duplicitous, *id.* at 16.[3]   On those and other grounds, Michel is mistaken.

---

[3] Michel also argues that the parties' tolling agreement (Def. Ex. 7) does not render Count Two timely.   Def. Mot. at 27-28.   The government is not relying on the tolling agreement in opposing this motion.

a. <u>Section 1001(a)(1) Scheme is Timely When Acts in Furtherance of Scheme Occurred Within Statute of Limitations</u>

Section 1001(a)(1), by its statutory definition, criminalizes a scheme to conceal, specifically in which a defendant "falsifies, conceals, or covers up by any trick, *scheme*, or device a material fact[.]"   18 U.S.C. § 1001(a)(1) (emphasis added); *United States v. Hubbell*, 177 F.3d 11, 13 (D.C. Cir. 1999) ("[T]he plain language of § 1001 permits the charging of scheme crimes."). For purposes of the statute of limitations, a scheme under Section 1001(a)(1) continues to run until the final affirmative act in furtherance of the scheme has been completed.   *See United States v. Heacock*, 31 F.3d 249, 256 (5th Cir. 1994) (holding that statute of limitations for Section 1001 scheme, like a conspiracy, "does not begin to run . . . until each overt act constituting the scheme has occurred" (citation omitted)).   Therefore, under Section 1001(a)(1), an entire scheme is timely when any of the acts taken in furtherance of the scheme fall within the applicable limitations period.  *See Bramblett v. United States*, 231 F.2d 489, 491 (D.C. Cir. 1956) (where defendant repeated and continued to benefit from false representation to House of Representatives' disbursement office, Section 1001 scheme was "continuing scheme" and "period of limitations did not begin to run until the scheme ended"); *United States v. Craig*, No. 19-cr-125, 2019 U.S. Dist. LEXIS 131300, at *61 (D.D.C. Aug. 6, 2019) ("Because the indictment charges defendant with a single 'scheme,' rather than individual false statements, and the scheme ended within the limitations period, the Court finds that [Section 1001(a)(1) count] is timely."); *United States v. Menendez*, 137 F. Supp. 3d 688, 700 (D.N.J. 2015) ("As charged, Senator Menendez's affirmative acts of concealment were part of a single, extended effort to hide the bribery conspiracy, and the scheme did not end, at the earliest, until Menendez filed his last financial disclosure form in 2012.").

Count Two charges Michel with a scheme to conceal material facts in which two of the criminal acts alleged as part of the scheme occurred within the applicable limitations period:   (1) Michel causing Political Committee A to submit a false report to the FEC on June 3, 2013; and (2) Michel submitting a false declaration to the FEC on June 15, 2015.   Indict. ¶ 72.   The latter act— Michel's false declaration to the FEC—occurred within five years of the indictment in this case, and therefore is timely.[4]   *See* 18 U.S.C. § 3282(a).   The former act—Michel causing a political committee to submit a false FEC report—is timely because of this Court's Section 3292 tolling orders, which is addressed further in section I (c).   Accordingly, Count Two is not time barred.[5]

Michel recognizes that D.C. Circuit precedent clearly holds that the statute of limitations does not run on a Section 1001(a)(1) count until the scheme's last affirmative act has occurred. *See* Def. Mot. at 17-18 (citing *Bramblett*).   To circumvent this holding, Michel contends that the Supreme Court's opinion in *United States v. Toussie*, 397 U.S. 112 (1970), overturned *Bramblett*. Def. Mot. at 18-26.   Michel's argument is misguided for multiple reasons.

First, *Toussie* did not overrule *Bramblett*; indeed, it did not even address Section 1001.   In *Toussie*, the Supreme Court held that a statute creates a "continuing offense" by its express

---

[4] According to Michel, his false FEC declaration in 2015 is not part of the scheme.   Michel recognizes that if the false FEC declaration constituted part of the scheme, then Count Two would be timely.   *See* Def. Mot. at 16 n.11.   The government addresses Michel's argument against the false FEC declaration in section I (b).

[5] Count Two, of course, involves other criminal acts committed in furtherance of the concealment scheme, i.e., other false reports that Michel caused Political Committees A and B to submit to the FEC.   *See* Indict. ¶ 72.   Those acts may not fall within the statute of limitations, but they can be and are appropriately charged as part of a Section 1001(a)(1) scheme where at least one affirmative act in furtherance of the scheme occurred within the limitations period.   *See Bramblett*, 231 F.2d at 491; *Heacock*, 31 F. 3d at 256; *Craig*, No. 19-cr-125, 2019 U.S. Dist. LEXIS 131300, at *61; *Menendez*, 137 F. Supp. at 699-700.

statutory language or if "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." 397 U.S. at 115. The Supreme Court then examined the Draft Act and its military registration requirement, concluding that the act did not constitute a continuing offense. *Id.* at 116-24. But *Toussie* did not address a scheme offense, and scheme offenses inherently prohibit conduct that spans an extended period.

Moreover, D.C. Circuit precedent, unaffected by *Toussie*, affirms *Bramblett*'s continuing viability, *see Hubbell*, 177 F.3d at 13-14 (denying vagueness challenge to Section 1001 count and relying on *Bramblett* to confirm that Section 1001 may allege a scheme crime), and that the statute of limitations period for a Section 1001(a)(1) scheme does not run until the final affirmative act in furtherance of the scheme has occurred. Indeed, this Court recently addressed this very issue. In *Craig*, the defendant moved to dismiss a Section 1001(a)(1) count as time barred because it relied on statements and other acts committed outside the typical five-year limitations period. 2019 U.S. Dist. LEXIS 131300, at *61-62. The defendant, like Michel here, argued that Section 1001(a)(1) is not a "continuing offense," and that *Bramblett* had been overruled by the Supreme Court in *Toussie*. *Id.* at *65. This Court rejected that argument, stating that it did not need to address the issue of Section 1001(a)(1) as a continuing offense,[6] and instead holding that "it is still bound by

---

[6] *Toussie*, like the majority of Michel's motion, focuses on the concept of a "continuing offense." But the Court, just as it did in *Craig*, need not address the continuing offense doctrine to resolve this matter because that doctrine does not apply where a scheme, as here, includes conduct that occurred within the applicable limitations period. *See, e.g.*, *United States v. Morales*, 11 F.3d 915, 918 (9th Cir. 1993) (continuing offense doctrine does not apply "where the charged criminal conduct itself extends over a period of time. The doctrine comes into play where it is contended the actual conduct of the defendant ended but the crime continued past that time."); *United States v. Mubayyid*, 567 F. Supp. 2d 223, 241 n.34 (D. Mass. 2008) (ruling that continuing offense analysis did not apply when affirmative acts of concealment have occurred within statute of limitations), *rev'd in part on other grounds*, 658 F.3d 35 (1st Cir. 2011). Once again, in this case, Michel committed two affirmative acts in furtherance of his Section 1001(a)(1) concealment

the D.C. Circuit's decision in *Bramblett*, which held that a scheme offense is not complete until the scheme ends." *Id.* at *65. The Court explained that *Bramblett* was "re-affirmed and applied by the D.C. Circuit well after *Toussie*" in *Hubbell*, and that in *Hubbell*, the Circuit relied on *Bramblett* and its rejection of the defendant's Section 1001 limitations argument. *Id.* at *66. The Court therefore concluded that "*Bramblett* has not been overruled, as the defendant argues, and since it remains binding on this Court, [the Section 1001(a)(1) count] will proceed." *Id.*

Michel points to no D.C. Circuit case that has since cast doubt on or otherwise modified *Bramblett* or *Hubbell*. Consequently, both remain binding precedent on this Court. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) ("Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit."). The Court's analysis in *Craig* was correct and, in combination with all of the aforementioned reasons, forecloses Michel's *Toussie* argument in its entirety.

### b. Count Two Properly Charges Michel's June 15, 2015 False FEC Declaration

Michel attacks the two acts alleged in Count Two that occurred within the applicable statute of limitations period, including the June 15, 2015 FEC declaration. Michel's submission of a false declaration to the FEC clearly falls within the limitations period, having occurred on June 15, 2015, less than five years before the indictment in this case. *See* 18 U.S.C. § 3282(a). However, Michel ostensibly challenges the inclusion of his false FEC declaration as part of the scheme alleged in Count Two, arguing that the false declaration was merely an act to cover up a completed

---

scheme within the limitations period:   causing Political Committee A to file the June 3, 2013 false FEC report (tolled by the government's requests for foreign evidence), and submitting the false FEC declaration on June 15, 2015.

scheme and not an act in furtherance of the scheme that serves to extend its duration.   *See* Def. Mot. at 14-15.   Michel is mistaken.

Count Two charges a scheme to conceal, and acts taken in furtherance of and central to a concealment scheme are part of that scheme, and not merely acts to cover up a different scheme. *See Grunewald v. United States*, 353 U.S. 391, 405 (1957) (noting "a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime").   Thus, "[w]hen 'the successful accomplishment of the crime necessitates concealment,' acts of concealment are properly considered to be within the scope of the original conspiracy."   *United States v. Andrews*, 532 F.3d 900, 909-10 (D.C. Cir. 2008) (quoting *United States v. Gleason*, 766 F.2d 1239, 1242 (8th Cir. 1985)).

Here, the central object of the scheme alleged in Count Two was to conceal the true source of the political donations.   *See* Indict. ¶ 72.   By funneling Low's money through multiple entities and straw donors, Michel concealed both Low and himself as the source of the funds to Political Committee A.   And by contributing to Political Committee B, personally and through one of his companies, Michel concealed Low as the source of the funds to Political Committee B.   Michel, in turn, caused false FEC reports to be filed by the committees and he personally submitted a false FEC declaration, all in a continuing effort to perpetuate and conceal their scheme.   Accordingly, Michel's false FEC declaration is merely one more act of concealment in furtherance of a scheme whose entire purpose was to conceal and obfuscate the true source of political donations.   Because the "'successful accomplishment of the crime necessitate[d] concealment,'" *Andrews*, 532 F.3d at

909-10 (citation omitted), Michel's act concealing the true source of the contributions by submitting his false declaration extended the statute of limitations.

   c.   The June 3, 2013 False FEC Report, Charged as Part of Scheme in Count Two, is Timely

Michel also attacks the June 3, 2013 false FEC report as a basis to extend Count Two's statute of limitations because, according to Michel, 18 U.S.C. § 3292 does not apply to that specific offense.   Michel's argument is without merit.

Pursuant to 18 U.S.C. § 3292, a district court, upon application by the government, "shall suspend the running of the statute of limitations" for an offense "if the court finds by a preponderance of the evidence that an official request has been made" for evidence related to the offense in a foreign country, and "it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country."   18 U.S.C. § 3292(a)(1). The period of suspension begins "on the date on which the official request is made and ends on the date on which the foreign court or authority takes final action on the request."   *Id.* § 3292(b).

In this case, the government submitted requests for foreign evidence to the BVI on February 2, 2018, and to the UAE on September 27, 2018.   *See* Def. Exs. 1 (Attach. B), 4.   BVI took final action on the government's request on or about July 14, 2018, and, to the government's knowledge, the UAE request remains pending.   Michel does not contest that the tolling periods imposed by the Court's orders dated March 7, 2018 and September 28, 2018, extend the statute of limitations beyond May 2, 2019, the date of the indictment.

Michel instead argues that the Court's March 7, 2018 tolling order did not toll Count Two because Section 3292 is offense specific and the June 3, 2013 false FEC report, as alleged in Count Two, did not serve as a basis for the government's request to the BVI for foreign evidence or the

12

government's Section 3292 application to the Court.   *See* Def. Mot. at 28-30, 32-34.   Michel is

simply wrong.   He has misread Section 3292, the Court's March 7, 2018 order, the government's

application in support of that order, and the government's foreign evidence request to the BVI.[7]

Section 3292 tolls the statute of limitations for "an offense [that is] under investigation by

a grand jury," *United States v. Neill*, 952 F. Supp. 831, 832 (D.D.C. 1996), when a foreign request

for evidence is "reasonably specific in order to elicit evidence of the alleged violations under

investigation by the grand jury," *id.* at 833.   In other words, Section 3292 tolls criminal offenses

intimately related to the conduct being investigated and alleged in a tolling application.   *See*

*United States v. Ratti*, 365 F. Supp. 2d 649, 656 (D. Md. 2005) (finding Section 3292 tolling

appropriate where "wire fraud counts are intimately related to the general scheme to defraud that

was under investigation in connection with all other counts eventually brought against"

defendant).[8]   Section 3292, on its face or as interpreted by courts, does not require the rigid

specificity that Michel suggests here.

---

[7] Michel, in advancing this argument, continues to dismiss and ignore Count Two's inclusion of the June 15, 2015 false FEC declaration and Political Committee B's false FEC reports.   The false representations inherent in those records pertain specifically and exclusively to Jho Low as the source of the contribution money, and thus the government's request to the BVI for evidence related to Low and his associated entities directly implicated Count Two's allegations, independent of Michel's conduit scheme and Political Committee A's false FEC reports, which are addressed in detail hereafter.

[8] Michel suggests that the "intimately related" standard is distinct from the standard set forth in other cases such as *Neill*.   That is not necessarily true.   *See Ratti*, 365 F. Supp. 2d at 656 ("*Neill* appears to be the central authority on point, and in the Court's view the Government reads the opinion correctly.   So long as the offenses designated in the request to the foreign government and in the Section 3292 application are reasonably specific to elicit evidence probative of the offenses under investigation, the application is in order." (citing *Neill*, 952 F. Supp. at 833)).   But regardless whether different standards exist to analyze Section 3292, the application of Section 3292 to this case, and specifically Counts Two and Three, was appropriate for all of the reasons set forth herein.

Moreover, it is clear—despite Michel's protestations to the contrary—that the government's request to the BVI sought evidence specifically related and relevant to the offense set forth in Count Two, including the June 3, 2013 false FEC filing caused by Michel.

The government's request to the BVI expressly stated that the government was investigating Michel and others for making and causing both conduit and foreign contributions to Political Committee A, and for causing that committee to "file unknowingly reports to the [FEC] that contained materially false, fictitious, and fraudulent statements and representations concerning the true source of funds for those contributions." Def. Ex. 1 at 10-12. The request identified Michel's connection with Jho Low, *id.* at 13-14; detailed financial transactions between Michel and BVI entities—including Companies A and B—and transactions then between Michel and straw donors, *id.* at 14-15; and explicitly stated the government's interest in "whether LOW, [among others] were involved in the subsequent flow of that money [between BVI entities], then to other accounts and eventually to [Political Committee A]," *id.* at 14. The government's BVI request further identified the false FEC reports that Michel caused Political Committee A to file, including the June 3, 2013 report. *Id.* at 16-17. Lastly, the request enumerated several criminal statutes potentially implicated by the alleged misconduct, including 52 U.S.C. § 30121 ("Contributions and Donations by Foreign Nationals"), *id.* at 18, and Section 1001 ("Scheme to Conceal"), *id.* at 17. The government's request sought records associated with the BVI entities—again, including Companies A and B—so that the government could attempt to trace and further understand the source of funds that Michel and his straw donors contributed to Political Committee A. *See id.* at 19-20.

The government's application to the Court seeking a Section 3292 tolling order and the Court's March 7, 2018 order also reflect these underlying facts and representations, and thus the direct relevance of the BVI request to Count Two.   *See id.* at 2-8 (government's Section 3292 *ex parte* application to Court); Def. Ex. 2 (Court's March 7, 2018 order noting, *inter alia*, ongoing investigation involving Michel and Low for Section 1001 and foreign donations, among other offenses).

Taken together, it is readily apparent that at the time of its BVI request, the government's investigation focused on Michel's involvement in both conduit and foreign campaign contributions and, as a result of that involvement, his causing false FEC reports to be filed by Political Committee A.   Michel's argument that the BVI request did not implicate Count Two ignores the facts underlying the Count and the request.

Whether the government had evidence by the time of its BVI request that Michel had engineered a conduit contribution scheme, and thus caused a false FEC filing on June 3, 2013, has absolutely no bearing on Section 3292.   Michel cites no authority to suggest as much.   Whether the government already had sufficient evidence to establish a criminal offense does not preclude it from seeking additional evidence to either support or refute that assessment.[9]   Similarly, even if the government had evidence showing a domestic conduit contribution scheme, the government still reasonably could gather more evidence to determine whether that conduit contribution scheme

---

[9] Indeed, Michel acknowledges that the BVI request could have enabled the government to determine whether Low or others were involved in the conspiracy.   *See* Def. Mot. at 33 ("Evidence regarding the identity of the owners of the BVI entities may have been relevant to identifying additional potential alleged co-conspirators . . . .").   That is no less true when it comes to the Count Two scheme, and is just another reason the BVI request was relevant to the conduct that ultimately was charged in Count Two.

also constituted a foreign donation scheme—which, after all, was part of the express basis for the BVI request and the Court's tolling order. *See, e.g.*, Def. Ex. 1 at 4 (government's *ex parte* Section 3292 application stating that "it reasonably appears that evidence of the above offenses [including Section 1001] is located in the British Virgin Islands; that is, records confirming that the source of the contribution money was a foreign entity in the British Virgin Islands, and banking and communications records concerning the relevant fund transfers"). The June 3, 2013 FEC report was false not only because Michel provided the contribution money to straw donors, but also because Low had provided the contribution money to Michel. The government was entitled to investigate that assertion, and the BVI request constituted part of its efforts to establish and understand that fact.[10]

### d. Count Two Alleges a Scheme to Conceal and Is Not Duplicitous

Michel argues that Count Two "alleges eight distinct false statements to the FEC in a single count" and "is duplicitous."[11] Def. Mot. at 16. Count Two, however, is not duplicitous, but rather alleges a "scheme" to "falsif[y], conceal[], and cover[] up[] . . . a material fact[.]" Indict.

---

[10] Michel states that Section 3292 cannot toll a criminal offense that already has expired. Def. Mot. at 30-31. Because, in his view, Count Two was time barred by June 2018 (five years after the June 3, 2013 report), Michel argues that the September 28, 2018 tolling order cannot "revive" Count Two. *See id.* at 34-35. This argument, however, is moot because Count Two was not time barred: the June 15, 2015 false FEC declaration remained timely, and the June 3, 2013 false FEC report was still within the five-year statute of limitations period at the time of the Court's March 7, 2018 tolling order.

[11] Michel, in counting eight false statements as part of Count Two's scheme, fails to include his June 15, 2015 false FEC declaration as part of the scheme. *See* Def. Mot. at 16 n.11. Clearly, the indictment, on its face, includes that act as part of the Count Two scheme. Indict. ¶¶ 71-72. Michel acknowledges that if the Court reads Count Two to include the June 2015 declaration and does not dismiss the count for duplicity, Count Two then would not be time barred and could proceed as to the declaration. For the reasons set forth above, however, Count Two is not time barred generally.

¶ 72.   The false statements referenced in Count Two are not separate, independent acts; rather, as charged in this count, they are part of a concealment scheme.

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *Hubbell*, 177 F.3d at 14 (citation omitted).   The D.C. Circuit has held that an indictment does not improperly charge false statements or acts of concealment in a single count when those acts are charged in a Section 1001 scheme.   *Id.* at 14 (denying duplicity claim where "numerous false statements and acts of concealment" charged in one Section 1001 count) (citing *Bramblett*, 231 F.2d at 491; *United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987); *United States v. Mangieri*, 694 F.2d 1270, 1282 (D.C. Cir. 1982)).   Here, Count Two alleges that Michel's actions causing Political Committees A and B to file false FEC reports and his own submission of his false FEC declaration constituted a scheme to conceal.   The count therefore is not duplicitous.

## II.    Count Three is Timely

Count Three charges Michel with violating 18 U.S.C. § 1519 by causing the falsification of a record, namely, the June 3, 2013 FEC report by Political Committee A.   Michel argues that Count Three is time barred because the Court's March 7, 2018 tolling order, predicated on the government's request for evidence to the BVI and its Section 3292 application, did not toll the offense.   Def. Mot. at 35-37.

In support of his argument, Michel points out that the government's request to the BVI, its corresponding Section 3292 application to the Court, and the Court's March 7, 2018 order do not explicitly identify Section 1519.   *Id.* at 36-37.   By Michel's account, the absence of any reference to Section 1519 in those documents is fatal to Count Three's tolling.   However, his contention is patently incorrect.   As this Court has previously held, Section 3292 "does not require that a

foreign evidence request expressly list by citation the alleged statutory violations in order for a foreign evidence request to pass must under" the statute. *Neill*, 952 F. Supp. at 832. "[A] requirement that the government list by citation the statutes that may have been violated" is "unreasonably formalistic as well as unnecessary." *Id.* at 833.

In its BVI request and Section 3292 application, the government made clear that it was investigating Michel's involvement in a conduit and foreign contribution scheme and the filing of FEC reports that falsely identified the source of certain contributions. *See* Def. Ex. 1 at 2-3, 10-22. The false FEC reports underlie both the Section 1001(a)(1) concealment scheme in Count Two and the Section 1519 false record in Count Three. The description of the government's ongoing investigation at the time of the BVI and tolling requests in February 2018, was more than sufficient to satisfy Section 3292 and to trigger its tolling application to the conduct later charged in Count Three.

Michel asserts—again, as he did with Count Two—that the March 7, 2018 order cannot toll an offense associated with the June 3, 2013 false FEC report because the evidence sought from the BVI did not concern that false report or the underlying conduit contribution scheme. Def. Mot. at 36-37. For the reasons explained in section I (c), Michel's argument here is meritless.

Lastly, Michel argues that the September 28, 2018 tolling order, predicated on the government's request to the UAE and its corresponding Section 3292 application in September 2018, did not toll Count Three because the evidence sought from the UAE—an interview with and information relating to Associate B—did not concern Count Three's conduct. *Id.* at 37-38. According to Michel, evidence related to Associate B "has no bearing on whether Mr. Michel caused [Political Committee A] or [Political Committee B] to file false reports with the FEC on

any date." *Id.* at 38.   That assertion, however, is speculative and misguided.   The false FEC reports are false not only because Michel paid straw donors to make conduit contributions; they also are false because the true source of the contributions was Low, not Michel or the straw donors. Associate B—who is identified in the indictment as an associate of Michel's and/or Low's, Indict. ¶ 12, and who attended a political event with Michel and Low's father, *id.* ¶ 56—certainly could have information relevant to either Michel and Low's conduit or foreign contribution scheme, and thus relevant to Count Three.[12]   For those reasons, Michel's motion should be denied.[13]

---

[12] Associate B's possible knowledge of and relevance to the conduit and foreign contribution scheme underlying Count Three is further illustrated by some of the specific information the government sought from the UAE in connection with this matter.   *See* Def. Ex. 4 at 14-15 (proposed questions for Associate B).

[13] The Court's March 7, 2018 and September 28, 2018 orders properly applied to and tolled the criminal offenses charged in this case, as explained above.   However, if the tolling orders were in any way defective in tolling the statute of limitations for those offenses, the government nonetheless relied on them in good faith and is entitled to their tolling applications.   *Cf. United States v. Leon*, 468 U.S. 897, 905 (1984) ("evidence seized in reasonable, good-faith reliance on a search warrant" need not be excluded where warrant is defective or lacked sufficient probable cause).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Michel's Motion to Dismiss Counts

Two and Three.


Respectfully submitted,

COREY AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:      _/s/ Sean F. Mulryne_____
Sean Mulryne
Nicole Lockhart
Trial Attorneys
1331 F Street, NW
Washington, DC 20004
202-514-1412

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, and served upon counsel for the Defendant a copy of this motion via email.


Dated:   September 30, 2019                    */s/ Sean F. Mulryne*
                                               Sean Mulryne
                                               Nicole Lockhart
                                               Trial Attorneys
                                               1331 F Street, NW
                                               Washington, DC 20004
                                               202-514-1412