**KENNER LAW FIRM**
**DAVID KENNER, SBN 41425**
**16633 VENTURA BLVD., STE. 735**
**ENCINO, CA  91436**
**PHONE: (818) 995-1195**
**FAX: (818) 475-5369**
**EMAIL: DAVID@KENNERLAW.COM**

**ATTORNEY FOR DEFENDANT**
**PRAKAZREL MICHEL**

**ORAL ARGUMENT REQUESTED**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>PRAKAZREL MICHEL, *ET AL.*,<br><br>Defendants. | Case No.: 19-148-1 (CKK)<br><br>**DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS 8-11 ("FARA COUNTS") IN THE FIRST SUPERSEDING INDICTMENT; MEMORANDUM IN SUPPORT;**<br><br>[U.S. CONST. AMENDS I & V; FED. R. CRIM. PROC. 12(b)]<br><br>Date:<br>Time:<br>Place: |

COMES NOW DEFENDANT PRAKAZREL MICHEL, by and through counsel of record, David E. Kenner, and, pursuant to U.S. Const. Amendments I and V, as well as Federal Rule of Criminal Procedure 12(b), moves the Honorable Court to dismiss Counts 8-11 in the First Superseding Indictment because FARA's statutory scheme (22 USC 611, *et seq.*), as applied, is vague and overbroad.

This motion is based on these moving papers, the memorandum of points and authorities attached hereto, all the files and records in this case and any evidence or argument which the Honorable Court seeks to hear during or after the hearing on this motion.

1

DATED: July 1, 2022        Respectfully submitted,

/s/ David Kenner
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant


/s/ Charles Haskell
Charles R. Haskell
The Law Offices of Charles R. Haskell, Esq.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

**A. INTRODUCTION**

In the instant case, Mr. Michel has been charged with violations of the Foreign Agents Registration Act (FARA) and conspiracy to violate FARA [*See* Counts 1, 7, 12 from the First Superseding Indictment ("FSI")]. It is Defendant's position that FARA's statutory scheme, particularly its definitions, as applied here, to an artist who has used his voice for years in connection with artistic, humanitarian and charitable endeavors, is unconstitutionally vague and overbroad.

This is especially true as applied in this case given the background and characteristics of the normal type of activity of the Defendant – the underpinnings of all his work as an artist – such as his charitable, political and humanitarian activity, none of which has ever been challenged prior to this case.

As an international recording artist and entertainer, Mr. Michel (as do other artists of his caliber) combines his talent, artistry and humanitarian efforts to create a global brand to promote humanitarian endeavors across the globe. As a founding member of the popular music group, The Fugees, Mr. Michel has worked tirelessly to use his success to help others in need around the world. His projects are many, but some listed here include a documentary bringing public awareness to the homeless problem in America where Mr. Michel spent time living and sleeping on the streets of Skid Row to better understand that plight; a cultural awareness exchange program intended to teach North Koreans about America's freedoms; and he is currently part of a group working with the U.S. State Department and former U.S. Vice President Al Gore on a Global Green Initiative similar in scope to the Marshall Plan after WWII.

Inseparable from his business entertainment energies is his work to help promote important causes. Mr. Michel's business model necessarily includes his work to help people and the environment. His work also includes earthquake victims in Haiti – specifically, together with other

3

artists such as Ben Stiller and Sean Penn, he has raised enormous sums of money and has helped bring important and immediate humanitarian need to disaster victims or to bring economic development to the poorest African nations such as Sudan.

Indeed, Mr. Michel's business model has long been to create contacts across many areas of entertainment, business and culture and to connect people to create new and successful projects in entertainment and which promote humanitarian projects. Even early on in his career, he named his music group with the intention to bring light to the negative perception on refugees and other immigrants trying to make it in America.

For Mr. Michel, his business, artistic, cultural, entertainment and humanitarian activities have always been combined, and one of his primary responsibilities is to seek contacts and to network to attract investors and other entertainers and people of culture for each of his projects. This is precisely what Mr. Michel was attempting to do with his interactions with individuals during his trips to Hong Kong in 2017 and for related activities in the U.S. At the time Mr. Michel was promoting and raising funds for several of his projects, including for Blacture (now ZmBIZI), a technology company that helps minority businesses through a partnership with Microsoft.

Thus Mr. Michel's conduct, some of which has been referenced as part of the charges against him, are clearly protected activities under the First Amendment of the U.S. Constitution – i.e., the type of protected expressive conduct engaged in by Mr. Michel.

## MEMORANDUM OF POINTS AND AUTHORITIES

### B. FARA'S STATUTORY SCHEME, PARTICULARLY ITS DEFINITIONS AS APPLIED TO (AS HERE) AN ARTIST WHO HAS USED HIS VOICE IN ARTISTIC, HUMANITARIAN AND CHARITABLE WAYS, IS UNCONSTITUTIONALLY *VAGUE*

A statute is void for vagueness if it is susceptible to discriminatory or arbitrary enforcement by "impermissibly delegat[ing] to law enforcement the authority to arrest and prosecute on 'an *ad hoc* and subjective basis.'" *Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Such "delegat[ion of] basic policy matters to policemen, judges, and juries" creates "the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108-09. Laws must therefore provide explicit standards that do not "allow[] policemen, prosecutors, and juries to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) (citations omitted).

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), illustrates this concept. *Papachristou* involved a vagrancy ordinance that "set a net large enough to catch all possible offenders," leaving it to the courts to "say who could be rightfully detained, and who should be set at large." 405 U.S. at 165 (internal quotations omitted). This "convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure," tips the scales of justice such that "even-handed administration of the law is not possible," and thus "cannot be squared with our constitutional standards." *Id*. at 170, 171 (internal citations and quotations omitted).

## C. FARA'S STATUTORY SCHEME, PARTICULARLY ITS DEFINITIONS AS APPLIED TO (AS HERE) AN ARTIST WHO HAS USED HIS VOICE IN ARTISTIC, CHARITABLE AND HUMANITARIAN WAYS, IS UNCONSTITUTIONALLY *OVERBROAD*

The overbreadth doctrine protects individuals who "may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 521 (1972). "[W]here conduct and not merely speech is involved," overbreadth must be substantial to result in invalidity. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

There are at least two ways for a party to demonstrate that a statute is substantially overbroad. First, as suggested by our Nation's High Court in *Taxpayers for Vincent*, 466 U.S. 789 (1984), a court may focus on both the risk and the potential extent of the interference with First Amendment rights. 466 U.S. at 801. Second, as the Court suggested in *New York v. Ferber*, 458 U.S. 747 (1982), a court may focus on the number of instances in which the statute as applied will violate the First Amendment as compared to the amount of times it will regulate unprotected conduct. 458 U.S. at 773; *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 256 (2002) (finding law overbroad where it "covers materials beyond the categories" of child pornography and obscenity). Criminal statutes must be examined particularly carefully. *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

As part of the overbreadth analysis, the Court must interpret the challenged statute. *United States v. Stevens*, 559 U.S. 460, 474 (2010).[1] Courts do not defer to the Executive's own

---

[1] The correct interpretation of a statute begins with the plain meaning of its terms. *See, e.g., Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485-86 (1996) (interpreting "imminent" by beginning with dictionary definition); *Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992) (beginning and ending with dictionary definition to resolve plain meaning of "exclusive"); *see also Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 597 U.S. ___ (2022) (U.S. Constitution does

construction of criminal statutes. *Id*. at 480 ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). A court may adopt a limiting construction to avoid difficult constitutional questions, but only if a statute is "readily susceptible" to it. Reno v. ACLU, 521 U.S. 844, 884 (1997) (internal citation omitted). Otherwise, Congress would have no incentive to narrowly craft legislation. *Stevens*, 559 U.S. at 481; *Osborne v. Ohio*, 495 U.S. 103, 121 (1990).

At the end of last year, the Department of Justice ("DOJ") announced a rulemaking change, another in a long line of clarifications regarding FARA.[2] During the public comment period, the DOJ received many letters regarding the overbreadth of FARA including one from several prominent civil rights advocacy groups led by the ACLU, where it highlighted the risk that "FARA's overbreadth and vagueness can undermine and chill First Amendment rights to speech and association and the statute has a history of being used to target undesirable expressive conduct." (*Id.*) In another public letter to the DOJ from the Global Business Alliance, whose members include leading global companies such as Anheuser-Busch, Toyota, and Unilever, refers to risks posed by FARA, in terms of undermining U.S. democratic self-government, because it imposes excessive burdens on advocacy by those who have foreign connections but who are not acting on behalf of a foreign government (*See* https://downloads.regulations.gov/DOJ-LA-2021-0006-0017/attachment_1.pdf).

---

not confer right to abortion; "Roe's constitutional analysis was far outside the bounds of any *reasonable interpretation* of the various constitutional provisions to which it vaguely pointed." *Dobbs*, slip opinion *44 (Alito, J.))

[2]   The breadth of FARA means its scope is difficult to navigate. For example, the Justice Department has issued over 50 advisory opinions on the Act's "agency" definition alone. (*See* https://downloads.regulations.gov/DOJ-LA-2021-0006-0016/attachment_1.pdf)

7

Here, the application of FARA to a person similarly situated to the Defendant would create an incredibly chilling effect on an artist's right to creativity and freedom of speech. Historically, the First Amendment has always protected the creativity and freedom of expression bestowed upon artists. "The commitment to freedom of imagination and expression is deeply embedded in our national psyche, buttressed by the First Amendment, and supported by a long line of Supreme Court decisions" (*See* https://www.aclu.org/other/freedom-expression-arts-and-entertainment).

It is Defendant's position that artists, whose everyday activities and endeavors are necessarily intertwined with who they are and what they are ("their brand"), engage in clearly distinguishable conduct from those parties in other recent FARA cases (primarily politicians and political consultants) and whose FARA-regulated conduct can be clearly separated from their personal or other professional endeavors.

The alleged FARA conduct in this case is differentiated from other recent FARA cases in the following ways:

1. Here, Defendant's conduct as an artist engaged in typical art and entertainment driven activities, with both domestic and international entities, is clearly not acting as a professional political consultant (*See US v. Rafiekian*, 991 F.3rd 529 (4th Cir. 2019.))

2. None of the activities, writings or statements made by Defendant would be considered political propaganda (*See Meese v. Keene,* 107 S. Ct. 1862 (1987)) when activities in instant case compared to the exhibition of a film).

3. Defendant had no interactions with foreign government officials (*See id.,* where defendant's activity was found to be as an agent of the Turkish government).

In the instant case, under the Government's broad reading of FARA's regulatory framework, all of Mr. Michel's international activities as an artist, including his entertainment and humanitarian

projects, would require registration – the equivalent of a modern-day shackle around the ankle of a young black artist.

Though FARA was enacted over 80 years ago, it is worth noting that it started being used against individuals only recently.

### D. THE FARA STATUORY SCHEME OFFERS NO GUIDANCE WITH RESPECT TO ITS CHOICE OF ENFORCEMENT CIVILLY OR CRIMINALLY

Nowhere in the FARA statutory scheme is there any guidance with respect to its application, either criminally or civilly when the government clearly perceives that as a choice the Government can make when going after alleged FARA violations. The statutory scheme is silent as to this issue and leaves unfettered discretion to the Gov to make its choice for reasons unrelated to the statutory schemed which makes the statute vague and overbroad and demands that it be deemed Constitutionally invalid – and certainly as applied to this case.

In a press release issued on May 17, 2022 the Government announced its choice to bring a civil action to compel Mr. Steve Wynn to retroactively register under FARA. For reasons not apparent and without statutory guidance, the Government made a choice not to prosecute Mr. Wynn criminally:

> **JUSTICE NEWS**
>
> **Department of Justice**
> Office of Public Affairs
>
> FOR IMMEDIATE RELEASE                                    Tuesday, May 17, 2022
>
> **Justice Department Sues to Compel a U.S. Businessperson to Register Under the Foreign Agents Registration Act**
>
> **Complaint Alleges That Stephen A. Wynn Lobbied the Then-President and Former Administration Officials at the Request of the People's Republic of China**
>
> The Department of Justice today filed a civil enforcement action in the U.S. District Court for the District of Columbia, seeking to compel Stephen A. Wynn, a U.S. businessperson and hotelier who previously served as the CEO of Wynn Resorts, to register under the Foreign Agents Registration Act (FARA) as the agent of the People's Republic of China (PRC) and a senior official of the PRC's Ministry of Public Security (MPS). Wynn was advised to register as an agent by the department but declined to do so.
>
> "The filing of this suit – the first affirmative civil lawsuit under FARA in more than three decades – demonstrates the department's commitment to ensuring transparency in our democratic system," said Assistant Attorney General Matthew G. Olsen of the Justice Department's National Security Division. "Where a foreign government uses an American as its agent to influence policy decisions in the United States, FARA gives the American people a right to know."
>
> According to the complaint, from at least June 2017 through at least August 2017, Wynn contacted the then-President and members of his administration to convey the PRC's request to cancel the visa or otherwise remove from the United States a Chinese businessperson who left China in 2014, was later charged with corruption by the PRC and sought political asylum in the United States. Wynn engaged in these efforts at the request of Sun Lijun, then-Vice Minister of the MPS. Wynn conveyed the request directly to the then-President over dinner and by phone, and he had multiple discussions with the then-President and senior officials at the White House and National Security Council about organizing a meeting with Sun and other PRC government officials.
>
> During the time that he engaged in this conduct, Wynn's company owned and operated casinos in Macau, a special administrative region in the PRC. The department alleges that Wynn acted at the request of the PRC out of a desire to protect his business interests in Macau.
>
> This enforcement action is being handled by the Counterintelligence and Export Control Section of the National Security Division. Trial Attorney Nathan Swinton is litigating the case.

It is inconceivable that the Government decided to proceed civilly against Mr. Wynn for conduct, as described in the press release above, which was so much more egregious with respect to a criminal FARA charge as compared to Mr. Michel who, I submit should have been proceeded against civilly.  Perhaps the Government's forfeiture allegation against Mr. Michel has improperly incentivized them to make this distinction.

*FARA does not discriminate:*  It's statutory scheme does not differentiate between the activities of a mega-wealthy white hotel mogul with tremendous political influence on the one hand, as opposed to an internationally known black rapper on the other.

Nowhere in the FARA statutory scheme is there any guidance with respect to its application, either criminally or civilly when the government clearly perceives that as a choice the Government can make when going after alleged FARA violations.  The statutory scheme is silent as to this issue and leaves unfettered discretion to the Government to make its choice for reasons unrelated to the statutory scheme which makes the statute vague and overbroad and demands that it be deemed const invalid – and certainly as applied to this case.

DATED: July 1, 2022            Respectfully submitted,

/s/ **David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant

/s/ Charles Haskell
Charles R. Haskell
The Law Offices of Charles R. Haskell, Esq.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Dated:     July 1, 2022

/s/ Charles R. Haskell
Charles R. Haskell
DC Bar No.: 888304007
641 Indiana Ave. NW
Washington, DC 20004
Tel. (202) 888-2728
Charles@CharlesHaskell.com
Counsel for Defendant