**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Crim. No. 1:19-cr-148** |
| | ) | |
| | ) | |
| PRAKAZREL MICHEL, | ) | |
| LOW TAEK JHO | ) | |
| | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS COUNTS 8-11 ("FARA COUNTS")**

In 2017, the defendant, Prakazrel Michel, sought and obtained tens of millions of dollars from his co–defendant, Low Taek Jho ("Low"), a foreign national, in exchange for agreeing to work with the Deputy Finance Chair of the national political committee for the President's party to lobby the White House and other Administration officials to drop civil and criminal matters involving Low and remove a dissident of the People's Republic of China ("PRC") at the request of a PRC official. To avoid undermining their influence, Michel and his co–conspirators concealed the foreign sponsorship of their efforts. This work was not artistic expression; it was the secret sale of political influence at the highest levels of our government to a foreign criminal and a foreign nation.

Counts Eight and Ten of the Superseding Indictment charge the defendant with: (1) acting as an unregistered agent of a foreign principal and aiding and abetting others in violation of the Foreign Agents Registration Act (FARA), 22 U.S.C. § 611 *et seq.*; and (2) acting as an agent of a foreign government and aiding and abetting others without prior notification to the Attorney

General in violation of 18 U.S.C. §§ 951 and 2.[1]  FARA and § 951 proscribe acting as a foreign

agent of a foreign principal and a foreign government, respectively, without registering with or

providing notification to the Department of Justice (DOJ).   These statutes include plain

prohibitions on acting as undisclosed foreign agents and explicitly define their operative terms.

Courts have repeatedly held that these statutory schemes are not unconstitutionally vague.  Further,

neither statute prohibits or criminalizes First Amendment protected activities—they merely require

registration or notification to accompany certain categories of activities when undertaken for a

foreign individual, company, or power.  These notice requirements do not impermissibly infringe

on First Amendment protected expression.  Michel's motion should be denied.

## BACKGROUND

On May 2, 2019, a grand jury in the District of Columbia returned a four–count indictment

charging Michel and Low for a foreign conduit contribution scheme concerning the U.S.

presidential election in 2012.  Indictment, ECF No. 1.  On June 10, 2021, a grand jury in the

District of Columbia returned a twelve–count superseding indictment that also charged Michel and

---

[1] Michel's motion nominally challenges "Counts 8–11", which includes Counts Nine and Eleven—substantive charges against Low.  Low is a fugitive who has not appeared in this case.  Michel lacks standing to challenge the charges against Low.  *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").  In addition, Michel's arguments address only the constitutionality of FARA's statutory scheme—not § 951.  The government, nonetheless, addresses both statutes in this opposition brief.

Although FARA and § 951 both proscribe acting as a foreign agent without providing registration or notification to the Department of Justice, FARA applies to multiple categories of foreign principals and has a broader definition of agency than § 951, which applies only to foreign governments and has a narrower definition of agency, though one that is still broader than that at common law.  *See United States v. Rafiekian*, 991 F.3d 529, 539–40 & n.12 (4th Cir. 2021).

Low with executing an undisclosed foreign influence campaign, in violation of FARA and § 951.[2] Superseding Indictment, ECF No. 84.

Relevant to the instant motion, the Superseding Indictment alleges that between approximately March 2017 and January 2018, Michel entered into a "secret agreement" with Low in which Low would pay millions of dollars to Michel and others "to lobby the Administration and DOJ to drop the investigation of LOW for his role in the embezzlement of billions of dollars from 1MDB." *Id.* ¶ 99. As part of this scheme, Michel, Low, and others concealed from the U.S. government that Elliott Broidy, the Deputy Finance Chair of the President's political party, "was acting on behalf of LOW." *Id.* It is further alleged that Michel and others agreed to "act in the United States as agents of PRC Minister A," a foreign government official, "by working to lobby the Administration and DOJ to arrange for the removal and return of PRC National A—a dissident of the PRC living in the United States—back to the PRC all at the direction of PRC Minister A and the PRC government." *Id.* ¶ 100. The Superseding Indictment then sets forth in specific detail the conspiracy, its objects, *id.* ¶¶ 106–11, its manner and means, *id.* ¶¶ 112–16, and its overt acts, *id.* ¶¶ 117–49, including a fee agreement in which Low would pay $8 million up front and an additional $75 million or $50 million success fee if the 1MDB matter were resolved within specified times, *id.* ¶ 120.[3]

---

[2] In addition to the original indictment's four counts and the FARA and § 951 counts, the Superseding Indictment charges Michel and Low with an additional count of conspiracy to violate FARA and § 951 and to commit money laundering (Count Seven), and charges Michel alone with two counts of witness tampering related to the foreign conduit contribution scheme (Counts Five and Six), and one count of conspiring to make false statements to banks (Count Twelve).

[3] Contingency fee arrangements are, themselves, prohibited under FARA. *See* 22 U.S.C. § 618(h).

## ARGUMENT

### I.     The FARA And § 951 Counts Are Not Unconstitutionally Vague As Applied To Michel's Undisclosed, Back-Channel Lobbying Campaign

Due process dictates that a statute is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  When evaluating statutory language, the Court should not "expect mathematical certainty," and a law is constitutional if "it is clear what the [statute] as a whole prohibits." *Id.* at 110.  Because neither FARA nor 18 U.S.C. § 951 discriminates as to content or restricts any speech so long as the foreign agent registers or notifies, the statutes should be evaluated not hypothetically but "in the light of the conduct to which [they are] applied." *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 36 (1963).  Like all federal statutes, FARA and § 951 should be interpreted in favor of constitutional construction, and they are not unconstitutionally vague "simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Id.* at 32.  Finally, even in the First Amendment context, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (quotation and internal citations omitted); *see also United States v. Thomas*, 864 F.2d 188, 195 (D.C. Cir. 1988).

The core of prohibited conduct under FARA and § 951 is straightforward:  a person may not act as an agent for a foreign principal or government without providing notice to the Attorney General.  *See* 22 U.S.C. § 612(a); 18 U.S.C. § 951(a).  FARA and § 951 define the individuals and covered activities.  *See* 22 U.S.C. §§ 611, 613; 18 U.S.C. § 951(d), (e).  For FARA, the covered activities generally include "political activities," lobbying government agencies and officials, acting as "public relations counsel," and collecting and disbursing money, all on behalf of the foreign principal and all within the United States.  22 U.S.C. § 611(c)(1)(i)–(iv).  For § 951, with

certain exceptions such as "legal commercial transaction[s]," any activity conducted by the undisclosed agent "within the United States subject to the direction or control of a foreign government or official" is covered. 18 U.S.C. § 951(d). FARA also explicitly sets forth a heightened *mens rea* requirement for criminal enforcement. *Cf. United States v. Hite*, 896 F. Supp. 2d 17, 25 (D.D.C. 2012) (rejecting vagueness challenge as "the plain and ordinary meaning of the statute provides clear notice of what conduct is prohibited and what intent is required"). The statutes do not prohibit or criminalize any actions or activities so long as the person provides notice in accordance with the statutes' provisions. To this end, numerous courts have rejected vagueness challenges to § 951, with reasoning that equally extends to FARA. *See, e.g.*, *United States v. Duran*, 596 F.3d 1283, 1291–96 (11th Cir. 2010) (rejecting vagueness challenge to § 951 because, *inter alia*, § 951 "plainly and concretely identifies the conduct which constitutes its violation, and the statute's language is clear and unambiguous") (collecting cases).

The conduct charged here clarifies the constitutionality of the application of FARA and § 951. Whatever other conduct may sit at the margins of these statutes' proscriptions, "orchestrat[ing] a back–channel, unregistered campaign to lobby the President, [and others,] to end the 1MDB investigation . . . . and to remove PRC National A from the United States" in exchange for millions of dollars, all on behalf of Low, a foreign principal, and PRC Minister A, a PRC government official, ECF No. 84 at 26–28, is heartland foreign agency and political activity prohibited by the statutes. Michel is not charged for engaging in artistic expression or merely establishing contacts that will ultimately further his "brand." Def. Mot., ECF No. 117 at 8. He is charged with explicitly agreeing to exert political influence on the President and the most powerful officials around him on governmental decisions and policy while concealing the foreign direction and control of the effort.

## II.     The FARA And § 951 Counts Are Not Unconstitutionally Overbroad As Applied To Michel's Undisclosed, Back–Channel Lobbying Campaign

A statute is unconstitutionally overbroad if in "banning unprotected speech . . . a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003); *see also United States v. Thompson*, 896 F.3d 155, 163 (2d Cir. 2018) ("Notably, overbreadth doctrine has developed primarily in the context of laws that include within their ambit a substantial amount of *speech* protected by the First Amendment." (emphasis in original)).

FARA and § 951 do not prohibit any speech, content, or conduct. The statutes require a person who is acting as an agent of a foreign principal or a foreign government, respectively, to disclose that relationship in a prescribed manner, irrespective of the content or import of the agent's speech or actions. *See* 22 U.S.C. §§ 612(a), 618(a); 18 U.S.C. § 951(a); *see also Meese v. Keene*, 481 U.S. 465, 478 (1987) ("[FARA] itself neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals."); *United States v. Peace Info. Ctr.*, 97 F. Supp. 255, 262 (D.D.C. 1951) (stating, in denying constitutional challenge to FARA, that "[t]he statute under consideration neither limits nor interferes with freedom of speech. It does not regulate expression of ideas. Nor does it preclude the making of any utterances. It merely requires persons carrying on certain activities to identify themselves by filing a registration statement"). More importantly, "any possible infringement of . . . First Amendment rights" is outweighed by "a strong governmental interest" in "requiring complete public disclosure by persons acting for or in the interests of foreign principals where their activities are political in nature." *Att'y Gen. v. Irish N.*

*Aid Comm.*, 346 F. Supp. 1384, 1390–91 (S.D.N.Y. 1972), *aff'd mem.*, 464 F.2d 1405 (2d Cir. 1972), *cert. denied*, 409 U.S. 1080 (1972).

Neither FARA nor § 951 denies, limits, interferes with, or punishes Michel's purported artistic, business, entertainment, or humanitarian endeavors.   The statutes instead require the disclosure of his agency relationships with foreign principals or governments.   *See* 22 U.S.C. § 612; 18 U.S.C. § 951.   The disclosure of certain information related to political activities undertaken on behalf of foreign principals or governments is reasonably justified by the substantial interest of the United States in ensuring that the public and government officials are informed of such foreign associations and may evaluate those activities accordingly.   *See United States v. McGoff*, 831 F.2d 1071, 1074 (D.C. Cir. 1987) (identifying the "core notion of FARA" as being "that government officials and the public generally should be able to identify those who act on behalf of a foreign principal" and further noting that "[t]he idea is a frequently recurring one in modern government:   public disclosure is needed in order for the public (and, at times, the Government itself) accurately to evaluate such activities"); *United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019) ("The purpose of the Act is to prevent covert influence over U.S. policy by foreign principals.  Simply put, the statute ensures that the public is informed of the true source or sponsor behind the information being disseminated for its consideration."); *see also* 22 U.S.C. § 611 note (FARA's "policy and purpose" is "to protect the national defense, internal security, and foreign relations of the United States by requiring [certain] public disclosure[s by foreign agents] . . . so that the Government and the people of the United States . . . may appraise their statements and actions in the light of their associations and activities").   Significantly, the D.C. Circuit has squarely held that FARA enforcement for these purposes does not violate constitutional rights. *See Att'y Gen. of United States v. Irish People, Inc.*, 796 F.2d 520, 526 (D.C. Cir. 1986) (noting

that "the enforcement of the FARA for the purposes expressed in the statute does not infringe the exercise of constitutional rights"); *see also Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 935 & n.23 (D.C. Cir. 1982) ("[I]t is well settled that FARA is constitutional.") (collecting cases); *id*. at 956 (Wald & Bazelon, JJ., concurring); *Irish N. Aid Comm.*, 346 F. Supp. at 1390–91; *Peace Info. Ctr.*, 97 F. Supp. at 262.[4]

### III.   Even Construing Michel's Motion Liberally, The Superseding Indictment States Valid Offenses

For an indictment to be valid, it must "inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014). At the motion to dismiss stage, "'the allegations of the indictment must be taken as true.'" *United States v. Harmon*, 474 F. Supp. 3d 76, 87 (D.D.C. 2020) (quoting *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

Michel is charged for his role in an undeclared campaign to lobby high–ranking U.S. government officials to resolve a DOJ investigation and to extradite a foreign national from the United States while acting as the agent of, and aiding and abetting others to act as the agents of, a foreign principal and a foreign government. ECF No. 84, ¶¶ 97–151, 154–55. In other words, Michel and his co–conspirators, including Low and a PRC government official, intended and attempted to influence U.S. government policy and action while never disclosing the true nature of the relationship between Michel and his foreign contacts, or the fact that Michel was receiving and agreeing to receive millions of dollars from his foreign principal, Low. In furtherance of this

---

[4] Although the U.S. Supreme Court has not squarely addressed the constitutionality of FARA, it has assumed that FARA is a valid exercise of Congress's plenary authority to regulate and protect the nation's foreign policy and internal security. *See Communist Party of the United States v. SACB*, 367 U.S. 1, 99–100 (1961).

scheme, Michel traveled abroad on multiple occasions to meet with his foreign co–conspirators to negotiate and discuss the lobbying campaigns, *id.* ¶¶ 113, 123–25, 136–39, 147; Michel and his domestic co–conspirators lobbied U.S. government officials, often through Broidy, *id.* ¶¶ 114, 130–35, 140–45; Michel and his co–conspirators agreed to, and did, receive millions of dollars from Low for their efforts, *id.* ¶¶ 115, 126–29, 133, 146, 148–49; Michel created false paperwork to conceal Michel's arrangement with Low, *id.* ¶ 124; Michel established shell companies and opened bank accounts to funnel and conceal Low's money, *id.* ¶¶ 115, 121; Michel and a co–conspirator made false statements to U.S. banks to facilitate receipt of Low's money, *id.* ¶¶ 158–81; and Michel and his co–conspirators willfully failed to register under FARA and knowingly failed to notify the Attorney General in accordance with § 951, *id.* ¶¶ 116, 122, 139.[5]

As charged, Michel's relationship with and work on behalf of Low and PRC Minister A was neither artistic expression nor for the purpose of promoting his personal "brand."[6]  To the contrary, the Superseding Indictment alleges that Michel worked on behalf of foreign principals

---

[5] Michel cites to the DOJ's FARA civil action against Stephen Wynn, a businessperson and hotelier, seemingly as evidence of the broad discretion the DOJ may exercise under FARA.  *See* ECF No. 117 at 9–10.  The distinction between criminal and civil enforcement of FARA is apparent on the statute's face:  *mens rea*.  The criminal provisions of FARA require "willful" violations while the civil provisions do not.  The DOJ press release quoted by Michel, ECF No. 117 at 9, noted that the civil complaint alleges that "Wynn acted at the request of the PRC out of a desire to protect his business interests in Macau."  It does not allege that Wynn did so with an understanding that such action violated the law.  By contrast, the Superseding Indictment alleges that Michel volunteered as a willing shill for a foreign principal and foreign government and determined with his co–conspirators not to register in order to make the back–channel lobbying more effective and increase the chance of earning the outsize contingent success fee.

[6] Michel states in his motion that under a broad reading of FARA, all of his "international activities as an artist, including his entertainment and humanitarian projects, would require registration[.]" ECF No. 117 at 8–9.  That is untrue.  As demonstrated herein, only those activities in which he agreed to act or acted as an agent of a foreign principal or government for covered activities implicate the statutes.  And even then, the statutes only require registration or notification, not a cessation of the covered activities themselves.

to further their specific political interests in exchange for money, covertly and in violation of the law so as not to undermine the potential effectiveness of his influence efforts through disclosure of its foreign nexus. To be sure, Michel claims that he "had no interactions with foreign government officials." ECF No. 117 at 8. But the Superseding Indictment specifically alleges that Michel traveled to the PRC where he met with PRC Minister A, a foreign government official, ECF No. 84, ¶ 138, and, as described in part above and in the Superseding Indictment, Michel and his co–conspirators undertook multiple actions in furtherance of their agreement with Low and PRC Minister A. At trial, Michel will have every opportunity to challenge the facts alleged in the Superseding Indictment. At this stage, the facts in the Superseding Indictment are accepted as true, and those allegations constitute a clear violation of FARA and § 951 regardless of Michel's profession or any alternative motives he may have had to enhance his branding or create business opportunities. Michel acted at the direction of Low and a PRC government official to influence the President of the United States on political issues. His conduct falls firmly within the prohibitions of the respective statutes. If successful, his conduct would have insulated the embezzlement of $1 billion from the people of Malaysia and exposed a dissident to the mercies of the PRC justice system.

## CONCLUSION

FARA and § 951 are not unconstitutionally vague. They prohibit engaging in political activities at the direction of foreign actors without disclosing the agency relationship to the U.S. government. Similarly, the statutes are not overbroad—any minimal infringement on First Amendment activities is outweighed by a substantial government interest in preserving national security and foreign policy and ensuring transparency in messaging to the U.S. public and policymakers. These statutes have been repeatedly upheld against the exact constitutional

challenges levied by the defendant here.  Their application to these facts only confirms their validity.  Michel's status as an artist and his asserted international humanitarian, business, and entertainment ventures do not dilute the core criminality charged in the Superseding Indictment. Defendant's Motion to Dismiss Counts 8–11 should be denied.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:  */s/ Sean F. Mulryne*
John D. Keller
Principal Deputy Chief

Sean F. Mulryne
Director of Enforcement & Litigation
Election Crimes Branch

Nicole Lockhart
Trial Attorney
1301 New York Ave., NW
Washington, DC 20530
Telephone:  202-514-1412
Facsimile:  202-514-3003
john.keller2@usdoj.gov
sean.mulryne@usdoj.gov
nicole.lockhart@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.

Dated:  July 22, 2022                                    /s/ Sean F. Mulryne
                                                          Sean F. Mulryne