KENNER LAW FIRM
DAVID KENNER, SBN 41425
16633 VENTURA BLVD., STE. 735
ENCINO, CA  91436
PHONE: (818) 995-1195
FAX: (818) 475-5369
EMAIL: DAVID@KENNERLAW.COM

ATTORNEY FOR DEFENDANT
PRAKAZREL MICHEL

**ORAL ARGUMENT REQUESTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>PRAKAZREL MICHEL, *ET AL*.<br><br>　　　　　Defendants. | Case No.: 19-148-1 (CKK)<br><br>**DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS 8-11 ("FARA COUNTS") IN THE FIRST SUPERSEDING INDICTMENT; MEMORANDUM IN SUPPORT: REQUEST FOR EVIDENTIARY HEARING**<br><br>[U.S. CONST. AMENDS I & V; FED. R. CRIM. PROC. 12(b); 22 USC § 611, *ET SEQ*.]<br><br>Date:<br>Time:<br>Place: |

COMES NOW DEFENDANT PRAKAZREL MICHEL, by and through counsel of record, David E. Kenner, and, pursuant to U.S. Const. Amendments I and V, Federal Rule of Criminal Procedure 12(b) and 22 USC § 611, *et seq*., moves the Honorable Court to dismiss Counts 8-11 in the First Superseding Indictment because an evidentiary hearing would establish that the government fails to meet its burden with respect to the elements of knowledge and willfulness as required by FARA (22 USC 611, *et seq*.).

1

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY HEARING

This motion is based on these moving papers, the memorandum of points and authorities attached hereto, all the files and records in this case and any evidence or argument which the Honorable Court seeks to hear during or after the hearing on this motion.

DATED: July 22, 2022                           Respectfully submitted,


/s/ David Kenner
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant


/s/ Charles Haskell
Charles R. Haskell
The Law Offices of Charles R. Haskell, Esq.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

# INTRODUCTION

Mr. Michel has been charged with, *inter alia*, violations of the Foreign Agents Registration Act (22 U.S.C. § 611, *et seq*.) ("FARA"), conspiracy to violate FARA and acting as a foreign agent (18 U.S.C. § 951 & 952) [*See* Counts 1, 7, 8, 9, 10 and 11 from the First Superseding Indictment ("FSI")]. It is Defendant's position that the FSI fails to sufficiently show: (1) that Mr. Michel acted as an agent of a foreign principal; (2) that he had an agency relationship with a foreign principal; or (3) that he engaged in political activities of any kind.

Mr. Michel's conduct was commercial in nature, involving typical business activities and legal commercial transactions. Therefore, Mr. Michel's conduct would fall within the private and nonpolitical activities exception to the statutes (*Id.*). This is especially true as applied in this case, given the background and characteristics of the normal type of activity of the Defendant – the underpinnings of all his work as an artist – such as his charitable, political and humanitarian activity, none of which has ever been challenged prior to this case – and all of which are private and non-political activities in furtherance of bona fide trade or commerce and that involve legal commercial transactions.

Further, Mr. Michel's activities and conduct included no attempt to influence any political policy, body or government official. He was simply doing what he had done for decades, while having no knowledge of, nor ever having been instructed about, FARA or any of its obligations. Neither his attorney, George Higginbotham, nor Elliot Broidy, a longtime political professional, had advised him of FARA. This is not, in context, hard to understand as neither of them registered themselves, clearly conveying to Mr. Michel that such an act was not necessary.

**BACKGROUND**

As an international recording artist and entertainer, Mr. Michel combines his talent, artistry and humanitarian efforts to create a global brand to promote humanitarian and commercial endeavors across the globe. As a founding member of the popular music group, *The Fugees*, Mr. Michel has worked tirelessly to use his success to help others in need around the world and to promote commercial and other non-political activities to further his brand and his many humanitarian and commercial projects (*See* Defendant's Non-Evidentiary Motion to Dismiss on Constitutional Grounds, DKT. #37).

Mr. Michel's business model and promotion of his brand as an artist and humanitarian has long been to create contacts across many areas of entertainment, business and culture, and to connect people to create new and successful projects in entertainment and which promote humanitarian projects.

For Mr. Michel, his business, artistic, cultural, entertainment and humanitarian activities have always been combined, and one of his primary responsibilities is to seek contacts and to network to attract investors and other entertainers and people of culture for each of his projects. This is precisely what Mr. Michel was attempting to do with his interactions with individuals during his trips to Hong Kong in 2017 and for related activities in the U.S. In fact, during this timeframe, Mr. Michel was promoting and raising funds for several of his projects, including for Blacture (now ZmBIZI), a technology company that helps minority businesses through a partnership with Microsoft (*See* Michel 302 Interview January 17, 2018 attached hereto as Exhibit 1).

As part of those activities, Mr. Michel did not engage in political activity. As previously set forth in Defendant's Non-Evidentiary Motion to Dismiss on Constitutional Grounds, it is Defendant's position that artists, whose everyday activities and endeavors are necessarily

4

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY
HEARING

intertwined with who they are and what they are ("their brand"), engage in clearly distinguishable conduct from those parties in other recent FARA cases (primarily politicians and political consultants) and whose FARA-regulated conduct can be clearly separated from their personal or other professional endeavors.

The alleged FARA conduct in this case is differentiated from other recent FARA cases in the following ways:

1. Here, Defendant engaged in typical art and entertainment-driven activities with both domestic and international entities, and was clearly not acting as a professional political consultant (*See US v. Rafiekian*, 991 F.3rd 529 (4th Cir. 2019.))

2. None of the activities, writings or statements made by Defendant would be considered political propaganda (*See Meese v. Keene,* 107 S. Ct. 1862 (1987).

3. Defendant had no interactions with foreign government officials (*See id.,* where defendant's activity was found to be as an agent of the Turkish government).

Here, using the Government's broad reading of the FARA's regulatory framework, all of Mr. Michel's international activities as an artist, including his entertainment and humanitarian projects, would require registration – the equivalent of a modern-day shackle around the ankle of a young black artist.

5
DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY
HEARING

intertwined with who they are and what they are ("their brand"), engage in clearly distinguishable conduct from those parties in other recent FARA cases (primarily politicians and political consultants) and whose FARA-regulated conduct can be clearly separated from their personal or other professional endeavors.

The alleged FARA conduct in this case is differentiated from other recent FARA cases in the following ways:

1. Here, Defendant engaged in typical art and entertainment-driven activities with both domestic and international entities, and was clearly not acting as a professional political consultant (*See US v. Rafiekian*, 991 F.3rd 529 (4th Cir. 2019.))

2. None of the activities, writings or statements made by Defendant would be considered political propaganda (*See Meese v. Keene,* 107 S. Ct. 1862 (1987).

3. Defendant had no interactions with foreign government officials (*See id.,* where defendant's activity was found to be as an agent of the Turkish government).

Here, using the Government's broad reading of the FARA's regulatory framework, all of Mr. Michel's international activities as an artist, including his entertainment and humanitarian projects, would require registration – the equivalent of a modern-day shackle around the ankle of a young black artist.

5
DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY HEARING

**PROPOSED WITNESS LIST AND OFFERS OF PROOF**

| Witness Name | Offer of Proof |
|---|---|
| President Barack Obama | Hosted Jho Low in Oval Office and took a picture with himself and First Lady during a holiday event in 2012.  Further, Mr. Michel knew the President but never advocated to him regarding Mr. Low or the PRC even though others may have. |
| President Donald J. Trump | Spoke directly with others such as Steve Wynn and Elliot Broidy about related matters such as the return of Mr. Guo, a Chinese fugitive and foreign national that lives in the United States.  Mr. Michel has never met, conversed with or lobbied President Trump.  By contrast, the other individuals listed above lobbied the President to dismiss charges against Mr. Low. |
| AG Jeff Sessions | Former Attorney General under President Trump who was communicating in writing with the PRC regarding his desire to have the PRC released from custody in China and returned to the U.S., a pregnant CIA agent.  Mr. Sessions was unsuccessful in those efforts until Mr. Michel made it happen. |
| Frank White | Former presidential campaign financial bundler whose job it was to raise money for the Obama presidential campaign.  In 2012, he facilitated a $20M dollar payment for a photo with Mr. Low, a private foreign national who would not have been authorized to enter the White House, let alone to be taken to the Oval Office for a photo-op with the President and First Lady.  He guided Mr. Low through the Secret Service checkpoints to do something which was not authorized.  In 2015, Mr. White received $69M dollars from Aabar Investments, an Abu Dubai investment fund.  Mr. White advised, assisted, and directed Mr. Michel. Mr. White has never been charged. |
| Elliott Broidy | Former Chair of RNC Finance Committee, with a long career working with foreign governments and foreign private entities.  He met w Mr. Low on two different occasions, first in China then in Thailand.  The first trip was to discuss Mr. Low's case in the U.S. and the |

6

| | |
|---|---|
| | second was to discuss the extradition of Mr. Guo. Mr. Broidy received substantial fees and was promised a success fee of $75M dollars.  He disguised the receipt of the monies by arranging for them to transfer into an account held by his wife, Robin Rosenzweig, a non-practicing lawyer.  She in turn entered into an agreement with her husband to provide consulting services paying him the identical amounts of money she received in her law firm.  Mr. Broidy was clearly aware of FARA obligations as he had prepared documents relating to that in other matters that he handled.  He did not advise Mr. Michel that he should consider registering, nor did he advice Ms. Lum David of the same. Most importantly, Mr. Broidy did not himself register under the FARA.  Mr. Broidy entered into a cooperation and agreement to plead to an Information.  This was done in advance of President Trump's leaving office and allowing him to pardon Mr. Broidy. |
| Robin Rosenzweig | See above regarding Elliott Broidy.  To highlight, Mr. Broidy's wife Robin Rosenzweig opened a law firm called Colfax Law Office.  It was a law firm in name only. She did not practice law.  She received funds to her law firm bank account which she transferred to her husband via an agreement between the spouses paying him the identical amounts of money she received in her law firm. Notwithstanding her direct involvement she was not charged by the government.  Although the Government attempts to obfuscate their reasons, on information and belief she is not being pursued was an additional inducement for her husband, Mr. Broidy, to cooperate and enter a plea. |
| George Higginbotham | Formally an entertainment lawyer who represented Mr. Michel with his entertainment career.  Years later, the two ran into each other in an airport.  At that time, Mr. Higginbotham was employed as an attorney by the DOJ.  While employed there, he maintained his own law firm.  He assumed a role of counsel to Mr., Michel and advised him with respect to all issues related to the instant case.  Doing so was a direct |

7

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY
HEARING

| | | |
|---|---|---|
| | | violation of the DOJ rules and regulations. Mr. Higginbotham used his private law firm trust account to receive $41M. He also travelled once to China and another time to Thailand where he personally met with Mr. Low. Mr. Higginbotham agreed to cooperate against his client, Mr. Michel, and as a result he pled guilty to a one-count Information charging him with conspiracy to make false statements. Although he said that he told Mr. Michel to consider registering under FARA, he himself never did. On information and belief, he has been allowed by the government to move to the State of Washington where he continues to practice law. |
| | Barry Bekkedam | A former financial adviser to Mr. Michel. He was investigated for, convicted of and imprisoned for fraud in a matter totally unrelated to this matter. On information and belief, he stole $25M dollars from money in his accounts for the benefit of Mr. Michel. This money was supposed to be used for paying ongoing bills of Mr. Michel's and investments in ongoing projects. Money was not supposed to be disbursed without Mr. Michel's direction and consent however that is exactly what happened. He was represented by Mr. Abbey Lowell during the same timeframe that Mr. Lowell also represented Ms. Lum Davis. |
| | Steve Wynn | Casino magnate and major political donor has been recently served with only a civil complaint for injunctive relief to be forced to register after-the-fact for his direct role in communicating between a Chinese official and President Trump. Mr. Wynn was performing the same activities as Mr. Michel with respect to the status of the Chinese fugitive, Mr. Guo yet Mr. Wynn was named a defendant in a civil case and not in a criminal case although he discussed these issues with a minister from the PRC and directly with President Trump at dinner and by phone. |
| | Harry Lidsky | DOJ OIG Special Agent served as a lead agent in this multi-year investigation. It is expected that he will testify about the various FBI 302s and OIG reports. |

8

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY HEARING

| Paul Manafort | A friend and an associate of Mr. Guo Wengui, a billionaire fugitive from China.  In fact, Mr. Manafort was arrested while a guest on Mr. Guo's significant yacht.  On information and belief, Mr. Manafort has been the countervailing lobbyist with President Trump to try to persuade him not to extradite Mr. Guo from the U.S. to the PRC. |

9

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY HEARING

**MEMORANDUM OF POINTS AND AUTHORITIES**

The FARA provides its own definition of what constitutes a person acting as an agent of a foreign principal: "… any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal…" *See* 22 U.S.C. § 611(c)(1).

Here, though, Mr. Michel acted on his own accord to make introductions between certain foreigners to others as potential investors in his several entertainment business related projects. At no time was Mr. Michel acting at the direction, control, order or request of a foreign principal but was instead, as typical businesspeople do, negotiating contacts and making introductions to further his commercial, non-political causes. Whether Mr. Michel made good on any request by Mr. Low in furtherance of Mr. Michel's ***own*** interests and ***not*** that of Mr. Low's (regardless of what Mr. Low may have thought), those requests alone, without showing that Mr. Michel was ***also*** under the direction or control of Mr. Low, do not fall within the purview of the statute.

There is no evidence to support the notion that Mr. Michel acted under the direction or control of, or that he acted as an agent, employee or servant for, Mr. Low. And any mere request that may have been fulfilled by Mr. Michel, is simply a request.[1] The mere fulfillment of a request cannot, by itself, said to be the same as performing under the direction or control, or acting as a

---

[1] For a good discussion, in context, regarding the term "request" versus those other terms that surround it in the FARA statute, *see* U.S. v. Wynn, 1:22-cv-01372 Document 11-1 Filed 07/18/22, at pp. 39 – 47 attached hereto as Exhibit 1.

10

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY HEARING

servant of, another. At no time did Mr. Michel feel obligated to follow-through with any of the requests that Mr. Low may have asked of him. *Those were mere requests and not conditions to any subsequent benefits.*

Mr. Michel's actions in the United States were of his own volition, not at the request of others and were done to obtain investments for *his* entertainment projects from introductions to investors. Mr. Michel's conduct was not at the behest of Mr. Low. Mr. Michel was always involved in, and continued to be involved in, investing in himself, seeking investment for and developing companies that promote black capitalism and which recognize black entrepreneurs, such as Blacture, a wide-reaching company supporting black entrepreneurship. The Profit and Loss Statements for Blacture and its related entities[2] demonstrate that Mr. Michel has significant funds, other than those allegedly advanced by Lucky Mark and Red Rock IX, which were tied-up in project development. The seizure of funds by the government has made it necessary for Mr. Michel to use other money he has earned over the years:

- Blacture, the company mentioned on the NBCUniversal document (attached hereto as Exhibit 2), lists, for the period January 1, 2018, to October 21, 2019, expenses and development costs of $4,805,952.21 with no offsetting income.
- ZMBIZI Financial Services shows expenses of $119,544.64 for the period January-November 2021.
- ZMBIZI APP, LLC (combining two statements) reports total expenses (net of income) of $649,304.91.

---

[2]   Mr. Michel has provided financial statements to his financial expert, Mr. Richard Malone, CPA for his expert report. *See* Defendant's Notice of Expert Report, DKT. #125.

11

DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION TO DISMISS
COUNTS 8-11 ("FARA" COUNTS); MEMORANDUM IN SUPPORT; REQUEST FOR EVIDENTIARY HEARING

- The total expenses for these companies, which were funded by Mr. Michel, is $5,574,801.76.

Mr. Michel was not obligated to anyone, nor was he working in the interests of anyone else but his own, when attempting to identify and interact with potential foreign investors. His only and relevant primary conduct involved attempting to find U.S.-based counsel for Mr. Low. This is a far cry from the universe (albeit an extremely small one) of FARA cases which clearly involve political contacts and activities with U.S. politicians. Political conduct typically includes lobbying, political consulting, campaign donations, direct communication with government entities.

In 2018, W. Samuel Patten pleaded guilty in the District of Columbia to violating the FARA by engaging in lobbying and political consulting in the United States on behalf of the Opposition Bloc, a Ukrainian political party, without registering under FARA. Patten contacted members of Congress, the executive branch, and the news media; drafted talking points for a Ukraine oligarch for meetings with members of Congress and congressional staff; and helped the oligarch draft articles targeted at the U.S. press.

In 2017, Michael T. Flynn pleaded guilty in the District of Columbia to making false statements to the FBI pertaining to his communications with the Russian Ambassador to the United States.

In 2014, Prince Asiel Ben Israel pleaded guilty in the Northern District of Illinois to failing to register under the FARA as an agent for a foreign government. Ben Israel lobbied as an agent of Zimbabwe for lifting sanctions on Robert Mugabe and other top Zimbabwean government officials. Ben Israel was sentenced to seven months in prison.

Further, the facts of the instant case are clear that Mr. Michel (a) did not engage within the United States in political activities for, or in the interests of a foreign principal; (b) did not act

within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal; (c) did not solicit, collect, disburse, or dispense contributions, loans, money, or other things of value for, or in the interest of, a foreign principal within the United States; (d) did not represent the interests of a foreign principal before any agency or official of the Government of the United States; and (e) did not agree, consent, assume or purport to act as, nor has he never held himself out to be, whether or not pursuant to a contractual relationship, an agent of a foreign principal as defined in the statute.

Mr. Michel did not engage in political activities in the interests of a foreign principal, either within or outside of the United States. None of Mr. Michel's conduct could be construed to be political in nature. Here, Mr. Michel simply attempted to connect Mr. Low with counsel to aid in his defense for charges unrelated and independent of any of Mr. Michel's commercial activities (*see* DOJ-0000095132, an FBI 302 dated 11/15/2019 attached hereto as Exhibit 3).

The allegation in the Indictment that Mr. Michel acted as an agent of a foreign government is absurd on its face. There is no evidence that Mr. Michel acted "at the direction" of the PRC Government nor that he was involved in any lobbying campaigns on behalf of any foreign government. The only request Mr. Michel made to a representative of the PRC Government was ***in the interests of the United States*** when he assisted in safely returning to the U.S. a pregnant CIA agent captured and imprisoned in China.

Further, there is no evidence, and the Indictment fails to sufficiently allege, that Mr. Michel can be said to be a "public-relations counsel," a "publicity agent" or an "information service employee" as defined by FARA. Mr. Michel has never engaged directly or indirectly informed, advised, or in any way represented a foreign principal in any public relations matter pertaining to political or public interests, policies, or relations of such principal, nor is there any evidence to

support that he has engaged in the publication or dissemination of any written or oral information in violation of FARA, or that he has engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data with respect to the political aspects of other countries or foreign governments.  There is no evidence that Mr. Michel engaged in any of that type of political activity, the kind Congress intended to regulate with the FARA.

Mr. Michel has also never worked in any official or non-official capacity as a public relations counsel or publicity agent, or as a representative for anyone but himself and his brand.  His several meetings to connect a foreign person with finding counsel in the U.S. is not remotely public relations activity and clearly not in the capacity of an information services employee or analysis as described in the statute. *See* 22 U.S.C. § 611(h) and (i).

# CONCLUSION

Mr. Michel, an artist who for many years has established and progressed his brand by making contacts and creating introductions was doing just that when he assisted Mr. Low to find counsel in the United States. He did this in his own interests to secure contacts for investment in his projects.

Mr. Michel was simply doing what he had done for decades, while having no knowledge of, or having ever been instructed about, FARA or any of its obligations. Neither his attorney, Mr. Higginbotham, nor Elliot Broidy, someone who was knowledgeable about the FARA registration requirements – nor anybody else with whom he came into contact over the relevant timeframe – had even brought up FARA or had any discussion regarding foreign agent registration of any kind. Mr. Michel relied on the actions of others who were similarly situated to him—had they raised FARA as an issue or registered themselves, Mr. Michel would have then been aware of its requirements and would have taken appropriate action.

Fundamentally, Mr. Michel's conduct was commercial in nature, involving typical business activities and legal commercial transactions. That type of commercial activity is protected under the First Amendment *and* under FARA's non-political activity exception. Mr. Michel, through his attorney, Mr. Higginbotham, set up legal entities and bank accounts to ensure compliance with all business requirements for his entertainment and telecommunications projects, and for accepting investment funds. Those same corporate entities and related bank accounts also managed the vendors and expenses for those projects, whether they had foreign investment or were capitalized by Mr. Michel himself. Regardless, under FARA, Mr. Michel's conduct would be considered private and nonpolitical activities and therefore excepted.

There is no evidence that Mr. Michel's activities and conduct included attempts to influence any political policy, body or government official. Although Mr. Michel acted on his own accord to make introductions between certain foreigners and others as potential investors in his several entertainment business-related projects, at no time was Mr. Michel acting at the direction, control, order or request of a foreign principal but was instead, as typical businesspeople do, negotiating contacts and ensuring a pipeline of potential investors.

WHEREFORE, based on the above as well as all the files and records in the case, Mr. Michel would respectfully ask this Honorable Court grant Defendant's motion to dismiss counts 8-11 of the FSI.

DATED: July 22, 2022                    Respectfully submitted,

/s/ **David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant

/s/ **Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell, Esq.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant