Kenner Law Firm
David Kenner, SBN 41425
16633 Ventura Blvd., Ste. 735
Encino, CA 91436
Phone: (818) 995-1195
Fax: (818) 475-5369
Email: David@KennerLaw.Com

Attorney for Defendant
Prakazrel Michel

**ORAL ARGUMENT REQUESTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.: 19-148-1 (CKK) |
| Plaintiffs, | ) DEFENDANT MICHEL'S NOTICE OF MOTION AND MOTION FOR AN ORDER DISMISSING THE INSTANT INDICTMENT WITH PREJUDICE DUE TO SELECTIVE PROSECUTION; |
| vs. | ) |
| | ) [U.S. Const. Amends. I, V & XIV] |
| PRAKAZREL MICHEL, *ET AL*. | ) Date: _____ |
| | ) Time: \_\_\_\_ |
| | ) The Honorable Colleen Kollar-Kotelly |
| Defendants. | ) |

TO THE UNITED STATES ATTORNEY FOR DISTRICT OF COLUMBIA AND HIS / HER HANDLING ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on _____, _____ at the hour of \_\_\_\_\_ a.m. / p.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Colleen Kollar-Kotelly of the above-entitled court, Defendant Prakazrel Michel will move the Honorable Court motion to dismiss the First Superseding Indictment due to selective prosecution and discriminatory practices against Mr. Michel. At the least, Mr. Michel would respectfully request

that the Court open the matter for discovery on the issues raised herein and then conduct an extensive evidentiary hearing.

The motion will be based on this notice of motion, on the attached memorandum of points and authorities, Exhibits 1-4, all the papers and records on file in this action and on such oral and documentary evidence as may be presented at the hearing of the motion.

DATED: July 22, 2022                Respectfully submitted,


                                        **/s/ David Kenner**
                                        David E. Kenner
                                        Kenner Law Firm
                                        16633 Ventura Blvd., Suite 735
                                        Encino, CA 91436
                                        (818) 995-1195
                                        Email: david@kennerlaw.com
                                        CA Bar No.: 41425
                                        Counsel for Defendant


                                        **/s/ Charles Haskell**
                                        Charles R. Haskell
                                        The Law Offices of Charles R. Haskell, Esq.
                                        641 Indiana Ave. NW
                                        Washington, DC 20004
                                        (202) 888-2728
                                        Email: Charles@CharlesHaskell.com
                                        DC Bar No.: 888304007
                                        Retained Counsel for the Defendant

DEFENDANT MICHEL'S MOTION TO DISMISS DUE TO SELECTIVE PROSECUTION
MEMORANDUM IN SUPPORT; EXHIBITS 1-4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## RELEVANT FACTS AND PROCEDURAL HISTORY

Mr. Michel, an internationally known recording artist, rapper and humanitarian has been in the crosshairs of the Government from the beginning. Mr. Michel is also one of several individuals involved in the activities referred to in the First Superseding Indictment (*See* U.S. v. Prazakrel Michel, 1:19-cr-00148) (the "Indictment") and related cases (*See U.S. v. Nickie Mali Lum Davis*, 1:20-cr-00068 and *U.S. v. Elliott Broidy*, 1:20-cr-00210), yet *he* is the individual singled out by the Government as the one person who shall be made an example.

Most problematic with this is that Mr. Michel is in no different position than any of the other individuals charged with violating the FARA. Mr. Michel, unlike others similarly situated, has been indicted twice,[1] has been the target of governmental and prosecutorial misconduct (*See* Defendant's Motion to Dismiss for Outrageous Government Conduct filed July 22, 2022); has been pressured to plead guilty but refused; and has received highly problematic and severely delayed discovery with ESI non-compliant ESI productions that cannot searched, causing undue burden on Defendant as he attempts to prepare for trial.

In comparing the relevant facts of Mr. Michel's situation with other similarly situated individuals, Mr. Michel is the *only* Defendant facing FARA charges who conducted himself in the best interests of the United States rather than on behalf of foreign principal or Government. For example, Mr. Michel helped to facilitate the return of a pregnant CIA agent captured by the Chinese Government and imprisoned there. *See*, DOJ-0002643705, attached hereto as Exhibit 1.

---

[1] On May 2, 2019 Mr. Michel was served with an initial indictment alleging four (4) counts. After his refusal to plea, the Government upped the ante and served him with eight (8) additional counts via the First Superseding Indictment on June 10, 2021.

Mr. Michel remains the only person who has refused to plead guilty and who has refused to succumb to the Government's pressure. He is the only one in this case, and in related matters, to be scapegoated. He is the one person who the Government has decided to discriminate against—and to make an example of—even though he is being charged no differently than others. In fact, in Mr. Michel's case, there is no evidence to support the FARA allegations in the Indictment. Others similarly situated – facing similar violations and charges – have fared much better. While Mr. Michel has been under constant attack and forced to mount an aggressive defense, others have been either ignored, pardoned or pressured into cooperating.

Below is a list of several individuals who have been involved in clearly political activity with foreign principals and who are similarly situated to Mr. Michel, yet who have not been targeted by the Government in remotely the same way:

(i) *Mr. Elliott Broidy*, former Chair of RNC Finance Committee, with a long career working with foreign governments and foreign private entities. He met w Mr. Low on two different occasions, first in China then in Thailand. The first trip was to discuss Mr. Low's case in the U.S. and the second was to discuss the extradition of Mr. Guo. Mr. Broidy received substantial fees and was promised a success fee of $75M dollars. He disguised the receipt of the monies by arranging for them to transfer into an account held by his wife, Robin Rosenzweig, a non-practicing lawyer. She in turn entered into an agreement with her husband to provide consulting services paying him the identical amounts of money she received in her law firm. Mr. Broidy was clearly aware of FARA obligations as he had prepared documents relating to that in other matters that he handled. He did not advise Mr. Michel that he should consider registering, nor did he advice Ms. Lum David of the same. Most importantly, Mr. Broidy did not himself register under the FARA. Mr. Broidy entered into a cooperation and agreement to plead

to an Information. This was done in advance of President Trump leaving office and allowing him to pardon Mr. Broidy;

(ii) Mr. Broidy's wife, *Robin Rosenzweig* of Colfax Law Office, a law firm in name only but not in practice (*See* DOJ-0000093381, an FBI 302 by Jeffrey S. Coleman dated 11/08/2018, page 3-4 attached hereto as Exhibit 2):

> "While COLFAX (COLFAX LAW OFFICE, hereafter COLFAX) did not generally have a role in BROIDY's work, ROSENZWEIG had a role in everything. ROSENZWEIG was an exceptional writer, while BROIDY was not. Whenever he was working on something that required a flourish, ROSENZWEIG would handle it. She consulted on all of his major business decisions. She was not a litigator. If anything, she was an entertainment lawyer, but she really did not practice law.";

(*See*, DOJ-0002545444 Interview of Erica Hilliard on 11/08/2018, Page 4 attached hereto as Exhibit 3).

Ms. Rosenzweig had received funds to her law firm bank accounts which she then transferred to her husband via an agreement between the spouses but set out as a consulting agreement paying Mr. Broidy the identical amounts of money she received in her law firm accounts. Notwithstanding her direct involvement she was not charged by the Government. Although the Government attempts to obfuscate their reasons, on information and belief she is not being pursued was an additional inducement for her husband, Mr. Broidy, to cooperate and enter a plea.

(iii) *Mr. Frank White*, the former presidential campaign financial bundler whose job it was to raise money for the Obama presidential campaign. In 2012, he facilitated a $20M dollar payment for a photo with Mr. Low, a private foreign national who would not have been authorized to enter the White House, let alone to be taken to the Oval Office for a photo-

1   op with the President and First Lady.  He guided Mr. Low through the Secret Service

2   checkpoints to do something which was not authorized.

[Screenshot of White House visitor records showing:
- Visitor Name: JHO,LOW,T
- Visit Date/Time (11/30/12 6:30P)
- Persons Visiting: Pres/First Lady
- Location: White House, State Floor level
- From: White_House_Visitor_Records_Requests.csv]

From: https://obamawhitehouse.archives.gov/goodgovernment/tools/visitor-records

10  *Also see* DOJ-0002397748 at page 39, lines 13-16 (attached hereto as Exhibit 4) where

11  FBI agent Sean Fern confirms white house visitor logs.

12      In 2015, Mr. White received $69M dollars from Aabar Investments, an Abu Dhabi

13  investment fund.  Mr. White advised, assisted, and directed Mr. Michel. Mr. White has

15  never been charged.

16  (iv)   *Mr. Higginbotham*, formally an entertainment lawyer who represented Mr. Michel with

17      his entertainment career.  Years later, the two ran into each other in an airport.  At that

18      time, Mr. Higginbotham was employed as an attorney by the DOJ.  While employed

19      there, he maintained his own law firm.  He assumed a role of counsel to Mr. Michel and

20      advised him with respect to all issues related to the instant case.  Doing so was a direct

22      violation of the DOJ rules and regulations (5 C.F.R. § 3801.106).  Mr. Higginbotham

23      used his private law firm trust account to receive $41M from Aabar Investments, an Abu

24      Dhabi investment fund.  He also travelled once to China and another time to Thailand

25      where he personally met with Mr. Low.  Mr. Higginbotham agreed to cooperate against

26      his client, Mr. Michel, and as a result he pled guilty to a one-count Information charging

27      him with conspiracy to make false statements. Although he said that he told Mr. Michel

to consider registering under FARA, he himself never did. On information and belief, he has been allowed by the Government to move to the State of Washington where he continues to practice law;

(v) Former President *Barack Obama* Hosted Jho Low in Oval Office and took a picture with himself and First Lady during a holiday event in 2012.  Further, Mr. Michel knew the President but never advocated to him regarding Mr. Low or the PRC even though others may have;

(vi) Former President *Donald J. Trump*, who spoke directly with others such as Steve Wynn and Elliot Broidy about related matters such as the return of Mr. Guo, a Chinese fugitive and foreign national that lives in the United States.  Mr. Michel has never met, conversed with or lobbied President.  By contrast, the other individuals listed above lobbied the President to dismiss charges against Mr. Low;

(vii) *Paul Manafort*, one time advisor to President Trump and a friend and an associate of Mr. Guo Wengui, a billionaire fugitive from China.  In fact, Mr. Manafort was arrested while a guest on Mr. Guo's significant yacht.  On information and belief, Mr. Manafort has been the countervailing lobbyist with President Trump to try to persuade him not to extradite Mr. Guo from the U.S. to the PRC;

(viii) *Mr. Jeff Sessions*, former Attorney General under President Trump who was communicating in writing with the PRC regarding his desire to have the PRC released from custody in China and returned to the U.S., a pregnant CIA agent. Mr. Sessions was unsuccessful in those efforts until Mr. Michel made it happen;

(ix) *Mr. Steve Wynn*, Casino magnate and major political donor has been recently served with only a civil complaint for injunctive relief to be forced to register after-the-fact for his direct role in communicating between a Chinese official and President Trump.  Mr.

7

Wynn was performing the same activities as Mr. Michel with respect to the status of the Chinese fugitive, Mr. Guo yet Mr. Wynn was named a defendant in a civil case and not in a criminal case although he discussed these issues with a minister from the PRC and directly with President Trump at dinner and by phone;

(x) *Mr. Guo Wengui*, a Chinese billionaire, and fugitive who attempted to lobby officials within the United States Government for his safety and protection and on whose super-yacht, Paul Manafort was arrested.

# II
# LEGAL DISCUSSION

### A. Selective Prosecution

A selective prosecution claim has two elements. First, a defendant must establish that the prosecutorial policy "had a discriminatory effect." *U.S. v. Armstrong*, 517 U.S. 456, 465 (1996). To show that effect, a defendant must show that the Government afforded "different treatment" to persons "similarly situated" to him. *Id*. at 470. When a person's circumstances "present no distinguishable legitimate prosecutorial factors that might justify" different prosecutorial decisions between him and the defendant, that person is similarly situated to the defendant. *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000). Courts, however, "narrowly" interpret the phrase "similarly situated." *United States v. Stone,* 394 F. Supp. 3d 1, 31 (D.D.C. 2019).

Here, Mr. Michel was afforded very different treatment than all others similarly situated, including defendants in other and related cases. For example, Mr. Michel has been charged with additional counts beyond the original few, Mr. Michel has been denied travel and livelihood during this entire time and he has suffered brand reputation damages, which to him as an artist, is highly devastating.

Second, a defendant must show that the prosecutorial policy had "a discriminatory purpose," *Armstrong*, 517 U.S. at 465, meaning that the Government prosecuted that defendant "because of" his membership in an identifiable group. *See Wayte v. United States*, 470 U.S. 598, 610 (1985). Direct evidence of that purpose is rarely available, so courts permit defendants to use statistical disparities and other indirect evidence to show intent. *See United States v. Khanu*, 664 F. Supp. 2d 28, 33 (D.D.C. 2009).

Here Mr. Michel was singled out and specifically discriminated against as he is the only individual to be criminally charged with such a broad breadth of counts – and he just happens to be

the only black rapper in the mix. All others are white, politically connected and charged only civilly, or if criminally, with substantially less charges and a carefully negotiated plea agreement.

A selective prosecution claim often requires discovery into the Government's files, an effort that will "divert prosecutors' resources" and possibly disclose their strategy. *Armstrong*, 517 U.S. at 468. To minimize that burden, a defendant must present "at least a colorable claim" of selective prosecution before any discovery is permitted. *See Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982). A colorable claim is one that presents "some evidence tending to show the existence of the essential elements" of selective prosecution. *Armstrong*, 517 U.S. at 468.

This "colorable claim" standard is a "significant" and "rigorous" one. *Id*. at 464, 468. A defendant must make a "colorable claim" as to both elements of selective prosecution, not just one. *Irish People*, 684 F.2d at 932, 947; *see also United States v. AT&T, Inc.*, 290 F. Supp. 3d 1, 4 (D.D.C. 2018). And that claim requires "some evidence." *Armstrong*, 517 U.S. at 468. A defendant cannot, for example, rely merely on Government selectivity in prosecuting individuals for similar conduct—that would amount to a showing of prosecutorial discretion. *See United States v. Diggs*, 613 F.2d 988, 1003 (D.C. Cir. 1979). Instead, for the first prong, a defendant must make "a credible showing of different treatment of similarly situated persons." *Armstrong*, 517 U.S. at 470. And for neither prong can a defendant rely on "personal conclusions based on anecdotal evidence." *Id*.

Selectivity alone does not render prosecution unlawful, *Oyler v. Boles*, 368 U.S. 448, 455-56 (1962); *Moss v. Hornig*, 314 F.2d 89 (2nd Cir. 1963); rather, to be unlawful, the decision to prosecute must be predicated on some unjustifiable standard. *Oyler, supra*, 368 U.S. at 456; *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (prosecution unlawful if it is an act of discrimination against those who exercise their First Amendment rights).

The fact that Mr. Michel was charged criminally and had millions of dollars of his money seized while so many others involved in the exact same conduct in related events have been either charged civilly, with lesser charges or not at all clearly presents *more than* a colorable claim of selective prosecution. For example, consider the case of the casino mogul Steve Wynn where there is an absence of a criminal filing and only a civil complaint – or those who have been pardoned or not charged including serious political players and former senior level government officials.

**1. Selective Prosecution and FARA**

The D.C. Circuit has previously set forth the standard to be applied where selective prosecution is advanced as a defense to a FARA enforcement action: "If the district court were to identify evidence which colorably shows that this newspaper was singled out for enforcement while those expressing views on the other side of the controversy were left alone and '"the prosecution was undertaken with the motive to suppress' protected expression." Mem. Op. at 4, J.A. at 115 (quoting *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975) (*en banc*)); *Attorney General v. The Irish People*, *supra*, 684 F.2d at 956.

If a defendant can be found to have met the "selection" prong of the prima facie case for selective prosecution, it must then establish that the selection is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification ... including the exercise of protected statutory and constitutional rights ...." *Wayte*, *supra*, 105 S.Ct. at 1531 (citations omitted). To be sure, "[t]he conscious exercise of some selectivity in prosecuting individuals for similar conduct is permissible." *Diggs*, *supra*, at 1003, cert. denied, 446 U.S. 982 (1980) (emphasis added) (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

*In the specific context of FARA*, the D.C. Circuit noted that the text of the Act and its legislative history "permit use of limited resources to target those alleged agents deemed most dangerous or powerful (i.e., saboteurs, terrorists)." 684 F.2d at 956. What would be impermissible

would be to use the power of prosecution "selectively to manage the information put before the American people in debates over foreign policy." *Id*. The Circuit continued: "If the district court were to identify evidence which colorably shows that this newspaper was singled out for enforcement while those expressing views on the other side of the controversy were left alone and the prosecution was undertaken with the motive to suppress protected expression, the defendants would have made the requisite colorable showing of selective prosecution." *Id*.

Mr. Michel is being singled out specifically because he has not relented in his pursuit of an aggressive defense.  Mr. Michel, unlike others listed here, **has not** been left alone, has been charged and then re-charged with additional counts.  Mr. Michel is being unfairly and selectively prosecuted, effectively as an arbitrary classification best described as, 'people who don't plead guilty early and show deference to the prosecution, and who don't consent to forfeiture.

The Government's actions in targeting and attacking Mr. Michel without sufficient evidence to establish each element of the offense, and for tying-up his income and funds via the civil forfeiture case are discriminatory against Mr. Michel.

# III

# CONCLUSION

WHEREFORE, for the foregoing reasons and based on all the files and records in this case, Mr. Michel would respectfully request that the Honorable Court grant Defendant's motion to dismiss the First Superseding Indictment due to selective prosecution and discriminatory practices against Mr. Michel. At the least, Mr. Michel would respectfully request that the Court open the matter for discovery on the issues raised herein and then conduct an extensive evidentiary hearing.

DATED: July 22, 2022                    Respectfully submitted,


/s/ **David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant


/s/ **Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell, Esq.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Dated:       July 22, 2022                         /s/ Charles R. Haskell
                                                   Charles R. Haskell
                                                   DC Bar No.: 888304007
                                                   641 Indiana Ave. NW
                                                   Washington, DC 20004
                                                   Tel. (202) 888-2728
                                                   Charles@CharlesHaskell.com
                                                   *Counsel for Defendant*

cc:

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1301 New York Ave. NW
Washington, D.C. 20350