Filed with Classified
Information Security Officer

Date 4/4/2022

UNITED STATES OF AMERICA

v.

PRAKAZREL MICHEL (1)

)
)
)
)
)
)
)
)

Criminal No. 19-148-1 (CKK)

~~Ex Parte, In Camera, SEALED~~ unsealed
August 23, 2022
Judge CKolla-Kte

## MEMORANDUM OPINION
(April 4, 2022)

This matter comes before the Court on the Government's Classified *Ex Parte, In Camera*, Under Seal Motion and Memorandum of Law in Support of Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure ("Motion" or "Mot.").

For the reasons that follow, and upon consideration of the briefing, the relevant authorities, and the entire record, the Court shall **GRANT** the Motion.

## I.   (U) Background

(U) On May 2, 2019, a grand jury returned an eleven-count indictment against Michel and his co-Defendant, Malaysian national Low Taek Jho ("Low"). Superseding Indictment, ECF No. 85 at 1. The charges in the Superseding Indictment arise from an alleged scheme between Michel and Low to funnel money from Low and other straw donors into the 2012 Presidential

Election and to conceal the true contributions from the Federal Election Commission ("FEC"). *Id.* Beginning at some time in 2017, Michel and Low conspired with at least three other individuals, Elliott Broidy, Nickie Lum Davis ("Davis"), and George Higginbotham—who have all since either been charged or convicted in this Court or, in Davis' case, the United States District Court for the District of Hawaii—"to wage an illegal, back-channel lobbying campaign to: (1) convince the Administration of the President of the United States ('Administration') and the United States Department of Justice ('DOJ') to drop forfeiture proceedings and related investigations into Low for the embezzlement of billions of dollars from 1Malaysia Development Berhad ('1MDB'), a strategic investment and development company wholly owned by the Government of Malaysia; and (2) convince the Administration and DOJ to send a high-profile dissident of the [People's Republic of China] living in the United States back to the PRC." *Id.* at 2.

(U) Davis has since pled guilty to one count of aiding and abetting violations of the Foreign Agents Registration Act. Mem. Of Plea Agreement, ECF No. 15, Case No. 20-cr-68-LEK (D. Haw. Aug 31, 2020). The Government represents that she continues to cooperate with the Government in this case and others and appears to suggest that, should this case go to trial, the Government would call Lum as a witness in its case-in-chief. *See* Mot. at 4. In the meantime, the Court has held successive status conferences in this case, most recently on January 11, 2022. At that status conference, the Government, rather cryptically, discussed the possibility of a discovery dispute that the parties would attempt to resolve prior to the next status conference, currently set for April 4, 2022. It appears that the Government intends to resolve the discovery dispute by this pending Motion.

2



## II.    (U) Legal Standards

(U) In general, the Government must provide a defendant with all exculpatory "material" relevant to the guilt or punishment of the accused. *Brady v. Maryland*, 373 U.S. 83 (1963). Evidence is "material" where, if not disclosed, "there is a reasonable probability that . . . the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Material" evidence includes that which a defendant could use to impeach a government witness. *United States v. Giglio*, 405 U.S. 150 (1972). Additionally, by statute, the government must disclose pretrial statements made by a witness that is related to the subject matter of their testimony. 18 U.S.C. § 3500(b). Local Rule 5.1 further requires the government to disclose various categories of information, including *Brady* material, "regardless of whether the information would itself constitution admissible evidence" and "in a reasonably usable form unless that is impracticable." LCrR 5.1(a). That said, "[a]t any time the [C]ourt may, for good cause, deny, restrict, or defer discovery for inspection." Fed. R. Crim. P. 16(d)(1).

(U) Where, however, such material has been classified, the Court looks to CIPA. *United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006) (RBW). CIPA "does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013). Indeed, CIPA stands at equal stature with the Federal Rules of Criminal Procedure governing criminal discovery, and "contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information." *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989). In relevant part, CIPA permits

> [t]he court, upon a sufficient showing, [to] authorize the United States to delete specified items of classified information from documents to be made available to the defendant to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

CIPA § 4. To do so, the government must first move for *ex parte* review and, upon granting such relief, "the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of appeal." *Id.*

(U) For a substitute summary of information, the Court has wide discretion to approve suitable substitutions. *See Sedaghaty*, 728 F.3d at 905. These unclassified substitutions "need not be of 'precise, concrete equivalence,' and the 'fact that insignificant tactical advantages could accrue to the defendant by use of the specified classified information should not preclude the court from ordering alternative disclosure." *Id.*

(U) As for deletions, if the information to be deleted is irrelevant or unhelpful to the defense, the Court's inquiry is over. *Meija*, 448 F.3d at 455. If, however, the information is relevant, the Court must determine if the privilege claimed by the Government "is at least a

4

colorable one." *Yunis*, 867 F.2d at 623.  If so, then the Court must balance the Government's (and public's) interest in national security against the defendant's need for the information. *Meija*, 448 F.3d at 445 (citation omitted).  Special attention must be paid to whether producing the classified material would implicate the sources and methods used to collect the material. *Yunis*, 867 F.2d at 623 (citing *CIA v. Sims*, 471 U.S. 159, 175 (1985)).

(U) Before continuing, it should be added that a defendant also has a right to file their own *ex parte* submission outlining their theory of the defense while the Court reviews the Government's classified, *ex parte* filing.  *See Sedaghaty*, 728 F.3d at 906.  Defendant Michel has made no such filing here.

### III.    (U) Discussion







(U) With these opening remarks, the Court now turns to the classified material at issue.

## A.  (U) Substitutions

███ The Government proposes the following substitution:

> The U.S. Government assesses that, during times relevant to this case, ██████████ had contact with a known intelligence officer affiliated with Israel. ██████ may have facilitated business contacts for this individual, potentially to include Chinese investors. The U.S. Government further assesses that this known intelligence officer devoted substantial time in recent years to developing investors from Asia for Israeli-owned business, efforts that included hosting Chinese delegations in Los Angeles.

████████████████████████████████ The substitution therefore

adequately describes the nature of the acts for which Defendant might seek to impeach ████

while also protecting the national security interest at play.

███ The Government proposes the following substitution:

> The United States Government assesses that ████████ used ████████████ and her family's political networks to route foreign money to political campaigns and to make other direct payments. ████████████ has affiliations with Chinese political organizations.



███████████████████████████ The substitution therefore adequately

describes the nature of the acts for which Defendant might seek to impeach ████ while also

protecting the national security interest at play.

████ The Government proposes the following substitution:

████ listed ███████████████ as a point of contact on travel documents. ████ is a
Chinese national.

██████████████████████████ As such, the Government's proposed substitution

adequately balances the impeachment value of the material and the national security interests

therein.



(U) The Government proposes the following substitution:

The United States Government assesses that ▮▮▮▮▮▮▮ and the ▮▮▮ family, together with counterparts in China, are potentially involved in criminal activities, including the funneling of money from China into the United States and conspiring to improperly influence U.S. officials.

▮▮▮▮▮▮▮▮▮▮ As such, the Government's proposed substitution adequately balances the impeachment value of the material and the national security interests therein.



The Government proposes the following substitution:

was the subject of a FBI national security investigation into role in facilitating illegal campaign contributions, unlawful money transfers, and unduly influencing U.S. officials, including in connection with the Democratic Republic of the Congo and China. The family have been associated with Elliot Broidy, Prakazrel Michel, and Jho Tack Low.

As such, the Government's proposed substitution adequately balances the impeachment value of the material and the national security interests therein.

1

███████████

███████████████████████████
████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████
████████████████████████████
██████████████

████████████ The government's proposed summary reads:

The United States Government assesses ████████████████ and others may have acted as foreign agents of the Chinese government. ███████████████ has been instrumental in arranging meetings between high-level Chinese government officials and senior U.S. government officials. ███████ maintains direct contact with influential government officials in the United States and China. The United States Government assesses that the Chinese government compensates the █████ family in exchange for providing access to the family's network, which the Chinese government potentially exploits.

█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████ As such, the

Government's proposed substitution adequately balances the impeachment value of the material

and the national security interests therein.

(████████████████████████████████████████████████
██████████████████████████

██████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████

███



(U) The Government's proposed substitution reads:

During relevant times to this case, ▮▮▮▮▮▮▮▮ was in contact with phone numbers associated with the Chinese government, including senior officials. During this time, ▮▮▮▮ was in contact with a delegation of Chinese government officials who met with then-President Donald Trump. ▮▮▮▮ also communicated with the White House in connection with this delegation. ▮▮▮▮ was also in communication with multiple individuals convicted from federal crimes and other subjects of federal criminal investigations.

As such, the Government's proposed substitution adequately balances the impeachment value of the material and the national security interests therein.

(U) The Government's proposed substitution reads:

For a multi-year period ending in 2018, ▓▓▓▓▓▓▓ sent and/or received thousands of calls and/or text messages from a phone number belonging to ▓▓▓▓▓▓▓, who fled the Congo in 1998. ▓▓▓ sent and received money from Congo and France from at least 2003 until 2017. Members of the ▓▓▓ family have an interest in raw materials mined heavily in Congo, and three companies associated with the ▓▓▓ are based in the Congo. Members of the ▓▓▓ family appear to be transferring money in and out of the DRC using wire transfers and by physically carrying case.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Accordingly, the Government's proposed

substitution adequately balances the evidentiary value of the material and the national security

interests therein.

[REDACTED] Defendant Michel still receives

through this unclassified summary the potential *Giglio* material while appropriately balancing

any national security interests therein.

█████████████

███████████████████████████████████

██████████████  ████  ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████ The Government's proposed substitution reads:

> Between May 2017 and December 2017, ████████████ had dozens of calls and/or
> text messages with a phone number belonging to ████████████████████ a member of
> the DC city council who served a prison sentence for bribery. ████████ previously pleaded
> guilty to a misdemeanor for making a contribution to a Senate campaign that exceeded
> federal limits.

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Accordingly, the Court finds that the Government's proposed summary adequately balances the

*Giglio* import of the production while securing the potential national security interests at issue.





The government proposes the following substitution:

> The U.S. Government has received information indicating that ▓▓▓▓▓▓▓▓▓▓ had close ties to several senior government officials of China and that ▓▓▓ has been a source and asset for China's Ministry of State Security ("MSS") for a multi-year period ending in 2016.  The U.S. Government also received information indicating that the MSS was using ▓▓▓▓, Pras Michel, and Elliott Broidy to influence the U.S. Government in connection with the extradition of Guo Wengui.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Accordingly, the

substitution adequately balances the national security interest in such information with the *Giglio*

information available to Michel.

The government proposes the following substitution:

> The U.S. Government received information indicating that, according to senior Chinese government officials, ████████████ was an agent for the Ministry of State Security ("MSS"), and that ████ was trained in various intelligence techniques and strategies, including human collection, technical collection, and cyber activity. The U.S. Government further received information indicating that ████ was tasked by the MSS to perform various intelligence functions inside the United States, of which ████ was apparently knowledgeable.

████████ Accordingly, the Court concludes that this substitution adequately balances national security with Defendant's interest in *Giglio* material.



The government proposes the following substitution:

> The U.S. Government received information indicated that ███████████ family had ties to China's Ministry of Security Services in Hong Kong.  Further information identified a location in Los Angeles, CA as a location through which money was routed. Open source information indicates ████ and ███ family are associated with this location. The U.S. Government also received intelligence training overseas, potentially in China, and that ███ is reporting to China's National Security Commission, with former-senior Chinese government officials potentially serving as ███ points of contact.

███████████████████████████  Accordingly, the Court concludes that this substitution

adequately balances national security with Defendant's interest in *Giglio* material.

The Government proposes the following substitution:

The U.S. Government received information indicating that � ▓▓▓▓▓▓▓▓▓ ▓ had attended a meeting in China in 2017 attended by senior Chinese government officials. The meeting was also attended by Elliot Broidy. Subsequent travel records show ▓▓▓▓ ▓▓▓▓▓▓▓▓ was in China at the time of the meeting.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Accordingly,

the Court concludes that this substitution adequately balances national security with Defendant's

interest in *Giglio* material.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Government's proposed redaction would read:

▓▓▓▓▓▓▓▓▓▓ was provided as a U.S. contact for multiple visa applications submitted between 2005 and 2010 on behalf of Chinese nationals traveling to the United States, one of whom was married to an individual FBI assesses to be a known intelligence officer for the Ministry of State Security in China.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ Accordingly, the Court finds that the proposed substitution adequately balances

national security interests with Michel's interest in *Giglio* material.

## B.  (U) Deletions

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



Accordingly, the Court agrees that this classified portion would ████████████ not add to Michel's Defense.

## IV.    (U) CONCLUSION

(U) For the foregoing reasons, the Court shall **GRANT** the Motion in its entirety.  An appropriate order accompanies this Memorandum Opinion.

Dated: April 4, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge