**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| PRAKAZREL MICHEL (1),<br>Defendant. |

Criminal No. 19-148-1 (CKK)

**OMNIBUS MEMORANDUM OPINION AND ORDER**
(September 13, 2022)

Defendant Prakazrel Michel ("Defendant" or "Michel"), with co-Defendant Low Taek Jho

("Low"), is charged by indictment with a variety of criminal offenses arising from three alleged

conspiracies to unlawfully launder foreign money to influence American elections and foreign

policy. Before the Court are Defendant's four[1] motions to dismiss the indictment in part or in

whole. For each motion, Defendant advances a different theory: (1) Counts 8-11 of the

Superseding Indictment should be dismissed because the Foreign Agents Registration Act

("FARA") is unconstitutionally vague and overbroad; (2) the entire Superseding Indictment should

be dismissed because Michel relied on advice of counsel in undertaking the allegedly criminal

actions; (3) the entire Superseding Indictment should be dismissed because the Government has

selectively prosecuted Michel in violation of the First, Fifth, and Fourteenth Amendments; and (4)

the entire Superseding Indictment should be dismissed because the Government has engaged in

"outrageous conduct" in violation of the Fifth Amendment.

At this stage of briefing, all but one theory fails. In an abundance of caution, the Court

---

[1] The Court presumes that Defendant withdrew his substantively identical [116] and [117] motions to dismissing counts 9-11 of the Indictment by filing his later-in-time [130] Motion to Dismiss Counts 8-11 ("FARA Counts") in the First Superseding Indictment.

shall set an evidentiary hearing on Defendant's final argument, that the Government returned the Superseding Indictment exclusively to punish Defendant for exercising his right to proceed to trial. Accordingly, and upon  consideration of the Superseding Indictment, briefing, relevant legal authorities, and record as a whole, the Court **DENIES** Defendant's [130] Motion to Dismiss Counts 8-11 ("FARA Counts") in the First Superseding Indictment, **DENIES** Defendant's [131] Motion for an Order Dismissing the Instant Indictment Due to Selective Prosecution, **DENIES** Defendant's [132] Motion to Dismiss Due to Advice of Counsel, and **DENIES IN PART AND HOLDS IN ABEYANCE IN PART** Defendant's [133] Motion for an Order Dismissing the Indictment with Prejudice Due to Outrageous Government Conduct.[2]

---

[2] For the pending motions, the Court's consideration has focused on the following documents:

- United States' Response in Opposition to Defendant's Motion to Dismiss Counts 8-11 ("FARA Counts"), ECF No. 128 ("FARA Opp.");
- Defendant's Motion to Dismiss Counts 8-11 ("FARA Counts") in the First Superseding Indictment, ECF No. 130 ("FARA Mot.");
- Defendant's Motion for an Order Dismissing the Instant Indictment Due to Selective Prosecution, ECF No. 131 ("Selective Pros. Mot."); and
- Defendant's Motion to Dismiss Due to Advice of Counsel, ECF No. 132 ("Advice of Counsel Mot.");
- Defendant's Motion for an Order Dismissing the Indictment with Prejudice Due to Outrageous Government Conduct, ECF No. 133 ("Conduct Mot.");
- United States' Response in Opposition to Defendant's Motion to Dismiss Due to Advice of Counsel, ECF No. 139 ("Advice of Counsel Opp.");
- United States' Response in Opposition to Defendant's Motion to Dismiss for Outrageous Governmental Conduct, ECF No. 140 ("Conduct Opp.");
- United States' Response in Opposition to Defendant's Motion to Dismiss Indictment on the Basis of Selective Prosecution, ECF No. 141 ("Selective Pros. Opp.");
- Defendant's Reply to Government's Opposition to His Motion Regarding Selective Prosecution, ECF No. 148 ("Selective Pros. Repl.");
- Defendant's Reply to Government's Opposition to Dismiss Due to Outrageous Governmental Conduct, ECF No. 149 ("Conduct Opp.");
- Defendant's Reply to Government's Opposition to Mr. Michel's Motion to Dismiss FARA Counts, ECF No. 150 ("FARA Repl."). and
- The Superseding Indictment, ECF No. 84 ("Indictment").

In an exercise of its discretion, the Court finds that holding oral argument in this action

## I.      BACKGROUND

For a more detailed explanation of the material facts alleged in the operative Superseding Indictment, the Court refers the reader to the latest memorandum opinion and order in this matter, ECF No. 153.

### A.  Factual Background

For purposes of a motion to dismiss, the Court must accept the facts alleged in the indictment as true. *United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019). Accordingly, the facts recited here provide information pertinent to assessing Defendant's legal challenges to the Indictment, but should not be read to "signal the Court's point of view about the accuracy of the allegations or the defendant's guilt or innocence in this case. The facts have yet to be proved, and the defendant is presumed to be innocent unless and until the government proves his guilt beyond a reasonable doubt." *Id*.

In summary terms, this criminal case centers on three alleged conspiracies.  First, Michel and Low allegedly "secretly funnel[ed] foreign money . . . [from] other straw donors" to two political action committees that supported a candidate for President of the United States ("Candidate") during the 2012 Presidential Election, "while concealing from the candidate, the committees, the FEC, the public, and law enforcement the true source of the money."  Indictment at 4-5.  Michel and co-conspirators intended to funnel approximately $1,000,000, to be contributed via a June 2012 fundraiser that the Candidate would attend.  *Id.*  The emails suggest that Michel knowingly solicited contributions from foreign individuals via wires from offshore companies. *See id.* at 10.  Michel organized several straw donors, providing them funds to themselves make individual contributions to political action committees supporting the Candidate.  This scheme was

---

would not be of assistance in rendering a decision.  *See* LCrR 47(f).

so successful that it earned Michel and Low personal access to the Candidate on two separate occasions.  *See id.*  Throughout the conspiracy, Michel and his straw donors concealed the true, foreign source of the contributions in violation of 52 U.S.C. §§ 30109 and 20122, 18 U.S.C. §§ 1001(a)(1) and 2, and 18 U.S.C. §§ 1519 and 2.

Second, the Indictment alleges a broad conspiracy beginning in March 2017 to assist the Malaysian Prime Minister in convincing the President of the United States to order the Department of Justice to drop investigations into Low for graft related to a Malaysian sovereign wealth fund. *See id.* at 24, 30-33.  Michel and Low worked with George Higginbotham, at that time an attorney at the United States Department of Justice, Elliott Broidy, a businessman and former Deputy Finance Chair of the Republican National Committee, and Nickie Lum Davis, a California businesswoman and a foreign agent operating at the behest of the People's Republic of China. Both Higginbotham and Broidy have pleaded guilty before this Court for their roles in this conspiracy, Broidy to "Conspiracy to Serve as an Unregistered Agent of a Foreign Principal, in violation of 18 U.S.C. § 371" and Higginbotham to "Conspiracy to Make False Statements to a Bank in violation of 18 U.S.C. § 371."  Plea Agreement at 1, ECF No. 8, *United States v. Broidy*, Crim A. No. 20-0210 (CKK) (Oct. 20, 2020);  Plea Agreement at 1, ECF No. 14, *United States v. Higginbotham*, Crim. A. No. 18-343 (CKK) (Nov. 30, 2018). Lum Davis has also pleaded guilty, to failure to register under FARA and aiding and abetting, in violation of 18 U.S.C. § 2 and 22 U.S.C. §§ 612 and 618(a), for her role in the conspiracy.  Mem. of Plea Agreement at 2, ECF No. 15, *United States v. Lum Davis*, CR. No. 20-00068 LEK (Aug. 31, 2020).

In this conspiracy, beginning in or around March 2017, Michel allegedly assisted Low in executing a retainer agreement with Higginbotham and funneling illicit wire transfers from Low to Higginbotham, Lum Davis, and Broidy.  Indictment at 29.  The Indictment identifies specific

emails and wire transfers in March 2017 formalizing the agreement between Low and his co-conspirators. *Id.* at 30.   Michel played a crucial role in facilitating and fraudulently concealing these wire transfers that funded the scheme. *Id.* at 29-30.   It also details a purported meeting on May 2, 2017, in which the parties strategized how to best exert influence on the President of the United States and his administration. *Id.* at 31.   It further describes Michel's role in drafting talking points for the Malaysian Prime Minister on the issue for an upcoming meeting between the Malaysian Prime Minister and the President of the United States. *See id.* at 33.

Third and finally, Michel conspired with Lum Davis, Higginbotham, Broidy, Low, and a government official of the People's Republic of China to lobby the President of the United States and his administration to extradite a Chinese national and dissident back to the People's Republic of China. *Id.* at 34.   The conspiracy with the Chinese government began on May 18, 2017, when Michel traveled to Hong Kong to meet with his co-conspirators and, upon his arrival, was shuttled from Hong Kong to Shenzhen, China. *See id.*   There, the Chinese minister allegedly told the co-conspirators that he "was having trouble scheduling meetings with certain high-ranking United States government officials." *Id.* at 34.   The Indictment describes subsequent meetings and wire transfers in August and September 2017, including in Macau, China, in which the co-conspirators allegedly discussed the structure of additional payments from Low to further the backchannel lobbying campaign. *Id.* at 36-37.   It also claims Low told the co-conspirators that he was "concerned that United States banks would not allow him to transfer large sums of money in or through the United States financial system." *Id.* at 36.   Michel allegedly suggested that the money be mischaracterized as "funds for entertainment purposes" to conceal their true source. *Id.*

Finally, the Indictment adds two counts for criminal conduct allegedly completed after the end of the three conspiracies. After the filing of the first indictment in this case, ECF No. 1, Michel

purportedly threatened two witnesses to change their testimony before the Government. The Indictment identifies two texts by date that it alleges "intimidate[d], threaten[ed], and persuade[d]" potential witnesses after the inception of this case. First, the Indictment alleges that Michel "caused a text message to be sent" on July 14, 2019, "threatening [a] [s]traw [d]onor [] with potential legal and reputational harm, including threatening to refer [them] to the United States Department of Justice for criminal investigation" allegedly "in an effort to cause [them] to falsely characterize" a conduit payment from Michel "as a loan" and to stop them "from providing testimony." *Id.* at 22. Second, the Indictment claims Michel "caused a text message to be sent threatening to refer" a witness "to federal law enforcement . . . in an effort to cause him to withhold his testimony." *Id.* at 23.

### B. Procedural Background

The Government commenced this criminal matter with the filing of the first indictment on July 14, 2019. At that time, the operative indictment included only the first, election-fraud conspiracy. *See United States v. Michel*, Crim. A. No. 19-148 (CKK), 2019 WL 579669, at *1-2 (D.D.C. Nov. 6, 2019). On August 30, 2019, Defendant filed his first motion for a bill of particulars, which the Court granted in part on November 6, 2019. *Id.* at *1. The Court ordered the Government to identify all individuals in the indictment whom the Government intended to characterize as co-conspirators at trial. *Id.* at *18. This case entered a lull for much of the early stage of the COVID-19 pandemic, in part due to Defendant retaining new counsel. *See* Joint Motion to Reschedule Status Conference, ECF No. 79 (June 4, 2021). On June 10, 2021, the Government filed the operative Superseding Indictment. The parties informed the Court on April 4, 2022 that Defendant intended to resolve this case at trial, and the Court entered its [106] Pretrial Scheduling Order on April 29, 2022.

Since then, the parties have engaged in a substantial amount of motions practice.  The Court has already resolved two discovery disputes, one of which proceeded under seal pursuant to the Classified Information Procedures Act, 95 Stat. 2025 *et seq.*  Additionally, the Court denied Defendant's [115] Motion for Bill of Particulars by memorandum opinion and order on September 9, 2022.  Remaining before the Court are Defendant's [130] Motion to Dismiss Counts 8-11 ("FARA Counts") in the First Superseding Indictment, [131] Motion for an Order Dismissing the Instant Indictment Due to Selective Prosecution, [132] Motion to Dismiss Due to Advice of Counsel, and [133] Motion for an Order Dismissing the Indictment with Prejudice Due to Outrageous Government Conduct.  With these motions fully briefed, the Court turns to their resolution.

## II.    LEGAL STANDARDS

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), a criminal defendant may, before trial, move to dismiss a count of the indictment based on a "defect in the indictment."  As relevant here, defects include "failure to state an offense."  Id.  "Failure to state an offense" may be due to a question of statutory interpretation or a constitutional issue.  *See United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019).  When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" the Court must "presume the allegations [in the] indictment to be true."  *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks removed).  "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  *United States v. Sanford Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

### III.    DISCUSSION

### A.  FARA Counts

Defendant first moves to dismiss the FARA and section 951 counts in the Superseding Indictment on First and Fifth Amendment grounds.[3]   As a practical matter, any constitutional challenge to the FARA statute is foreclosed by binding Circuit precedent, precedent that Defendant neither discusses nor even acknowledges.  *See Att'y Gen. of U.S. v. Irish People, Inc.*, 796 F.2d 520, 526 (D.C. Cir. 1986) (on First Amendment retaliation claim in civil suit to compel registration, "the enforcement of [] FARA for the purposes expressed in the statute does not infringe the exercise of constitutional rights").   In short, "it is well settled that FARA is constitutional."  *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 935 & n.23 (D.C. Cir. 1982) (collecting cases).   Nevertheless, the Court shall exercise its discretion to respond to both of Defendant's arguments on the merits.

As to overbreadth, it is unclear whether Michel attempts to make a facial attack or merely an as-applied challenge.   In either case, the argument fails.   To succeed on a facial challenge, the movant must show "'that no set of circumstances exists under which [the challenged law] would be valid or that the statute lacks any plainly legitimate sweep.'"  *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (brackets altered and footnote omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).   In the First Amendment context, the court may also invalidate a law as overbroad if "'a substantial number of its applications are unconstitutional, judged in relationship to its plainly legitimate sweep.'"  *Id*. (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).   This latter course, however, is "strong

---

[3]  Strictly speaking, this first motion requests dismissal of counts 8 to 11.  This numbering appears to be a typo.   Counts 9 and 11 relate only to Low, and Defendant lacks standing to challenge charges exclusive to his co-defendant. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991).

medicine" to be prescribed "sparingly[,] only as a last resort," and only upon a showing of protected instances that would, in fact, violate the law at issue. See *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988).  For an as-applied challenge,  a movant "must show that the [law] is unconstitutional as applied to their particular speech activity." *Edwards*, 755 F.3d at 1001.  An as-applied challenge can prevail only if the movant's "conduct is, in fact, expressive." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016); *see also Texas v. Johnson*, 491 U.S. 397, 403 (1989).

As the Supreme Court has explained, FARA "itself neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals." *Meese v. Keene*, 481 U.S. 465, 478 (1987).  Rather, FARA and section 951 regulate, and regulate only, notification to the Attorney General upon being retained as an agent of a foreign principal.  *See United States v. Peace Info. Ctr.*, 97 F. Supp. 255, 262 (D.D.C. 1951) (FARA "merely requires persons carrying on certain activities to identify themselves by filing a registration statement").  The reach of FARA and section 951 is not, as Defendant evidently believes, inclusive to artistic and musical endeavors. Instead, the statutes "prevent[] covert influence over U.S. policy by foreign principals" by requiring domestic agents to inform the Attorney General, and thereby the public, "of the true source or sponsor behind the information being disseminated for its consideration." *See United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019).  Because, strictly speaking, FARA and section 951 do not penalize *speech*, but rather the lack of registration, any facial challenge under the First Amendment fails.  Furthermore, because the *actus reus* here is failure to notify the Attorney General before undertaking an illicit scheme to change American prosecutorial policies as to the investigation of foreign graft and the extradition of a Chinese national, an as-applied challenge fails as well.

As to vagueness, the Court begins from the presumption that "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). A law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). This is a "'stringent standard.'" *United States v. Sandlin*, 575 F. Supp. 3d 16, 30 (D.D.C. 2021) (quoting *United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344 at *4 (D.D.C. Apr. 16, 2021)). The vagueness determination "must be made on the basis of the statute itself and other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants." *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5 (1964).

As an initial matter, the Court is at a loss in determining exactly what provision of FARA Defendant thinks vague. Defendant's briefing does not actually identify any particular statutory text; indeed, Defendant devotes less than a page to the argument, going no further that explicating Supreme Court precedent (and a nonbinding Seventh Circuit case) on the matter. Although it is not the Court's role to invent arguments on a party's behalf, *see EEOC v. Geo. Wash. Univ.*, Civ. A. No. 17-1978, 2020 WL 3489478, at *17 (D.D.C. June 26, 2020), the Court will endeavor to address Defendant's challenge, such as it is.

In the Court's review, it appears no defendant has ever challenged FARA's registration requirement on vagueness grounds. That is likely because it is, and has been since its inception, straightforward and "sufficiently precise." *See Peace Info. Ctr.*, 97 F. Supp. at 264. It bars "lobbying," engaging in "political activities," and collecting and disbursing money on behalf of a foreign principal without providing notice to the Attorney General of the United States. 22 U.S.C.

§ 611(c)(i)-(iv).  In this regard, the key actus reus is not "engaging in political activities"  but rather the omission of failing to register.  Defendant seems to imply that he is being prosecuted for his musical talents.  FARA Mot. at 3.  He is not, and even if he were, FARA does not sweep so broadly.  Rather, FARA criminalizes, in clear terms, failure to register in advance of engaging in the delineated political activities.  The corollary foreign agent statute, 18 U.S.C. § 951, also "plainly and concretely identifies the conduct which constitutes its violation, and the statute's language is clear and unambiguous."  *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010).  It clearly bars acting on behalf of a foreign principal without prior notification to the Attorney General, *id.* 951(a), and applicable regulations define each relevant term, 28 C.F.R. §§ 73.1 *et seq.*[4]  Without any further argument from Defendant, the Court cannot conclude that either statute fails to give Defendant adequate notice of what is prohibited.

Defendant also appears to argue that both statutes are vague because the Government has opted to pursue a civil enforcement action, rather than a criminal case, against another businessman who allegedly lobbied the prior administration to extradite the same Chinese dissident without notification to the Attorney General.  FARA Mot. at 9-10.  As this Court has recently explained, the "[G]overnment's charging decisions [generally] have no bearing on the vagueness analysis."  *United States v. Grider*, --- F. Supp. 3d ---, 2022 WL 392907, at *7 (D.D.C. Feb. 9, 2022).[5]  In other words, "'the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague.'"  *Id.* (quoting *United States v. Nordean*, 579 F. Supp. 3d 28, 51 (D.D.C. 2021)).  The key question is not whether the Government has decided to pursue different charges,

---

[4] Defining, for example, "agent" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official."  28 C.F.R. § 73.1(a).

[5] *Accord, e.g.*, *United States v. Robertson*, --- F. Supp. 3d ---, 2022 WL 2438546, at *2 n.1 (D.D.C. July 5, 2022) (collecting cases).

or no charges, for the same or similar conduct, but rather whether the statute gives a Defendant fair warning that his conduct is, in fact, unlawful.  Because the two applicable statutes clearly proscribe political advocacy at the behest of a foreign official, any vagueness challenge must fail.

### B.  Selective Prosecution

Defendant next argues that the Government has selectively prosecuted him in violation of the Due Process Clause of the Fifth Amendment.  The Court must attach a "presumption of regularity" to the Government's charging decisions.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996).  A prosecutor's discretion, however, is subject to constitutional limits.  *Id.*  "In order to dispel the presumption that a prosecutor has not violated [the Fifth Amendment's guarantee of] equal protection, a criminal defendant must present 'clear evidence to the contrary.'"  *Id.* at 465 (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)).  In other words, the defendant must "show both (1) that he was singled out for prosecution from others similarly situated and (2) that his prosecution was motivated by a discriminatory purpose."  *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009) (CKK).  "[T]h[is] standard is a demanding one."  *Armstrong*, 517 U.S. at 463.

Beginning first with the "discriminatory purpose" prong, Defendant has offered neither direct evidence nor statistical disparity to permit any inference of discriminatory motivation.  *See Khanu*, 664 F. Supp. 2d at 33 (holding that failure to provide "any 'evidence specific to [a defendant's] case that would support an inference" of racial animus is fatal to selective prosecution claim (quoting *McCleskey v. Kemp*, 481 U.S. 279, 286-87 (1987)).  In other words, because Defendant fails to provide "any evidence, beyond his own speculation" of discriminatory purpose, his selective prosecution claim must fail.  *See United States v. Barnes*, 2019 WL 5538550, at *8 (D.D.C. Oct. 24, 2019) *aff'd* 481 F. Supp. 3d 15 (D.D.C. 2020).

Nor can Defendant demonstrate that a similarly situated defendant outside of a protected class has been treated differently.  Given the nature of the alleged offenses, the universe of "similarly situated" defendants is quite small.  A "similarly situated" defendant is "'one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.'"  *Khanu*, 664 F. Supp. 2d at 32 (quoting *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008)).  The Court must construe those "similarly situated" narrowly. *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019). Here, a "similarly situated" defendant would be one who engaged in a conspiracy to illicitly affect American policy without notification to the Attorney General of his foreign principal.

Defendant points to the following individuals:  Elliott Broidy, Robin Rosenzweig (Broidy's wife), Frank White, George Higginbotham, former President Barack Obama, former President Donald J. Trump, Paul Manafort, former Attorney General Jeff Sessions, Steve Wynn, and Guo Wengui.  As noted above, Broidy and Higginbotham were alleged co-conspirators in the latter two schemes.  According to Defendant, Frank White was a fundraiser for then President Barack Obama who purportedly facilitated contact between then President Obama and Low at a fundraiser. Selective Pros. Mot. at 5-6.  Guo Wengui is allegedly the Chinese dissident whose extradition the People's Republic of China sought; Michel claims that Guo, with Paul Manafort's assistance, lobbied administration officials to remain in the United States.  *See id.* at 8.  Steve Wynn allegedly engaged in a similar scheme to represent Chinese interests in securing Guo's extradition, a scheme for which Wynn is now subject to a civil enforcement action seeking an order mandating he retroactively register as a foreign agent under FARA.  *Id.* at 7-8.  It is unclear what connection Defendant thinks former Attorney General Sessions has with the charged conspiracies.  *See id.* at 7.

Any reliance on Broidy, Higginbotham, and Manafort is inapt because the Government has charged each of them with criminal violations arising from the same or similar schemes. Putting aside whether the President, in whom the Executive power vests pursuant to Article II of the Constitution, can function as an "agent" of a foreign principal within the meaning of FARA and section 951, there is no factual basis at present to believe that former President Trump entered into an illicit scheme with a foreign principal to shift American policy. Former President Obama and White are both inapt comparisons because they are African-American and therefore members of the same protected class as Michel. *See Armstrong*, 517 U.S. at 465; *Richards v. Gelsomino*, 814 F. App'x 607, 610 (D.C. Cir. 2020). Former Attorney General Sessions, Guo, and Rozensweig are not similarly situated because they did not allegedly "engage[] in the same type of conduct" as Michel; i.e., they did not engage in a scheme with a foreign official to furtively shift government policy in exchange for tens of millions of dollars. *See Stone*, 394 F. Supp. 3d at 31; *see also Khanu*, 664 F. Supp. 2d at 32 (concluding that unindicted co-conspirators were not "similarly situated" where they did not "t[a]k[e] a leadership role in the conspiracy"). Finally, Wynn is not similarly situated insofar as the Government opted to maintain a civil enforcement action, as opposed to criminally prosecuting Wynn, because, according to the Government, the Government may have been concerned that it could not show that Wynn "willfully" violated FARA. *See United States v. Navarro*, Crim A. No. 22-200 (APM) (Sept. 12, 2022) (slip op.), at 5 (delineating circumstances defeating "similarly situated" inference).

Therefore, having failed to show disparate treatment or discriminatory purpose, Michel's selective prosecution challenge fails.

### C.  Advice of Counsel

Defendant next moves to dismiss the entire indictment based on a proffered advice-of-counsel defense.  An advice-of-counsel defense is, of course, an affirmative defense.  *United States v. West*, 392 F.3d 450, 457 (D.C. Cir. 2004).   Even assuming *arguendo* that an advice-of-counsel defense is of some legal import in this case, a "'motion to dismiss [an indictment] is not the proper way to raise a factual defense.'"  *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015).  This is so because, at the motion to dismiss stage, "[t]he district court must presume the allegations of the indictment to be true . . . and may not dismiss an indictment on a determination of facts that should have been developed at trial."  *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).  Here, the Superseding Indictment is silent as to any purported attorney-client relationship between Michel and any other member of the alleged conspiracies, and the Court may not supplement an indictment with a defendant's proffered facts.  *See id.* Accordingly, the Court may not dismiss the indictment based on Michel's purported advice-of-counsel defense.[6]

### D.  Outrageous Conduct

Finally, Defendant levels a bevy of unsupported accusations and baseless innuendo in an effort to dismiss the entire indictment.  He first insists, in short order, that the Government coerced Higginbotham and Lum Davis, his co-conspirators, into guilty pleas.  To the extent these claims merit a response from the Court, it need only be noted that Defendant lacks standing to contest

---

[6]  As an alternative to dismissal, Michel requests an evidentiary hearing.  Counsel Mot. at 8. Should the Court determine that Defendant has offered a proper foundation for an advice-of-counsel defense, trial will serve as Defendant's evidentiary hearing, for it is ultimately the province of the jury to determine whether Michel in fact relied on any attorney's advice.  *See United States v. Howard*, 245 F. Supp. 2d 24, 39 (D.D.C. 2003).  If Defendant intends to pursue an advice-of-counsel defense at trial, he may raise it at an appropriate time, e.g., at the motion *in limine* stage.

alleged government misfeasance as to nonparties to this case.  *See Powers v. Ohio*, 499 U.S. 400, 410 (1991).  His further suggestion that the Government commenced this prosecution without evidence is similarly baseless.  Defendant seizes on the fact that the Government has issued a trial subpoena after indictment.  That the Government has continued its investigation into the alleged conspiracies is wholly unremarkable, particularly given the national-security implications of the alleged facts, and Defendant proffers no facts permitting the Court to reject the presumption of regularity that otherwise attaches to a grand jury's finding of probable cause.  *See United States v. Akinyoyenu*, 199 F. Supp. 3d 34, 36 (D.D.C. 2016) (JEB) ("The Court will only consider dismissing an indictment if the defendant shows that the prosecutor instituted some error or irregularity—more than a mere assertion that the prosecutor presented inadequate, unreliable[,] or incompetent evidence." (internal quotation marks removed)).

Defendant's argument that the Government vindictively returned the operative Superseding Indictment merits further discussion. To show that the Government returned a superseding indictment vindictively, a defendant may rely, in certain rare situations, on "facts [that] indicate 'a realistic likelihood of vindictiveness," at which point the Government must come forth with "objective evidence justifying" the superseding indictment.  *See United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27-29 (1974)). However, merely returning a superseding indictment after a defendant refuses to plead, and even threatening the defendant that the Government may return a superseding indictment should the defendant refuse to plead, do not constitute vindictive prosecution.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("openly present[ing] [a] defendant with the unpleasant alternatives of forgoing trial or facing charges on which he is plainly subject to prosecution, d[oes] not violate" the Fifth Amendment).

"[I]n the run-of-the-mill pretrial situation, the prosecutor [does] not have any reason to engage in vindictive behavior; . . . defendants routinely assert procedural rights prior to trial and [] prosecutors are unlikely to respond vindictively to this everyday practice." *Meyer*, 810 F.2d at 1247. For example, in a pretrial posture, "'the prosecutor's assessment of the proper extent of prosecution may not have crystalized,' so an increase in charges may [often] be the result of additional information or further consideration of known information." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)). As such, to show vindictiveness here, Defendant must point to "'something [more] than routine invocations of procedural rights,'" such as declining a plea offer. *See United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (quoting *Meyer*, 810 F.2d at 1247)).

In an effort to suggest that there is "something more" here, Defendant relies on a variety of cases. In *United States v. Kore*, 614 F. Supp. 2d 573 (W.D. Pa. 2009), for example, the defendant had successfully appealed the initial charges, the initial charges were themselves entirely baseless, and the defendant secured dismissal on remand. *Id.* at 584. Likewise, in *United States v. Wood*, 36 F.3d 945 (10th Cir. 1994), a new indictment followed the successful dismissal of prior charges. *Id.* at 946-47. Defendant's reliance on *United States v. Velsicol Chem. Corp.*, 498 F. Supp. 1255 (D.D.C. 1980) is similarly misplaced. In that case, the Court was confronted with actual evidence of vindictiveness and the Government offered no reason why it returned a superseding indictment other than the corporate defendant's insistence on a *nolo contendere* plea. *See id.* at 1264-65. That said, had that court concluded that there was only a presumption of vindictiveness, and no actual evidence, due to mere timing, such analysis would appear to be foreclosed by the United States Court of Appeals for the District of Columbia Circuit's subsequent decisions in *Meyer* and *Meadows*.

17

Nevertheless, because the Government has not yet proffered an explanation for the Superseding Indictment, the Court shall, in an abundance of caution, hold an evidentiary hearing to determine whether the Government returned the Superseding Indictment exclusively to punish Defendant for exercising his right to trial. The Court shall set that hearing by separate order.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED**, that Defendant's [130] Motion to Dismiss Counts 8-11 ("FARA Counts") in the First Superseding Indictment is **DENIED**. It is further

**ORDERED**, that Defendant's [131] Motion for an Order Dismissing the Instant Indictment Due to Selective Prosecution is **DENIED**. It is further

**ORDERED**, that Defendant's [132] Motion to Dismiss Due to Advice of Counsel is **DENIED**. It is further

**ORDERED**, that Defendant's [133] Motion for an Order Dismissing the Indictment with Prejudice Due to Outrageous Government Conduct is **DENIED IN PART AND HELD IN ABEYANCE IN PART**.

**SO ORDERED.**

Dated: September 13, 2022

_____
/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge