IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                                      )<br>)<br>)<br>PRAKAZREL MICHEL,                                  )<br>LOW TAEK JHO                                         )<br>) | Crim. No. 1:19-cr-148 |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE, ARGUMENT, OR TESTIMONY
RELATED TO COMMUNICATIONS WITH GEORGE HIGGINBOTHAM**

The defendant, Prakazarel Michel, is charged with, among other things, serving as an undisclosed foreign agent for a wealthy Malaysian fugitive, Low Taek Jho (Low). Michel previously moved to dismiss the Superseding Indictment contesting willfulness by asserting an advice-of-counsel defense based on his conversations with his then co-conspirator and attorney, George Higginbotham, who Michel claimed never advised him about the need to register as a foreign agent under the Foreign Agents Registration Act (FARA), 22 U.S.C. § 611 *et seq.* Michel now shifts course and moves to exclude any evidence, argument, or testimony that Higginbotham did advise Michel regarding FARA, claiming that such advice is privileged. During the pendency of the investigation, the government's filter team sought and received judicial authorization for the investigative team to review communications between Higginbotham and Michel in part because the crime-fraud exception to the attorney-client privilege applied. The reasons that underpin that ruling still hold true today, and Michel's motion should be denied.

1

**BACKGROUND**

On May 2, 2019, a grand jury in the District of Columbia returned a four–count indictment charging Michel and Low for a foreign conduit contribution scheme concerning the U.S. presidential election in 2012. Indictment, ECF No. 1. On June 10, 2021, a grand jury in the District of Columbia returned a twelve–count superseding indictment that also charged Michel and Low with executing an undisclosed foreign influence campaign, in violation of FARA and 18 U.S.C. § 951.[1] Superseding Indictment, ECF No. 84.

Relevant to the instant motion, the Superseding Indictment alleges that between approximately March 2017 and January 2018, Michel entered into a "secret agreement" with Low in which Low would pay millions of dollars to Michel and others "to lobby the Administration and DOJ to drop the investigation of LOW for his role in the embezzlement of billions of dollars from 1MDB." *Id.* ¶ 99. As part of this scheme, Michel, Low, and others concealed from the U.S. government that Elliott Broidy, the Deputy Finance Chair of the President's political party, "was acting on behalf of LOW." *Id.* It is further alleged that Michel and others agreed to "act in the United States as agents of PRC Minister A," a foreign government official, "by working to lobby the Administration and DOJ to arrange for the removal and return of PRC National A—a dissident of the PRC living in the United States—back to the PRC all at the direction of PRC Minister A and the PRC government." *Id.* ¶ 100.

---

[1] In addition to the original indictment's four counts and the FARA and § 951 counts, the Superseding Indictment charges Michel and Low with an additional count of conspiracy to violate FARA and § 951 and to commit money laundering (Count Seven), and charges Michel alone with two counts of witness tampering related to the foreign conduit contribution scheme (Counts Five and Six), and one count of conspiring to make false statements to banks (Count Twelve).

One of Michel's co-conspirators in this scheme was George Higginbotham, an associate of Michel who was an attorney with the DOJ. *Id.* ¶ 18. Among the acts he took in furtherance of their scheme, Higginbotham prepared a purported consulting agreement intended to falsely characterize Michel's work for Low, *id.* ¶ 124; he met with the PRC Ambassador to the United States, at Michel's direction, to advise about the ongoing progress involving the extradition of PRC National A, *id.* ¶ 145; he traveled with Michel to Macau, China in September 2017, "to meet with LOW to discuss ways to continue to funnel LOW's money into the United States to pay those involved in the lobbying campaigns[,]" *id.* ¶ 147; and, subsequent to that trip, he controlled a bank account that, at Michel's request, received approximately $41 million from Low in October 2017, *id.* ¶ 149. Relatedly, Michel is charged in the Superseding Indictment with a conspiracy to make false statements to banks in which Michel conspired with Higginbotham "to funnel millions of dollars from foreign bank accounts into United States bank accounts controlled by MICHEL by misrepresenting to financial institutions the source and purpose of the funds." *Id.* ¶ 160. As alleged, Michel and Higginbotham made misrepresentations to U.S. banks to ensure the transfer and receipt of monies controlled by Low to fund the undisclosed foreign lobbying campaign. *See id.* ¶¶ 158-81.

On August 21, 2017, the government obtained a search and seizure warrant for the personal email accounts of Michel and Higginbotham. *See In re Redacted Filings in Sealed 17-mj-619*, 1:21-sc-03805-BAH (D.D.C.), ECF No. 2, Ex. 1. The government assigned a filter team to review the materials, who in turn filed an *ex parte*, *in camera* motion seeking authorization to review past and future communications between Higginbotham and Michel and his agents. *Id.*, Ex. G. The Chief Judge granted the filter team's motion finding that a *prima facie* showing had been made that the crime-fraud exception to the attorney-client privilege applied. *Id.*, Ex. I at 20.

## ARGUMENT

### I.  Any Attorney-Client Privilege between Higginbotham and Michel is Vitiated By the Crime-Fraud Exception

Michel seeks a finding that all communications with Higginbotham regarding Michel's "various entertainment and humanitarian endeavors" were privileged, including the allegations in this case. Def. Mot. to Dismiss, ECF No. 160 at 3. Because Michel recruited Higginbotham to be a co-conspirator in the charged conduct—conduct to which Higginbotham has pleaded guilty as a criminal participant in the scheme—the attorney-client privilege is vitiated by the crime-fraud exception.

The attorney-client privilege applies to "confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). The crime-fraud exception "comes into play when a privileged relationship is used to further a crime, fraud, or other fundamental misconduct." *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982). When such conduct is at issue, the attorney-client privilege no longer applies. *See In re Grand Jury*, 475 F. 3d 1299, 1305 (D.C. Cir. 2007) ("Attorney-client communications are not privileged if they 'are made in furtherance of a crime, fraud, or other misconduct.'") (quoting *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985)). "The privilege for communications between client and attorney ceases when the purpose of the privilege is abused, when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act." *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986).

Two conditions must be met for the crime-fraud exception to apply: "First, the client must have made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act. Second, the client must have carried out the crime or fraud." *In re*

*Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997) (footnote and citations omitted). "The privilege is the client's, and it is the client's fraudulent or criminal intent that matters." *Id.*

Michel contends that he hired Higginbotham in his role as an attorney and that Higginbotham acted as a traditional attorney would: drafting contracts; facilitating corporate entities; and offering legal advice to Michel. ECF No. 160 at 4. As an example of such legal advice, Michel points to a single instance in the course of Higginbotham's scheme with Michel— the advice Higginbotham provided to Michel that they should register under FARA for their respective activities during the criminal scheme, which Michel refused to do. ECF No. 160 at 5- 6. But Higginbotham did not act as a legitimate attorney to simply provide Michel legal advice which Michel chose not to follow. Higginbotham was an active participant in the ongoing criminal scheme and pleaded guilty for his role in the conspiracy. *See In re Redacted Filings in Sealed 17-mj-619*, 1:21-sc-03805-BAH, ECF No. 2, Ex. G (*Ex Parte*, *In Camera* Crime-Fraud Motion); *Id.*, Ex. I (Mem. Op.); *United States v. George Higginbotham*, 1:18-cr-00343-CKK (D.D.C.), ECF Nos. 1, 13, 14 (Information, Factual Basis for Plea, and Plea Agreement).

Among other things, at Michel's direction, Higginbotham drafted retainer and consulting agreements designed and intended to conceal Low's involvement in the influence campaigns and corresponding financial transactions—the gravamen of the 2017 offenses with which Michel is charged. *Higginbotham*, 1:18-cr-00343-CKK, ECF No. 13 ¶ 5. Further, in July 2017, Higginbotham, at Michel's direction, went to the Chinese Embassy to deliver a message to the Chinese Ambassador to evidence the co-conspirators influence efforts: "United States government officials were working on the matter involving Foreign National 1 and there would be additional information in the future concerning the logistics of returning Foreign National 1 to Country Q." *Id.* ¶ 7. As tens of millions of dollars poured into accounts associated with Michel at Low's

direction, Higginbotham understood that the "purpose of the funds was to pay [Broidy] and others to lobby United States government officials to (1) resolve the 1MDB matters, and (2) have Foreign National 1 removed from the United States and sent back to Country Q." *Id.* ¶ 8. Between May and September 2017, "[t]o make the international fund transfers appear legitimate," Higginbotham "worked on various fake loan documents, investment agreements, and consulting contracts" all at Michel's direction. *Id.* ¶ 9. In September 2017, Higginbotham traveled to China to meet with Michel and Low to "discuss[] strategies for secretly funneling more of [Low's] money into the United States to further the lobbying campaign, including coming up with cover stories to explain the movement of money and to conceal the fact that the money was associated with [Low]." *Id.* ¶ 10. Finally, between September and December 2017, Higginbotham and Michel concealed and made false statements to banks about the true source and nature of the funds from Low intended to further the lobbying scheme. *Id.* ¶¶ 14-17.

Higginbotham has testified before the grand jury and participated in interviews with the government about conversations he had with Michel regarding FARA registration during the course of the scheme. In an interview with the FBI, Higginbotham provided the following information:

> When HIGGINBOTHAM and MICHEL began discussing the GUO matter, HIGGINBOTHAM believed they should consider FARA. On more than one occasion, HIGGINBOTHAM recommended MICHEL register under FARA. HIGGINBOTHAM believed he mentioned FARA to MICHEL before the meeting at the Chinese Embassy. MICHEL dismissed HIGGINBOTHAM'S suggestions. MICHEL did not want to go through the registration process and feared being stopped in airports.

DOJ-105625-26. That meeting occurred on or about July 16, 2017—contemporaneous with, and during, Michel and Higginbotham's ongoing criminal scheme. ECF No. 84 ¶ 145.

Michel points to a raft of cases to support his argument that a client's mere consultation with counsel and later commission of a crime cannot, on its own, vitiate the attorney-client privilege. *See* ECF No. 160 at 6-7 (citing *In re Sealed Case*, 107 F.3d at 48; *In re Grand Jury Subpoena*, 745 F.3d 681, 692 (3d Cir. 2014)). But that is not the case here; Higginbotham was an active participant in an ongoing conspiracy with Michel at the time that he relayed his advice to register under FARA. *Cf. In re Grand Jury Subpoena*, 745 F.3d at 691-92 (explaining that the crime-fraud exception would not apply when "the client was not committing a crime or fraud or intending to commit a crime or fraud at the time he or she consulted the attorney"). Michel and Higginbotham, along with their other co-conspirators, chose to persist in their unlawful activity, knowing of the registration requirement under FARA and willfully failing to register.

Any attorney-client privilege held between Michel and Higginbotham is vitiated by the crime-fraud exception. Michel chose to enlist Higginbotham in his conspiracy; Higginbotham willingly joined; and together they, with others, furthered the goals of foreign principals while funneling substantial sums into their own pockets. Michel cannot now seek to hide behind the attorney-client shield after recruiting Higginbotham into his criminal scheme.

## II. Michel Cannot Seek to Preclude Higginbotham's Testimony and Simultaneously Rely Upon an Advice-of-Counsel Defense

Notwithstanding Michel's pending motion, Michel has previewed that he seeks to rely upon an advice-of-counsel defense at trial. *See* ECF No. 132 at 3. In particular, Michel moved to dismiss the Superseding Indictment because he claimed: (1) Higginbotham represented Michel as an attorney; (2) Higginbotham never mentioned FARA to Michel or advised him to register, nor did Higginbotham himself register, *id.* at 4; and (3) Michel, relying on the advice and actions (or lack thereof) of Higginbotham, could not have willfully violated FARA, *id.* at 6-7.

7

The Court denied Michel's motion to dismiss, noting that "[a]n advice-of-counsel defense is, of course, an affirmative defense." Omnibus Mem. Op., ECF No. 154 at 15 (citing *United States v. West*, 392 F.3d 450, 457 (D.C. Cir. 2004)). And that while a "motion to dismiss [an indictment] is not the proper way to raise a factual defense," *id.* (quoting *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015)), "[i]f Defendant intends to pursue an advice-of-counsel defense at trial, he may raise it an appropriate time, e.g., at the motion *in limine* stage." *Id.* at 15 n.6.

Michel's move to preclude Higginbotham's testimony is at odds with his prior assertion of an advice-of-counsel defense and his representations in support of that motion.[2] Here, Michel asserts that he "has not, and will not, waive the privilege." ECF No. 160 at 2. But Michel has already taken steps to make such a waiver. In Michel's motion to dismiss, he put at issue Higginbotham's representation of Michel and affirmatively represented the communications he now seeks to strike. *See, e.g.,* ECF No. 132 at 4 ("Mr. Higginbotham, acting as Mr. Michel's attorney never mentioned FARA, did not ask him to review any paperwork or documents, never made a note to the file and, as would be customary for a lawyer, never sent an email to Mr. Michel about FARA").

"There is no question that the attorney-client privilege is waived when a client asserts reliance on the advice of counsel as an affirmative defense, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel." *United States v. Crowder*, 325 F. Supp. 3d 131, 137 (D.D.C. 2018) (quoting *Intex Recreation Corp. v. Metalast,*

---

[2] The government does not concede that Michel has established the proper foundation for an advice-of-counsel defense at trial. *See* Mem. Op., ECF No. 154 at 15 n.6; *West*, 392 F.3d at 457 ("A defendant may avail himself of an advice of counsel defense only where he makes a complete disclosure to counsel, seeks advice as to the legality of the contemplated action, is advised that the action is legal, and relies on that advice in good faith.").

8

*S.A.*, No. 1-1213, 2005 WL 5099032, at *3 (D.D.C. Mar. 2, 2005)); *see also United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) ("Reliance on advice-of-counsel is an affirmative defense" that "waive[s] the [attorney-client] privilege"). "Accordingly, should defendants decide to raise an advice-of-counsel defense at trial, any communications or evidence defendants intend to use to establish the defense are subject to disclosure." *Crowder*, 325 F. Supp. 3d at 138.

Michel cannot have his cake and eat it too; he cannot simultaneously rely upon an advice-of-counsel defense and seek to exclude the very testimony from Higginbotham that would rebut his defense.

## CONCLUSION

Michel seeks to exclude evidence, argument, or testimony related to attorney-client privileged communications with George Higginbotham. Michel and Higginbotham were co-conspirators in an illegal lobbying scheme that funneled millions of dollars into the United States while concealing the true source and purpose of those funds. Any privileged communications between the two in relation to that scheme are subject to the crime-fraud exception, as the prior crime-fraud order concluded, and the government should accordingly be able to present that evidence at trial. Further, Michel cannot rely on an advice-of-counsel defense while simultaneously seeking to exclude his attorney's testimony. Michel's motion should be denied.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice


By: */s/ Nicole R. Lockhart*
    John D. Keller

        Principal Deputy Chief

        Sean F. Mulryne
        Director of Enforcement & Litigation
        Election Crimes Branch

        Nicole Lockhart
        Trial Attorney
        1301 New York Ave., NW
        Washington, DC 20530
        Telephone:  202-514-1412
        Facsimile:   202-514-3003
        john.keller2@usdoj.gov
        sean.mulryne@usdoj.gov
        nicole.lockhart@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.

Dated: September 23, 2022                     */s/ Nicole R. Lockhart*
                                               Nicole R. Lockhart