**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 1:19-cr-148** |
| | ) | |
| | ) | |
| **PRAKAZREL MICHEL,** | ) | |
| **LOW TAEK JHO** | ) | |
| | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION *IN LIMINE* PRECLUDING GOVERNMENT FROM INTRODUCING ANY**
**EVIDENCE, ARGUMENT OR TESTIMONY RELATED TO 1MDB**

Defendant Prakazrel Michel is charged in this case for his roles in a foreign conduit

contribution scheme, a conspiracy to make false statements to banks, witness tampering, and—

germane to the present motion—an undisclosed foreign lobbying campaign.  With respect to that

latter scheme, 1MDB[1] and the U.S. Department of Justice's investigation into Low's role in the

embezzlement was the reason that this unlawful influence effort was initiated.  Michel and his co-

conspirators agreed, as one of the objects of their conspiracy, to lobby on behalf of co-defendant

Low Taek Jho ("Low") to resolve the 1MDB related proceedings and investigations involving

Low, all in exchange for millions of dollars from Low and while concealing their relationship and

financial arrangement with him.  Without reference to 1MDB—which Michel and his co-

conspirators referenced themselves throughout the scheme—the jury will be deprived of an

understanding of the goal and acts in furtherance of Michel's and his co-conspirators' illegal

---

[1] "1MDB" is shorthand for the 1Malaysia Development Berhad, a strategic investment and
development company wholly owned by the Government of Malaysia.  As used in the current
motion practice, 1MDB also generally refers to proceedings and investigations instituted by the
U.S. government to address alleged fraud and corruption associated with the 1MDB.

influence operation.  References at trial to 1MDB will cause no unfair prejudice or delay because the government has not alleged nor will it argue that Michel stole money from 1MDB or received any money directly from 1MDB.  Instead, the government will present substantial evidence at trial, and argue, that Low's entanglement with the 1MDB proceedings and investigations spawned and informed his scheme with Michel and others to influence U.S. government policy concerning 1MDB.  That evidence is highly probative and entirely appropriate for admission at trial, and because the evidence does not suggest that Michel was involved in the underlying 1MDB embezzlement itself, the evidence is not unfairly prejudicial.  Defendant's Motion *In Limine* Precluding the Government From Introducing Any Evidence, Argument or Testimony Related to 1MDB, ECF No. 159, should be denied.

## I.      Legal Argument

Pursuant to the Federal Rules of Evidence, relevant evidence is defined broadly and is generally admissible at trial.  Fed. R. Evid. 401, 402; *see also United States v. Chavez*, 951 F.3d 349, 361 n.1 (6th Cir. 2020) (noting that "relevance is an extremely liberal test satisfied by even the slightest probative worth" (citation and internal quotation marks omitted)); *Univac Dental Co. v. Dentsply Int'l, Inc.*, 268 F.R.D. 190, 196 (M.D. Pa. 2010) ("The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth.").  Under Federal Rule of Evidence 403, however, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of" unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needless cumulative evidence.  But "Rule 403 does not provide a shield for defendants who engage in outrageous acts . . . .   It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a

monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). Nor does Rule 403 "bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweighs' the evidence's probative value." *Id.* (citing Fed. R. Evid. 403) (emphases in original); *see also United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020) ("Rule 403 establishes a high barrier to justify the exclusion of relevant evidence[.]"). The D.C. Circuit has observed that "[t]he language of this rule tilts, as do the rules as a whole, toward the admission of evidence in close cases." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984). Consequently, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *Id.* (citation omitted).

In this case, 1MDB—and, more specifically, Low's connection to the 1MDB related proceedings and investigations undertaken by the U.S. Department of Justice—is relevant both contextually and specifically in connection with Michel and his co-conspirators' intent and actions. Indeed, 1MDB is referenced repeatedly throughout the Superseding Indictment much as it was referenced by Michel and his co-conspirators throughout their scheme. *See, e.g.*, Superseding Indictment, ECF No. 84 ¶¶ 1, 98-99, 106, 116, 151, 153, 168. The matter of 1MDB and Low's connection with it provide not only context and background for this criminal case, but are central to the undisclosed foreign lobbying conspiracy charged here. Low initially sought the help of Michel, Elliott Broidy, and others for the precise purpose of resolving DOJ's investigations of 1MDB and Low. And as a result, Michel and others agreed to help Low resolve those proceedings and investigations by lobbying high-ranking U.S. government officials through Broidy in exchange for millions of dollars and without ever registering or otherwise disclosing their agreement with Low. *See id.* ¶ 1 (introductory paragraph averring that Michel, Low, and others

"wage[d] an illegal, back-channel lobbying campaign to: (1) convince the Administration of the President of the United States . . . and the United States Department of Justice . . . to drop forfeiture proceedings and related investigations into LOW for the embezzlement of billions of dollars from [1MDB]"); ¶ 106 (alleging that objects of undisclosed foreign lobbying conspiracy included Michel, Low, and others "orchestrat[ing] a back-channel, unregistered campaign to lobby the President and his Administration and DOJ to end the 1MDB investigation or otherwise resolve the matters favorably for LOW").

The Superseding Indictment alleges this part of Michel's and his co-conspirators' undisclosed foreign lobbying campaign in extensive detail and under the heading, "Campaign to Resolve 1MDB Matters." *See id.* ¶¶ 118-35. Trial witnesses, including cooperators Broidy and George Higginbotham, will testify that they understood Low was the subject of forfeiture proceedings and/or investigations involving his role in 1MDB, and the evidence, including contemporaneous communications and the testimony of those cooperators, will demonstrate that Michel, Low, and others engaged in their illegal lobbying to address and resolve those 1MDB related proceedings and investigations. *See id.* ¶ 120 (Lum Davis forwarded to Michel purported draft agreement for Low to resolve the "matter," *i.e.*, 1MDB forfeiture proceedings); ¶ 132 (Broidy received "talking points" involving 1MDB from Lum Davis, who in turn received them from Michel and Low, so Broidy would provide them to Secretary of State).

Just as Michel and his co-conspirators communicated openly about 1MDB and its role in their scheme, the jury is entitled to receive this evidence about the existence of the 1MDB matter, Low's connection to it, and his efforts to address it through the conspiracy that is charged and at issue in this case. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997) (in Rule 403 context, court should consider "the offering party's need for evidentiary richness and narrative integrity in

4

presenting a case").  Without reference to 1MDB during the trial, the government's case in chief will be devoid of facts and circumstances vital to this case—that is, evidence addressing one of the primary reasons why Michel and others executed an undisclosed lobbying campaign on behalf of a foreign principal; why Broidy took the actions he did to influence, or appear to influence, governments officials, including his efforts to set up a golf outing between the President and the Malaysian Prime Minister so they could address the 1MDB matter; and why Low agreed to and did direct tens of millions of dollars to Michel and his co-conspirators in the United States.

Michel argues that Federal Rule of Evidence 403 should prohibit any reference, evidence, or argument at trial concerning 1MDB because associating Michel with the fraud of 1MDB will be prejudicial.  *See* ECF No. 159.  However, Michel misconstrues the nature and relevance of the 1MDB evidence in this case and how and why it will be presented to the jury.  1MDB is relevant because it forms the backdrop and the initial, animating purpose for the foreign lobbying scheme. Reference to 1MDB at trial, therefore, is necessary, appropriate, and far from unduly prejudicial. *See Gartmon*, 146 F.3d at 1021 (affirming district court's rejection of Rule 403 challenge where evidence "was not offered for an unfair purpose" or "on an ancillary issue or to inflame the jury," but rather "was offered as evidence of defendant's intent and controlling role in the fraud"); *cf. United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) ("In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.") (citing *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir.2000)).  Such references will not be unfairly prejudicial to Michel, let alone so prejudicial that the probative value is substantially outweighed, because it is not alleged nor will it be argued that Michel had

any direct involvement with 1MDB.[2]  Reference to 1MDB in relation to Michel will largely be limited to his role in the undisclosed lobbying undertaken to help Low resolve his 1MDB related matters.  For those reasons, Michel's claims that reference to 1MDB will result in a mini-trial adding "a good two to three weeks" to the trial, ECF No. 159 at 6, are baseless and plainly wrong.  There will be no mini-trial regarding Michel's involvement in 1MDB because but for his involvement in the undisclosed foreign lobbying scheme, which is at the heart of this case, there will be no allegations or argument that Michel was involved with 1MDB.

## II.    Conclusion

Evidence related to 1MDB is highly relevant in this case because the 1MDB related forfeiture proceedings and investigations involving Low formed the basis for the undisclosed foreign lobbying campaign in which Michel participated and for which he is now charged.  At trial, the jury is entitled to receive that evidence to understand the intentions and actions of Michel and his co-conspirators.  Moreover, the government will not be presenting evidence or argument at trial alleging that Michel committed any crime or misconduct specific to 1MDB (other than the undisclosed lobbying) or that he received any money from the 1MDB scheme.  Consequently, there is no risk of unfair prejudice or other harm to the defendant.  Michel's motion *in limine*, therefore, should be denied.

---

[2] Michel also argues that the government lacks a foundation to address 1MDB at trial because no evidence establishes that Michel stole or received any funds from 1MDB.  *See* ECF No. 159 at 3-4.  But such foundation is irrelevant because, again, the government has not charged Michel with, nor is it alleging or intending to argue, that Michel stole or received any money from 1MDB.  The government will show at trial, contrary to Michel's assertions, that Low controlled and directed funds to Michel (through intermediaries or otherwise) for purposes of the foreign conduit contribution scheme in 2012 and the undisclosed foreign lobbying campaign in 2017.  The government need not demonstrate that Low's monies derived from 1MDB to prove any charges in this case or to justify reference to 1MDB during trial.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:  */s/ Sean F. Mulryne*
       John D. Keller
       Principal Deputy Chief

       Sean F. Mulryne
       Director of Enforcement & Litigation
       Election Crimes Branch

       Nicole Lockhart
       Trial Attorney
       1301 New York Ave., NW
       Washington, DC 20530
       Telephone:  202-514-1412
       Facsimile:   202-514-3003
       john.keller2@usdoj.gov
       sean.mulryne@usdoj.gov
       nicole.lockhart@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.


Dated:  September 23, 2022                                    */s/ Sean F. Mulryne*
                                                              Sean F. Mulryne