1  **Kenner Law Firm**                         <span style="color:red">**ORAL ARGUMENT REQUESTED**</span>
   **David Kenner, SBN 41425**
2  **16633 Ventura Blvd., Ste. 735**
   **Encino, CA 91436**
3  **Phone: (818) 995-1195**
   **Fax: (818) 475-5369**
4  **Email: David@KennerLaw.Com**

5  **Attorney for Defendant**
   **Prakazrel Michel**

6

7                    **IN THE UNITED STATES DISTRICT COURT**
                     **FOR THE DISTRICT OF COLUMBIA**

8

9  **UNITED STATES OF AMERICA,**          )  **Case No.: 19-148-1 (CKK)**
                                          )
10                        **Plaintiffs,**  )  **DEFENDANT MICHEL'S BRIEF IN**
                                          )  **SUPPORT OF ADVICE OF COUNSEL**
11                                         )  **DEFENSE; EXHIBITS A-K**
                                          )
12 **vs.**                                 )
                                          )
13                                         )
                                          )
14 **PRAKAZREL MICHEL, *ET AL*.**          )
                                          )
15                                         )
                                          )
16                                         )
                                          )
17                                         )
                        **Defendants.**   )
18                                         )
   _____)

19

20        COMES NOW PRAKAZREL MICHEL, by and through counsel of record, and

21 hereby files this Pretrial Brief in Support of the Advice of Counsel Defense.

22        This brief will be based on the attached memorandum of points and authorities,

23 Exhibits A-K all the papers and records on file in this action and on such oral and

24

25 documentary evidence which the Court may request.

26 ///

27 ///

28

DATED: December 30, 2022

Respectfully submitted,

**/s/ David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant

**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES**[1]

**I**

**RELEVANT FACTS**

Apart from evidence which might be adduced at trial, a review of the discovery, records and files in this case indicates the following:

**A.    Introduction**

Defendant Prakazrel Michel is a two-time Grammy winner and an Emmy winner. He is a rapper, producer, songwriter, and actor, and has been actively involved in the entertainment industry for over three decades. His entertainment and humanitarian projects extend globally, and he regularly relies on professionals, including attorneys, to provide learned counsel to him on a variety of matters impacting his business interests. In connection with the matters alleged in the Superseding Indictment, Mr. Michel sought and relied upon the legal advice provided by George Higginbotham, an attorney employed by the DOJ but who maintained a law practice on the side.[2]

Mr. Michel had first met Mr. Higginbotham in 2002 when the latter was an entertainment lawyer in New York City. Over the ensuing years, Higginbotham provided legal advice to Mr. Michel, on an *ad hoc* basis, regarding myriad projects. In fact, an intra-

---

[1]    At the threshold, Mr. Michel would point out that, notwithstanding their protestations to the contrary, the Government itself has all but conceded that an attorney-client relationship existed Mr. Higginbotham and himself. *See* Govt. Opposition to Defendant's Motion in Limine Re: Privileged Agreements"; and p. 7: "Any attorney-client privilege held between Michel and Higginbotham is vitiated by the crime-fraud exception."

[2] Although DOJ rules prohibited attorneys from operating a law practice on the side, there is no evidence that Mr. Michel was aware of any such prohibition. Moreover, even after Agent Harry Lidsky of the OIG-DOJ learned that Higginbotham was providing legal advice to Mr. Michel and being compensated for doing so (*see* Exhibit A at pp. 39-40), Higginbotham was permitted to continue working in that role after Agent Lidsky enlisted Higginbotham to serve as a government agent to collect information on Mr. Michel. *See id*. at pp. 35-36.

government email, provided in discovery, indicates that, over the course of a mere 14 months (Oct. 2016 through Jan. 2018), Mr. Higginbotham worked on 77 legal matters for Mr. Michel (10 of which the Government itself describes as involving Jho Low.)

| | |
|---|---|
| **From:** | Lance Robinson <lrobinson@londonandmead.com> |
| **To:** | "Mann, James (CRM)" <james.mann@usdoj.gov>; Christopher Mead <cmead@londonandmead.com> |
| **Cc:** | "Ellersick, Ryan (CRM)" <ryan.ellersick2@usdoj.gov>; "Mulryne, Sean (CRM)" <sean.mulryne@usdoj.gov>; "Lockhart, Nicole (CRM)" <nicole.lockhart@usdoj.gov> |
| **Bcc:** | "Mulryne, Sean (CRM)" <sean.mulryne@crm.usdoj.gov> |
| **Date:** | Fri, 14 Sep 2018 20:44:10 +0000 |
| **Attachments:** | Pras Michel Matters 9-14-18.docx (26.5 kB) |

All,
As we mentioned on our last call, attached is a summary of work performed by George for Pras Michel from October 1, 2016, through January 2, 2018, on matters unrelated to Jho Low. While this is not an exhaustive list, this summary should capture most of the work unrelated to Jho Low. These matters are described at a high level to avoid any privilege issues. George did not keep track of his time on these matters. We tried to quantify the amount of work unrelated to Jho Low based on a review pf George's emails and agreements that he worked on. The search term "Pras" pulls 843 emails between 10/1/16 and 1/2/18. Of those emails, approximately 106 (12.6%) appear related to Jho Low. During that same time, George worked on approximately 77 agreements for Michel. Of those agreements, 10 (13%) appear related to Jho Low. If it would be helpful, we can create a privilege log with all of these emails and agreements.
Are you available for a call on Monday or Tuesday of next week?
Thanks,
Lance

In late 2016, Mr. Michel asked Higginbotham to assist him in the recovery of money stolen from him by a financial advisor, and in early 2017 Mr. Michel sought Higginbotham's advice on finding a top-notch attorney for co-Defendant Low Taek Jho ("Jho Low"), who was facing a civil forfeiture action related to the alleged theft of monies from 1MDB. (See Exhibit A, at pp. 2-3 (Higginbotham 302).) Over the course of the next several months, Higginbotham provided legal advice to Mr. Michel on the Jho Low matter, negotiated, drafted and reviewed contracts, conducted legal research and provided advice on the Foreign Agent Registration Act ("FARA"), responded to bank inquiries about Mr. Michel's bank accounts, and received compensation for his legal services.

**B.   Legal Work Related to Jho Low**

4

As mentioned above, Higginbottom's initial work related to finding a top-notch attorney to assist Jho Low in the pending forfeiture action resulted in identification of a few candidates to represent Jho Low, but those were rejected. Higginbotham learned that Mr. Michel had made connections with Nickie Lum Davis and Elliott Broidy to assist Jho Low, and that Colfax Law Office, Inc., a law firm owned by Broidy's spouse, Robin Rosenzweig, would be retained. *Mr. Michel asked Higginbotham if he could help with the contract.* (*See* Exhibit A at p. 3).

On July 16, 2017, Mr. Michel asked Higginbotham to go to the Chinese Embassy in Washington D.C. and let the ambassador know that the U.S. government was aware of the Chinese request to return Guo Wengui, a Chinese dissident, to China, and that the U.S. was working on it. (*See* Exhibit B, Agent Lidsky Interview of Higginbotham, July 21, 2017.)

There was nothing nefarious or secret about this effort, as Mr. Michel had already initiated contact with the FBI in June 2017 to assist with the return of Guo to China in exchange for the release of American hostages, including a pregnant American and other consideration. In fact, Mr. Michel has already gotten the Chinese to release the pregnant American at that point, but more hostages were being held. (See Exhibit C, Michel 302, 6/22/17 at p. 3 & p. 6.)

In September 2017, Mr. Michel asked Higginbotham to travel to Hong Kong with him as Mr. Michel would be meeting with Jho Low and Pheng Laogumnerd, a Thai businessman who had an interest possibly investing in entertainment projects with Mr. Michel. Ms. Michel wanted Higginbotham to accompany him "to advise him in case there

were contracts or business arrangements to review." (Exhibit C, Michel 302 at p. 1).[3] Mr.

Michel "expected that Higginbotham would tell Michel if things weren't right and started

going wrong." (*See id*. at pp. 2-3). At some point during the Hong Kong trip, Higginbotham

explained that Michel left with a friend and Higginbotham stayed the next few days to

negotiate and draft an agreement with Pheng Laogumnerd, including the grant of the power

of attorney to Higginbotham. (*See* Exhibit F, Higginbotham 302, at pp. 9-11.)

On November 8, 2017, Mr. Michel forwarded to Higginbotham, via email, a draft

agreement from Colfax Law regarding legal work for Jho Low. (See Exhibit D &

Exhibit E).

On November 25, 2017, Higginbotham emails to Mr. Michel various contracts

for review, including one in which Higginbotham creates a signature line for himself

in which he identifies himself as Chief Counsel for Anicorn LLC, dba Anicorn Elite

Properties:

**IN WITNESS WHEREOF**, the RRIX and AEP have caused this Note to be signed by its duly authorized officers.

**Anicorn, LLC d/b/a Anicorn Elite Properties:**

_____     _____     date:_____
**George Higginbotham as Chief Counsel for**
**Anicorn LLC d/b/a Anicorn Elite Properties**

*See* Exhibit G at p. 5)

---

[3] Around this time, Mr. Michel told Ron Vinder, a banker at Morgan Stanley, that Vinder needed to speak with his attorney, George Higginbotham, about setting up an account at Morgan Stanley for his (Mr. Michel's) business interests. (*See* Exhibit F, at p. 2)

6

1   During a January 3, 2017, taped interview with Agent Lidsky, Higginbotham

2   explains what he said to Mr. Michel about FARA:

4
5
6
7
8
9
10
11
12
13
14

> Page 74
>
> 1   million off of, you know,  a fly-by-night contract --
> 2       GEORGE HIGGINBOTHAM:  I mean, we're talking about
> 3   -- what do you call it?  We're talking about someone
> 4   the Chinese government wants back, from what my
> 5   understanding of it was.
> 6       HARRY LIDSKY:  Okay.  But doesn't that get in ke
> 7   Logan Act, and now you're getting between two
> 8   countries?
> 9       GEORGE HIGGINBOTHAM:  So I had -- what do you call
> 10  it?  So one of the conversations that I've had with
> 11  Pras was, listen, we need to register with the --
> 12      HARRY LIDSKY:  Yeah, the F.A.R.A.
> 13      GEORGE HIGGINBOTHAM:  -- FARA.  We need to
> 14  register with FARA.  "No, I don't want to do that."
> 15  Blah-blah-blah.  "That brings us above --" I 'm like,
> 16  look, that's what I think that we should do.  We should
> 17  register with FARA.  Because that, it looks like we're
> 18  getting closer and closer and closer to that kind of
> 19  thing, having to do specifically with --

16   See Exhibit H at p. 74.

17   On January 4, 2017, one day after he was interviewed and threatened with arrest

18   by Agent Lidsky and his home, phone and computer searched by federal agents,

19   Higginbotham told agents that he had conducted legal research on FARA requirements

20   and provided legal advice to Mr. Michel that he needed to register under FARA. (*See*

22   Exhibit A at p. 7.) Indeed, the search of his home turned up his handwritten notes

23   regarding advice to Mr. Michel: "F.A.R.A. - Need to consider this strongly!" (*See*

24   Exhibit I at p. 51.)

25   ///

26   //

27   ///

28   ///

7

```
LICENSES / MEMBERSHIPS / TRIPS
1. F.A.R.A. - NEED TO CONSIDER THIS STRONGLY!
2. SCREEN ACTORS GUILD
3. RIAA MEMBERSHIP
4. SUNDANCE FILM FESTIVAL  JAN 16-28
5. TRIBECA FILM FESTIVAL  APRIL 18
6. ART BASEL MIAMI - DEC. 7-10 2017
7. UNGA in Sept. 2018
8. GRAMMIES  28, 2018
9. BASEL WORLD - WATCHES  MARCH 22-27, 2018  Switzerland.
```

During Mr. Higginbotham's Grand Jury testimony, he indicated that he had spoken with Mr. Michel on multiple occasions regarding FARA and the possible need to register: "And I advised him, I'm reading the statute, it seems we're getting pretty close to this." (*See* Exhibit J at pp. 48-49.)

During a July 20, 2017, interview with Higginbotham about his visit to the Chinese Embassy, Higginbotham explained to Agent Lidsky that he has provided legal services to Mr. Michel for nearly two decades, and that he continues to do so as of that very day. (*See* Exhibit K at pp. 39, 42, 76.)

During a September 11, 2017, interview with Higginbotham, Agent Lidsky asks, at page 39, "Yeah, let me just ask you: I mean are you like, is he your client? Are you his attorney?" Higginbotham: "I mean, for all intents and purposes, yes."

Higginbotham further goes on to say: "So would he think I am his attorney? Yes, of course. He tells people I am his attorney all the time," and Mr. Michel "needs me to be his business and legal eyes on the stuff goin' on."

On January 3, 2018, Higginbotham told Agent Lidsky that Mr. Michel had paid him, just for work in 2017 alone, $170,000, which encompassed assistance with an entertainment platform and work related to the transfer of funds on behalf of Jho Low.

///

Some of the items collected during the search of Higginbotham's home, included the following:

1.     Drafts and executed contract between Tycoon Talent Limited (Pheng Laogmunerd) and Anicorn (Mr. Michel);

2.     Correspondence between Higginbotham and Mr. Michel re draft contracts;

3.     A July 21, 2017 email from Marc Moscowitz to Alan Maragh responding to a request about the bank account set-up for Artemus: "I've referred it to Mr. Michel's attorney for advice";

4.     Higginbotham-signed Investor Loan contract between Lucky Mark (Pheng) and Anicorn;

5.     Higginbotham Law, PC granted power of attorney for Red Rock IX Limited;

6.     Higginbotham a signatory as "attorney in fact" for Purchase Agreement for Red Rock IX Limited (for money to be held in Higginbotham Law, PC escrow account);

7.     Letter from Higginbotham to Alan Maragh, City National Bank, dated September 27, 2017, where Higginbotham writes "I represent Mr. Pras Michel" on the following letterhead:

**HIGGINBOTHAM LAW, P.C.**
GEORGE HIGGINBOTHAM, PARTNER
1308 GALLATIN STREET, NW
WASHINGTON, DC 20011
GHESQUIRE@GMAIL.COM
646-232-0027

///

///

8.      An Escrow Agreement between Nickie Davis, Prasperity Group, LLC, and George Higginbotham, Esq. / Higginbotham Law, P.C., whereby Higginbotham agrees to serve as escrow agent for a consulting contract between Davis and Prasperity Group, LLC. (Exhibit L pp. 2, 17-41, 51, 67-69, 84, 155-20).

On October 6, 2017, using ghesquire@gmail.com as his email address, he contacted Morgan Stanley to set up an account for Mr. Michel;

Again using the ghesquire email address, Mr. Higginbotham contacted B. Bekkam and identifies himself as Mr. Michel's attorney;

In an October 27, 2017, letter to New York Attorney Marc Moscowitz, he wrote about working out the details of Moscowitz's termination of services for Mr. Michel, with instructions to send his (Moscowitz's file) to Higginbotham Law, P.C., at its DC address;

A letter from Higginbotham to Alan Mat at CNB on his law firm letterhead, stating that he represents Mr. Michel;

An October 4, 2017, email from a Citibank banker to Higginbotham, thanking him for sharing information about his law practice and his client, Pras Michel;

There is also a Higginbotham Law, PC Escrow Account at Citibank, showing a $41M wire from Red Rock IX Limited:

10

```
                                                              Control Account:
                                                              6782409974
              HIGGINBOTHAM LAW, P.C.                          Statement Period
              Attorney Escrow                                 Sep 23 - Oct 23, 2017
              1308 GALLATIN ST NW
              WASHINGTON        DC 20011
                                                              Page 1 of 3
```

**CitiEscrow CONTROL ACCOUNT DETAIL FROM SEP 23, 2017 THRU OCT 23, 2017**

**CitiEscrow Control Checking**

6782409974

|  |  | | Beginning Balance: | $0.00 |
| --- | --- | --- | --- | --- |
|  |  | | Ending Balance: | $41,084,365.00 |

| Date | Description | Debits | Credits | Balance |
| --- | --- | --- | --- | --- |
| 10/23 | FUNDS TRANSFER WIRE FROM RED RO CK IX LIMI TED  Oct 23 |  | 41,084,365.00 | 41,084,365.00 |
| 10/23 | INTEREST EARNED |  | 135.07 | 41,084,500.07 |
| 10/23 | INTEREST DEBIT | 135.07 |  | 41,084,365.00 |
|  | Total Debits/Credits | 135.07 | 41,084,500.07 |  |

## II

## LEGAL DISCUSSION

**The Advice of Counsel Defense.** A defendant is entitled to an advice-of-counsel instruction if he introduces evidence showing: (1) he made full disclosure of all material facts to his attorney before receiving the advice at issue; and (2) he relied in good faith on the counsel's advice that his course of conduct was legal.  The district court is required to give this instruction if there is any foundation in the evidence sufficient to bring the issue into the case, *even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility. DeFries* at 1308 (internal citations and quotations omitted (emphasis added)).[4]

**Advice of Counsel and Intent.** A client who relies in good faith on his counsel's advice "[can]not be convicted of crime which involves willful and unlawful intent; even if such advice were an inaccurate construction of the law." *Williamson v. United States*, 207 U.S. 425, 453 (1908); *accord Beech-Nut Nutrition*, 871 F.2d 1181, 1194-95 (2nd Cir. 1989)

---

[4] *See* MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL. P 8.04, "Reliance on Counsel," (Matthew Bender & Co. 2022) (collecting cases from virtually every circuit, including DC, which allow defense based on Advice of Counsel.)

11

(long line of precedent holding that good-faith reliance on counsel's advice precludes finding of fraudulent intent). "[T]he claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an unlawful intent." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017); *see also United States v. Hansen*, 772 F.2d 940, 947 (D.C. Cir. 1985) ("[g]ood faith reliance upon advice of counsel ... establish[es] a defense" to specific intent crimes).

**Avoiding Error.** "Where the evidence presents a theory of defense, and the court's attention is particularly directed to it, it is reversible error for the court to refuse to make any charge on such theory." *Levine v. United States*, 261 F.2d 747, 748-49 (D.C. Cir. 1958); *accord Laughlin v. United States*, 474 F.2d 444, 455 n.14 (D.C. Cir. 1972). This rule applies to a theory greater than mere denial of guilt, "involving 'law' or fact, or both, that is not so obvious to any jury." *Laughlin*, 474 F.2d at 455 & n.14 (citing *Salley v. United States*, 353 F.2d 897, 898 (D.C. Cir. 1965)).

"The district court is required to give [such an] instruction 'if there is ***any*** foundation in the evidence' sufficient to bring the issue into the case ...." United States v. *DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997) (addressing advice-of-counsel defense (emphasis added)). Refusal to give such an instruction is reversible error if the requested instruction "(1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *Id*. at 1309 (citation omitted). "[A] Court must give the jury the opportunity to evaluate whether the

government has proven its case beyond a reasonable doubt for every element of the crime charged.") *See DeFries* at 1311 (citing *United States v. Gaudin*, 515 U.S. 506, 510, 522-23 (1995)).

**There is Adequate Foundation Here.**  As pertains to the instant case, the following language from *DeFries* is helpful:

> No client ever tells his or her lawyer every single fact that a good lawyer probes before giving advice. Indeed, clients do not typically even know which facts a lawyer might think relevant. (That is, in part, why they consult lawyers.) So long as the primary facts which a lawyer would think pertinent are disclosed, or the client knows the lawyer is aware of them, the predicate for an advice-of-counsel defense is laid. Even if we were to regard Arcadipane's advice as questionable, he was adequately informed about the details of appellants' conduct.

*United States v. DeFries*, 129 F.3d 1293, 1308-1309 (D.C. Cir. 1997); *see also SEC v. Am. Growth Funding II, LLC*, No. 16-CV-828 (KMW), 2018 WL 6322145, at *3 (S.D.N.Y. Dec. 4, 2018) (Wood, J.) ("Courts routinely allow the jury to hear evidence about interactions with and advice of counsel even if ultimately there is insufficient evidence for an advice of counsel instruction.")

The evidence here is abundant relative to the Advice of Counsel Defense.  Mr. Michel, the Defendant, hired an attorney and relied on his advice, direction and operational assistance to ensure legal compliance for his several entertainment and other business projects.  That client-lawyer relationship developed over the course of several years, and what began with a situation here and there, soon developed into a strong and active attorney-client relationship where Mr. Higginbotham was drafting letters and documents on Mr. Michel's behalf, representing himself as Mr. Michel in writing and at meetings, and working closely with Mr. Michel to the extent that, at one point, they had multiple phone calls and

discussions per day.  From any perspective, it was clear that Mr. Michel and his attorney,

George Higginbotham, were clearly engaged in an attorney-client relationship, where the

client's expectation of confidentiality and privilege is a driving force.

## III

## CONCLUSION

Based on the foregoing, Mr. Michel would respectfully request leave of the Court to

introduce evidence, testimony and argument during his trial to lay a foundation for the

advice of counsel defense and, ultimately, to support his request that the jury be charged

accordingly.

DATED: December 30, 2022                    Respectfully submitted,

**/s/ David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant

**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Dated:          December 30, 2022                    /s/ Charles R. Haskell
                                                     Charles R. Haskell
                                                     DC Bar No.: 888304007
                                                     641 Indiana Ave. NW
                                                     Washington, DC 20004
                                                     Tel. (202) 888-2728
                                                     Charles@CharlesHaskell.com
                                                     *Counsel for Defendant*

15