**Kenner Law Firm**
**David Kenner, SBN 41425**
**16633 Ventura Blvd., Ste. 735**
**Encino, CA  91436**
**Phone: (818) 995-1195**
**Fax: (818) 475-5369**
**Email: David@KennerLaw.Com**

**Attorney for Defendant**
**Prakazrel michel**

<span style="color:red">**ORAL ARGUMENT REQUESTED**</span>

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE uNITED sTATES OF aMERICA,<br><br>pLAINTIFFS,<br><br>VS.<br><br><br><br>PRAKAZREL MICHEL, *ET AL*.,<br><br>DEFENDANTS. | cASE NO. 19-148-1(CKK)<br><br>**DEFENDANT MICHEL'S REPLY TO GOVERNMENT'S MOTION TO EXCLUDE OR LIMIT TESTIMONY OF DEFENDANT'S WITNESS, RICH MALONE, CPA**<br><br>**[Daubert Hearing]**<br><br><br>Date: _____, 2022<br>Time:   \_\_\_\_ am / pm<br><br>**The Honorable Colleen Kollar-Kotelly** |

## I

## Introduction

In its Trial Brief, the government seeks to exclude or otherwise limit the testimony of defendant's forensic accounting expert, Rich Malone (at ECF No. 155 at 17-21). A Daubert hearing has been set for January 20, 2023 at 1:00 PM (Eastern). For the reasons outlined below, the defendant, Mr. Michel, respectfully requests that the court deny the government's motion.

## II.

## Expert Qualifications

Mr. Malone is a Certified Public Accountant with 25 years of experience as a Supervisory Special Agent with the IRS Criminal Investigation Division, 10 years as a private contractor providing accounting services to the United States Department of Justice, Drug Enforcement Administration, DEA, and private sector experience setting up an anti-money laundering compliance unit in a bank. He has conducted and supervised at least a hundred money laundering investigations, and those investigations have been relied upon by the FBI and Department of Justice. Malone CV at ECF No. 113 Attachment #1 at 1-2. He now brings his training, experience and knowledge to assist the jury in understanding the complex issues involved in this matter, including those related to money laundering allegations.

## III.

## Testimony that Funds were not Sourced from 1MDB or Jho Low is Relevant.

The government has alleged in court filings and press releases that Jho Low engineered a multi-billion-dollar scheme to embezzle funds from 1MDB. Despite these accusations, the government has not convicted Jho Low of any such crimes. Nor has the government produced any direct proof that monies received by Mr. Michel are products of embezzled funds from 1MDB or from business entities or bank accounts owned by Jho Low.

In analyzing the government's motion, it is critical to note that the government alleges that Jho Low funded different alleged crimes in different time periods. The "2012 funds" are funds allegedly transferred by Jho Low to Mr. Michel in 2012 to make contributions to PACs that donated to the Obama campaign. Those funds came from companies owned by Eric Tan, not Jho Low. The "2017 funds" are funds allegedly transferred by Jho Low to Mr. Michel in 2017 related to Jho

Low's legal issues in the United States. Those funds came from business entities owned by a Thai businessman, Pheng Laogumnerd, not Jho Low.

The government will use two types of circumstantial evidence to try to prove that the 2012 funds were actually from Jho Low. First the government's expert disclosures state that its forensic accountant, Eric Van Dorn, is expected to testify that:

> hundreds of millions of dollars from a 1MDB-related account were deposited into a Company H account. Low was the beneficial owner of the Company H account. Funds from Company H were then transferred to Company A and then to Company B before some of these funds were ultimately transferred to accounts owned or controlled by Michel.

ECF No. 123 at Para. 2. The defense is still waiting for the government to produce any documents from "Company H" that support this "opinion" that 1MDB money moved into a Jho Low owned account and ultimately was transferred to Mr. Michel through accounts owned by Eric Tan. Otherwise, the government states in its Trial Brief that it will use an actor and an auction house executive to show that Eric Tan "often handled or helped facilitate financial transactions for Low at Low's direction." ECF No. 155 at 4-5.

Mr. Malone's testimony on the source of funds transmitted to Mr. Michel is not only relevant, but critical to rebutting the government's narrative on the source of funds going to Mr. Michel. The government alleges that Jho Low embezzled billions from 1MDB. The government further alleges that through a series of yet unproven complex schemes, Jho Low transferred funds, presumably embezzled funds, to Mr. Michel, first in 2012 to commit election law crimes, and later in 2017, to solve his legal issues in the United States and assist China. Mr. Malone is not only entitled to point out that the business and bank records do not support the government's narrative,

but defense counsel's obligation to provide effective assistance of counsel dictates that Mr. Malone testimony be offered to rebut the circumstantial evidence offered by the government.

### IV.

### Testimony is Relevant to Conspiracy to Commit Concealment Money Laundering.

The government also seeks to bar Mr. Malone's testimony that the funds transmitted to Mr. Michel were "not sourced from 1MDB" because the government has not charged the defendant with laundering proceeds "from Low's 1MDB embezzlement scheme." ECF No. 155 at 18. The government states:

> Michel is charged with conspiring to (1) commit international promotional money laundering by causing the transfer of funds from foreign accounts to U.S. accounts to promote the specified unlawful activity that constitutes the charged FARA scheme; and (2) to commit concealment money laundering by routing the proceeds of the FARA scheme through shell accounts to conceal the true control, source, and purpose of the funds. Superseding Indictment, ECF No. 84 at 26.

Although the conspiracy charge alleging promotional money laundering under 18 U.S.C. § 1956(a)(2)(A) does not require proof that any funds transmitted to Mr. Michel were initially the product of illegal conduct, it is well accepted that the conspiracy charge alleging concealment money laundering under 18 U.S.C. § 1956(a)(l)(B) does require proof that the funds transmitted to Mr. Michel were the product of illegal conduct *before* they were transmitted to Mr. Michel. *United States v. Piervinanzi*, 23 F.3d 670, 679- (2d Cir. 1994). In *Piervinanzi*, the court based its ruling on

the plain language of 18 U.S.C. § 1956 and explained the difference between the proof necessary to show concealment versus promotional money laundering:

> Analysis of the overall structure of § 1956 confirms this interpretation. Section 1956(a)(1), the domestic money laundering statute, penalizes financial transactions that "involv[e] . . . the proceeds of specified unlawful activity." The provision requires first that the proceeds of specified unlawful activity be generated, and second that the defendant, knowing the proceeds to be tainted, conduct or attempt to conduct a financial transaction with these proceeds with the intent to promote specified unlawful activity. By contrast, § 1956(a)(2) contains no requirement that "proceeds" first be generated by unlawful activity, followed by a financial transaction with those proceeds, for criminal liability to attach. Instead, it penalizes an overseas transfer "with the intent to promote the carrying on of specified unlawful activity." § 1956(a)(2)(A).

*Id.* at 679-80.

Several courts have adopted the holding in *Piervinanzi*, including the United States District Court, District of Columbia, in *United States v. Tajideen*, 319 F.Supp. 3d 445, 467-68 (D.D.C. 2018) (expressly adopting holding in *Piervinanzi*).

Because the plain language of the concealment money laundering statute and case law require the government to show that the funds received by Mr. Michel were previously tainted and the product of illegal activity, Mr. Malone's opinions on the source and character of the funds at issue is relevant to rebutting those charges. Oddly, the government claims that it has no intention of offering any proof that the funds at issue were the product of illegal conduct before transmission to Mr. Michel. ECF No. 155 at 18. It implies, however, that its burden on the concealment charge will

be met by proof of "routing the proceeds of the FARA scheme through shell accounts to conceal the true control, source, and purpose of the funds." *Id.* Such evidence, by itself, is not sufficient to prove the concealment count. Indeed, as Mr. Malone's expert opinion indicates, the government is trying to employ a "back taint" strategy to satisfy its burden on the concealment count, and this is not consistent with Mr. Malone's training and experience in the field of money laundering, nor is it consistent with the plain language of 18 U.S.C. § 1956(a)(l)(B) or case law interpreting it, which requires an initial showing that the funds at issue were the product of illegal conduct *before* they were transmitted to Mr. Michel. The government attempts to use alleged criminal conduct arising *after* the transmission of funds—the alleged FARA violations—to taint the funds before they were transmitted to Mr. Michel. This is the proverbial instance of the government putting the "cart before the horse," and cannot serve as a basis for limiting or excluding the testimony of Mr. Malone.

## V.

### Malone's Testimony is Relevant on Other Issues.

Mr. Malone's testimony on source of funds and character of funds is relevant to other issues in this matter and cannot be excluded. Those issues include (1) whether Mr. Michel received funds from Jho Low is relevant to the issue of whether Mr. Michel acted as an agent for Jho Low as alleged; (2) whether Mr. Michel received funds from the People's Republic of China is relevant to the issue of whether he conspired to act as an agent for the PRC;  (3) rebutting the unproven and highly prejudicial statements from counsel and possibly government witnesses that Jho Low embezzled funds from 1MDB and that Mr. Michel received embezzled funds.

## VI.

**<u>Malone Testimony Regarding Character of Mr. Michel's Expenditures.</u>**

The government seeks to bar any testimony from Mr. Malone that Mr. Michel's bank accounts show that the funds he received were largely spent on the development of entertainment projects. ECF No. 155 at 20.  Mr. Michel does not anticipate eliciting such opinions from Mr. Malone, and would agree that the disbursements from Mr. Michel's accounts can be addressed as factual matters on a case-by-case basis. That said, Mr. Michel contends that many of the funds disbursed from his account cannot be tied to any of the crimes alleged by the government. If the government contends that it is entitled for forfeiture of funds tied to alleged crimes by Mr. Michel in this matter, then testimony about the disbursements from Mr. Michel's accounts is relevant.

## VII.

**Personal Observations and "Legal Opinions" of Mr. Malone.**

The government argues that Mr. Malone should not be testifying about his observations of the interplay between defense attorneys and prosecutors in other matters and how prosecutors have made charging decisions in other cases. ECF No. 155 at 20.  The defense agrees.

The defense takes issue, however, with the assumption that Mr. Malone cannot speak to the conspiracy to commit concealment money laundering. As explained above, Mr. Malone is an expert in the field of money laundering, and he knows that concealment money laundering requires that the government prove that the funds received by Mr. Michel were tainted by illegality *before* the funds were transmitted to Mr. Michel. As an expert, he has specialized knowledge that a lay person would not, and Mr. Malone is merely pointing out that the government appears to be trying to contend that

although the money at issue was not illegally tainted before it was transmitted to Mr. Michel, his later actions of allegedly violating the FARA statute and other federal laws operates to taint the funds sent to him before they were sent.

If the government is allowed to pursue this line of proof to prosecute the conspiracy to commit concealment money laundering, Mr. Malone and the defense must be permitted to rebut any suggestion that there is any proof that the funds were illegally tainted before transmission to Mr. Michel. This is not an effort to provide a legal conclusion from an expert, but rather showing the absence of proof showing a requirement element of the charge.

## VIII.

## **CONCLUSION**

Based on the foregoing, Mr. Michel respectfully requests that the Court deny or defer ruling on the Government's motion to exclude or otherwise limit the testimony of Richard Malone, CPA.

DATED: January 19, 2023                         Respectfully submitted,

                                        **/s/ David Kenner**
                                        David E. Kenner
                                        Kenner Law Firm
                                        16633 Ventura Blvd., Suite 735
                                        Encino, CA 91436
                                        (818) 995-1195
                                        Email: david@kennerlaw.com
                                        CA Bar No.: 41425
                                        Counsel for Defendant


                                        **/s/ Charles Haskell**
                                        Charles R. Haskell
                                        The Law Offices of Charles R. Haskell
                                        641 Indiana Ave. NW
                                        Washington, DC 20004
                                        (202) 888-2728
                                        Email: Charles@CharlesHaskell.com
                                        DC Bar No.: 888304007
                                        Retained Counsel for the Defendant

## **CERTIFICATE OF SERVICE**

I declare under penalty of perjury that the foregoing is true and correct this 19th day of January 2023, at Washington D.C., and that this document is executed under penalty of perjury according to the laws of the United States of America.

_____<br>
Charles R. Haskell<br>
Attorney at Law