**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Crim. No. 1:19-cr-148** |
| | ) | |
| PRAKAZREL MICHEL, | ) | |
| LOW TAEK JHO | ) | |

**UNITED STATES' MOTION TO EXCLUDE WITNESSES**

On January 20, 2023, following a *Daubert* hearing, defense counsel proffered to the Court the proposed subject matter and areas of inquiry for two former Presidents of the United States—Barack Obama and Donald Trump—and three former Cabinet Secretaries—Jeff Sessions, Ben Carson, and Jeh Johnson.  *See* Ex. A, Hr'g Tr. 55-71.  Based on the facts and allegations in this case and defense counsel's proffer, the proposed testimonies of former Presidents Obama and Trump, Dr. Carson, and Mr. Johnson are irrelevant and cumulative, with their probative value substantially outweighed by their prejudicial effect.[1]  The defendant, therefore, should be excluded from calling those four witnesses at trial absent any developments during trial that would justify their appearances.

**BACKGROUND**

**I.    The Factual Allegations**

Relevant to the instant motion, the Superseding Indictment alleges that Michel joined with Low Taek Jho (Low) and others to perpetrate two unlawful campaigns intended to gain access to and influence with high-ranking U.S. government officials in separate presidential administrations.

---

[1] The government acknowledges that testimony from former Attorney General Jeff Sessions may be marginally relevant as to Elliott Broidy's recommendation of a candidate for a United States Attorney position and as to former Attorney General Sessions's lack of any recollection of Broidy asking him to close the 1MDB investigation or send Guo Wengui back to the People's Republic of China.

First, between approximately May and November 2012, Michel, Low, and others agreed to use Low's money to make illegal foreign and conduit contributions to political committees supporting a candidate for the Office of the President of the United States.  Superseding Indictment, Doc. 84 at ¶¶ 36-67.  The purpose of the contributions was, in part, to secure access to the candidate at fundraising events.  *Id*.  Second, between approximately March 2017 and January 2018, Michel secretly agreed with Low to lobby another presidential administration and the Department of Justice (DOJ) "to drop the investigation of LOW for his role in the embezzlement of billions of dollars from 1MDB," in exchange for millions of dollars and in violation of the Foreign Agents Registration Act (FARA).  *Id.* at ¶ 99.  It is further alleged that Michel and others agreed to "act in the United States as agents of PRC Minister A," a foreign government official with the People's Republic of China (PRC), "by working to lobby the Administration and DOJ to arrange for the removal and return of PRC National A—a dissident of the PRC living in the United States—back to the PRC all at the direction of PRC Minister A and the PRC government."  *Id.* ¶ 100.

## II.     The Defendant's Proffer

On January 20, 2023, following a *Daubert* hearing, defense counsel proffered to the Court the proposed subject matter and areas of inquiry for the trial testimony of several witnesses including former Presidents Trump and Obama and former Cabinet Secretaries Carson and Johnson.  *See* Ex. A, Hr'g Tr. 55-71.  Defense counsel acknowledged that his proffers were not based on information obtained directly from those witnesses because the defense had not interviewed any of them.  *Id.* at 55, ln. 19 to 56, ln. 13.

### 1. Ben Carson

According to defense counsel's proffer, former Secretary of Housing and Urban Development (HUD) Carson attended a dinner with Michel and another person in June 2017, and a meeting with former Malaysian Prime Minister Najib Razak and others in September 2017. *Id.* at 63, ln. 4-15. The defendant intends to call Dr. Carson to ask about "who arranged the meeting with the Prime Minister and what the purpose of that meeting was." *Id.* at 63, ln. 13-15.

### 2. Jeh Johnson

According to defense counsel's proffer, former Secretary of Homeland Security Johnson spoke with Guo Wengui, the Chinese dissident for whom Michel and his co-conspirators sought extradition pursuant to a PRC official's direction, in or around May 2017. *Id.* at 66, ln. 24 to 67, ln. 25. During the conversation, Johnson purportedly offered his legal services to assist Guo in resolving his visa/asylum dispute with President Trump's administration. *Id.* at 67, ln. 6-10. Defense counsel further asserted during his proffer that Johnson seemingly had close ties to the PRC government, including Sun Lijun, the former Vice Minister of Public Security who directed the actions of Michel and his co-conspirators in seeking Guo's extradition. *Id.* at 68, ln. 11-19. The defendant intends to ask Johnson at trial about (1) his relationship with Lijun, *id.* at 68, ln. 22-25; (2) Guo's arrival in the United States in 2014, China's desire for Guo's return, and the subsequent issuance of a Red Notice for Guo, *id.* at 69, ln. 1-12; (3) the circumstances surrounding Johnson's solicitation of Guo as a client for Johnson's legal services, *id.* at 69, ln. 13 to 70, ln. 8; and (4) various other issues associated with Guo's return to China, including whether Johnson ever advocated on behalf of Guo and, if so, whether he registered under FARA, *id.* at 70, ln. 9 to 71, ln. 7.

### 3.  Barack Obama

According to defense counsel's proffer, certain officials associated with former President Obama's presidential campaign committees and administration, including Frank White and Shomik Dutta, used their official and/or political roles to attempt to influence President Obama's agenda. *Id.* at 59, ln. 19-22.  Counsel further proffered that President Obama attended fundraising dinners where he met with attendees, including Low's father at one such dinner. *Id.* at 62, ln. 3-9. Defense counsel intends to examine President Obama about (1) White receiving a presidential gift to give Prime Minister Najib during a business trip that White and Dutta took to Malaysia; (2) President Obama and the First Lady posing for a holiday picture with Low at White's request; and (3) President Obama receiving a copy of "The Wolf of Wall Street" film from several individuals including Najib's nephew. *Id.* at 62, ln. 10-23.

### 4.  Donald Trump

According to defense counsel's proffer, Elliott Broidy, one of Michel's alleged co-conspirators, requested that businessman Steve Wynn contact President Trump to advocate for Guo's extradition to China, which Wynn did during a White House dinner with the President. *Id.* at 56, ln. 14 to 57, ln.13.  During that dinner, Wynn mentioned to President Trump that Broidy had been contacted by a high-ranking Chinese government official who asked for Wynn to seek the President's assistance in returning Guo to China. *Id.* at 57, ln. 3-8.  In addition, defense counsel proffered that Broidy asked President Trump to play golf with Prime Minister Najib, informing the President that the golf game could help Broidy secure Malaysian business for his security company, Circinus, and never mentioning during this conversation that Najib would want to address Low or any DOJ matter involving Low. *Id.* at 57, ln. 14-22.  The defendant intends to elicit these facts to show that (1) President Trump understood that the Guo extradition request

came from the PRC government and that neither Wynn nor Broidy were hiding that fact, *id.* at 58, ln. 8-16, 21-25; (2) President Trump had no reason to believe Wynn or Broidy were acting as agents of the PRC government or Low, *id.* at 57, ln. 23 to 58, ln. 2; 58, ln. 17-20; and (3) Wynn told President Trump that the Chinese government was willing to release American hostages and work with the U.S. government on a North Korean cybersecurity issue in exchange for Guo's extradition, *id.* at 59, ln. 1-12.

## ARGUMENT

Evidence is only admissible if it is relevant, *see* Fed. R. Evid. 402, and only relevant if "it has any tendency to make a fact more or less probable than it would be without other evidence; and . . . the fact is of consequence in determining the action," Fed. R. Evid. 401.  Moreover, even when evidence is relevant, a court may exclude it if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *see also United States v. McGill*, 815 F.3d 846, 880 (D.C. Cir. 2016).

Moreover, when evaluating a subpoena issued to a President or former President for trial testimony, a "meticulous standard" is appropriately applied, in recognition of a President's unique role and circumstances, to ensure that the proposed testimony would be sufficiently "material" and "necessary in the sense of being a more logical and more persuasive source of evidence than alternatives that might be suggested." *United States v. Poindexter*, 732 F. Supp. 142, 147 (D.D.C. 1990); *see also United States v. Newman,* 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (explaining related "apex doctrine" that provides that in civil matters "high ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter

and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." (citation omitted)).

## I.    Carson

Dr. Carson's proposed testimony concerning a meeting with Najib is speculative in nature and unrelated to Michel's criminal scheme with Low and his other co-conspirators to resolve the 1MDB investigations and proceedings.  Indeed, Najib is relevant to this case only insofar as Michel and his co-conspirators sought to satisfy their foreign benefactor, Low, by attempting to set up a meeting and golf game between President Trump and Najib so that Najib would have an opportunity to address the 1MDB matter against Low if he chose.  *See, e.g.*, Doc. 84, ¶¶ 130-135. The defendant points to no evidence or facts, nor does he posit any theory or argument, as to why a meeting between Najib and Dr. Carson, the then HUD Secretary who presumably had no role in the government's 1MDB investigation and proceedings, makes it more or less probable that Michel and his co-conspirators were serving as foreign agents at the direction of Low or the PRC government.  It cannot be that literally any meeting or communication Najib had with a high-ranking U.S. government official in 2017 is relevant to this matter.  Moreover, a Cabinet Secretary's meeting with a foreign head of state is unremarkable and lacks any connection to this case unless the co-conspirators arranged or attempted to influence that meeting as part of their scheme; otherwise, it simply demonstrates a fairly routine example of diplomatic relations and engagement.  Michel should not be permitted to use trial as an occasion to undertake a fishing expedition, particularly for irrelevant evidence.  *See United States v. Moore*, 590 F. Supp. 3d 277, 286 (D.D.C. 2022) (evidence "that is 'highly generalized and speculative in nature' is typically inadmissible when weighed against its potential adverse effects" (citation and brackets omitted)).

## II.      Johnson

The defendant's reasons for calling Johnson as a witness—including Johnson's interest in representing Guo on his visa/asylum dispute, and Johnson's purported relationship with PRC government officials—are not relevant to whether Michel and his co-conspirators sought Guo's extradition.  This case concerns, in relevant part, the efforts of Michel and his co-conspirators to influence high-ranking U.S. government officials to extradite Guo at the direction and request of Low and the PRC Vice Minister of Public Security, Sun Lijun.  There is no allegation that the co-conspirators attempted to influence Johnson; he was not a government official when the co-conspirators' scheme commenced in 2017.  By that time, Johnson had returned to the private practice of law, and his professional solicitations of Guo have no bearing on Michel's criminal conduct.  The government anticipates that the defendant seeks to question Johnson about his outreach to and willingness to represent Guo, a foreign national, so as to create a false equivalency between what Johnson sought to do (i.e., legal representation of Guo that would have been disclosed to all of the involved parties) and what Michel and his co-conspirators did—that is, lobby, and be paid to lobby, on behalf of a foreign principal while concealing their foreign agency.  This testimony would serve only to confuse the issues and mislead the jury as to the nature of Michel's criminal conduct by focusing on the unrelated conduct of another private actor who is not alleged to have engaged in any wrongdoing and had no alleged role in the charged schemes.

## III.      Former President Obama

The defendant's stated basis for calling former President Obama as a trial witness is predicated largely on the purported self-interest of former campaign and administration officials who, according to defense counsel, attempted to leverage their access to President Obama to benefit their business and financial interests.  However, even if true, the actions and machinations

of individuals other than Michel and his co-conspirators unrelated to the charged schemes are irrelevant to this case under Rule 401, let alone the "meticulous standard" appropriate for evaluating presidential testimony. *Poindexter*, 732 F. Supp. at 147. For example, White and Dutta's efforts to generate business in Malaysia with or through Najib or Low does not make it more or less probable that Michel and his co-conspirators injected Low's foreign money into the 2012 presidential election or attempted to influence U.S. government policy and action on behalf of Low or the PRC government in 2017. It is not material whether other individuals undertook actions similar or analogous to those of the defendant.[2] These charges and this trial are about Michel's conduct and that of his co-conspirators, not the unrelated conduct of third parties. The Court has denied the defendant's motion to dismiss based on selective prosecution, *see* Order, Doc. 154, and has granted the government's Motion *in Limine* to exclude arguments of selective prosecution, *see* Order, Doc. 182. The actions of others who sought access to or influence with President Obama's administration, regardless of whether those actions involved Low, will not aid the jury in understanding Michel's charged criminal schemes. To the contrary, the actions of White, Dutta, or others who attempted to parlay their connections and experience with the presidential campaign or administration will confuse the issues, mislead the jury, and substantially risk a mini-trial involving non-defendants and conduct not at issue in this case. *See United States v. Elmardoudi*, 2007 U.S. Dist. LEXIS 47123, at **20-21 (N.D. Iowa Jun. 27, 2007) (denying defendant's trial subpoenas to U.S District Judge, U.S. Attorney, and defendant's former attorney under Rule 403 because "[s]uch testimony would invite the introduction of evidence on collateral issues; the parties would have to delve deeply into the facts in the [other proceedings] in order for

---

[2] The defendant cannot call President Obama, or any other witness, to present extrinsic evidence simply to impeach the testimony of a government witness. *See* Fed. R. Evid. 608(b).

the jury to understand the testimony of the witnesses," and "the jury will gain little from the testimony of the three proposed witnesses that it cannot gain from [the government witness's] testimony and cross-examination").

Regarding President Obama's attendance at campaign fundraising events in 2012, the jury will receive ample evidence of that fact through witness testimony and documentary evidence, including photographs. President Obama's attendance will be uncontroverted. Therefore, President Obama's testimony on this point will be cumulative at best and arguably irrelevant because the President's firsthand account of the events or his familiarity with Michel (or other co-conspirators) will not have any bearing on whether Michel served as a pass-through for Low's money to political committees supporting President Obama, or whether Michel provided Low's money to straw donors so they could make conduit contributions to the campaign. *See United States v. Washington*, 2012 U.S. Dist. LEXIS 104582, at *17 (D. Mont. Jul. 26, 2012) (granting motion to quash subpoena for Attorney General's testimony in criminal case because defendant "failed to show that the Attorney General possesses any relevant information, the knowledge of which is unique to him" and that cannot be obtained through other means). The defendant cannot satisfy the "meticulous standard" for calling a former President to testify about issues and topics that other witnesses are just as well, if not better, situated to address. *Poindexter*, 732 F. Supp. at 147.

### IV.    Former President Trump

The defendant intends to question former President Trump about his contacts with Broidy and Wynn concerning Guo's extradition and a meeting and possible golf game with Prime Minister Najib. While the efforts of Michel, Broidy, and their co-conspirators seeking Guo's extradition and a meeting and golf game between the President and Najib are at the heart of this case, President

Trump's testimony is superfluous and ultimately cumulative on these issues.  The jury will hear about these efforts firsthand, including from Broidy and possibly Steve Wynn.  The defendant, therefore, will have an opportunity to directly question the individuals responsible for and knowledgeable about the communications with President Trump.  President Trump, on the other hand, was merely the recipient of this information, and even based on defense counsel's proffer, the President did not know that Broidy and his co-conspirators were being paid millions of dollars by Low for their influence efforts and were attempting to set up meetings with high-ranking U.S. government officials at the direction of Low and Lijun.  Consequently, President Trump's cumulative testimony that he was in fact approached and lobbied about both meeting with Najib and extraditing Guo would not make it more or less probable that Michel and his co-conspirators were working at the direction of Low and the PRC government.  The defendant cannot satisfy the "meticulous standard" necessary to justify a presidential subpoena when other witnesses and evidence will address more directly the facts and issues at hand.  *Poindexter*, 732 F. Supp. at 147.

## CONCLUSION

The defendant's proposed testimonies of former Presidents Obama and Trump and former Secretaries Carson and Johnson are irrelevant and cumulative, and invite a substantial likelihood of prejudice by confusing the issues, misleading the jury, and needlessly consuming trial time on facts and issues at best ancillary, and at worst completely unrelated, to the charged schemes in this case.  For any subject or areas of inquiry relevant to this case, the defendant will have the opportunity to examine witnesses who had direct involvement or firsthand knowledge of relevant facts.  Defense counsel's proffers as to the former Presidents suggest that they had no knowledge of facts in dispute in the upcoming trial (*i.e.*, whether the defendant was conduiting Low's foreign money into political committees in 2012, and whether the defendant and his co-conspirators were

being paid by, and working at the direction of, Low and the PRC government in 2017).  The proffers as to the former Cabinet Secretaries suggest no material connection to this case at all.  The defendant has failed to meet the foundational requirements of the Federal Rules of Evidence, let alone the meticulous standard applicable to presidential subpoenas.  The defendant, therefore, should be excluded from calling these four witnesses absent a development or showing at trial that warrants reconsideration.[3]

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:  */s/ Sean F. Mulryne*
John D. Keller
Principal Deputy Chief

Sean F. Mulryne
Director of Enforcement & Litigation
Election Crimes Branch

Nicole Lockhart
Trial Attorney
1301 New York Ave., NW
Washington, DC 20530
Telephone:  202-514-1412
Facsimile:  202-514-3003
john.keller2@usdoj.gov
sean.mulryne@usdoj.gov
nicole.lockhart@usdoj.gov

---

[3] While the defendant should be excluded from calling Presidents Obama and Trump, absent a greater showing, if the Court were inclined to allow their testimony, the government recommends that the testimony be provided via videotaped deposition to ensure that the interests of the government and these former government officials also be protected.  *See Poindexter*, 732 F. Supp. at 157-59 (ordering videotaped deposition of former President Reagan's testimony while noting that "there is an absence of a direct precedent in two hundred years of American history for the compelled testimony in a courtroom by an incumbent or former President"); *see also United States v. McDougal*, 934 F. Supp. 296, 298 (E.D. Ark. 1996) (permitting videotaped deposition of President Clinton).

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.


Dated:  February 17, 2023                                          */s/ Sean F. Mulryne*          
                                                                                    Sean F. Mulryne