**KENNER LAW FIRM**
**DAVID KENNER, SBN 41425**
**16633 VENTURA BLVD., STE. 735**
**ENCINO, CA 91436**
**PHONE: (818) 995-1195**
**FAX: (818) 475-5369**
**EMAIL: DAVID@KENNERLAW.COM**

**ATTORNEY FOR DEFENDANT**
**PRAKAZREL MICHEL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**PRAKAZREL MICHEL, *ET AL*.**<br><br>**Defendants.** | **Case No.: 19-148-1 (CKK)**<br><br>**DEFENDANT MICHEL'S MOTION TO RECONSIDER ORDER GRANTING UNITED STATES' MOTION TO EXCLUDE WITNESSES**<br><br>**The Honorable Colleen Kollar-Kotelly** |

COMES NOW PRAKAZREL MICHEL, by and through counsel of record, and hereby files this motion to reconsider order granting the Government's Motion to Exclude Witnesses.

The response is based on all the papers and records on file in this action and on such oral and documentary evidence as may be presented at the hearing on the motion.

///

///

## I

## INTRODUCTION

By Memorandum Opinion and Order dated March 6, 2023, the Court granted the government's motion to bar the testimony of former Presidents Obama and Trump and former Secretary Jeh Johnson. ECF No. 207. In doing so, the Court reframed several issues not addressed by either party and cited several new cases that neither party cited nor had the opportunity to argue in their respective briefs. This is important to address a number of new issues and case law relied upon by the Court in reaching its decision. The defense now respectively moves the Court to reconsider its decision.

## II

## LEGAL DISCUSSION

The Defendant Michel is guaranteed the right to compulsory process under the Sixth Amendment to assure that he has every opportunity to defend himself against the government's effort to take away his liberty. As the Court pointed out, "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1972) (citations omitted). This guarantee is fundamental to our justice system and finds expression in over two centuries of case law that guarantees that an accused has a meaningful opportunity to defend himself before his liberty can be taken away. This guarantee is so fundamental, courtesies otherwise extended to former and current U.S. Presidents must yield to the greater good served by adherence to the Sixth Amendment. *Vance v. Trump,* 140 S.Ct.2412, 2420 (2020).

A defendant's right to compulsory process is not limitless, certainly, but encompasses the right to subpoena witnesses if defendant makes a *prima facie* showing the anticipated testimony would be relevant. As *Vance* recognized, this right is not dependent upon the ability to prove that

the testimony at issue is critical to the case, or the same testimony cannot be obtained from other witnesses. *Id*. at 2429. This holding was echoed in *United States v. Poindexter*, 732 F.Supp. 142, 147 fn. 21 (D.D.C. 1990) and *United States v. Fromme*, 405 F.Supp. 578, 581-83 (E.D. Cal. 1975).

Regardless of overwhelming precedent, the Court states in its March 6th ruling a finding of relevance, by itself, does not entitle Mr. Michel to compulsory process. The Court wrote it must also consider the probative value of the testimony proffered, citing Judge Silberman's "concurrence" in *United States v. North*. ECF No. 207 at 5 ( "*United States v. North,* 910 F.2d 843, 948-49 (D.C. Cir. 1990) (Silberman, J., concurring)"). The defense supports both the relevance and probative value of any testimony proffered. Thus, reaffirms previously proffered evidence in support of Presidents Obama and Trump and Jeh Johnson, is both highly relevant and probative. However and more importantly, cited pages in support of the Court's Order are from Judge Silberman's dissent, not his concurrence. So Judge Silberman's meaning – and to be explicitly clear – it has no precedential value.

Additionally, the Court relied on Justice Kavanaugh's concurrence in *Vance* to argue Mr. Michel must do more than make a *prima facie* showing of relevance. ECF No. 207 at 6 & fn. 3. Justice Kavanaugh's concurrence, joined only by Justice Gorsuch, also has no precedential value. Furthermore, Kavanaugh's concurrence spoke only to Article 2 concerns for a ***sitting*** President when a State seeks to subpoena information, and is not applicable here, where an accused's Sixth Amendment rights are at stake and the information sought relates to former government officials' communications ***not protected by privilege.*** For example, President Obama's testimony would relate to communications held on the campaign trail and with members of a privately held non-profit organization, Organizing for Action. The same is true for President Trump's communications with Steve Wynn and Elliott Broidy, both private citizens and neither who had registered foreign

agents, nor registered lobbyists. The defense does not suggest that a *prima facie* showing of relevance equates to admissibility of the evidence. The defense contends the issue before the Court should be limited to determining whether Mr. Michel has made a *prima facie* showing proffered testimony would be relevant. The test requires only that the proffered testimony "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." F.R.Evid 401. Relevancy is not dependent upon whether a piece of evidence is "strongly" relevant or "marginally" relevant. As the Advisory Committee for Rule 401 noted, any attempt to refine the definition of relevance in the Rule would be "**unworkable** and **unrealistic**," citing commentators who have stated that not "every witness can make a home run." Rule 401, Notes of Advisory Committee on Proposed Rule, 2011.

Here, the defense contends the Court has prematurely engaged in ultimate questions about admissibility. The Court, for example, devoted substantial effort to determine whether relevant testimony would be inadmissible under F.R.Evid. 403 on the basis that its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or presenting cumulative evidence. These decisions are based on hypothetical presentations of testimony that reflect little more than speculation on the Court's part in making ultimate admissibility decisions before a jury is seated and the first witness has spoken. This approach is inconsistent with the Court's obligation to protect the Sixth Amendment rights of the accused, and the defense asks the Court to reconsider its decision and hold that the defense may call as witnesses former Presidents Obama and Trump and Secretary Johnson

**III**

**ARGUMENTS**

**A. President Obama**

To sustain a conviction on the conspiracy count alleged in Count 1 of the Superseding Indictment, the government must prove that Mr. Michel committed at least one overt act in furtherance of the conspiracy. *United States v. Recio,* 537 U.S. 270, 275 (2003). Two of the alleged overt acts relate to Mr. Michel's attendance at an Obama campaign fundraiser with Jho Low's father. ECF No. 84 at ¶¶ 61, 62. According to the Superseding Indictment, these overt actions were in furtherance of the conspiracy to gain access to and influence with President Obama for financial gain. ECF No. 84, ¶ 1.

The Court did not address this argument in its March 6th decision. Rather, the Court reframed Mr. Michel's argument to suggest President Obama's testimony is relevant to Mr. Michel's motive. However, the Court distorts the Defense argument. Rather, relevancy of President Obama's testimony was premised on the knowledge the government will seek to prove several overt acts in furtherance of the objective to gain access to, and influence with, President Obama for financial benefit. President Obama's testimony would be relevant because it would make it less likely that attendance at campaign events and discussions with non-registered foreign agents or lobbyists, otherwise known as private citizens, were overt acts in furtherance of the alleged conspiracy. As things stand, the Court will allow the government to use these photographs to attempt to prove an overt act in furtherance of a conspiracy while preventing President Obama from providing testimony that would rebut the allegation that photographs are evidence of an overt act in furtherance of a conspiracy.

Allowing the government free rein would be to deny Mr. Michel his rights guaranteed under the Sixth Amendment and allow the government to proceed in a manner that would mislead the jury, and be highly prejudicial to both Mr. Michel and President Obama.

Even if Mr. Michel had argued that President's Obama's testimony was needed to rebut the government's allegation regarding motive, the Court recognized that his motive would be relevant. ECF 207 at 9. Rather than stop the analysis at that point, the Court went beyond that to ask whether the probative value of President Obama's testimony should be barred under F.R. Evid. 403. Without a jury seated, or testimony from the first witness, the Court held that allowing President Obama to explain his contact with Mr. Michel and Jho Low's dad (and later, Jho Low himself) would confuse and mislead the jury and risk creating a side show and running the trial off track. The Court does not explain why or how this would ensue in Court or why a jury instruction would not mitigate the risk of confusion, whatever that may be. If it is that the Court simply does not have a developed trial record to bar the testimony under Rule 403, then it seems that the decision has little regard to Mr. Michel's rights under the Sixth Amendment.

Mr. Michel also raised several other grounds upon which President Obama's testimony would be relevant, ECF 195 at 9-13, but the Court does not address any of those matters and instead simply bars President Obama's testimony on them. The defense recognizes that the Court need not address and analyze each argument raised by counsel, but the Court has chosen not to address a wide swath of relevant testimony that President Obama could provide that is relevant to several matters involving Frank White between 2012 and 2014. Because the Court has not articulated any basis for excluding testimony on this swath of matters at issue, the defense contends that the Court has failed to provide any information to understand why or how the Court reached its decision such that the defense can either accept those reasons or challenge them.

**B. President Trump**

The indictment alleges a conspiracy that included several overt acts taken to reach out to President Trump by Elliott Broidy directly, by personally asking President Trump to play golf with Prime Minister Razak (of Malysia) and indirectly by asking casino mogul, Steve Wynn to reach out directly on multiple occasions to enlist President Trump's assistance with achieving an objective of the alleged conspiracies. The Court characterizes President Trump's anticipated testimony on these encounters as not "legally dispositive" because the conspiracies can nonetheless be proven even if these encounters had never occurred or had been impossible to do.

The defense objects to this recharacterization of the issue at hand. It is clear that the government must prove at least one overt act in furtherance of the conspiracies alleged, and President Trump's anticipated testimony would be relevant to determining whether Broidy's and Wynn's contacts with him were or were not overt acts of the conspiracy alleged by the government.

The Court also argues that any contacts that Broidy and Wynn had with President Trump do not speak to Mr. Michel's conduct, but that is counter the conspiracy counts alleged by the government. The government alleges, and will likely argue, that the conduct of one conspirator (i.e., Broidy) in furtherance of the conspiracy is attributable to all co-conspirators (i.e., Mr. Michel).

The Court also prematurely engages in admissibility decisions on a barren record to minimize the probative value of President Trump's testimony. The Court states that because Broidy has already testified under oath that he conspired with Mr. Michel to violate FARA, "the precise details of any meetings former President Trump may or may not have attended have little, if any, bearing on Michel's state of mind or any other dispositive fact." ECF 207 at 11. Broidy signed off as "fact" in his plea agreement is a prosecution-drafted statement of facts that allege that Mr. Michel willfully and knowingly failed to register under FARA. Broidy "adopted" the factual statements

written by the prosecution, even though Broidy's statements outside the context of his plea agreement reveal a very different reality, i.e., that he never spoke with Mr. Michel about FARA and that, after his plea deal, the government never asked Broidy about Mr. Michel's alleged willful failure to register since an answer different than what the government inserted into his plea agreement would be problematic for the government.

The Court also minimizes the need for President Trump's testimony on the basis that "the Government intends to call almost every other member of the conspiracy as a witness at trial" and because of that "the probative value of former President Trump's proffered testimony is substantially outweighed by the risk that such testimony would confuse the issues or mislead the jury" and a waste of time.(ECF 207 at 11. But it simply is not true that the government will be calling "almost every other member of the conspiracy." Broidy and Higginbotham may be called by the government, but apparently no others – the government cannot call Mr. Michel, the government likely would not call Lum Davis as she has been scheduled to show up at federal prison during the trial and she had rejected her plea deal as containing a false statement of facts authored by the prosecution and her former attorney; Jho Low, Sun Lijun and others from Asia are not expected to testify. The government briefing said Wynn "may" testify.

The Court does recognize that "Broidy's conversations with then-President Trump may well go directly to whether Michel aided and abetted Broidy in unlawfully lobbying then-President Trump" but then states that the defense "focuses predominantly on then-President Trump's subjective understanding as to whether Broidy or Wynn were lobbying him on behalf of the Chinese government." The court cites 3 lines from a transcript to support this characterization of the proffer, ECF 207 at 12-13 (" E.g., ECF No. 190-1, Trans. 58:17-20"), but the defense proffer regarding President Trump covered four pages in that transcript (ECF 190-1, Tr. at 56-59) as well as several

pages in Defendant's Response to United States' Motion to Exclude Witnesses. From that mischaracterization of the proffer, the Court then explains why President Trump's state of mind is not relevant and thus inadmissible.

The Court next points out that having President Trump testify about what Broidy said to him about setting up a meeting with the Prime Minister of Malaysia might be inadmissible hearsay if offered for the truth of the matter. Again, this is a ruling that should be made at trial based on the specific questions asked and what evidence and testimony has already been admitted into evidence, and not be decided now upon a hypothetical record. If Broidy is to testify, as the Court assumes, he will provide his in-court statement about what he told President Trump and there will be no need to worry about a possible hearsay objection.

Finally, the Court suggests that Mr. Michel's proffer is totally speculative and thus inadmissible because the defense has not interviewed President Trump. There is no requirement that potential witnesses submit to interviews or depositions before they can be subjected to compulsory process. Such a rule would deter any witness from ever talking with litigant and undermine an accused explicit right to compulsory process. The government has produced millions of pages of documents in this matter, and accused Mr. Michel with serious crimes, some of which include allegations involving efforts to conduct back-channel lobbying with President Trump and his administration. Thus, he is entitled to President Trump's testimony because he has indeed made a *prima facie* showing that it is relevant testimony.

**C. Jeh Johnson**

In denying Mr. Michel's request to subpoena former Secretary of Homeland Security Jeh Johnson, the Court held that whether or not Secretary Johnson registered under FARA is irrelevant because there is no evidence that suggested that Mr. Michel knew of the former Secretary's

intentions regarding registration under FARA. Thus, the Court concludes, any testimony on this issue by Secretary Johnson would be irrelevant and quashed the subpoena.

The Court's opinion did not address other grounds cited by the defense for Johnson's testimony. For example, while serving as Secretary of Homeland Security, Johnson could verify that it was widely known within government and in open sources that Guo Wengui had fled to the United States from China in 2015, and that China had been proactively seeking the assistance of the United States in returning to Guo to China long before the conspiracy alleged in this case. This testimony would be relevant to rebutting the government allegation that Mr. Michel was engaged in a secret, back-channel lobbying effort on behalf of China to return Guo. ECF No. 195 at 19.

The Court also does not address head-on, that Johnson's testimony is relevant to authenticate the tape recording. Mr. Michel obtained a copy of the recording at the request of the FBI, and his doing so is relevant to Mr. Michel's state of mind on the FARA counts. This is so because Mr. Michel not only initiated contact with the FBI to relay the offer made by the Chinese in exchange for Guo, but he was tasked by the FBI with gathering a copy of this tape and, in good faith, he did so while being patted on the back for doing so by the FBI. The Court in footnote 7 of its memorandum opinion states that the Court has already ruled that Mr. Michel cannot offer such evidence as "good acts" under Rule 405 and that it need not consider the argument again here. But Mr. Michel would not be offering this evidence to show "good acts," but rather to show that he lacked the specific intent to commit the FARA crimes alleged. Verifying that Mr. Michel obtained a true copy of the recorded conversation would speak to Mr. Michel's state of mind.

## IV

## CONCLUSION

For the reasons set forth above, Defendant Michel requests that the Court reconsider its order barring former Presidents Obama and Trump and former Secretary Johnson from testifying on behalf of Mr. Michel. Each of these witnesses has relevant testimony that is subject to compulsory process under the Sixth Amendment, and such testimony is necessary for Mr. Michel to defend himself.

DATED: March 9, 2023

Respectfully submitted,

**/s/ David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant

**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that the foregoing is true and correct this 9th day of March 2023, at Washington D.C., and that this document is executed under penalty of perjury according to the laws of the United States of America.

________________________
Charles R. Haskell
Attorney at Law