**KENNER LAW FIRM**
**DAVID KENNER, SBN 41425**
**16633 VENTURA BLVD., STE. 735**
**ENCINO, CA  91436**
**PHONE: (818) 995-1195**
**FAX: (818) 475-5369**
**EMAIL: DAVID@KENNERLAW.COM**

**ATTORNEY FOR DEFENDANT**
**PRAKAZREL MICHEL**

**ORAL ARGUMENT REQUESTED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) **Case No.: 19-148-1 (CKK)** |
| **Plaintiffs,** | ) **DEFENDANT'S MOTION FOR TRIAL** |
| | ) **CONTINUANCE** |
| | ) **Date:** |
| **vs.** | ) **Time:** |
| | ) **Place:** |
| **PRAKAZREL MICHEL, *ET AL*.** | ) |
| **Defendants.** | ) |
| | ) **The Honorable Colleen Kollar-Kotelly** |

COMES NOW PRAKAZREL MICHEL, by and through counsel of record, and hereby files this motion for trial continuance.

The response is based on all the papers and records on file in this action and on such oral and documentary evidence as may be presented at the hearing on the motion.

///

///

///

**I**

**INTRODUCTION**

Yesterday, on March 15, 2023, the United States District Court for the Southern District of New York unsealed an indictment against Guo Wengui. *United States v. Ho Wan Kwok, a/k/a Miles Guo, a/k/a Guo Wengui, a/k/a Brother Seven, a/k/a The Principal*, SDNY 23 Cr. 118 (AT), March 6, 2023, ECF No. 2. (Ex. 1). The indictment alleges that at least since 2018 Guo has engaged in fraudulent conduct, along with named and unnamed co-conspirators, to fleece his victims of more than $1 billion. *Id.* The U.S. Attorney, in a 23-page letter to the Court, asked the Court not to grant bail to Guo, noting that he was facing more than 100 years in prison, that he had the means to flee, that he posed a risk of danger to the community because he had already demonstrated that he would organize, encourage, and threaten violence against those opposing him in civil cases, including the U.S. Trustee and his family in Guo's pending bankruptcy case in Connecticut. (Ex. 2).

The events giving rise to this indictment date back at least to the late spring of 2017, when Defendant Michel initiated a meeting with the FBI in the Southern District of New York to relay the Chinese offer to return American hostages and grant other consideration if the United States would return Guo to China. At that time, and at the request of the FBI, the Defendant acquired a copy of a recorded conversation that documented a conversation between Guo and former Secretary of Homeland Security Jeh Johnson.

The Guo indictment and United States Attorney's 23-page letter to the Court asking that bail be denied to Guo reveals that for the past five-plus years the DOJ has been sitting on a treasure trove of documents that it was obligated to produce to the Defendant in this matter as required under *Brady*, *Giglio*, and *Jencks*. The Government chose not to produce these documents. On March 10th, shortly after the sealed indictment was issued on March 6th and before it was unsealed on March 15th, the government produced less than 10 documents that touched upon the Guo investigation: an

April 2017 newspaper article about Guo; a purported recording of a conversation between former Secretary of Homeland Security Jeh Johnson and Guo in which Johnson is telling Guo not to tell anyone about their conversation;[1] untranslated tape recordings of Guo speaking in Chinese;[2] a recording of Guo speaking in Chinese with the following File Name provided by the DOJ: "Guo says that trump is the most stupid and dumb that is why he looks tired and keep getting pitifully scolded 2.mp3."[3] Only days before producing these recordings, the government had claimed that former Secretary Johnson's conversations with Guo were not relevant, and now the government is producing these tapes with the implicit admission that they are relevant. This under-the-radar, mea-culpa production is clearly inadequate and would not begin to scratch the surface of discoverable documents in the millions of documents that the DOJ and FBI (and the SEC)[4] would have assembled over five-plus years to indict Guo. Defendant now moves for a continuance of the trial to sort out what must happen going forward in terms of the government's discovery obligations.

## II

## LEGAL STANDARD

Whether or not to grant a trial continuance is left to the sound discretion of the Court. *United States v. Burton*, 584 F.2d 485, 490 (D.C. Cir. 1978).  Orderly resolution of cases is important, but a "myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend . . . an empty formality." *Id.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). In considering a request for a continuance, the decision must turn on the unique circumstances of each case and balancing the interests at stake. Some of the factors to consider include: (1) the length of the delay; (2) whether other continuances have been granted; (3) the convenience and

---

[1] DOJ-0002855295
[2] DOJ-0002855289; DOJ-0002855290; DOJ-0002855291
[3] DOJ-0002855296
[4] The SEC commenced an enforcement action against Guo at the same time he was indicted.

inconvenience to the litigants, witnesses, counsel, and the Court: (4) whether the request is for legitimate versus dilatory or contrived reasons; (5) whether the Defendant contributed to the circumstance giving rise to the request for the continuance; and (6) whether denying the continuance will result in prejudice to Defendant's case. *Id*. at 491-92.

## III

## ARGUMENT

### A.  Length of Delay

This factor is unknown but is largely dependent upon how much time the government needs to review the records in the Guo criminal matter to identify those documents it is obligated to produce under Brady, Giglio and Jencks. The defense appreciates that the Court needs more specificity as to the length of continuance, but the government's choices have landed us here and needs to make full disclosure as to the steps it is taking to comply with its discovery obligations and how long that may take. Until that disclosure is made, the defense cannot speculate about the amount of time it will need to review, digest, and follow up to prepare for trial.

### B.  Other Continuances Granted

The Court previously granted a continuance due to unforeseeable medical issues for one of the trial participants

### C.  Convenience/Inconvenience to Litigants, Witnesses, Counsel and Court

On the one hand, a continuance for the Defendant and his counsel is not only a matter of convenience but necessity so that it can obtain evidence it deems necessary for the defense. On the other hand, witnesses under subpoena will likely be further inconvenienced by a continuance, and the Court would need to find another block of time to schedule the trial.

### D.  Whether Request is for Legitimate or Dilatory Reasons

The request is based on new information that was not available until yesterday when the indictment against Guo was unsealed.

### E. Whether the Defense Caused the Need for a Continuance

No, the defense did not contribute to the need for a continuance.

### F. Whether Denial of the Continuance will Prejudice the Defendant

Yes, it would. Counts 8 and 10 of the Superseding Indictment allege that the Defendant willfully and knowingly violated 22 U.S.C. §§ 612 & 618 (FARA) and 18 U.S.C. 951 (Agent of a Foreign Government) by acting as an unregistered secret agent of the People's Republic of China and advocating for the return of Guo to the PRC. The Defendant has steadfastly maintained that at all times he was acting in America's best interests in getting the Chinese to release American hostages, including a pregnant hostage, and getting other consideration from the Chinese in exchange for the return of Guo. The Defendant did not know anything about Guo, except that he reportedly had fled China to escape imprisonment for various crimes, including rape and fraud and corruption, and that Interpol had issued an international call for Guo's arrest.

The defense theory here is not that the Defendant engaged in "good acts" for which he deserves a Medal of Honor. The defense theory is that the Defendant did not form the requisite intent to commit the crimes alleged in Counts 8 and 10 of the indictment because he firmly believed that he was acting in America's best interests, even if that meant that the Chinese would have Guo returned to China to face the consequences of his actions there. Now, with the explosive revelations in Guo's indictment as well as the US Attorney's letter to the court seeking the denial of bail to Guo, Guo is no longer the innocent Chinese dissident that the government has portrayed from the start of this case. Now the DOJ–albeit in a different branch–feels for good reason that Guo is too dangerous to release from a jail cell because he poses a clear and present danger to the citizens of

this country based on the fraud he has committed, the violence he has called for and perpetrated against civil court officials, and death threats he has conveyed to his opponents.

So that we are clear, Defendant continues to maintain that he has been subject of a selective prosecution by the government. As demonstrated in recent filings, the DOJ chose not to prosecute Steve Wynn, a close friend of President Trump, who devoted exponentially more time acting as an unregistered agent of the Chinese than did the Defendant. Like the Defendant, Wynn believed he was acting in the best interests of America when he spent hour upon hour talking directly with the Chinese Vice Minister Lujan, meeting President Trump at the White House and calling the President on his personal cell phone to pitch for the return of Guo, meeting with members of Trump's administration, including Jared Kushner. The DOJ did not prosecute Wynn, but instead started sending him letters advising him to register under FARA and Wynn chose to ignore three of those letters. His reward: a civil action by the DOJ asking the Court to require Wynn to register under FARA, and the court tossed that civil suit. The DOJ, however, wants to imprison the Defendant for years on end for engaging in a fraction of conduct that Wynn engaged in. Selective prosecution or not, the fact that Wynn and several others were not registering under FARA in connection with the effort to get Guo returned to China is relevant to the Defendant's state of mind. He believed he was acting in America's interest–just as Wynn, Lum Davis and others believed. When he looked around, he saw persons far savvier and more experienced than he was – Wynn, Broidy, and Lum Davis – not registering under FARA – and he even saw his own lawyer, George Higginbotham not registering under FARA (although his non-registering lawyer says he told the Defendant he needed to register. How credible is that?

The government's secret investigation of Guo was inextricably linked to the Defendant. In the summer of 2017, the FBI in New York asked the Defendant to obtain a copy of a recorded conversation between Guo and former Secretary Jeh Johnson. The Defendant obtained the recording

for the FBI. Now the DOJ in the past few days has produced a handful of recordings of conversations between Guo and Johnson, and other untranslated recordings of Guo with no context or explanation. A few news articles about Guo that predate the Defendant's contacts with the FBI in NYC have also been produced the past few days. Given the extensive investigation that must have led to the indictment unveiled yesterday, the defense can reasonably state that the materials from the investigation in the Southern District of New York almost certainly contain a vast amount of evidence that would be subject to discovery by the defense, certainly more than the few breadcrumbs produced under the radar this week by the government.

Although not named in the Guo indictment, which makes references to unknown co-conspirators, numerous open sources reveal that Steve Bannon partnered with Guo on at least one of the business entities that engaged in fraud alleged in the indictment. We also know from former Trump administration official, Matthew Pottinger, that Bannon became involved when Steve Wynn asked then President Trump to return Guo to China, and that Bannon later partnered with Guo after leaving his job with the Trump administration. Guo also purchased a membership at Mar-a-Lago during this time period. The defense can fairly assume that the Guo investigative materials will provide more clarity to those connections with Bannon and now former President Trump as well as any efforts that Guo sought the punishment of individuals such as the Defendant or others who were involved in the effort to get him returned to China.

Of utmost importance, the government is obligated to produce any evidence as it relates to the coordination investigations and prosecutions of the Defendant and Guo. Did the DOJ attempt to get the Defendant's case to trial before indicting Guo? This would not be the first evidence of misconduct disguised as "strategy" in the government's internal documents. The government is obligated to produce any such materials.

The government and Court may not believe that the Defendant's defense is a good one or a viable one, but the Defendant has a constitutionally protected right to pursue his theory of the defense and to have a jury decide whether it accepts his defense. As the Supreme Court has observed, whether "rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendant's 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (citations omitted). The Defendant's right to pursue his theory of the defense will not be vindicated unless and until the government fully complies with its discovery obligations under Brady, Giglio and Jencks from the voluminous case materials gathered to prosecute Guo.

**CONCLUSION**

For the reasons outlined above, the Defendant respectfully requests that the Court provide for an expedited resolution of this motion and grant a continuance of the trial for the reasons outlined above. The length of the continuance would depend largely on how quickly the government can comply with its discovery obligations. Once that is known, then the defense can have a better sense of how much time it would need to analyze the production, including translation of documents and recordings that are in Chinese or other foreign languages, and prepare for trial.

DATED: March 16, 2023                         Respectfully submitted,

                                             **/s/ David Kenner**
                                             David E. Kenner
                                             Kenner Law Firm
                                             16633 Ventura Blvd., Suite 735
                                             Encino, CA 91436
                                             (818) 995-1195
                                             Email: david@kennerlaw.com
                                             CA Bar No.: 41425
                                             Counsel for Defendant

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

DEFENDANT MICHEL'S MOTION FOR TRIAL CONTINUANCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I declare under penalty of perjury that the foregoing is true and correct this 16th day of March 2023, at Washington D.C., and that this document is executed under penalty of perjury according to the laws of the United States of America.

_____
Charles R. Haskell
Attorney at Law