KENNER LAW FIRM
DAVID KENNER, SBN 41425
16633 VENTURA BLVD., STE. 735
ENCINO, CA  91436
PHONE: (818) 995-1195
FAX: (818) 475-5369
EMAIL: DAVID@KENNERLAW.COM

ATTORNEY FOR DEFENDANT
PRAKAZREL MICHEL

**ORAL ARGUMENT REQUESTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 19-148-1 (CKK) |
| Plaintiffs, | DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION FOR TRIAL CONTINUANCE |
| vs. | Date:<br>Time:<br>Place: |
| PRAKAZREL MICHEL, *ET AL*. | |
| Defendants. | |
| | The Honorable Colleen Kollar-Kotelly |

COMES NOW PRAKAZREL MICHEL, by and through counsel of record, and hereby files this reply to the government's response in opposition to motion for trial continuance.

The response is based on all the papers and records on file in this action and on such oral and documentary evidence as may be presented at the hearing on the motion.

///

///

///

- 1 -
DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION FOR TRIAL CONTINUANCE.

# I

# INTRODUCTION

The Court ordered the government to disclose whether it has reviewed documents in the pending Guo matter for discoverable material and, if so, to what degree, and if not, why not. ECF No. 224. To date, the government has not provided straight answers to these very ministerial questions. On the one hand, the "undersigned prosecutors" declare they are not involved in the investigation of Guo and knew nothing of it until earlier this month; on the other hand, without stating whether and to what degree it has reviewed any documents in the Guo matter, the government declares none of the millions of documents contained in their discovery regarding the Guo matter is potentially exculpatory.

For reasons outlined below, the government's response verifies it has not complied with its obligations under *Brady v. Maryland*. The DOJ continues to sit on a treasure trove of documents that are demonstratively exculpatory to the defense theory of the case, and the Court must (1) require the government to comply with its *Brady* obligations and continue the trial until that is done and the defense has adequate time to prepare its defense, or (2) dismiss those counts in the indictment alleging that Defendant Michel acted as an agent for the People's Republic of China and its then Vice Minister of Public Security, Sun Lijun.

# II

# FACTUAL BACKGROUND

Guo Wengui fled from China in December 2013 to avoid arrest on charges of rape, coercion in business transactions, obtaining loans by fraudulent means, bribery, and other corruption charges. Guo eventually entered the United States on a temporary visa in early 2015. Guo reported to be a billionaire with damaging information about Chinese governmental officials at the highest level of

government. Almost certainly, Guo would have been viewed as a high value intelligence asset for the United States. This may explain why he may have been granted a temporary visa into the United States notwithstanding his criminal history, use of aliases, and false statements on passports and other governmental identification documents listing different places of birth and at least three different dates of birth.[1]

Once in the United States, Guo became a prominent and vocal critic of the Chinese government. Moreover, Guo became a top target of Operation Fox Hunt, a Chinese initiative that commenced in June 2014 for the stated purpose of returning corrupt Chinese nationals to China to face criminal charges. In April 2017, the New York Times did a feature article about how Guo had become a member of President Trump's Mar-a-Lago and a top target of Operation Fox Hunt.[2] That same month Interpol issued a red notice on Guo for crimes he committed in China as well as the repeated rape of a Chinese woman in the United States between September 2015 through August 2016.[3]

Soon after the Interpol Red Notice was issued, Defendant Michel contacted the FBI in the Southern District of New York to report his contact with Chinese Vice Minister Sun Lijun. Defendant met with FBI Agent Andrew Zitman multiple times in June 2017.  He told Agent Zitman about the Chinese proposal to return American hostages and provide other consideration in exchange for the return of Guo to China. Furthermore, at Agent Zitman's request, Defendant went back to the Chinese to gather tape recordings requested by Agent Zitman.  302s from these

---

[1] DOJ-0002628431
[2] https://www.nytimes.com/2017/04/04/world/asia/china-mar-a-lago-guo-wengui.html
[3] On September 11, 2017, the woman sued Guo for sexual assault in New York state court. *Rui Ma v. Guo Wengui*, NY S.CT, Index No. 158140/2017. The case is still pending because Guo filed for bankruptcy in 2022.

encounters were prepared by Agent Zitman for Case File No. 200D-NY-6219677.[4]  Notably, this file number is different from Case File numbers used to classify official documents involving George Higginbotham and Elliott Broidy.  For Higginbotham and Broidy, official 302s were both associated with Case File No. 205B-NY-6730302,  the 1MDB investigation. (DOJ-0000094692 & DOJ-0002643527).

It appears Agent Zitman was involved in an active investigation of Guo Wengui at the time he met with the Defendant in June 2017.  This likely explains both why the Case File No. is different and why Defendant was interviewed by Agent Zitman rather than one of the agents assigned to 1MDB.

On October 20, 2022, Agent Zitman was interviewed by government's counsel–Mr. Keller, Mr. Mulryne, Ms. Lockhart. Agent Zitman reported when he interviewed Defendant Michel in June 2017, "it was not clear to Zitman whether Michel was motivated by trying to assist the U.S. . . . " Zitman further explained, "not all the details of those meetings [with Defendant] or the associated FBI research were previously memorialized in an official FBI-302 **since they did not have a nexus to Wengui.**" (DOJ-0002813619) (emphasis added).[5] It is almost a certainty that Zitman was involved in some capacity in an investigation involving Guo, whether or not that investigation is what led to the indictment unsealed last week.

---

[4] DOJ-0002643697

[5] Agent Zitman is the one who provided recently provided to Mr. Keller that tape recordings that were produced when unsealing of the indictment of Guo was imminent. (March 1, 2023, Email from Zitman to Keller, DOJ-0002855236).

- 4 -
DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION FOR TRIAL CONTINUANCE.

## III

## LEGAL STANDARDS

Defendant has a constitutionally protected right to pursue his theory of the defense and must be provided 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted). In connection with this defense, the government is obligated to produce any evidence that may be exculpatory or reasonably lead to the discovery of exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). The purpose of the rule is to have a "fair trial" and not one where the government stacks the deck against a defendant. *United States v. Straker,* 800 F.3d 570, 602 (D.C. Cir. 2015), citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Justice is defined by whether trials are fair and not by how many wins the prosecution can obtain.

To be explicitly clear, Defendant consistently asserted and continues to assert he was acting as an American and in America's interests when he initiated contact with Agent Zitman. Defendant continues to deny he was acting as an agent for China and denies he willfully and knowingly acted as a secret agent under the direction and control of China when he approached the FBI. This is the same defense Steve Wynn made when he successfully defended himself against DOJ's accusations he violated FARA.  Additionally, it is the same defense Tom Barrack used to defend himself in DOJ's failed prosecution of him for alleged violations of FARA. And, it is a defense FBI Agent Zitman acknowledged when he told prosecutors, Keller, Mulryne, and Lockhart  he was not confident the Defendant was acting as an agent of the Peoples Republic of China when he approached the FBI in June 2017.

When the Defendant initiated contact with the FBI, the Defendant knew Guo had been accused of committing several crimes, including rape, and that an Interpol Red Notice had been issued for his return to China. It is more than reasonable the Defendant believed America would

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION FOR TRIAL CONTINUANCE.

benefit from a trade whereby Guo would be returned to China in exchange for the return of American hostages . In fact, any reasonable person would have to ask why the United States would ever let Guo enter the country, much less stay in it after allegedly committing both economic and violent crimes.  Unfortunately, DOJ has now reached that same conclusion–six years too late–that Guo poses a clear and present danger of economic and physical harm to Americans and should be held in a jail cell without bail until his trial.

## IV

## ARGUMENT

### A.  Overlapping of Offense Dates

The government alleges that Guo's offenses for which he is currently facing charges are irrelevant because they do not overlap with the time period involved with Defendant's alleged crimes. This is neither true nor particularly relevant to the issue before the Court.  Rather, the indictments against Guo and Defendant Michel allege criminal conduct conducted during the same period of time. The indictment against Guo alleges criminal conduct "from at least in or about 2018." *United States v. Ho Wan Kwok*, No. 23-cr-118 (S.D.N.Y. 2023), Indictment, ¶ 1 ECF No. 2, and the Superseding Indictment against Defending Michel alleges criminal conduct on behalf of China from "in or about March 2017 through in or about January 2018." ECF No. 84, ¶¶ 105, 151, 155. This is further supported by two distinct Case File No. used concurrently by the FBI. Specifically, Case File No. 200D-NY-6219677 for the Guo investigation and Case File No. 205B-NY-6730302 by 1MDB investigation.

Defendant is not claiming an overlap of evidence to support his constitutional right to exculpatory evidence.  Rather, Defendant sets forth below in section D the types of exculpatory evidence one would expect to find in case investigation files associated with Guo's indictment.

- 6 -

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION FOR TRIAL CONTINUANCE.

**B.      Exculpatory Evidence Must be Located within the Prosecution Team**

The government contends that its obligation to produce exculpatory evidence extends only such evidence known to the "undersigned prosecutors" on its brief–i.e., Mr. Keller, Mr. Mulryne, and Mr. Lockhart. ECF No. 229 at 2.  This is absurd and directly contrary to Supreme Court precedent.  More importantly, this theory also contradicts policies and procedures defined in their own DOJ Manual.  Specifically, the DOJ Manual defines the prosecution team for purposes of locating and producing *Brady* evidence to include all federal, state and local law enforcement officers and other government officials participating in the investigation and prosecution of the case. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995); DOJ "Justice Manual," Section 9-5.001(B)(2).[6] When there is overlap with other ongoing investigations, those involved in the investigations become part of the prosecution team for purposes of locating *Brady* materials.  DOJ "Justice Manual," Section 9-5.002(A).

**C.      Production of Evidence that is Inconsistent with Element of Crime**

*Brady* materials include not only evidence that would necessitate an acquittal, but evidence that may, when combined with other evidence, cut against a finding of guilt or is inconsistent with an element of a charged offense. Under the DOJ Justice Manual, prosecutors are instructed to err on the side of production when relevance of the evidence is questionable. *Id*., Section 9-5.001 to assure compliance with *Kyles v. Witley*, 514 U.S. 419 (1995) and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

When the Defendant initiated contact with the FBI in June 2017, he knew that Guo had been accused of committing several crimes, including rape, and that an Interpol Red Notice had been issued for the return of Guo to China. Defendant could reasonably take the view that America

---

[6] https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings

- 7 -

would benefit from a trade whereby Guo would be returned to China in exchange for the return of American hostages and other consideration from the Chinese. Furthermore, the government was aware Guo was under investigation; however, no notice of such was provided the Defendant.

### D. What Types of Evidence are Potentially Exculpatory

Discoverable materials that may fall within the parameters of *Brady* and its progeny would include the following:

1. All immigration-related forms that Guo would have filled out to gain temporary entrance into the United States to verify whether he honestly answered questions about his criminal history, identity, date of birth, and place of birth.

2. All documents, whether classified or not, that purport to explain why the United States would grant entry Guo in 2015 and continue to allow him to stay in the United States thereafter and why it was in America's interests to allow him to stay here.

3. All proffers of Guo that relate to Operation Fox Hunt, including his public accusations that China enlisted the CEOs of several U.S.-based corporations to seek his return to China and that several CEOs made such attempts on behalf of China.

4. All documents in the Guo investigation that mention Defendant Michel and/or other alleged co-conspirators in this case including Jho Low, Elliott Broidy, Nikki Lum Davis, George Higginbotham, and Steve Wynn because Guo filed court documents alleging that Wynn, Broidy and others have attempted to force his return to China.

5. All materials in the Guo case files that is exculpatory or in any way tends to support the Defendant's contention that it would be in America's interests to return Guo to China in 2017.

### E. Classified Material is Subject to Discovery

Many of the documents that may contain exculpatory evidence may be classified, but that does not absolve the government of its *Brady* obligations. There are procedures in place for these

- 8 -

types of materials, starting out with the prosecution's obligation to obtain supervisory approval if it elects not to produce classified material. If the prosecution elects to do this, then it still must notify the defense of the "time and manner by which disclosure of the exculpatory . . . information will be made." DOJ "Justice Manual," Section 9-5.001(D)(4).

The prosecution has already demonstrated that it has failed to comply with its obligation to notify and timely produce relevant classified documents. Starting over four years ago, the government started a memorandum subject to periodic update that set forth the pressure campaign it placed on Mr. Michel before he was ever indicted. The government wanted the Defendant to provide desperately needed information about Jho Low. The memorandum was updated over time to reveal a focused effort to increasingly apply pressure to Defendant to get what the government wanted. First it would threaten prosecution. Then it would prosecute on only the election law counts. And if that did not work, it would throw the book at him and indict him on the FARA and Foreign Agent and Money Laundering to get him to bend. The government designated this document as classified and did not declassify it until September 15, 2022. The government, however, never revealed that it had classified this highly exculpatory document and it was thus unavailable when it was needed most–when the defense sought to dismiss the case much earlier on the theory that the Superseding Indictment reflected an improper punishment.

## V

## CONCLUSION

The government has chosen to be cavalier in ignoring its obligation to provide *Brady* material. It arrogantly assumes the government will decide what theories the defense can and cannot pursue and has abandoned any obligation it has to assure a fair trial and that justice be done. The "win at all cost" dilutes our judicial system.

The need for a hearing on this matter is even more critical now so that the Court can get straight answers from the prosecution about what it has *actually* done to comply with its *Brady* obligations. It is difficult to assess the depth of the government's non-compliance, and it behooved the Court to intervene to work out a specific plan to search the database in the Guo investigation to identify what documents may be subject to production, including any documents currently designated as "classified" by the government. Such a plan can include objective criteria, such as keyword searches and other search strategies that will result potentially exculpatory evidence.

DATED: March 19, 2023              Respectfully submitted,

**/s/ David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant


**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION FOR TRIAL CONTINUANCE.

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that the foregoing is true and correct this 19th day of March 2023, at Washington D.C., and that this document is executed under penalty of perjury according to the laws of the United States of America.

_____
Charles R. Haskell
Attorney at Law