UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> PRAKAZREL MICHEL, <br><br> Defendant. | Criminal Action No. 19-148-1 (CKK) |

**ORDER**
(March 21, 2023)

This criminal case is set for trial on March 27, 2023. On March 6, 2023, the Court entered a memorandum opinion and order granting the Government's [193] Motion to Exclude Witnesses. *Michel*, 2023 WL 2388501, at *1. Specifically, the Court excluded the testimony of former President Barack Obama, former President Donald Trump, and former Secretary of Homeland Security Jeh Johnson, concluding that the proffered testimony of each was irrelevant, unduly prejudicial, or impermissibly speculative to sustain a Rule 17 subpoena. *Id.* Before the Court is Defendant Prakazrel Michel's ("Defendant" or "Michel") [215] Motion to Reconsider that ruling. Motions for reconsideration in both civil cases and criminal cases are disfavored, and generally a movant must identify clear factual or legal error to warrant relief. *See United States v. Cabrera*, 699 F. Supp. 2d 35, 40-41 (D.D.C. 2010). Because the Court perceives no factual or legal error in the challenged opinion and order, the Court **DENIES** Defendant's [215] Motion to Reconsider.

The court shall address Defendant's objections to the Order *seriatim*. Before continuing, however, the Court briefly assumes the reader's familiarity with this matter and the Court's opinion and order whose reconsideration Defendant seeks here, ECF No. 207.

1

*First*, Defendant argues that the Court improperly cited to Judge Laurence Silberman's concurrence (technically, a concurrence in part and a dissent in part) in *United States v. North*, 910 F.2d 843, 948-49 (D.C. Cir. 1990) (Silberman, J., concurring) *withdrawn and superseded in irrelevant part on reh'g* 920 F.2d 940 (D.C. Cir. 1990), arguing that a concurrence has no precedential value. While that assertion is broadly correct, the Court cited to the opinion for the unremarkable, Hornbook rule that a court considers the probative value of proffered testimony when determining its admissibility. *Michel*, 2023 WL 2388501, at *3. Defendant does not cite any case law for the proposition that a court should not weigh probative value against the factors delineated in Rule 403 in a motion *in limine*, and it suffices to note that courts regularly do so, as the Court noted in the prior challenged opinion. 2023 WL 2388501, at *4 (citing *United States v. Bigesby*, 685 F.3d 1060, 1065 (D.C. Cir. 2012) (endorsing a trial court considering the probative value of evidence when weighing whether to exclude evidence *in limine* for risk of "creating a sideshow and sending the trial off track")),

*Second*, Defendant takes issue with the Court's citation to Justice Brett Kavanaugh's concurrence in *Trump v. Vance*, 140 S. Ct. 2412, 2433 (2010), arguing that the Court relied on the concurrence "to argue that Michel must make more than a *prima facie* showing of relevance." Mot. at 3. As the Government pointed out in opposition, the Court expressly "stresse[d] that it does not reach in any way whether communications between then-President Trump or then-President Obama and certain advisers are official or unofficial *or otherwise apply the concurrence's approach*." 2023 WL 388501, at *3 n.3 (emphasis added). Seeming to misread the Court's discussion, in reply, Defendant ignores both the plain text of the Court's prior opinion and the Government's opposition reminding Defendant of the plain text of that footnote. Because the Court did not reason as Defendant claims, this second challenge fails.

2

*Third*, Defendant contends that the Court has "prematurely engaged in ultimate questions about admissibility" by applying certain rules of evidence, arguing that the Court's analysis reflects "little more than speculation." ECF No. 215 at 4.  Defendant again offers no case law to support such a proposition.  As the Supreme Court has noted, resolving matters in advance of trial via motion *in limine* "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  In this jurisdiction, and as the Court previously explained in a prior order rejecting this very same argument, "[p]retrial motions *in limine* are an important mechanism to effectuate th[e] goal of insulating the jury from inadmissible evidence and further the purpose of the rules, generally, to administer the proceedings 'fairly . . . to the end of ascertaining the truth and securing a just determination.'" *United States v. Ausby*, 436 F. Supp. 3d 134, 145 (D.D.C. 2019) (quoting Fed. R. Evid. 102).

Although evidentiary questions are sometimes better left for trial, *see United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 175 (D.D.C. 2015) (BAH), courts of this jurisdiction generally favor pretrial resolution of evidentiary issues because, in part, pretrial resolution "permits counsel to make [] necessary strategic determinations," *see United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).  *See also* Wright & Miller, Fed. Prac. & Proc. § 5042 (West 2022) (the motion in limine "remains a favorite method for satisfying" the ends of the Federal Rules of Evidence).  Defendant offers no more than an appeal to the Sixth Amendment[1] to abandon a common practice endorsed by the Supreme Court.  Therefore, the Court again applies relevant precedent and exercises its inherent discretion to resolve the admissibility of testimony via motion

---

[1] Presumably, Defendant means to reference the Compulsory Process Clause.  The Court further addresses the Compulsory Process Clause's effect on a Rule 17 subpoena *ad testificandum* below.

3

*in limine*, as Defendant has previously asked in his own motion in limine. *See* Order, ECF No. 182 at 2 (Oct. 14, 2022).

*Fourth*, Defendant argues that the Court improperly excluded former President Obama's testimony because his testimony is relevant to "make it less likely that attendance at campaign events and discussions with non-registered foreign agents or lobbyists, otherwise known as private citizens, were overt acts in furtherance of the alleged conspiracy." ECF No. 215 at 5. This argument is premised on the operative indictment's charge that Defendant conspired to violate election law in order to "gain access to and influence with President Obama for financial gain." *Id*. Although the Government indeed claims that a goal of the conspiracy to violate election law was to gain access to and influence with then-President Obama, the conspiracy's predicate offenses have nothing to do with illicit efforts to influence the federal government. Rather, the conspiracy and its predicate offenses revolve entirely around efforts to unlawfully funnel foreign money, via conduits, into American elections and make contributions in another's name. In other words, the purported desire to gain access to then-President Obama (or, in Defendant's telling, desire to simply help then-President Obama's campaign) speaks to motive, but not any element of the charged offenses.

To the extent that the Government may simply note information about the fundraiser that Michel allegedly attended, it would be mere background information for the context of the conspiracy. Binding appellate authority instructs that the Government may do so in order "to help explain to the jury how the illegal relationship between the participants in the crime [of conspiracy] developed," *see United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000), so long as there is no substantial risk that the factfinder will convict a defendant based on character evidence, *see United States v. McGill*, 815 F.3d 846, 887 (D.C. Cir. 2016). Ample avenues are available for Defendant

4

to contest the Government's telling without cumulative, confusing, and distracting testimony from former President Obama.

*Fifth*, Defendant complains that the Court engaged in a "barren record" in determining the probative value of President Trump's possible testimony. ECF No. 215 at 7. It is precisely because the record is barren that Defendant has not made a sufficient showing to warrant subpoenaing former President Trump for testimony in this case. Defendant is correct that there "is no requirement that potential witnesses submit to interviews or depositions before they can be subjected to compulsory process." ECF No. 215 at 9. But *some* information is needed to conclude that the witness would provide the material and helpful testimony proffered. Here, Defendant identifies no document produced in discovery, no independent report by a private investigator, nor some other document in the public domain that would indicate that former President Trump's testimony would in any way differ from that of Wynn or Broidy. Defendant only speculates. As such, the Court reiterates its holding that, to the extent then-President Trump's subpoena is predicated on the purported contents of a conversation between Broidy and former President Trump, that proffer is insufficiently based on any existing fact necessary to sustain it. *Cf. also United States v. Rosen*, 420 F. Supp. 2d 802, 811 (E.D. Va. 2007) (in a successful attempt to call cabinet officer to testify at espionage trial, defendant was required to show more than "'mere speculation' that such testimony would be favorable to his defense" (quoting *United States v. Rivera*, 412 F.3d 562, 570 (4th Cir. 2005)). The Court again stresses that, to the extent that Defendant's proffer of former President Trump's testimony would simply repeat inculpatory

testimony by Wynn and Broidy, that testimony would both be cumulative of other evidence at trial and be harmful to Defendant's case.[2]

*Sixth*, Defendant challenges the Court's observation that then-President Trump's testimony regarding conversations with Broidy would likely be hearsay and therefore inadmissible; objecting both to the Court considering whether the proffered statements would constitute hearsay in advance of trial and to the Court's hearsay conclusion on the merits. ECF No. 215 at 9. Defendant cites no case law contesting the Court's application of *Nixon*'s requirement that the contents of a subpoena *duces tecum* be admissible, and the Court is in good company in extending this rule to subpoenas *ad testificandum. See, e.g.*, *United States v. Galecki*, 932 F.3d 176, 186 (4th Cir. 2019) (explaining that for testimony pursuant to a subpoena *ad testificandum* to be material it must be also be "otherwise admissible").  As to the merits, Defendant is correct that co-conspirator statements are non-hearsay. Fed. R. Evid. 801(d)(2)(A). To qualify as a co-conspirator statement, however, there must be a pre-existing conspiracy, and, additionally, the declarant's statement must have been in furtherance of that conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009). By proffering that Broidy's statements to former President Trump and Wynn's statements to former President Trump were *not* in furtherance of the conspiracy, the proffered testimony definitionally does not contain co-conspirator statements. Conversely, if Defendant proffered that the statements he seeks to elicit from former President Trump *were* in furtherance of the conspiracy, then such testimony would

---

[2] As to conversations between then-President Trump and the Prime Minister of Malaysia, absent a truly exceptional showing, the Court will not permit a criminal defendant only tenuously connected to a former President to elicit conversations between an incumbent President of the United States and the head of a foreign state. Such a line of questioning would be an "intolerable" inquiry into the President's actions "as the Nation's organ for foreign affairs." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Defendant makes no such exceptional showing here.

not be "favorable" to the defense, invalidating the subpoena. *See Valenzuela-Bernal*, 458 U.S. at 867.

*Seventh*, Defendant complains that the Court failed to credit his argument that Johnson's testimony concerning China's diplomatic efforts to secure Guo's return would be relevant to "rebut[] the allegation that Mr. Michel was engaged in a secret, back-channel lobbying effort on behalf of China to return Guo." ECF No. 215 at 10. But whether or not China had sought official assistance in returning Guo to China does not bear on whether Defendant also conspired to secure the same in violation of Foreign Agents Registration Act ("FARA"). FARA prosecutions often involve a foreign state's illicit, covert efforts to influence American policy that are concomitant with the foreign state's open diplomacy or other overt, licit means to accomplish the same ends. *E.g.*, *United States v. Abouammo*, Crim. A. No. 19-0621-EMC-1, 2022 WL 17584238, at *3-*4 (N.D. Cal. Dec. 12, 2022) (evidence sufficient to convict Twitter employee of acting as foreign agent in favor of Kingdom of Saudi Arabia in Saudi Arabia's general efforts to increase positive coverage of country in social media). The fact that the PRC may have advocated for Guo's extradition through overt diplomacy (or additional, covert means) does not, therefore, make it any more or less likely that the PRC employed Michel in different, illicit efforts to ensure Guo's transfer from the United States back to the PRC. Nor does motive go to the conduct proscribed by 18 U.S.C. § 951 or FARA. *See United States v. Angwang*, Crim. A. No. 20-442 (EK), 2022 WL 3223187, at *2 (E.D.N.Y. Aug. 8, 2022) ("Section 951(a) does not require that an 'agent' be effective or successful, or that he act out of any particular motive—only that he be subject to a foreign government's 'direction or control.'"); *United States v. Chaoqun*, Crim. A. No. 18-611, 2023 WL 112576, at *2 (N.D. Ill. Jan. 5, 2023) (same).

As the Court noted in the challenged opinion, Defendant also evidently intends to argue that he did not willfully fail to register under FARA because he did not see others registering under FARA. This is, in essence, an "everybody does it" defense. At least two federal Courts of Appeals have held such a defense properly excluded under Federal Rule of Evidence 403 where used to rebut a "willfulness" state of mind. *See, e.g.*, *United States v. Oldbear*, 548 F.3d 814, 821 (10th Cir. 2009); *United States v. Page*, 959 F.2d 232 (Table), 1992 WL 64867, at *2 (4th Cir. Apr. 3, 1992) (unpublished); *see also United States v. Connolly*, Crim. A. No. 16-370 (CM), 2019 WL 2125044, at *13 (S.D.N.Y. May 9, 2019). *But see United States v. Litvak*, 808 F.3d 160, 189-90 (2d Cir. 2015) (finding such a defense "less probative" but relevant in dicta in order to "assist the District Court on remand" to further assess the defense's admissibility). The Court need not decide whether such a defense is available here, however, because Defendant does not proffer (nor, presumably, could he) that he knew that Johnson did not intend to register under FARA if Guo became Johnson's client.

*Eighth*, Defendant appears to argue that the Court's use of Federal Rules of Evidence 403 and 802 violated the Compulsory Process Clause. *See* Repl. at 8,[3] 11.[4] Creative as this argument may be, the Court is not inclined to hold that the application of a *federal* rule of evidence is unconstitutional, as the Supreme Court has done for *state* rules of evidence in the context of the Compulsory Process Clause. *E.g.*, *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973) (invalidating state hearsay rule that barred the impeachment of a party's own witness as violative

---

[3] "[T]he Court's decision reflects a violation of rights to due process and fundamental fairness because the Court did not give due regard to Mr. Michel's rights under the Sixth Amendment [because] the Court seemed more concerned about the hypothetical hobgoblins of Rule 403."
[4] Citing, *inter alia*, *Chambers v. Mississippi*, 410 U.S. 284, (1973) to argue that the Court "has not squared th[e] approach [of applying Rule 802] to exclude testimony from a proposed defense witness with conflicting Supreme Court precedent that chooses to honor and enforce the guarantees of the Sixth Amendment."

8

of the Compulsory Process Clause).  As the Supreme Court further explained in *Chambers*, a court's enforcement of "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" does not violate the Compulsory Process Clause or the Confrontation Clause.  *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  Per clear Supreme Court precedent, Rule 403 is one such rule of evidence. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues" (cleaned up)).

The Court heavily implied in *Chambers* that the general prohibition on hearsay is also such an established rule of evidence.  410 U.S. at 302 ("Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed."); *see also* Wright & Miller, 30B Fed. Prac. & Proc. Evid. § 6795 (West 2022) (discussing constitutionality of hearsay rule as to Compulsory Process Clause).  As the Court noted above, either Broidy's alleged statements are non-hearsay and damaging to Defendant as a co-conspirator statements, or they are hearsay and helpful.  Therefore, the Court's application of the general prohibition against hearsay was both substantively accurate and constitutional.

*Ninth*, Defendant notes that the Court did not discuss Defendant's proffer that former President Obama would offer testimony regarding Frank White, a witness against Defendant, and a former Obama administration official, Shomik Dutta.  *See* ECF No. 211 at 11.  In opposition to the Government's motion to exclude former President Obama's testimony, Defendant proffered that former President Obama would testify that "White has lied to government investigators about

9

the events here to take focus off himself and blame others." ECF No. 195 at 12. In this regard, Defendant would attempt to elicit White's prior conduct to prove that he is not credible. Yet "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Although Defendant could question White (or Dutta, although he is not on either party's witness list) as to what he said to former President Obama, former President Obama's testimony would be inadmissible extrinsic evidence.

*Tenth*, in a "supplement" to his reply (more accurately considered a surreply), Defendant proffers additional testimony he intends to elicit from former President Obama. Defendant identifies an alleged email from White to Michel in which White allegedly told Michel that then-President Obama said to White that then-President Obama would have a "special bonus for your guy [purportedly Low]" for his and Michel's campaign contributions. ECF No. 221 at 2. White allegedly added that then-President Obama "really appreciates [purportedly Low's] commitment to the campaign and he [then-President Obama] takes care of those who take care of him." *Id.* Defendant represents that he intends to call former President Obama "to confirm that [then-]President Obama never had any such conversation with Frank White" and to show that Michel did not knowingly conspire to violate applicable election law. *Id.* at 2-3. If then-President Obama did *not* say what White purportedly claimed in the email, and then-President Obama testified as much (and further, presumably, that he would never had said such a thing), then White's assertion in the email is less credible. If the assertion is less credible, then Michel's reliance on the assertion is both less reasonable and less likely. Therefore, the proffered testimony would be unhelpful to the defense case. Because Defendant may not use a subpoena to elicit unhelpful testimony, *Valenzuela-Bernal*, 458 U.S. at 867, this proffer again fails to substantiate the subpoena.

10

*Finally*, the Court must address Defendant's allegations of bias. As Defendant notes, the Court inadvertently made a scrivener's error in a prior order, accidentally referring to itself as the Government. "On occasion, defense lawyers, government lawyers[,] and even judges make mistakes." *United States v. McKinlay*, 543 F. Supp. 462, 463 (D. Or. 1980). Defendant readily concedes that the Court made an inadvertent typo, but nevertheless maintains that a pattern of adverse judicial rulings makes the Court appear biased to Defendant. The Court has endeavored to order full briefing and consider each of Defendant's arguments in resolving motions practice. Adverse rulings speak to the merits of Defendant's briefing, and nothing more. Similarly, when the Court ruled against the Government in permitting Defendant to develop an advice-of-counsel defense at trial, that ruling spoke to the merits of the Government's briefing. An honest mistake and adverse rulings create no appearance of bias, much less actual bias, and the Court will continue to faithfully apply the law, as it has done from the inception of this matter.

Before concluding, the Court must pause to address Defendant's latest argument in favor of calling Johnson and introducing evidence regarding Defendant having obtained a tape at the FBI's request. The Court first excluded such evidence as "good acts" violative of Federal Rule of Evidence 405, an argument raised by the Government to which Defendant did not respond. ECF No. 182 at 1 n.1. The Court addressed additional arguments raised for the first time in opposition to the Government's first [193] Motion to Exclude Witnesses, 2023 WL 2388501, at *7 n.7, and addresses the arguments raised in the instant Motion above. In subsequent briefing, however, Defendant has added a new argument: explaining that he intends to argue at trial that, through meeting with the FBI and obtaining a tape at the FBI's request, Defendant did not know he was acting in violation of FARA or 18 U.S.C. § 951. That argument is undoubtedly permissible, but the argument goes to Defendant's interactions with the FBI, not Defendant's (evidently

11

nonexistent) interactions with Johnson. In other words, the fact that Defendant obtained a recording pursuant to FBI instructions *does* bear in Defendant's mental state, but neither any testimony by Johnson nor the contents of the tape sufficiently bear on that mental state to merit a lengthy discursion from the key allegations in this case.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED**, that Defendant's [215] Motion to Reconsider is **DENIED**.

**SO ORDERED**.

Dated:  March 21, 2023

/s/<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge