| | |
|---|---|
| **KENNER LAW FIRM**<br>**DAVID KENNER, SBN 41425**<br>**16633 VENTURA BLVD., STE. 735**<br>**ENCINO, CA  91436**<br>**PHONE: (818) 995-1195**<br>**FAX: (818) 475-5369**<br>**EMAIL: DAVID@KENNERLAW.COM**<br><br>**ATTORNEY FOR DEFENDANT**<br>**PRAKAZREL MICHEL** | **ORAL ARGUMENT REQUESTED** |

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiffs,<br><br>vs.<br><br>PRAKAZREL MICHEL, *ET AL*.<br><br>        Defendants. | Case No.: 19-148-1 (CKK)<br><br>DEFENDANT'S POST-HEARING SUPPLEMENTAL STATEMENT ON MOTION TO CONTINUE TRIAL<br><br>Date:<br>Time:<br>Place:<br><br><br><br>The Honorable Colleen Kollar-Kotelly |

COMES NOW PRAKAZREL MICHEL, by and through counsel of record, and hereby files this post-hearing supplemental statement on motion to continue trial.

The response is based on all the papers and records on file in this action and on such oral and documentary evidence as may be presented at the hearing on the motion.

///

///

///

- 1 -

DEFENDANT'S POST-HEARING SUPPLEMENTAL STATEMENT ON MOTION TO CONTINUE TRIAL.

# I

# INTRODUCTION

In light of the Minute Orders issued in connection Defendant's Motion to Continue the Trial, the defense finds it necessary to supplement the record to clarify a few critical items at issue. First, although the defense continues to maintain that investigative materials associated with the Guo indictment likely contain exculpatory material subject to production, the defense wants to emphasize that the prosecution's narrow definition of what constitutes the "prosecution team" for purposes of Brady disclosures is too narrow, meaning that the prosecution has also failed to comply with its Brady obligations independent of the Guo indictment.

Second, whether or not the conduct alleged in the separate indictments for Defendant Michel and Defendant Guo overlap is not dispositive on the *Brady* issues here.[1] The test here is whether the Guo investigatory material contains evidence that would be exculpatory or lead to the discovery of exculpatory evidence in Mr. Michel's case. If, for example, a document in the Guo investigatory file says that Homeland Security expressed grave reservations about allowing Guo into America in 2015, or expressed grave reservations about his later application for asylum due to a rape he committed in the United States after entry, that would be exculpatory evidence to support Mr. Michel's theory of the case. It matters not one bit that Guo was ultimately prosecuted for conduct between 2018 and the present—the document is undeniably exculpatory and must be produced under *Brady*. Consider a different hypothetical. A man is serving life in prison for a murder he did not commit. The murder occurred in 2015. If the Guo investigation interviewed someone who said that Guo and not the man convicted for murder committed the murder, would anyone doubt that the

---

[1] There is an overlap of dates for the alleged conduct as the indictment against Mr. Michel alleges that the FARA-related conspiracy went into January 2018. But that misses the point. The point is that exculpatory evidence is exculpatory due to its content, not due to the date on the document or the ultimate conduct charged in the *Guo* indictment.

- 2 -

DEFENDANT'S POST-HEARING SUPPLEMENTAL STATEMENT ON MOTION TO CONTINUE TRIAL.

evidence would not be exculpatory for the man in prison? Would he be denied access to the statement since the murder at issue happened in 2015 and the indictment against Guo alleged criminal conduct only in 2018 and after? That is nonsense.

Guo Wengui was a dangerous man when he entered the United States after fleeing China. In addition to the summary of pending charges contained in the Interpol Red Notice that Mr. Michel had full knowledge of before he ever spoke with the FBI, even more detailed summaries of Guo's crimes were known to him and Lum Davis and Broidy. Attached as Exhibit 1 is a Grand Jury exhibit that the government attached to its motion papers in connection with Nickie Lum Davis' sentencing in Hawaii. By September 11, 2017, the New York Post was reporting on rape allegations against Guo (during the period of the alleged FARA-related conspiracy here):



- 3 -
DEFENDANT'S POST-HEARING SUPPLEMENTAL STATEMENT ON MOTION TO CONTINUE TRIAL.

Guo's criminal behavior only escalated over time to the point that the DOJ is of the opinion that he should be denied bail as he presents a high risk of inflicting more economic harm and threats to the personal safety of our citizens. Indeed, when FBI agents were searching his residence after his arrest, a fire unexpectedly started and the FBI had to evacuate and leave behind evidence that it was trying to collect. He was and remains a clear and present danger to our country.

## II

## APPLICABLE LAW

The government has taken a position that its Brady obligations extend only to look for exculpatory information within the handful of attorney's assigned to the case and only as to that information it knows about. This narrow view of the scope of its Brady obligations has come as a surprise to the defense and raises serious concerns about its obligations to look for and produce Brady materials independent of the Guo indictment.

The prosecution has an affirmative obligation to "learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitely*, 514 U.S. 419, 428 (1995). That obligation is broadly construed to include a duty to inquire of third parties not under the control of the government, *In re Sealed Case No. 99-3096*, 185 F.3d 887, 892 (D.C. Cir. 1999) (citing *Kyles,* 514 U.S. at 438) and even further to exculpatory materials that must be produced by local rules and the rules of ethics. *See Cone v. Bell,* 556 U.S. 449, 470 fn. 15 (2009); No. 21-0598-01 (PLF), *United States v. Sutton*,2022 US Dist Lexis 117269, 2022 WL 2383994 (D.D.C. July 1, 2022).

Even the DOJ Justice Manual recognizes that the government's Brady obligations extend much broader than represented by the government prosecutors here. Rule 9-5.002 (A), for example, directs the government's attorney to "err on the side of inclusiveness when identifying members of

the prosecution team for discovery purposes." "Prosecution team" is a term of art when referencing *Brady* obligations, and the term is clearly much broader than the lawyers actively prosecuting the case or even the investigators gathering evidence for the attorneys. Rule 9-5.002 (A) affirmatively directs DOJ lawyers to consider the following sources of exculpatory evidence that is subject to production:

"in complex cases that involve parallel proceedings with regulatory agencies (SEC, FDIC, EPA), **or other non-criminal investigative or intelligence agencies,** the prosecution should consider whether the relationship with the other agency is close enough to make it part of the prosecution team for discovery purposes." Factors to consider include "whether the prosecutor knows of or has access to discoverable information held by the agency" and whether the prosecutor has obtained other information and/or evidence from the agency." (emphasis added).[2]

In this regard, the government's declaration says that FBI Agent was not acting as an investigative agent in this matter, thus indicating that he would have not be within the "prosecution team" for purposes of *Brady*. This is exactly the type of gaslighting and wordsmithing that government counsel has engaged throughout this case. If Zitman was not acting as an investigative agent here, then in what capacity was he acting? Was he an intelligence officer gathering intelligence on some other matter? And should we really accept that Zitman is not part of the investigative team even though he took multiple statements from the Defendant and more recently was interviewed by the government counsel to prepare for trial? And what about the October 2022 Memo of Investigation that says that Zitman's 302s back in 2017 were not thorough or complete because much of what Mr. Michel told him was not related to the Wengui matter.

---

[2] The government has already produced some information from intelligence sources and other non-criminal investigative agencies, but it has shut off the defense from exculpatory evidence very likely in the possession of these agencies because of its improper narrow view of its *Brady* obligations. The fact that the CIA or Homeland Security is not actively involved in this particular prosecution does not negate the obligation to produce Brady materials from these agencies under the DOJ's own standards.

# III

# ARGUMENT

### A. Guo Exculpatory Materials

Relevant to this case is what knowledge the parties had about Guo Wengui at the time that Defendant Michel allegedly engaged in a criminal conspiracy to assist the Chinese in returning Guo to China. The defense theory of the case is that Defendant Michbel was not acting as an agent of or under the direction of the Chinese, but rather that he was acting in the interests of America when he advocated for the return of Guo in exchange for the release of American hostages and other considerations valuable to the United States.

The government snickers and says, "Oh, by the way, don't forget to mention the millions of dollars at stake" misses the point. Whether the Defendant received money from the Chinese for his advocacy (he did not) is irrelevant. He is not being charged with receiving money for work performed. The key issues are this: (1) was Defendant Michel acting as an agent or at the direction of China, or was he acting in the interests of America, and (2) did Defendant willfully and knowingly fail to register with the DOJ and Attorney General to conceal his alleged agency on behalf of China? The government says "yes" and the defense says "no." This is the defense theory, and the government is undeniably required to produce evidence that *may be* exculpatory for the defense.

Whatever arguments the government lawyers have to counter this defense is irrelevant. They can make them to the jury, but not here, where the issue is assuring that a fair trial occurs. The government is obligated to advise those with potentially exculpatory evidence of the theory of Mr. Michel's defense and specify what types of documents may be exculpatory.

In the Superseding Indictment, the government has alleged that Defendant had knowledge of Guo's alleged crimes before he spoke with Agent Zitman in June 2017. Superseding Indictment,

- 6 -

ECF No. 84, ¶ 140-44, including false information contained in Guo's passport and identification cards before he entered the United States. The Superseding Indictment also alleges that Broidy provided materials for submission to Attorney General Sessions (id. at ¶ 141) and we know that prior to the alleged conspiracy in this case, Vice Minister Sun Lijan and the Chinese had worked actively with former Homeland Secretary Jeh Johnson, former FBI Director James Comey, and Attorney General Sessions and the Department of State (including Rex Tillerson) to seek the return of Guo.

The Defendant is entitled to the discovery of exculpatory evidence at it relates to Guo from the following agencies as each would contain evidence showing what the country knew about Guo's criminality when he entered the country, while he lived in the country under a temporary visa, and what matters it considered in deciding to allow him to stay in the country versus being told to leave:

(1) The **Department of Justice and the FBI** as to its involvement with the Chinese effort to return Guo after Guo entered America at the start of 2015;

(2) The **Department of State**–it is undisputed that the State Department was actively involved in the decisions regarding Guo before the conspiracy alleged in this case; Brody also allegedly enlisted the support of Rex Tillerson during the conspiracy; John Kelly, President Trump's Chief of Staff, abruptly told Steve Wynn that his efforts to get the President to return Guo were off base and that it was a matter for the State Department; Matthew Pottinger, NSC, whose statement was previously provided to this Court, was present when President Trump asked his advisors to look into Wynn's request to return Guo, and Pottinger said in his recent statement that the Guo matter was really a matter for immigration services and the State Department, and not a matter for the Presidency.

(3) The **Department of Homeland Security** as we know that Jeh Johnson was the former Secretary of Homeland Security, was close to Sun Lijun, and after his tenure pitched his legal services to Guo. Ho

(4) **The United States Citizenship and Immigration Services** and related agencies would have processed Guo's initial application for a temporary visa and his later application for political asylum, and in that process Guo would have been required to reveal all arrests and charges made against him prior to coming to America, whether or not he was convicted; also, when he finally applied for asylum, he had already been charged in China with rape and was facing a civil lawsuit initiated on September 11, 2017 by Rui Ma in New York state court (that case is still pending because Guo filed for personal bankruptcy that he had no money).

(5) **Central Intelligence Agency** likely interacted with Guo because he allegedly possessed information about Chinese government officials that would be helpful to the United States government, or so it may have been thought at the time; but since intelligence agencies routinely "vet" sources of intelligence, the CIA likely would have gathered information that is directly relevant to the Defendant's theory of the case: that Guo was a corrupt and dangerous person, and that it would be reasonable to believe as the Defendant did that Guo's return to China would be in the best interest of America, particularly if American hostages could be returned to American soil.

If these governmental agencies possess information that support Defendant's belief that returning Guo to China in exchange for the return of hostages would be a good thing for America, the information must be produced. That information would include any evidence that speaks to whether Guo had committed crimes before he came to America, committed crimes by lying on

- 8 -

DEFENDANT'S POST-HEARING SUPPLEMENTAL STATEMENT ON MOTION TO CONTINUE TRIAL.

immigration forms to enter the country and later to remain here, and committed crimes after his entry into America and before the alleged conspiracy (such as the Rui Mai rape), all that information is subject to *Brady* and must be produced.

### B. Nickie Lum Davis

After Lum Davis reached a plea agreement in this matter, the prosecution sent a letter to the defense in April 2022 that contained summaries of several items that would be exculpatory for the Defendant, but the prosecution has never produced specific documents that back up these summaries or identified witnesses who could testify to these matters. The defense files this letter under seal for the Court's review.

The defense has also learned that in connection with Lum Davis' appeal of her failed efforts to withdraw her guilty plea, the same prosecutors as here alleged that Ms. Lum Davis was a Chinese spy working with Defendant Michel. Particularly in light of this statement, as well as the allegations against Lum Davis in the April 2022 letter, filed here under seal, the prosecution needs to produce additional materials related to Lum Davis as they are exculpatory as to several other matters alleged on the FARA related counts. The government portrays Defendant Michel as a ring leader and Lum Davis as something little more than a clerk passing information back and forth between Broidy and the Defendant. The matter contained in the Keller letter filed under seal portray Lum Davis in a very different light. *See Exhibit 2.*

## IV

## CONCLUSION

Because it has now become apparent that government counsel apparently does not understand the scope of its obligations under *Brady* or even the Justice Manual's recitation of those obligations, Defendant respectfully requests that the Court continue the trial. The defense is entitled to verification that the prosecution has complied with its *Brady* obligations as to Guo-related

matters, but to **all** matters in the case. The prosecution is acting as it is above the law, notably in gaslighting this Court about the role of Agent Zitman and the argument that he is not within the scope of the prosecution team for purposes of *Brady*. The defense, and the Court, can have no confidence under these circumstances that the prosecution has complied with its Brady obligations or more broadly to any of its discovery obligations in this matter. A full and thorough accounting is in order, and that will take some time to do. Otherwise, the risk of an unfair trial is simply too high. *See Exhibit 2*.

DATED: March 22, 2023                           Respectfully submitted,

**/s/ David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant

**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that the foregoing is true and correct this 22nd day of March 2023, at Washington D.C., and that this document is executed under penalty of perjury according to the laws of the United States of America.

                                                                           _____
Charles R. Haskell
Attorney at Law

- 11 -

DEFENDANT'S POST-HEARING SUPPLEMENTAL STATEMENT ON MOTION TO CONTINUE TRIAL.