**KENNER LAW FIRM**
**DAVID KENNER, SBN 41425**
**16633 VENTURA BLVD., STE. 735**
**ENCINO, CA 91436**
**PHONE: (818) 995-1195**
**FAX: (818) 475-5369**
**EMAIL: DAVID@KENNERLAW.COM**

**ATTORNEY FOR DEFENDANT**
**PRAKAZREL MICHEL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 19-148-1 (CKK) |
| Plaintiffs, | **DEFENDANT MICHEL'S MOTION FOR JUDGMENT OF ACQUITTAL** |
| vs. | |
| PRAKAZREL MICHEL, *ET AL*. | **The Honorable Colleen Kollar-Kotelly** |
| Defendants. | |

COMES NOW PRAKAZREL MICHEL, by and through counsel of record, and hereby files this motion for judgment of acquittal.

The motion is based on all the papers and records on file in this action and on such oral and documentary evidence as may be presented at the hearing on the motion.

# I

# INTRODUCTION

Pursuant to Fed. R. Crim. P. 29(a), Defendant Michel moves for Judgment of Acquittal on the following Counts in the Superseding Indictment: <u>Count 7</u> (Conspiracy to Serve as Unregistered Agent of Foreign Principal and Foreign Government and to Commit Money Laundering), <u>Count 8</u> (Unregistered Agent of a Foreign Principal and Aiding and Abetting), and <u>Count 10</u> (Agent of a Foreign Government).[1]

# II

# LEGAL STANDARD

A defendant may move for a judgment of acquittal after the close of the government's evidence. Fed. R. Crim. P. 29(a). In considering the motion, the Court must consider the evidence in the light most favorable to the government and ask whether a rational trier of fact could find that the government shouldered its high burden of proving each element of the offense beyond a reasonable doubt. *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002). A judgment of acquittal is required when there is no evidence upon which a rational trier of fact might fairly conclude guilt beyond a reasonable doubt. *United States v. Weisz*, 718 F.413, 438 (D.C. Cir. 1983). "Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life." *United States v. Webster*, US Dist. Ct. for D.C., Case No. 21-cr-208 (APM), ECF No. 100, Aug. 2, 2022. Unlike in civil cases, in "criminal cases such as this one, the government's proof must be more powerful than that [required in a civil case]. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence

---

[1] Counts 9 & 11 are against Low Taek Jho ("Jho Low").

or lack of evidence in the case." *United States v. Miller*, US Dist. Ct. for D.C., Case No. 17-195-01 (TSC) at p. 12 (Final Jury Instructions)

## III

## ARGUMENT

**A.   Counts 7 Conspiracy Count Must be Dismissed.**

    1.   <u>Insufficient Evidence of Conspiracy</u>.

The Superseding Indictment alleges that Defendant Michel entered a conspiracy to serve as an unregistered agent of both a foreign principal and a foreign government. The government often spoke of a conspiracy in its opening statement in its questions to witnesses, but statements by counsel and questions from counsel are not evidence. The government failed to elicit testimony from any witness or offer and admit one piece of evidence that showed, directly or indirectly, an agreement not to register under the FARA statute for the activities undertaken.

It is true that Elliott Broidy testified that he pleaded guilty to one count of conspiracy to violate FARA, (Broidy Trial Tr. at 48, lines 16-20, April 4, 2023 morning ) but Mr. Broidy's plea, by itself, does not help the government because that testimony, as a matter of law, cannot be the sole basis for a finding of guilt.[2] Moreover Mr. Broidy admitted during his testimony that he never spoke with any of his alleged conspirators–Jho Low, Ms. Michel, or Ms. Lum Davis about FARA– and they never discussed much less entered an agreement not to register under FARA. Broidy Trial Tr. at 54, ln 21 through 56,, April 4, 2023 afternoon. Mr. Broidy even admitted that there was no agreement "with anyone else," i.e., China or Sun Lijun, not to register under FARA. Id. at 56, lns 7-

---

[2] Mr. Michel cannot be convicted solely on the basis of testimony from a co-conspirator. The fact that Broidy chose to plead guilty to a conspiracy count speaks more to Broidy's desire to end his case quickly to position himself for a pardon should President Trump lose the election, and the prosecution's gamesmanship in offering a plea deal only if Mr. Broidy deal to a conspiracy count to position itself seek a Superseding Indictment of Mr. Michel now that a larger swath of evidence–the actions of Broidy and Lum Davis–could be attributed to Mr. Michel as a member of the alleged conspiracy.

- 3 -

DEFENDANT MICHEL'S MOTION FOR JUDGMENT OF ACQUITTAL

10. No rational jury, given the absence of any evidence, direct or indirect, could conclude that the government proved beyond a reasonable doubt the existence of this alleged conspiracy not to register. For this reason, Count 7 of the Superseding Indictment must be dismissed and a judgment of acquittal must be granted.

        2.        <u>Insufficient Evidence of Intent.</u>

For Count 7, the government must prove that Mr. Michel wilfully and knowingly chose not to register under FARA with knowledge that he was breaking the law. The government studiously avoided asking Mr. Broidy about what information Mr. Michel knew about FARA because the government had to know that he would provide the answer that he gave on cross-examination, i.e., that he never had any communications with Mr. Micheal about FARA. Broidy Trial Tr. at 54, ln 21 through 56, April 4, 2023 afternoon. The government sought to obtain state of mind evidence against Mr. Michel through Mr. Higginbotham, but again the government fell far short of meeting its burden on proving intent.

On direct examination, the government studiously avoiding asking Mr. Broidy what specific legal advice he gave to Mr. Michel on FARA registration requirements. The government elicited very general testimony that tap-danced around the issue, getting Mr. Higginbotham to testify that he had "concerns" about FARA and he has raised these "concerns" with Mr. Michel on multiple occasions. Higginbotham Trial Tr. at 20, lns16-23, April 6, 2023 morning. On direct exam, Mr. Higginbotham also testified that Mr. Michel knew about the FARA statute, *id.* at 21, lns 3-6 and lns 12-23, and that he did not want to register and said "I don't want to register for FARA because, you know, I travel a lot, and I get stopped coming in an out of airports, and it just all seemed like a very much inconvenience." *Id*. at 20, ln 22 through 21 at ln 2. Even if we assume that everything Mr. Higginbotham said is true, he never testified on direct exam was his specific concerns were or what specific legal advice he gave to Mr. Michel. Even if one were to generously assume that Mr.

- 4 -
DEFENDANT MICHEL'S MOTION FOR JUDGMENT OF ACQUITTAL

Higginbotham testified that Mr. Higginbotham should consider registering in an abundance of caution, that is very different than advising him that FARA registration was required. Also, when Mr. Higginbotham quoted Mr. Michel for his reasons for not wanting to register, the reason had nothing to do with hiding the alleged conspiracy, but rather with not wanting to suffer the inconvenience of filing government paperwork and subjecting himself to even more stops in airports that he was already experiencing as a frequent domestic and foreign traveler. That is the most that a reasonable juror could infer from Mr. Michel's alleged statement.

On cross-examination, and only after repeated efforts by the government to suppress the evidence, Mr. Higginbotham admitted that even as late November 3, 2018, he was still considering whether FARA registration was required, and he put that at the top of his list for items to follow up on in January 2018. Specifically, Mr. Higginbotham admitted to the following matters on cross-examination:

1.  Although he had been enlisted early on to assist in helping Mr. Michel locate an attorney for Jho Low before Mr. Michel travel to Bangkok in early March 2017, he never raised FARA with Mr. Michel until Mr. Michel traveled to Hong Kong in the latter part of March 2017 when Mr. Michel, Mr. Broidy and Lum Davis met with Jho Low and then met with Sun Lijun in the presence of Jho Low. Mr. Higginbotham said when he later met with Mr. Michel in his NYC residence, Mr. Higginbotham started thinking about FARA. Higginbotham Trial Tr. at 21 at ln 8 through 22 at ln 1, April 11, 2023 morning.

2.  Higginbotham admitted that he never advised Mr. Michel that he must register under FARA, only that he should. *Id.* at 22, lns 7-14.

3.  Mr. Higginbotham admitted that in his notebook at Government Exhibit 371, he made an entry on or after November 8, 2017 regarding his FARA advice to Mr. Michel. *Id*. at 27 ln 14 through 29 ln 19. That entry stated "FARA, Need to consider this strongly." Id. at 30 ln 22

through 30 ln 1; Government Exhibit 371. The only inference that a reasonable juror could make is that as late as November 8th–more than seven months into the alleged conspiracy–Mr. Higginbotham was still sitting on the fence as to whether FARA registration was required versus merely advisable.

    4.    Mr. Higginbotham admitted that his notebook had no other entries related to FARA or any advice that he gave to Mr. Michel regarding FARA. Higginbotham Trial Tr. 30 at lns 6 through 21.

    5.    Incredibly, Higginbotham admitted the following about his November 8, 2017 entry in his notebook to consider FARA strongly: " And these recommendations that you find here, as I stated previously, were recommendations that I was making for the new year." Id. at 31 lns 12-17. The Superseding Indictment alleged that the FARA conspiracy started in March 2017 and ended "in or about January 2018."  Superseding Indictment, ECF No. 82, at ¶ 99. Higginbotham had a surprise visit at his DOJ office on January 3, 2013, from OIG-DOJ Special Agent Lidsky who interrogated him, informed him that he had a search warrant for his home and other items, including his phones and car, and who asked for consent to the search of the home since guns were there and Mr. Higginbotham had his spouse and 6-month old daughter at his residence.

Given that the government failed to produce any other evidence, direct or indirect, to prove that Mr. Michel willfully and knowingly chose not to register under FARA to conceal his alleged conduct, the government's case falls woefully short. At most, if one takes as true every thing to which Mr. Higginbotham testified, the most one can conclude is that Mr. Higgenbotham advised Mr. Michel that he should consider registering under FARA out of an abundance of caution, but that he never ever advised Mr. Michel that registration was required to comply with FARA. In fact, Mr. Higginbotham's advice meant that Mr. Michel was <u>not</u> required to register if he so chose, and Mr.

Michel chose not to register. Indeed, Mr. Higginbotham himself never registered under FARA, indicating that he too did not believe that he was legally required to do so.

For the reasons set forth above, Mr. Michel is entitled as a matter of law to an acquittal on the FARA charges in Count 7. That would include dismissal of any allegations of money laundering under 18 U.S.C. §§ 1956(a)(2)(A) and 1956(a)(1)(B) as those are fully dependent on a finding of guilt under FARA as that is the specified unlawful activity that must be proven as an element of each money laundering count. As the Court may recall from government counsel's representations at the time of the *Daubert* hearing, the money laundering counts, and in particular the concealment money laundering accounts, were predicated on a FARA violation and <u>not</u> the receipt of funds that had allegedly been embezzled from 1MDB.

### B.  Count 8 Aiding and Abetting Count Must be Dismissed.

Just as the money laundering accounts must be dismissed if the FARA conspiracy cannot be proven, Count 8 must fall as well. This is not a conspiracy-related count, but this count depends upon the government providing, beyond a reasonable doubt, that Mr. Michel willfully and knowingly aided and abetted FARA violations by Mr. Higginbotham, Mr. Broidy, and Ms. Lum Davis. As set forth above, Mr. Higginbotham admitted that he had never advised Mr. Michel that he must register, and Mr. Broidy said he never communicated with Mr. Michel about FARA. No reasonable juror could conclude, based on the total absence of proof, that Mr. Michel engaged in a willful and knowing violation of the aiding and abetting section of FARA.

### C.  Count 10 Agent of Foreign Government Count Must be Dismissed.

Count 10 alleges a violation of the 18 U.S.C. §951. This statute has substantial overlap with the FARA statute, with a few immaterial differences for our purposes. This statute, for example, requires proof that Mr. Michel acted under the direction or control of a foreign government (China and Sun Lijun) with knowledge that he was required to register this activity with the Attorney General. The government also alleges that Mr. Michel knowingly aided and abetted Mr.

Higginbotham, Mr. Broidy and Ms. Lum Davis actions of conducting an unregistered back-channel campaign on behalf of China and Sun Lijun.

The government offered no evidence that Mr. Michel had the requisite *mens rea* to commit a criminal violation of 18 U.S.C. § 951. It did not even try. Mr. Broidy offered no testimony of the topic and nor did Mr. Higginbotham. Mr. Higginbotham apparently provided zero advice on registration with the Attorney General, and if his FARA-related advice could be construed to include registration with the Attorney General since the FARA unit is part of the DOJ, he admitted that he never advised Mr. Michel that registration was required.

Moreover, the Section 951 count has numerous other defects. There is zero evidence that China or Sun Lijun paid Mr. Michel. There is zero evidence that Mr. Michel or others were trying to conceal anything from then Attorney General Sessions or others in the U.S. government. In fact, the evidence is that Mr. Broidy reached out to Attorney General Sessions to be heard on the Guo matter. That was the proper channel to proceed according to National Security Advisor Matthew Pottinger.

It is true that Steve Wynn was enlisted to ask President Trump to intervene, but there is no evidence that Sun Lijun or China asked Mr. Michel and others to try to persuade President Trump, and that Broidy taking that route was on his own initiative and not at the direction or under the control of the Chinese. Mr. Wynn's punishment for reaching out to Mr. Trump was to receive a request from the DOJ's FARA unit on May 16, 2018 to please register under FARA. The FARA unit asked Mr. Wynn two more times after that to register under FARA, and both times he refused and then the DOJ brought a civil action to require him to register. Attorney General of the *United States v. Wynn,* US D.Ct. District of Columbia, Civil Action No. 22-1372, ECF No. 1, ¶ 37. Mr. Michel did not fare as well, as he was indicted for alleging acting as a secret agent for the Chinese, an indictment that the DOJ trumpeted in numerous news releases, and an indictment that has

generated numerous death threats against Mr. Michel on social media and directly to him via text messages.

## IV

## CONCLUSION

For the reasons set forth above, Defendant Michel respectfully requests that the Court dismiss Counts 7, 8 and 10 of the Superseding Indictment and enter a judgment of acquittal on each count.

DATED: April 17, 2023                    Respectfully submitted,

**/s/ David Kenner**
David E. Kenner
Kenner Law Firm
16633 Ventura Blvd., Suite 735
Encino, CA 91436
(818) 995-1195
Email: david@kennerlaw.com
CA Bar No.: 41425
Counsel for Defendant


**/s/ Charles Haskell**
Charles R. Haskell
The Law Offices of Charles R. Haskell
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: Charles@CharlesHaskell.com
DC Bar No.: 888304007
Retained Counsel for the Defendant

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that the foregoing is true and correct this 17th day of April 2023, at Washington D.C., and that this document is executed under penalty of perjury according to the laws of the United States of America.

_____
Charles R. Haskell
Attorney at Law