UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 19-148-1 (CKK) |
| | ) | |
| PRAKAZREL MICHEL (1), | ) | **DECLARATION OF PRAKAZREL** |
| | ) | **MICHEL IN SUPPORT OF** |
| | ) | **PRAKAZREL MICHEL'S** |
| Defendant. | ) | **MOTION FOR NEW TRIAL** |

Prakazrel Michel hereby declares as follows:

1. I am the named defendant in the above-caption criminal prosecution.

2. I retained attorney David Kenner to represent me in the above-captioned matter in June 2021. My engagement with Mr. Kenner involved a flat fee that was supposed to cover all legal work in connection with the Superseding Indictment. I have come to believe that the fact that we had a flat fee arrangement made Mr. Kenner not want to file a motion to sever the conduit scheme from the lobbying schemes because, if granted, it meant that there could be two trials but no additional money for Mr. Kenner.

3. In approximately October, 2022, I learned that Mr. Kenner had experienced a serious fall that resulted in significant injuries, and required Mr. Kenner to seek an extension of the trial date. Mr. Kenner never told me the precise nature of his injuries, and he never shared a copy of his sealed filing with the Court submitted in connection with his request for a continuance. When I next saw Mr. Kenner in his office in January, 2023, he had a large cast on his leg and he had an apparent head injury.

4. I spent a great deal of time discussing the facts of my case with Mr. Kenner. Mr. Kenner rarely took notes and frequently confused the multiple schemes charged by the

1

Government. Mr. Kenner never articulated an overall defense strategy or theory of the case that he would argue to the jury. Nor did we spend time together reviewing key documents or witness interviews. I do not recall Mr. Kenner explaining the elements of the offenses to me, and it became apparent to me that Mr. Kenner did not understand the Foreign Agent Registration Act (FARA) or the money laundering counts. Mr. Kenner did not share with me a copy of his opening statement or closing arguments. If he had shown me his closing, I would have corrected the portion of his closing where he misattributed lyrics from a popular Puff Daddy song to me.

5. When I expressed concerns about Mr. Kenner's state of preparedness prior to trial, Mr. Kenner would say that he had been a lawyer for over 50 years, and that the Government's case was weak. Mr. Kenner's co-counsel was Alon Israely, a family friend with no litigation experience of which I am aware. I later came to learn that Mr. Israely and Mr. Kenner shared a business interest in an AI company that they intended to market to incarcerated persons who needed legal assistance.

6. When the Bloomberg Businessweek story was published on March 2, 2023, and the Government issued a Motion to Show Cause on March 3, 2023, after which the Court ordered an immediate response, Mr. Kenner was very disturbed and worried.

7. Mr. Kenner told me that at the beginning of the trial that he approached the Government prosecutor, John Keller, and asked if Mr. Keller was really serious about prosecuting him for violating the protective order. Mr. Kenner told me that he told Mr. Keller that he really cannot defend me with this show-cause motion hanging over his head. According to Mr. Kenner, Mr. Keller told Mr. Kenner that the Government was serious about pursuing the

contempt proceeding. I do not believe I was aware at the time that Kenner already had a criminal record related to a federal tax charge.

8. After his discussions with Mr. Keller, Mr. Kenner said that the judge may ask me questions about whether I want Mr. Kenner to still represent me, and that I should just say that I "love my lawyer" when the judge questions me, which I did. Mr. Kenner did not inform me that he had a possible conflict of interest that arose from the Government potentially prosecuting him, or explain to me what that means and how it could adversely affect his representation of me. I also did not appreciate the seriousness of the allegations pending against Mr. Kenner.

9. I met with Mr. Kenner in his office in Encino, California, for two weeks before the trial. Several days before we traveled to D.C. for the trial, Mr. Israely, who was Mr. Kenner's co-counsel but had never tried a case and had no litigation experience of which I am aware, became very concerned about the state of trial preparations. Mr. Israely called a friend of his who was a trial lawyer in Miami, Joel Denaro, and asked him to travel to Encino to assist Mr. Kenner.

10. Mr. Denaro spent time trying to explain the money laundering statute to Mr. Kenner, who did not seem to understand it. Mr. Denaro told me that he did not think that Mr. Kenner knew what he was doing.

11. Shortly before the Government rested its case, Mr. Kenner told me that he thought I needed to testify. Mr. Kenner spent very little time preparing me to testify. Mr. Kenner just gave me the topics he would ask me about; we never went through questions and answers.

12. I believe Mr. Kenner had his jury consultant help draft my direct examination, as Mr. Kenner was consulting with her when we discussed it. Mr. Kenner's jury consultant was

not a practicing attorney and did not seem familiar with the trial record or the key documents in the case.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:   October 10 2023

INSERT YOUR CITY WHERE YOU SIGN THIS

WARWICK, PA

Prakazrel Michel

4