**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Crim. No. 1:19-cr-148** |
| | ) | |
| **PRAKAZREL MICHEL,** | ) | |
| **LOW TAEK JHO** | ) | |
| | ) | |

<u>**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO SUPPLEMENTAL**</u>
<u>**RESPONSE TO MOTION FOR JUDGMENT OF ACQUITTAL**</u>

Excluding persons who have agreed to serve as foreign agents from the coverage of the Foreign Agents Registration Act ("FARA") would contravene the plain language, purpose, and structure of the statute. FARA's central aims include identifying domestic propagandists or lobbyists who are beholden to foreign interests and identifying the foreign sponsors behind ongoing or future influence campaigns. FARA explicitly contemplates agency by agreement and requires any agent to identify any foreign principal "for whom the registrant . . . has agreed to act" and to explain the activities the registrant "has agreed to perform." 22 U.S.C. § 612(a)(3) & (6). An agreement to act as the agent of a foreign principal is core registrable activity. The defendant's Opposition rests on a self-serving, cramped interpretation of FARA agency contradicted by the statutory text and law. The defendant's motion as to Count 8 should be denied on this basis alone.

The defendant's additional claims also fail. Broidy engaged in registrable conduct when he sent talking points on 1MDB to the United States Secretary of State and repeatedly sought an informal audience with the President of the United States for the Malaysian Prime Minister to address 1MDB. Michel aided and abetted Broidy's agency and engaged in his own registrable activities. The evidence amply supported the jury's finding of guilt on each of the different ways in which Michel violated FARA. Michel's motion should be denied.

1

## I.    Argument

### a.    FARA defines agent of a foreign principal to include any person who has agreed to engage in registrable activity on behalf of a foreign principal.

FARA defines an "agent of a foreign principal" in relevant part as: "(1) any person who acts as an agent;" "and (2) any person who agrees . . . to act as . . . an agent." 22 U.S.C. § 611(c)(1) & (2).  The only logical reading of subsections (1) and (2) is that they represent two separate categories of agents: (1) those who are acting as agents "and" (2) those who have agreed to act as agents.  Conversely, if subsection (2) was intended only to modify or limit subsection (1) then there would be no need to restate the class of covered individuals: "any person."  Instead, subsection (2) would remove "any person" and modify subsection (1) by providing, "and (2) who agrees . . . to act as . . . an agent of a foreign principal."  Even then, subsection (2) would be unnecessary, as a person cannot act as an agent without agreeing to do so.  *See Restatement (Third) of Agency* § 1.01 (2006) ("the agent manifests assent or otherwise consents").

Underscoring that FARA agency is defined to include both (1) agency through action and (2) agency by agreement, the statute requires disclosure of: "the name and address of every foreign principal for whom the registrant is acting . . . or has agreed to act;" "a comprehensive statement of . . . activities engaged in or to be engaged in"; "[a] detailed statement of every activity which the registrant is performing or . . . has agreed to perform"; and "a full statement of all the circumstances, by reason of which the registrant is performing or . . . has agreed to perform [registrable activities]".  22 U.S.C. § 612(a)(3), (4), (6), and (9).  If, as the defendant argues, FARA applied only to a person who had already acted, *see* Response, ECF No. 352 at 9-14, each "or" above would be replaced with an "and" because every FARA registrant would have already acted and agreed to act.  This misguided interpretation contradicts the language and purpose of FARA's registration and disclosure requirements and would render subsection (2) of 22 U.S.C. § 611

2

wholly redundant.   Defendant's misreading also ignores FARA's requirement to register as an agent of a foreign principal before acting as one: "No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement." 22 U.S.C. § 612(a).  FARA thus anticipates that an agent must first (1) form an agreement to act as an agent; then (2) register under the Act; and finally (3) act as an agent of a foreign principal.

Further illustrating the point, FARA's definition of "foreign principal"—which immediately precedes the definition of "agent of a foreign principal"—also uses "and" in the disjunctive to define separate categories of principals.  *Compare* 22 U.S.C. § 611(b)(1), (2), and (3) *with* 22 U.S.C. § 611(c)(1) and (2).  The parallel structure of the two most critical definitions in FARA—which are adjacent in the statute—further demonstrates that "and" is to be read disjunctively in both.  The text and structure of FARA unambiguously reflect that both one who "acts" and one who "agrees to act" are covered agents.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."); *United States v. Rafiekian I*, 991 F.3d 529, 539 (4th Cir. 2021) (noting that "Congress utilized a more sweeping definition of 'agent' in the Foreign Agents Registration Act, which includes far-reaching verbiage" and citing subsections (1) and (2) of FARA's agency definition as separate expansive categories of agency).[1]

---

[1] The defendant's citations to advisory opinions from DOJ's FARA Unit, *see* Response, ECF No. 352 at 9-14, are inapposite.  FARA Unit advisory opinions do not have precedential value and are only intended to be relied upon by the requesting party.  *See* 28 C.F.R. § 5.2(b) ("Review requests must be submitted by a party to the transaction or the party's attorney, and have no application to a party that does not join in the request."); FARA Unit, "Advisory Opinions," https://www.justice.gov/nsd-fara/advisory-opinions ("Nothing in these letters is intended to create any substantive or procedural rights, privileges, or benefits enforceable in any administrative, civil,

This fact alone should dispose of the defendant's claim that the evidence was insufficient to prove that he was Low's agent for purposes of FARA.  As addressed in the government's Supplemental Response, ECF No. 351 at 3-4, the evidence proved that Michel agreed to engage in registrable conduct as Low's agent and willfully failed to register.

> b.  <u>Michel also violated FARA by personally engaging in registrable conduct and willfully evading registration.</u>

Not only did Michel agree to act as Low's agent, he then engaged in registrable activity on Low's behalf.  Michel's contrary arguments largely rely on the faulty premise that an agent must personally engage in direct contact with a government official to engage in "political activities" under FARA.  But FARA's definition of "political activities" is expansive, extending beyond just direct meetings or correspondence with government officials.

FARA defines "political activities" to include "any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official . . . with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party." 22 U.S.C. § 611(o).  Accordingly, as long as a person is engaging in "any activity" on behalf of a foreign principal to influence a government official or agency as to foreign policy or foreign relations, he or she is engaging in political activities.

---

or criminal matter." (citing *United States v. Caceres*, 440 U.S. 741 (1979))).  Moreover, the advisory opinions cited by Michel: (1) post-date the conduct in this case; (2) address distinct factual scenarios; (3) do not address whether an agreement to engage in registrable conduct gives rise to agency under FARA; and (4) cannot supersede the unambiguous language of the statute, *cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Michel engaged in such conduct repeatedly.  He relayed talking points on 1MDB to Broidy and Lum Davis to be provided to the Secretary of State; he approved Broidy's proposed strategy of setting up a private presidential audience for then Malaysian Prime Minister Najib to try to resolve 1MDB; and he met with Najib to discuss Najib's upcoming meeting with President Trump. Trial Tr. 4/19 A.M. at 107-09; 95; 117.  Each of these activities constituted "political activities" under FARA—activities designed to influence U.S. government officials regarding 1MDB.  The defendant argues that the evidence was insufficient to prove that Michel sent the 1MDB talking points to Broidy and Lum Davis because Broidy testified that they came from "Pras or Jho Low," *see* Response, ECF No. 352 at 2, but Broidy also testified that Michel was the "facilitator between Mr. Low" and Broidy and Lum Davis, Trial Tr. 4/19 A.M. at 93, and that Michel was the intermediary with Low.  Trial Tr. 4/4 A.M. at 112; 4/4 P.M. at 74.  Michel also testified that on other occasions he received documents from Low to pass to Lum Davis to pass to Broidy to pass to others, including President Trump.  Trial Tr. 4/19 A.M. at 41.  Viewing the evidence in the light most favorable to the verdict, the jury had sufficient evidence to conclude that Michel was involved in relaying the 1MDB talking points to Broidy and Lum Davis or, at a minimum, was communicating at Low's direction about the strategy of sending the 1MDB talking points to Secretary of State Tillerson.  Such activity falls within FARA's broad definition of "political activities."  22 U.S.C. § 611(o).

Separately, Michel also "disburse[d] . . . money . . . for or in the interest of [Low]"—an independent basis to find that he acted as Low's agent under the statute.  *See* 22 U.S.C. § 611(c)(iii).  Michel paid Broidy $1 million to travel to meet with Low to discuss Broidy's ability to lobby on Low's behalf on 1MDB.  Trial Tr. 4/4 A.M. at 69-70; Trial Tr. 4/19 A.M. at 20.  Michel then paid Broidy an additional $8 million directly from Low.  Trial Tr. 4/4 A.M. at 45; Gov. Ex.'s.

675-677.  It did not matter whether Michel was transferring money at Broidy's request, Low's request, or both, Response, ECF No. 352 at 3-4.  Through Michel, Broidy agreed with Low to lobby on Low's behalf for an $8 million retainer, Trial Tr. 4/4 A.M. at 44-45, and Michel passed the funds from Low to Broidy consistent with both Low's and Broidy's expectations.  The evidence overwhelmingly proved that the payments from Michel to Broidy were "for or in the interest of [Low]."  22 U.S.C. § 611(c)(1)(iii).

The evidence was also sufficient to prove that Michel willfully failed to register despite making the payments on Low's behalf.  Higginbotham testified that Michel was familiar with FARA independent of his conversations with Higginbotham.  Trial Tr. 4/6 A.M. at 21.  And Higginbotham told Michel that "FARA becomes very, very important as we were doing the activities with regard to 1MDB and with Guo Wengui."  Trial Tr. 4/11 A.M. at 22.  Michel also repeatedly concealed Low as the source of, and reason for, the payments to Broidy, evidencing his knowledge that making such payments without FARA registration was illegal.  Trial Tr. 4/6 A.M. at 106.  Viewed in the light most favorable to the verdict, the jury had sufficient evidence to conclude that Michel understood that FARA applied to the work for Low on 1MDB, including making payments to Broidy and Lum Davis on Low's behalf.  Proof that Michel was aware of any specific provision of FARA was not required to establish willfulness.  *See Bryan v. United States*, 524 U.S. 184, 196 (1998) ("Thus, the willfulness requirement [] does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required.").

      c.   The evidence also sufficiently supported the jury's guilty verdict on Count 8 based on an aiding and abetting theory.

Separately, the evidence also proved that Michel aided and abetted Broidy's FARA violation.  *See* Supplemental Response, ECF No. 351 at 7-9.  The defendant argues that Broidy

engaged in no registrable activity, so there was no offense that Michel could have aided and abetted.  Response, ECF No. 352 at 8-9.  But Broidy engaged in "political activities" to an even greater degree than Michel.  At Low's direction, Broidy personally asked then-President Trump to play golf with then Malaysian Prime Minister Najib Razak to allow Najib to discuss 1MDB directly and privately with President Trump.  Trial Tr. 4/4 A.M. at 96-97.  Broidy persistently pursued the golf game with White House Chief of Staff Reince Priebus and the subsequent Chief of Staff, John Kelly.  Trial Tr. 4/4 A.M. at 97.  Each communication seeking—on Low's behalf— to arrange a meeting between the President of the United States and the Malaysian Prime Minister for the purpose of resolving 1MDB, constituted "any activity . . . intend[ed] to, in any way influence any [] official of the Government of the United States . . . with reference to [foreign] relations."  22 U.S.C. § 611(o).

Broidy's sending of the 1MDB talking points to then United States Secretary of State Rex Tillerson in advance of a separate meeting with then Prime Minister Najib also constituted "political activities."  Broidy testified that Rick Gates had been involved in the Trump campaign and was involved in the Trump administration.  Trial Tr. 4/4 AM. at 105-06.  Broidy sent Gates the 1MDB talking points to send to staff for Secretary of State Tillerson.  *Id.* at 108.  That Broidy used an intermediary or that Secretary Tillerson may or may not have ultimately reviewed or used the talking points, *see* Response, ECF No. 352 at 9, does not diminish Broidy's affirmative acts taken with "intent[] . . . to influence," 22 U.S.C. § 611(o), the Secretary of State on the 1MDB issue.  Nothing in FARA requires that an agent's lobbying efforts be successful to qualify as political activities.

Finally, Broidy personally met with then Prime Minister Najib in advance of Najib's meeting with President Trump to help strategize for the meeting.  Trial Tr. 4/4 A.M. at 117.  This

was yet another effort geared toward resolving 1MDB favorably for Low.  Preparing a foreign

head of state on how best to influence the President of the United States on an issue of foreign

relations, undoubtedly constitutes "political activities" under FARA.

      d.  <u>There was no variance from the Superseding Indictment or omission of any</u>
<u>applicable theory of guilt in the jury instructions.</u>

The Superseding Indictment included allegations supporting all of the applicable theories

of FARA liability.  The Superseding Indictment detailed (1) Michel's agreement to act as Low's

agent; (2) Michel's own registrable activities by working with Lum Davis and Broidy on the

1MDB lobbying campaign, directing Broidy's lobbying for Low, and paying Broidy on Low's

behalf; and (3) Michel's aiding and abetting Broidy's unregistered agency.  ECF No. 84 at 24-33.

The Superseding Indictment then incorporated those allegations into the substantive FARA charge

against Michel in Count 8 and explicitly included an aiding and abetting allegation.  *Id.* at 37.  The

evidence at trial mirrored the allegations in the Superseding Indictment.  And the jury instructions

allowed for conviction on any of the applicable theories.  Jury Instructions, ECF No. 290 at 62-64;

74-77, 80; Supplemental Response, ECF No. 351 at 10.  The government did not need to pick

between mutually exclusive theories and did not argue any one theory to the exclusion of others,

as in *Ciminelli*, Response, ECF No. 352 at 6 citing *Ciminelli v. United States*, 598 U.S. 306 (2023).

The government argued that Michel and Broidy were Low's agents and willfully failed to register.

The government presented sufficient evidence of Michel's personal agency under multiple

different theories, proved his willfulness, and proved his guilt as an aider and abettor of Broidy's

unregistered activities.  There was no variance at all, let alone one that was prejudicial.  *United*

*States v. Cross*, 766 F.3d 1, 5 (D.C. Cir. 2013).

## II.    Conclusion

An agreement to act as an agent of a foreign principal requires registration under FARA. The evidence indisputably proved that Michel agreed—in writing—to engage in FARA registrable activities as Low's agent and willfully failed to register.   The evidence also overwhelmingly established that Michel participated in an extensive effort to lobby U.S. officials to resolve the 1MDB investigation favorably for Low.   The jury was properly instructed on all of these theories, each supported by sufficient evidence, and convicted Michel.   Michel's motion for judgment of acquittal should be denied.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:  */s/ John D. Keller*
    John D. Keller
    Principal Deputy Chief

    Nicole Lockhart
    Trial Attorney
    1301 New York Ave., NW
    Washington, DC 20530
    Telephone:  202-514-1412
    Facsimile:  202-514-3003
    john.keller2@usdoj.gov
    nicole.lockhart@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.


Dated:  March 12, 2024                                    */s/ John D. Keller*
                                                         John D. Keller