IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Crim. No. 1:19-cr-148 |
| | ) |
| PRAKAZREL MICHEL | ) |
| | ) |

**GOVERNMENT MOTION FOR PRELIMINARY ORDER OF FORFEITURE IN THE FORM OF A PERSONAL MONEY JUDGMENT**

The government moves for a preliminary order of forfeiture imposing a personal money judgement of $64,923,226.40 against the defendant, Prakazrel Michel. This sum represents the illegal proceeds Michel derived from the offenses charged in Counts Seven, Eight, and Twelve, less the amounts already forfeited in other, related proceedings. *See* Order Granting Default Judgment, ECF No. 23, *United States v. $37,564,565.25 in ACCOUNT NUMBER XXXXXXX9515 AT MORGAN STANLEY, IN THE NAME OF ANICORN, LLC et al.*, No. 1:18-cv-2795 (CKK) (D.D.C. Mar. 15, 2019) (entering default judgment on two Higginbotham Law accounts totaling $36,316,773.63); Order of Forfeiture (Money Judgment), ECF No. 142, *United States v. Nickie Mali Lum Davis*, No. 1:20-cr-68 (LEK) (D. Haw. Jan. 18, 2023) (entering a money judgment as to co-conspirator Lum Davis in the amount of $3 million).

**I.   Background**

In the Superseding Indictment, the government provided notice to the defendant that under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), in the event of conviction on the offenses charged in Counts Seven, Eight, and Twelve, in addition to the other charged offenses, the United States would seek to forfeit all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses. Superseding Indictment, ECF No. 84 at 44-46. The government also provided notice in the Superseding Indictment that it would seek a money

1

judgment against the defendant and that it may seek substitute property pursuant to 21 U.S.C. § 853(p). *Id.*

On April 26, 2023, a jury found the defendant guilty on all counts, including the offenses charged in Counts Seven, Eight, and Twelve. Verdict Form, ECF No. 273. Count Seven charged a multi-object conspiracy to: (1) act as an unregistered agent of a foreign principal in violation of the Foreign Agents Registration Act ("FARA") 22 U.S.C. §§ 612 & 618; (2) act as an agent of the government of the People's Republic of China ("PRC Government") in violation of 18 U.S.C. § 951; (3) commit international promotional money laundering in violation of 18 U.S.C. § 1956(a)(2)(A); and (4) commit concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B). Count Eight charged a substantive violation of FARA. Count Twelve charged a conspiracy to make false statements to a financial institution in violation of 18 U.S.C. § 1014.

## II.    Argument

Federal Rule of Criminal Procedure 32.2(b)(1)(A) provides that the Court "must determine the amount of money that the defendant will be ordered to pay" where the government seeks a personal money judgment. Fed. R. Crim. P. 32.2(b)(1)(A). Forfeiture is mandatory in any criminal case in which forfeiture is authorized by statute. 28 U.S.C. § 2461(c) (providing that if a defendant is convicted of an offense giving rise to forfeiture, "the court shall order the forfeiture of the property"). The D.C. Circuit has approved the imposition of personal money judgments in criminal forfeiture. *United States v. Day*, 524 F.3d 1361, 1378 (D.C. Cir. 2008) ("We now join our sister circuits and hold that money judgments are appropriate in the criminal forfeiture context."). A money judgment may be imposed against a defendant in the amount of proceeds that the defendant acquired or obtained from a criminal offense. *United States v. Honeycutt*, 581 U.S. 443, 450 (2017).

The defendant is subject to a forfeiture money judgment on Counts Seven, Eight, and Twelve. Count Seven charges a multi-object conspiracy that includes specified unlawful activity in the form of a FARA offense and Count Eight charges the substantive FARA offense, the proceeds of which are forfeitable in a criminal case pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C). Count Twelve charges a conspiracy to violate 18 U.S.C. § 1014, the proceeds of which are forfeitable in a criminal case pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A). The amount of the forfeiture money judgment should reflect the amount of proceeds obtained by the defendant. Proceeds are defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A).

The Court determines the proper amount of the money judgment.[1] The government "must prove its forfeiture allegations by a preponderance of the evidence." *United States v. DeFries*, 129 F.3d 1293, 1312 (D.C. Cir. 1997). Federal Rule of Criminal Procedure 32.2(b)(1)(B) provides that the Court's forfeiture determination "may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). This Court presided over the jury trial and heard evidence of the defendant's participation in and direction of the FARA and Section 1014

---

[1] A defendant may elect a jury determination on forfeiture only where the government seeks to forfeit "specific property". *Cf.* Fed. R. Crim. P. 32.2(b)(1)(A) ("If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."); *see, e.g., United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) ("Rule [32.2(b)(5)(A) by its plain language applies only to 'the forfeitability of specific property.'"); *United States v. Perkins*, 994 F. Supp. 2d 272, 275 (E.D.N.Y. 2014) ("Here, since the government is seeking a criminal forfeiture money judgment rather than forfeiture of specific property, there is no nexus determination to be made by the jury."). The government is not seeking criminal forfeiture of specific property and the defendant made no demand for a jury determination.

conspiracies and the amount of money that the defendant obtained from these schemes. The evidence in the record supports a money judgment for $64,923,226.40 against the defendant in favor of the United States.

With respect to the FARA conspiracy charged in Count Seven and the substantive FARA offense charged in Count Eight, the Court heard evidence that Low caused the transfer of $104.24 million to the defendant as payment for the FARA and Guo schemes. Ex. 671. This was evident from the contracts, *e.g.* Ex. 165 (draft retainer agreement between Low and Colfax), Ex. 439 (contract between Michel and Pheng Laogumnerd); the sequencing of meetings with Low and the payments that followed, *e.g.* Ex. 681 (trip and transaction timeline); the co-conspirators' communications, *e.g.* Ex. 297 at 27 (text message from Broidy to Lum Davis: "Hammer them for the next 2 wires"); and the payments themselves, *e.g.* Ex. 662 at 1 (listing wires from Lucky Mark to Anicorn roughly matching the schedule set forth in the fee agreement, Ex. 439). The contracts stated that the purpose of the 2017 wire transfers was to retain the co-conspirators for their efforts to convince government officials to end the 1MDB investigation. *E.g.* Ex. 439 at 2. Contemporaneous communications among the co-conspirators and the testimony of both Higginbotham and Broidy confirm that the money that Michel received from Low was due, at least in part, to the FARA conspiracy. Ex. 297 at 27, 35; Ex. 118 at 1-2; Ex. 149 at 5-6; Ex. 498; Trial Tr. 4/6 A.M. at 80-81, 88 (Higginbotham testifying that the meetings with and transfers from Low were related to both 1MDB and Guo); 4/4 A.M. at 77-80, 86-92 (Broidy testifying that he entered into a retainer agreement with Low related to 1MDB and later agreed to work on the Guo matter with some expectation of a potential success fee). Although the final transfer of $41 million from Red Rock IX to Higginbotham PC was especially focused on Guo, Trial Tr. 4/6 A.M. at 129, at a

minimum, the defendant obtained $60.24 million from Low at least in part for the unregistered FARA scheme. Those funds constitute proceeds and are subject to forfeiture.

The Court also heard evidence related to Count Twelve that Michel and Higginbotham created fake contracts and agreements and repeatedly lied to multiple financial institutions as part of their conspiracy to fraudulently obtain access to the U.S. banking system for the $104.24 million from Low. *E.g.* Trial Tr. 4/6 A.M. 102-29; Trial Tr. 4/12 A.M. at 25-31; Ex. 372-374; Trial Tr. 4/5 A.M. at 9-12, 32; *see also* ECF No. 320 (Response to Motion for Judgment of Acquittal) at 10-12. Without the accounts opened under false pretenses, Michel could not have obtained the money from Low.

Michel first falsely represented on account opening documents that his two companies were engaged in "Media Consulting" when they were formed to promotionally launder funds for the FARA scheme for Low. Ex. 4 at 4; Ex. 13 at 4. Michel also misrepresented the anticipated financial activity in the accounts. Trial Tr. 4/12 A.M. at 25-27. After Low started making multi-million-dollar wire transfers into the accounts that alerted as potential money laundering activity, the bank made compliance inquiries. Michel then caused additional false statements to be made to the bank in response by his financial advisor and Higginbotham. *Id*. at 28-31; Ex. 372-74. Unsatisfied, the bank closed the accounts. *Id*. at 31; Ex. 381, 382.

Michel and Higginbotham then turned to a second bank, lied about the reason that the prior bank closed Michel's accounts, and again made false representations about the purpose of the desired accounts and the activities of the related businesses. Ex. 57 at 3; Trial Tr. 4/5 A.M. at 9-11; *id*. at 12 (Vinder: "they were charging him too many fees and he wanted to open up a new account . . . . Mr. Michel met somebody . . . on a boat in Hong Kong . . . . [a]nd he was going to provide money . . . for Pras to produce albums, make movies."). The second bank asked for

specific explanations about the source, purpose, and ownership of the funds being deposited into the accounts and Michel and Higginbotham lied. Ex. 396, 402. That bank too closed Michel's accounts. Trial Tr. 4/5 A.M. at 32 (Vinder: "So I told them both that I'm going to close the accounts").

Michel and Higginbotham then tried Citibank, where Higginbotham had an attorney escrow account which he hoped "might not have the same scrutiny" as the prior accounts. Trial Tr. 4/6 A.M. at 126. Higginbotham deposited the $41 million from Red Rock IX into his Citibank account and when the transaction was flagged, he lied about the purpose and nature of the funds to falsely induce the bank to maintain Higginbotham's account and retain the funds. Trial Tr. 4/6 A.M. at 126-29. Although the funds were deposited into Higginbotham's account, the money was Michel's to distribute to co-conspirators and keep for himself. Trial Tr. 4/6 A.M. at 129.

Each of these instances involved lies from Michel and Higginbotham to cause banks to open or maintain accounts used to obtain the funds being sent by Low. Michel understood that the financial institutions would not have opened the accounts, accepted deposits, or provided banking services to Michel and Higginbotham had the true source and nature of the transactions been disclosed.

As described by this Court in its Order denying the defendant's motion to dismiss in the parallel civil forfeiture proceedings, the $104.24 million may be considered "proceeds" of the Section 1014 conspiracy because the defendant and Higginbotham fraudulently induced multiple banks to trade "pre-deposit money" from Low for "post-deposit bank accounts" or to accept and retain the foreign funds from Low and transfer ownership of the funds to Michel and Higginbotham's accounts. *See* Order Denying Motion to Dismiss, ECF No. 26 at 10-11, *United States v. $37,564,565.25 in ACCOUNT NUMBER XXXXXXXX9515 AT MORGAN STANLEY, IN*

6

*THE NAME OF ANICORN, LLC et al.*, No. 1:18-cv-2795 (CKK) (D.D.C. October 17, 2019); *id.* at 14 ("[T]he increase in the account's value after the wire transfer can qualify as 'proceeds' of a false statement regardless of whether the deposit constitutes a *trade* of two distinct pieces of property or a *shift in ownership* of the same property."). Michel obtained $104.24 million from Low as a direct result of 1014 conspiracy.

The Court should enter an order of forfeiture in the form of a personal money judgment against the defendant for the $104.24 million, less the $39,316,773.63 already forfeited in related proceedings. The total amount of the money judgment should be $64,923,226.40.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By: */s/ John D. Keller*
    John D. Keller
    Principal Deputy Chief

    Nicole Lockhart
    Trial Attorney
    1301 New York Ave., NW
    Washington, DC 20530
    Telephone: 202-514-1412
    Facsimile: 202-514-3003
    john.keller2@usdoj.gov
    nicole.lockhart@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will serve counsel for the Defendant via electronic notification.

Dated:  December 19, 2024                              */s/ John D. Keller*
                                                                             John D. Keller