UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   No. 19-cr-148-1 (CKK) |
| | ) |
| PRAKAZREL MICHEL, | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER
(November 3, 2025)

In this case, after a lengthy jury trial, Defendant Prakazrel Michel (hereinafter, "Defendant" or "Mr. Michel") was found guilty of the following ten offenses: (1) Conspiracy to Defraud the United States and to Make Illegal Foreign Conduit Contributions [Count 1]; (2) Concealment of Material Facts and Aiding and Abetting [Count 2]; (3) Making a False Entry in a Record and Aiding and Abetting [Counts 3 and 4]; (4) Witness Tampering and Aiding and Abetting [Counts 5 and 6]; (5) Conspiracy to Serve as an Unregistered Agent of a Foreign Principal and a Foreign Government and to Commit Money Laundering [Count 7]; (6) Acting as an Unregistered Agent of a Foreign Principal and Aiding and Abetting [Count 8]; (7) Acting as an Agent of a Foreign Government and Aiding and Abetting [Count 10]; and (8) Conspiracy to Make False Statements to Banks [Count 12]. Verdict Form, ECF No. 273. After trial, Defendant filed numerous post-trial motions, all of which have been resolved by this Court. Mr. Michel's sentencing was set for earlier this year, but because the parties could not agree on a forfeiture amount, the Court scheduled a forfeiture hearing for October 24, 2025, and at the conclusion of that hearing, the parties selected a November 20. 2025 sentencing date. The United States Probation Office for the District of Columbia ("Probation Office") previously filed its final Presentence Investigation Report ("PSR") and the parties have filed their sentencing memoranda. Furthermore, this Court has issued its opinion on the Government's preliminary order of forfeiture.

1

Pending before this Court are the parties' objections to the Probation Office's United States Sentencing Guidelines ("USSG") calculations, as set forth in its [374] draft PSR, and the Probation Office's response thereto, as set forth in its [385] final PSR. The Court herein considers these objections and makes a ruling in advance of sentencing.

In the PSR, the Probation Office discusses the applicable USSG for each of the ten counts before discussing the grouping of counts – pursuant to USSG §3D1.2(a)-(c) – into Group One (Counts 1-6) and Group Two (Count 7, 8, 10 and 12). PSR, ECF No. 385, at 31-32. For each group, the offense level applicable to the group is the offense level producing the highest offense level, and in this case, according to the Probation Office, the offense level is derived from USSG §2C1.8 [Count 1] for Group One, and USSG §2S1.1 [Count 7] for Group Two. *Id.* The Probation Office indicated a base offense level of 8 for Count 1 (and thus, Group One) and 28 for Count 7 (and thus, Group Two). *See* Draft PSR, ECF No. 374, at 33-34. After application of specific offense characteristics and adjustments, the draft PSR indicated a total offense level of 31 for Group One and 39 for Group Two, with a "combined adjusted offense level" of 40. *Id.* at 33-35; *see* USSG §3D1.4.

Both the Government and Defendant filed objections to the sentencing calculations in the draft PSR, and subsequently, both discussed their opposing positions in their memoranda in aid of sentencing. *See* Govt's Obj. to the PSR, ECF No. 375-1; Govt's Sent. Mem., ECF No. 380; Def.'s Obj. to the PSR, ECF No. 377; Def.'s Supp. Obj. to the PSR, ECF No. 379; Def.'s Sent. Mem., ECF No. 381. In response to the parties' objections, the Probation Office modified its PSR to reflect concurrence with the Government's two objections, with the effect that two separate specific offense characteristics were applied to the Group Two calculation – one for a conviction of conspiracy to violate section 1956, *see* USSG §2S1.1(b)(2)(B), and the other for sophisticated money laundering, *see* USSG §2S1.1(b)(3) – each adding two levels. PSR, ECF No. 385, at 50. The Probation Office

2

agreed also with one of Defendant's objections, with the effect that the aggravating role adjustment was removed in connection with the Group Two calculation, thus reducing that calculation by three levels.[1] *Id.* The remaining objections by Defendant were left unresolved by the Probation Office and are being addressed herein. Accordingly, the Probation Office calculated Defendant's adjusted offense level as 31 for Group One, and 40 for Group Two, with 40 as the "combined adjusted offense level." *See* Final PSR, ECF No. 385, at 32-34. The Probation Office's Sentencing Guideline calculations are summarized below:

| | |
|---|---|
| §2C1.8(a) Base Offense Level; *see* §2X1.1(c)(1) | 8 |
| § 2C1.8(b)(1); 2B1.1(b)(1)(I) Illegal Transactions more than $1,500,000 | +16 |
| §2C1.8(b)(2)(A) Illegal Transactions by or from a Foreign National | +2 |
| §3B1.1(b) Role in Offense | +3 |
| §3C1.1 Obstruction of Justice | +2 |
| **Group One Total** | **31** |
| §§2S1.1(a)(2), *see* 2X1.1(c)(1) Base Offense Level (8 +20 for including more than $9,5000,000 in laundered funds; *see* §2B1.1(b)(1)(K) | 28 |
| §2S1.1(b)(1)(A) and (B)(iii) Offense involving National Security | +6 |
| §§2S1.1(b)(2)(B), 1B1.2(d), 1B1.3 (comment n.7) Conspiracy to commit Money Laundering | +2 |
| §2S1.1(b)(3)(A) and (B) Sophisticated Laundering | +2 |
| §3C1.1 Obstruction of Justice | +2 |
| **Group Two Total** | **40** |

The Government agrees with the calculation for Group One, but because the Government challenges the Probation Office's removal of the [Group Two] three-level aggravating role adjustment, it calculates the total offense level for Group Two as 43. In contrast, as explained in more detail in sections A. and B. below, Defendant calculates the total offense level as 13 for Group One, and 6 for Group Two. Def.'s Sent. Mem., ECF No. 381, at 11-14.

The Court begins its analysis of the parties' objections by looking at Defendant's objections related to the Probation Office's application of USSG §2S1.1(a)(2) to calculate the base offense level for Count 7 (Group Two), and Defendant's general objections to the applicability of any

---

[1] The Probation Office left intact the [Group One] aggravating role adjustment.

3

"specific offense characteristics" in calculating offense levels for Groups One and Two.

### A. Defendant's Objection to Base Offense Level Calculation for Count 7 (Group Two)

As a preliminary matter, the Court notes the consistent way in which the Guidelines were applied by the Probation Office in relation to Count 1 (and thus, Group One) and Count 7 (and thus, Group Two). More specifically, the Probation Office noted, that for both, "the base offense level is derived from the guideline for the substantive offense," PSR, ECF No. 385, at 31, as USSG §2X1.1(c)(1) provides that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." USSG §2X1.1(c)(1). Here, the object of Count 1 was "to Defraud the United States and to Make Illegal Foreign and Conduit Contributions, which is referenced in USSG §2C1.8," and the object of Count 7 was "Money Laundering, which is referenced in USSG §2S1.1." PSR, ECF No. 385, at 31 (emphasis added by this Court). Accordingly, the Probation Office found that the guideline applicable to calculate the base offense level for Count 1 is USSG §2C1.8(a), and the guideline applicable to Count 7 is USSG §2S1.1.

Application of these Guidelines results in a base offense level of 8 for Group One, pursuant to USSC §2C1.8(a), and a base offense level of 28 for Group Two. The Group Two base offense level is calculated by the Probation Office as follows: [initial] base offense level of 8 + the offense level from the table in §2B1.1, which is 20 (the value of laundered funds was more than $9,500,000) = [final] base offense level of 28. PSR, ECF No. 385, at 33 (referencing USSG §2S1.1(a)(2) and USSG §2B1.1(b)(1)(K)). The Government agrees with these calculations of the base offense levels.

In contrast, Defendant asserts that "USSG §2X1.1(a) should apply to determine the base level offense for Count 7 (and thus Group Two), and it imports the offense level for FARA [Foreign Agents Registration Act] and §951 violations." PSR, ECF No. 385, at 52 (summarizing Defendant's

4

objection); Def.'s Obj., ECF No. 277, at 5. Defendant's objection is based on his contention that the jury convicted him of conspiracy in Count 7 <u>without regard to the objects of such conspiracy</u>, since no special verdict form was used. *Id.* (emphasis added by the Court). Defendant proffers accordingly that the only established objects of the conspiracy are violations of FARA and Section 951 since the jury convicted Defendant of those offenses in Counts 8 (FARA) and 10 (aiding and abetting on Section 951). *Id.* Furthermore, Defendant argues that because it is "not established that the jury unanimously found that Mr. Michel conspired to commit money laundering," that "cannot serve as the base offense level for Count 7." *Id.* Defendant launches next into a discussion regarding application of "the most analogous guideline," which he claims would be a regulatory offenses guideline. *Id.* at 5-6. Accordingly, Defendant "maintains the base offense level [for Count 7] is 4 since the established objects are regulatory offenses of failing to register under FARA and 951." PSR, ECF No. 385, at 52; Def.'s Obj., ECF No. 377, at 6.[2]

> The Probation Office's response to this objection by Defendant is as follows:
>
> Pursuant to USSG §2X1.1(c)(1), when a conspiracy is expressly covered by another offense guideline, apply that guideline section. As to Count Seven, the objects of the conspiracy were violations of 18 USC §1956(a)(2)(A) and 18 USC §1956(a)(1)(B). In Appendix A, USSG §2S1.1 is the applicable guideline for these statutes.

PSR, ECF No. 385, at 52. This Court agrees with the Probation Office's application of USSG §2S1.1 to Count 7 (Group Two). Defendant's argument to the contrary is inconsistent with the <u>plain language</u> of the sentencing guidelines, and it <u>ignores the Count 7 offense</u> on which Defendant was convicted. Furthermore, Defendant provides no legal basis for his argument requesting that this Court disregard both. Accordingly, Defendant's objection to the Probation Office's application of USSG §2S1.1 (regarding Count 7) is denied and the Probation Office's base offense level calculation

---

[2] In his Sentencing Memorandum, Defendant concludes that the guideline calculation for Group Two offenses should be determined with reference to Count 12, which produces the highest guideline of the offense, and yields an offense level of 6. Def.'s Sent. Mem., ECF No. 381, at 12-13.

5

for Group Two is upheld.

### B. Defendant's [general] Objection to Application of Specific Offense Characteristics

Defendant objects to the application of any "Specific Offense Characteristics" in calculating the total offense level for Groups One and Two.[3] Regarding Group One (which relies on Count 1), Defendant's challenge is based on grounds that "§2X1.1(a) refers only to the addition of 'adjustments,' which are unambiguously covered by Chapter 3, and which are not the same as offense conduct enhancements set forth in Chapter 2." *Id.* at 12. Regarding Group Two, Defendant asserts that even if §2S1.1 [used by the Probation Office and upheld by the Court herein] were the correct guideline for Count 7, based on money laundering objects, "the PSR errs by applying 'Specific Offense Characteristics' in §2S1.1(b)" because §2X1.1(a) does *not* instruct that the "Specific Offense Characteristics" for the substantive offense guideline such as §2S1.1(b) should apply." Def.'s Obj., ECF No. 377, at 6 (arguing that the PSR "simply ignores the distinction between 'adjustments' and "Offense Characteristics'").

In response to Defendant's argument that specific offense characteristics should be excluded, the Probation Office explains that "[w]hen a cross reference is applied, it refers to the entire offense guideline, including specific offense characteristics, USSG §1B1.5." PSR, ECF No. 385, at 52. The Government expounds upon this point in more detail, noting that while "[Defendant] argues that the conspiracy guideline, 2X1.1(a) permits only inclusion of the base offense level applicable to the substantive offense and excludes specific offense characteristics" this argument "ignores the plain

---

[3] Defendant asserts accordingly that the Group One guideline should be determined with reference to Counts 3, 4, 5, and 6, which produce the highest guideline of the offenses, and each yield a total of 14. This would be adjusted upward by one level to 15, to account for Group Two offenses, and then reduced by two levels, after applying USSG §4C1.1 zero-point offender status. Def.'s Sent. Mem., ECF No. 381, at 11, 14; Def. Supp. Sent. Mem., ECF No. 379, at 1. The Court notes that the zero-point offender status is inapplicable here because Defendant received an aggravating role adjustment in connection with the Group One offenses. *See* Section F., *infra*.

6

language of the guideline 2X1.1(a) and the related commentary." Gov't. Sent. Mem., ECF No. 380, at 4. Looking at the plain language of the guideline, the Court notes that, for a conspiracy [Counts 1 and 7 herein], the base offense level is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline. . ." USSG §2X1.1(a)

The Court agrees with the Government's contention that the phrase "such guideline" refers to the guideline for the substantive offense, and the phrase "adjustments" refers to alternative base offense levels, specific offense characteristics, cross references, and special instructions included in the guideline for the substantive offense. *See* Gov't. Sent. Mem., ECF No. 380, at 4; USSG §1B1.1(a)(2) (application instructions). The commentary to USSG 2X1.1(a) further supports the position of the Probation Office and the Government. It confirms that the offense level calculation should include applicable specific offense characteristics, in noting that "the only specific offense characteristics from the guideline for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred." USSG §2X1.1 cmt. n. 2. Moreover, specific offense characteristics are explicitly included in the application of "adjustments." *See* USSG §1B1.1 cmt. n. 4 (describing "adjustments" as specific offense characteristics and stating that "[t]he offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively"); *id.* ("Within each specific offense characteristic subsection, however, the offense level adjustments are alternative. . .")

Accordingly, upon review of the applicable guidelines and commentary, this Court finds no support for Defendant's argument that the PSR erred by applying "specific offense characteristics" to either Group One or Group Two, and accordingly, that objection by Defendant is denied. The Court turns now to Defendant's specific objections to certain enhancements.

C. Defendant's Objection to Adjustment for Obstruction of Justice in Groups One and Two

Defendant asserts that the PSR "[e]rroneously awards [] two two-level obstruction

7

enhancements, one for each grouping of offenses." Def.'s Sent. Mem., ECF No. 381, at 14. Pursuant to USSG §2C1.1, application note 7, "this adjustment is not to be applied to the offense level for that offense, except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense[.]" In this case, Defendant contends that there is no obstructive conduct alleged except for the charged conduct itself (*i.e.*, making a false entry in a record charged in Counts 3 and 4 and witness tampering in Counts 5 and 6), and these offense are already covered by the obstruction of justice sentencing guideline, so this "would amount to double-counting." Def.'s Sent. Mem., ECF No. 381, at 14.[4]

Furthermore, Defendant argues that in applying the obstruction of justice enhancement, it is inappropriate to rely on the Court's comment that it was "reasonable to infer that the jury did not credit Michel's testimony as it related to defenses he proffered based on their verdicts." Def.'s Obj. to the PSR, ECF No. 377, at 1 (referencing PSR ¶176); *see United States v. Orelien*, 119 F.4th 217, 233 (2d Cir. 2024) ("We accordingly do not allow the application of a 'per se rule . . . that any time a court credits [witness] testimony over that of a defendant, the defendant must have given knowingly false testimony.'") Rather, in the case where a defendant objects to a sentence enhancement resulting from trial testimony:

> [A] district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. . . When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury. *See* App. 29 ("The court finds that *the defendant was untruthful at trial with respect to material matters* in this case. [B]y virtue of her failure

---

[4] The Government notes that, regarding the Group One offenses, USSG §3C1.1 cmt. n.8 "contemplates this precise scenario" insofar as "If the defendant is convicted both of an obstruction offense [here, making false entries and witness tampering] . . . and an underlying offense [here, conspiracy to defraud and make illegal contributions] . . ., the count for the obstruction offense will be grouped with the count for the underlying offense . . . .The offense level for that group . . . will be the offense level for the underlying offense increased by the two-level adjustment specified by this section." Govt. Sent. Mem., ECF No. 380, at 6.

8

to give truthful testimony on material matters *that were designed to substantially affect the outcome of the case*, the court concludes that the false testimony at trial warrants an upward adjustment by two levels" (emphasis added)).

*United States v. Dunnigan*, 507 U.S. 87, 95 (1993) (internal citations omitted) (concluding that "[g]iven the numerous witnesses who contradicted respondent regarding so many facts on which she could not have been mistaken, there [was] ample support for the District Court's finding"); *see also Orelien*, 119 F.4th at 228 ("[T]he obstruction enhancement is 'not intended to punish a defendant for the exercise of a constitutional right,' and 'not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.'") (citation omitted).

Defendant focuses next on his "acknowledge[ment] of the facts alleged in the Indictment," for example, that "Low sent him $1 million in 2012 so that Mr. Michel would 'think about' how Low could get a photo with Obama" and "after Mr. Michel received this money, he began giving money to the Obama Victory Fund, through straw donors." *See* Defendant's Objections to the PSR, ECF No. 377, at 2 (citing examples of acknowledgments by Mr. Michel and providing record cites). But the Court finds that these "acknowledgements" by Mr. Michel are contrary to the cumulative testimony and record evidence in this case, and thus, not credible.

Accordingly, this Court may conclude that <u>Mr. Michel was untruthful at trial with respect to material matters in this case</u>. This includes Defendant's testimony that "[i]t was a million dollars to figure out if I can help [Low] get this photo with President Obama" (and when he denied that the money was for a political contribution), Trial Tr. 4/18/2023 P.M. at 55-56; *see id.* at 82 (Michel testifying that "he thought it was legitimate" to make conduit contributions through straw donors"), *id.* at 87 (Michel testifying that the money from Low was not for political contributions and that he "could have [gone] and bought 12 elephants with it"); *see also* Trial Tr. 4/19/2023 A.M. at 15 (Michel testifying that "Low did not direct any of [the] $100 million that [Michel] received in 2017."); *id.* at 17 (Michel: "2017, Pheng paid me for an investment."). *See* Govt. Sent. Mem., ECF

No. 380, at 6 (citing these examples). Furthermore, Mr. Michel's testimony on these material matters during trial was <u>designed to substantially affect the outcome of the case</u> – to sway the jury's verdict.

This issue is explored in more detail in this Court's [355] Memorandum Opinion denying Defendant's Motion for Judgment of Acquittal, which contains numerous examples of evidence presented at trial in contradiction to Mr. Michel's testimony. *See,* Mem. Op, ECF No. 355, at 7 (discussing the basis for the jury to conclude that an agreement to make illegal campaign contributions existed between Mr. Michel and Mr. Low, in contrast to Mr. Michel's testimony otherwise), at 11-12 (discussing contributions to the Obama campaign); at 29-30 (discussing Mr. Michel's contract with Mr. Pheng and the purpose of that contract). Accordingly, the Court finds that Mr. Michel's intentional misrepresentations on material matters, during trial, to affect the jury verdict, satisfies the imposition of the two-level "obstruction of justice" enhancements, in Groups One and Two, and Defendant's objection in this regard is denied.

### D. Defendant's Objection to the Group One Specific Offense Characteristic for Illegal Transactions Made by, or Received from, a Foreign National

Defendant argues against the imposition of a two-level increase, pursuant to USSG §2C1.8(b)(2)(A), based on the specific offense characteristic that the offense involved illegal transactions made by, or received from, a foreign national. Defendant asserts that:

> This adjustment should not apply, however, because it was a charged element of the offense that Mr. Michel conspired to "make foreign contributions directly and indirectly. . . in violation of Title 52, United States Code, Sections 30121 and 30109(d)(1)(A)." Indictment ¶ 21(b). Thus, an upward adjustment on this basis would constitute double counting, as it is not possible to be convicted for this offense unless a foreign national has provided the funds.

Def.'s Obj. to PSR, ECF No. 377, at 4. The Government does not address this contention in connection with its discussion of Defendant's other objections. The Probation Office prefaces its response with a few sentences describing the way Mr. Michel made illegal conduit contributions, using money from codefendant Jho Low, and concludes that "[b]ecause the offense involved,

10

directly or indirectly, an illegal transaction made by or received from a foreign national (codefendant Low), an enhancement is warranted. . ." PSR, ECF No. 385, at 52. The Probation Office notes additionally that, "[s]hould the court consider it double counting, the Court may consider [it] as a variance under 18 USC §3553(a)." *Id.*

As previously noted, the Count 1 offense – which drives the Group One offense level – is for Conspiracy to Defraud the United States and to Make Illegal Foreign Conduit Contributions. And, in this case, Defendant is correct that the elements of the crime charged in Count 1 include that: "[a] foreign national, directly or indirectly, made a contribution of money or other thing of value . . ." Jury Instructions, ECF No. 290, at 43 (Instruction No. 37- Count One, Foreign Contributions in Violation of 52 U.S.C. §§30121 & 30109(d)(1)(A)). Accordingly, because this specific offense characteristic is encompassed within the elements of the offense charged in Count 1, the Court agrees with Defendant that it would be double counting to include the two-level adjustment in the sentencing calculation. As the Court declines to treat it as a variance, the Defendant's objection to this specific offense characteristic (described in PSR, ¶ 204) is granted, and the two-level adjustment shall be removed from the Sentencing Guideline calculation.

### E. Defendant's Objection to the Group One Specific Offense Characteristic for Promoting an Offense Involving National Security

Defendant objects to the imposition of a six-level increase for promoting an offense involving national security, which was imposed on the basis that "the defendant knew that the laundered funds were the proceeds of or were intended to promote an offense involving national security (1MDB investigation against codefendant [Low] by the Department of Justice)." Def.'s Obj. to PSR, ECF No. 377, at 7 (quoting PSR); *see* USSG §2S1.1(b)(1)(A) and (b)(iii). In this case, Defendant asserts that "Low provided funds to Mr. Michel in the hopes that Mr. Michel would assist in having the civil forfeiture action [regarding Low's alleged misappropriation of money from Malaysia] . . . dismissed" and this "had nothing to do with the national security of the United States." *Id.* "Nor

11

did the extradition of Guo, another action sought by Low, involve national security" as Guo was "a Chinese national who was living in the United States and was apparently being sought by the Chinese government for crimes it alleged he committed there." *Id.* at 8. "Mr. Michel is alleged to have tried to persuade the U.S. government to extradite Guo to China" where the extradition "never occur[red] [nor] did [it] involve U.S. national security." *Id.* Defendant contrasts his case with *United States v. Hanna*, 661 F.3d 271, 293-294 (6th Cir. 2011), where the defendant "knew that the laundered funds were the proceeds of her Iraq embargo violation, [therefore,] she had knowledge that the money was derived from an offense 'involving' national security."

The Probation Office responds to this objection as follows: "As noted in the Superseding Indictment, The Foreign Agents Registration Act (FARA) requires any person acting in the United States as "an agent of a foreign principal" in connection with certain activities, such as political or public relations efforts or lobbying on behalf of a foreign principal, to register with the Attorney General." PSR, ECF No. 385, at 53. The Probation Office noted that this is consistent with the purpose of FARA "to prevent covert influence by foreign principals," and further, that "[t]he notification requirement serves the national security and foreign policy interests of the United States by providing governmental awareness of the activities of any individual who is operating in the United States at the direction of a foreign government." *Id.* The Probation Office concluded that Mr. Michel (and others) "knowingly and intentionally caused the transfer of funds with the intent to promote the carrying on of specified unlawful activity, specifically the violation of FARA," and therefore, the enhancement is warranted.

The Government expounds upon this argument in its Sentencing Memorandum, first stating generally that "[b]ecause FARA offenses involve secret work for a foreign principal, they virtually always present national security concerns." Gov't Sent. Mem., ECF No. 380, at 11; *see Attorney Gen. of the United States v. Wynn*, 104 F.4th 348, 353-54 (D.C. Cir. 2024) (describing FARA

enforcement as "touch[ing] on sensitive areas of national security and foreign policy"); *Attorney Gen. of the United States v. Irish People, Inc.*, 684 F.2d 928. 945 (D.C. Cir. 1982) ("A review of the language, history, and case law of the Foreign Agents Registration Act demonstrates that it was inspired by national security, international political, and foreign policy considerations.")

The Government next describes some of the actions taken by Mr. Michel and his co-conspirators that aimed to "shut down an international criminal investigation into the largest kleptocracy scheme in history perpetrated by individuals in the United States and Malaysia and related forfeiture proceedings." Gov't Sent. Mem., ECF No. 380, at 11-12 (listing some of Mr. Michel's attempts to arrange meetings/outings between the then-Prime Minister of Malaysia (or persons lobbying on his behalf) and United States' political figures, so that the Malaysian Prime Minister could request an end to the 1MDB investigation). The Government argues that:

> Prematurely terminating international law enforcement investigations where related assets and defendants are present in the United States implicates national security. Agreeing to influence executive action on matters of foreign policy and international criminal enforcement while concealing that the purported advice from trusted U.S. advisors is actually in service of foreign principals threatens national security. Attempting to arrange the extrajudicial removal of foreign nationals at the secret direction of the PRC government threatens national security. Michel recognized as much. *See* Trial Tr. 4/19 A.M. at 44 (Michel: "I'm meeting because I feel like it's a national security issue here.")

*Id.* at 12.

The Government relies on the *Hanna* case to support its argument, insofar as "Michel may not have believed that his criminal conduct threatened national security, but all that is necessary is that he understood that his criminal conduct involved national security. *See Hanna*, 661 F.3d at 294 ("Though no one asserts that [defendant] believed her exports would 'threaten' national security, that is not required under the sentencing provision: it merely requires that she knew the offense 'involved' national security.")

Based on the record and circumstances in this case and considering the *Hanna* case, which is relied upon by both parties, and Mr. Michel's acknowledgment of a national security issue, this

Court finds the imposition of a six-level enhancement in Group Two is appropriate for Mr. Michel's promoting an offense involving national security, and accordingly, Defendant's objection is denied. Below, the Court addresses the enhancement in connection with each Group.

F. Adjustment for Role in the Offense (Objections by Both Parties)

In this case, Defendant asserts that the three-level adjustment for role in the offense does not apply to either Group, while the Government argues that it applies to both Groups. As previously noted, the Probation Office agreed with the Defendant's objection to a three-level enhancement for role in the offense in connection with Group Two offenses and removed it from that calculation but left standing the three-level enhancement for Group One offenses.

1. Group One Offenses (Illegal Campaign Contributions- Straw Donors)

Pursuant to USSG §3B1.1(b), a defendant's offense level is increased by three levels if "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive[.]" A participant is "a person who is criminally responsible for the commission of the offense but need not have been convicted." USSG §3B1., cmt. n.1. Pursuant to USSG §3B1.1, cmt. n.3, assessing whether an organization is "otherwise extensive" involves considering "all persons involved during the course of the entire offense."

Mr. Michel challenges the applicability of this enhancement to Group One offenses on grounds that the "straw donor scheme involved, at most, five participants" and furthermore, "the alleged straw donors [cannot] be counted as participants" because none of them were charged with any offense and therefore, they were not "criminally responsible." Def.'s Obj. to the PSR, ECF No. 377, at 2-3; *see United States v. Hunter*, 554 Fed. App'x 5, 11 (D.C. Cir. 2014) (finding that a remand was required where the "government never argued that any of those lower-level [ ] employees were criminally responsible for the commission of any offense," and therefore had not demonstrated applicability of the three-level upward adjustment for being a manager or supervisor), *aff'd* , 809 F.

14

3d 677 (D.C. Cir. 2016); *United States v. Johnson*, 64 F.4th 1348, 1353 (D.C. Cir. 2023) (district court's application of role enhancement reversed where record did not support finding that defendant "managed or supervised" three codefendants or exercised control over two other participants). Mr. Michel disputes that there has been any showing that any of the straw donors were criminally responsible, as there was no evidence that they believed they were acting with criminal intent. Mr. Michel argues also that the Court must find that he had control over other participants, not merely over the scheme. Def.'s Obj. to PSR, ECF No. 377, at 3; *see United States v. Bapack*, 129 F.3d 1320, 1324-25 (D.C. Cir. 1997).

In its Sentencing Memorandum, ECF No. 380, at 6-8, the Government provides numerous references to the record in this case that support the [Group One] three-level increase to the offense level, including that Mr. Michel managed the foreign and conduit contribution scheme, *inter alia*, by organizing political fundraising events with a campaign fundraiser, and by identifying, recruiting, reimbursing, and directing over a dozen straw donors. *See, e.g.*, Trial Tr. 4/18 A.M. ("[I]t was Pras' event . . . [a]nytime you have someone who has volunteered and offered to anchor an event for you and bring all of their people to the event and help them raise money, you try to keep them happy"); Ex. 270, 601 (illustrating that Defendant identified, recruited, reimbursed, and directed over a dozen straw donors to make conduit contributions); Trial Tr. 3/31 A.M. at 128 (Defendant arranged attendance for some of the straw donors at the fundraising event); Ex. 294 (Defendant conspired with a domestic co-conspirator to direct wire transfers from Low through a foreign co-conspirator to fund the illegal foreign contributions).

In response to Defendant's objection, the Probation Office stated that, "[i]n the campaign contribution scheme, defendant Michel directed approximately 20 straw donors to make conduit contributions." PSR, ECF No. 385, at 51. Furthermore, as noted by the Government in its Sentencing Memorandum, "several of the straw donors entered into immunity agreements because

of their criminal exposure." *Id., see* Gov't Sent. Mem., ECF No. 380, at 7 (referencing exhibit numbers for immunity agreements). The Government argues that "[i]mmunized subjects with criminal exposure involved in a criminal scheme count as participants under the Guidelines." *Id., see United States v. Tavares*, 705 F.3d 4, 30 (1st Cir. 2013) ("In light of our sister circuit's reasoning and the clear language of the Guideline, we also hold that a 'participant' can be an immunized witness against the defendant.")

Moreover, the Government contends that the "use of over a dozen straw donors" also constitutes criminal activity that is "otherwise extensive." Gov't Sent. Mem., ECF No. 380, at 7; *see United States v. Wilson*, 240 F.3d 39, 47 (D.C. Cir. 2001) (adopting the *Carrozzella* test for determining whether an organization is otherwise extensive, focusing on "the number of persons involved in the criminal activity, criminally or noncriminally"). As noted above, the Government provides references to exhibits, *see* Govt. Sent. Mem., ECF No. 380, at 6-8, that demonstrate the number of persons involved during the criminal scheme. "The co-conspirators include Michel, Low, a domestic co-conspirator, and a foreign proxy for Low, and the participants include the straw donors directed by Michel to make conduit contributions." Govt. Sent. Mem., ECF No. 380, at 7. Accordingly, upon consideration of the record evidence and the case law cited, the Court finds that Mr. Michel was a manager or supervisor under either "prong" [the criminal activity involved "five or more participants" or was "otherwise extensive"] of §3B1.1(b), and a three-level enhancement for role in the offense is justified regarding the Group One offenses. Accordingly, Defendant's objection is denied regarding the application of this enhancement to Group One offenses.

2. Group Two Offenses (1MDB Scheme)

As previously noted herein, in his Objections to the PSR, Defendant asserted that the role in the offense adjustment did not apply to Group Two offenses, and the Probation Officer agreed and removed that enhancement from its Guidelines calculation.

16

The Government argues that this enhancement should be applied to Group Two offenses where "co-conspirators included Michel, Low, Broidy, Lum Davis, and Higginbotham" and Mr. Michel "recruited Broidy and Lum Davis into the scheme and directed them on Low's behalf" and "also recruited and directed Higginbotham," and Defendant claimed "the largest share of the profits from the scheme." Govt. Sent. Mem., ECF No. 380, at 8-9 (citations to the record omitted). In sum, the Government characterizes Mr. Michel as a manager or supervisor. *Id.* at 9.

In contrast, Defendant asserts that Mr. Michel "involved others to assist him, such as Broidy, Lum Davis, and Higginbotham, but he did not 'manage' or 'supervise' them." Def.'s Obj. to PSR, ECF No. 377, at 8; *see United States v. Quigley*, 373 F.3d 133, 140 (D.C. Cir. 2004) ("We understand the concept of 'control' or 'authority' implicit in the notion of 'management' or 'supervision' to connote some sort of hierarchical relationship, in the sense that an employer is hierarchically superior to his employee."). Defendant argues that, here, the persons deemed co-conspirators "worked in concert, not at the direction of Mr. Michel." Def.'s Obj. to PSR, ECF No. 377, at 8. Defendant's argument against applying this enhancement relies in large part upon language from this Court's [355] Memorandum Opinion denying his Motion for Judgment of Acquittal. *Id.* at 8-9 (citing the Opinion). Interspersed with a discussion of the evidence related to the 1MDB scheme [relied upon by both parties here], this Court characterized Mr. Michel as "involved in the 1MDB scheme on behalf of Low, primarily as a messenger, facilitator, and intermediary," ECF No. 355, at 32, and indicated that "Michel served a pivotal role in the 1MDB scheme, working as a facilitator and intermediary between Low and Broidy." *Id.* at 34. Having already characterized Mr. Michel in that way in relation to the 1MDB scheme, this Court declines to impose a three-level enhancement for "role in the offense" regarding Group Two offenses. Accordingly, the Probation Office's calculation is accurate, and Defendant's objection to this enhancement [for Group Two] is granted.

Accordingly, for the reasons explained herein, it is this 3rd day of November 2025,

ORDERED that Defendant's objections to: (1) the base offense level calculation for Count 7 (Group Two); (2) the imposition of any specific offenses characteristics, in general; (3) adjustment for obstruction of justice in Groups One and Two; (4) the specific offense characteristic for promoting an offense involving national security; and (5) adjustment for role in the offense in Group One are DENIED; and it is further

ORDERED that Defendant's objections to: (1) the specific offense characteristic for illegal transactions made by, or received from, a foreign national in Group One; and (2) adjustment for role in the offense in Group Two are GRANTED. The Probation Office has already incorporated the adjustment for role in the offense in Group Two in the PSR but shall revise the PSR to remove the specific offense characteristic for illegal transactions made by, or received from, a foreign national in Group One. The Court notes that because Group Two yields the higher offense level, and it is unchanged, the Probation Office's sentencing recommendation is unaffected.

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE